Bradley L. Tilt (Utah Bar No. 07649)
FREEMAN LOVELL, PLLC
4568 S Highland Drive, Suite 290
Salt Lake City, Utah 84117
office: 385-355-4826
bradley.tilt@freemanlovell.com
*Attorneys for Plaintiffs*

Felicia B. Canfield (Utah Bar No. 09686)
CANFIELD LAW LLC
2413 Newton Avenue
Cody, WY 82414
Office: (307) 228-5986
canfieldlawllc@gmail.com
*Attorneys for Plaintiffs*

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| MOLLY J. MULLIGAN; and JOHN P. MULLIGAN, <br><br> Plaintiffs <br><br> v. <br><br> ALUM ROCK RIVERSIDE, LLC, a California limited liability company; Brett H. Del Valle and Traci M. Del Valle as Co-Trustees of the Del Valle Family Trust dated October 30, 2002 <br><br> Defendants. | **MOTION OF PLAINTIFFS FOR ISSUANCE OF A PRELIMINARY INJUNCTION and MEMORANDUM IN SUPPORT** <br><br> Case No. 1:25-cv-00008-DA <br><br> Assigned Judge: Dale A. Kimball <br><br> Referred Magistrate Judge: Cecilia M. Romero |

## The Relief Sought and the Grounds for Relief

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs Molly J. Mulligan and John P. Mulligan (collectively "**Mulligans**") respectfully move this Court for issuance of a preliminary injunction enjoining Defendant Alum Rock Riverside, LLC ("**Alum Rock**") from holding a sale, pending resolution of this action, of Mulligans' residential real property located in Weber County, Utah (the "**Property**") based upon a *Writ of Execution* that defendant Alum Rock obtained in a writ "proceeding" it filed in the Third Judicial District, Salt Lake County (the "**Writ**"), against its judgment debtor, Brett Del Valle ("**Brett**") in order to domesticate a foreign judgment it had obtained aglint Brett and others in California. Debtor Brett never owned the Property personally; rather Brett was a settlor and trustee of the trust from which the Mulligans purchased the Property.  Mulligans were not parties to Alum Rock's writ proceeding but as homeowners affected by the Writ, they filed a *Reply and Request for Hearing* – and had a right of appeal thereafter when the Writ was upheld by Utah's Third Judicial District Court.

The issuance of Alum Rock's Writ was further upheld by the Utah Supreme Court, in a narrow decision, on the grounds that Alum Rock created a judgment lien when it *only recorded* its *Notice of Judgment* filed on October 23, 2020 in the Third Judicial District Court, Salt Lake County, Civil No. 206927043, with the Weber County recorder on October 23, 2020 (the "**Alum Rock Lien**"); that its Writ was validly issued in the writ "*proceeding*" because debtor Brett was a co-settlor of the trust that sold the Property to the Mulligans; and that Utah's Third Judicial District court had jurisdiction to issue a writ on real property in Weber County. *See Mulligan v.*

*Alum Rock Riverside, LLC*, 2024 UT 22, ¶¶ 58, 62, 66 and n. 8, 69[1]. The Utah Supreme Court further held that the writ proceeding was not an <u>action</u> involving real property. *Id.* at ¶ 66[2]. It further expressed "*no opinion*" on "*whether [co-trustee Traci Del Valle's] joint ownership of the Property has any effect on [Alum Rock's] judgment lien*". *Id.* at n 7. The *Mulligan* decision did not foreclose Plaintiffs from bringing an action in Weber County, where their home is located, asserting, primarily, claims and causes of action in relation to the Alum Rock judgment lien; claims that were not before the *Mulligan* Court in adjudicating the issuance of the Writ.

On December 20, 2024, Mulligans filed a *Complaint and Jury Demand*[3] in Utah's Second Judicial District Court, and on January 9, 2025 the state court issued a *Temporary Restraining Order* canceling Alum Rock's scheduled sheriff's sale[4] (the "**TRO**"), but the TRO expired by its terms 14 days later on January 23, 2025. The TRO further set a preliminary injunction hearing, however, for January 17, 2025, which hearing was held and at the end of which the state court orally granted the Mulligans' request for a preliminary injunction.  But on January 23, 2025,

---

[1] *See Declaration of Felicia B. Canfield* filed concurrently with and attached as "**Exhibit 1**" to this Motion ("**Canfield Decl.**"), Ex. G thereto (the *Mulligan* decision).

[2] "Simply put, this proceeding to enforce that judgment through a writ of execution is not an action involving real property governed by the venue statute." *See* Canfield Decl., Ex. G (the *Mulligan* decision).

[3] Mulligans asserted causes of action against Alum Rock for: (1) Declaratory Judgment and Quiet Title; (2) Equitable Subordination; (3) Equitable Subrogation; (4) Declaratory Judgment – No Constructive Notice; (5) Declaratory Judgment – Bona Fide Purchasers; and, (6) Injunctive Relief.

[4] Alum Rock scheduled a sheriff's sale for January 16, 2025 (which was re-noticed for January 21, 2025) notwithstanding its failure to establish and prove what portion of the Property previously owned by the Trust was attributable to apparent settlor Brett's contribution, if indeed any at all, and what portion of the Property is therefore subject to the Alum Rock judgment lien and to any execution upon and/or foreclosure thereof, if indeed any at all, among other legal issues and claims asserted by the Mulligans in this action.

before the state court had entered either of the proposed injunction orders submitted by the parties Defendant Alum Rock removed the action to this Court.

District of Utah, Civil Rule 81-1(c)(1) provides: "all pending motions and other requests directed to the state court are automatically denied without prejudice on removal." Rule 81-1(c)(2) further provides: "[i]f a party seeks a decision on a motion that was automatically denied under section 81-1-(c)(1), the party must refile the motion…" (underline added). Thus, by way of this *Motion of Plaintiffs for Issuance of a Preliminary Injunction* (the "**Motion**"), Mulligans hereby refile their motion for a preliminary injunction to enjoin and prohibit Alum Rock from again scheduling a sale of their Property prior to the judicial determination of the claims and causes of action asserted in this action.

Any such sale at this juncture would be premature and improper. The sale would cause immediate and irreparable injury, loss, or damage to Mulligans, owners of the irreplaceable residential Property. Mulligans meet each of the elements necessary for the granting of a preliminary injunction (discussed below) and their Complaint presents serious questions on the merits that first must be adjudicated, including pursuant to the *Mulligan* Court's reservation of any contribution issue by Alum Rock's debtor Brett, and because of open questions about the scope, enforceability and priority of its judgment lien as against the Mulligans[5].

---

[5] "To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (*i.e.*, the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation. *Cont'l Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 781–82 (10th Cir. 1964) (underline added).

The requested injunction should issue without bond, which this Court has discretion to determine, because an injunction will not result a likelihood of harm to judgment creditor Alum Rock[6]. Indeed, no party or their claims will be harmed by an injunction because in the event the Mulligans are unable to prove their claims, the Property will still be available to be sold at that time; the public is on notice of Plaintiffs' claims[7]; and the Property will likely increase in value over time. Further, Alum Rock is secured by the adjudication in *Mulligan* that it *created* a judgment lien; though its scope, enforceability and priority as against the Mulligans remains to be determined. Additionally, should Alum Rock prevail it will only be *delayed* in the execution of its judgment lien. And if Mulligans prevail, then Alum Rock will have wrongfully executed its judgment lien as against their interests in the Property, if no injunction issues. There is, therefore, no need for any bond during the pendency of this litigation since there is no likelihood of harm to judgment creditor Alum Rock.

Mulligans therefore respectfully request that their Motion be granted.

## MATERIAL FACTS

1.    The real property which is the subject of this action is located in Weber County, State of Utah, commonly known as 1453 South Basinview Road, Huntsville, UT 84317, more particularly described as follows (the "**Property**"):

Lot 7, BASINVIEW ESTATES CLUSTER SUBDIVISION 1ST AMENDMENT, according to the official plat thereof on file and of record in the office of the Weber County Recorder.

---

[6] "Under this rule [Rule 65(c), F.R.Civ.P., 28 U.S.C.A.] the trial judge has wide discretion in the matter of requiring security and if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary." *Id.* at 782.
[7] On December 23, 2024, the Mulligans recorded on the Property a *Lis Pendens* as Entry No. 3352068 in the official records of the Weber County Recorder. Canfield Decl., Ex. M.

Together with a right of use for an easement for ingress and egress over and across Basinview Road (a private road), as shown on the official dedicated plat, to and from said Lot to a physically open and legally dedicated public street.

Tax ID No. 20-119-0007

*See* Canfield Decl., Ex. A (Warranty Deed, defined below).

2.     Plaintiff Mulligans are the owners of the Property conveyed to them by way of a *Warranty Deed* from Brett H. Del Valle and Traci M. Del Valle, as Co-Trustees of the Del Valle Family Trust dated October 20, 2002 (the "**Trust**"), as grantor, to the Mulligans, as joint tenants, as grantee, which was recorded on May 11, 2021 as Entry No. 3151874 in the official records of the Weber County Recorder's office (the "**Warranty Deed**"). *See id.*

3.     Mulligans obtained a loan in connection with their purchase of the Property, which loan is secured by a Deed of Trust that was recorded on the Property on August 2, 2021 as Entry No. 3172556 (the "**Mulligans' Trust Deed**"). *See* Canfield Decl., Ex. B.

4.     When the Mulligans purchased the Property from the Trust they paid off various liens and encumbrances of record, including: (1) $712,209.92 paid in satisfaction of a mortgage loan given by BOFI Federal Bank to the Trust, as borrower, which loan was secured by a *RESPA Deed of Trust* recorded on the Property on September 20, 2017, as Entry No. 2879566 (the "**First Position Trust Deed**") ; (2) $948,000.00 paid in satisfaction of a mortgage loan given by TSS Enterprises Inc. to the Trust, which loan was secured by a *Deed of Trust with Assignment of Rents* recorded on July 6, 2020, as Entry No. 3066407 (the "**Second Position Trust Deed**"); (3) unpaid, delinquent property taxes in the amount of $46,248.89 for tax years 2018-2020 (the "**Delinquent Property Taxes**"); and, (4) delinquent homeowner association dues in the amount of $2,125.00 (the "**Delinquent HOA Dues**"), <u>all of which liens and encumbrances appeared in</u>

5

the public record. *See* Canfield Decl., Ex. C.

5.      Neither Co-Trustee appears in any individual and/or personal capacity in any public record, abstract, or title search as an owner of the Property at any point in time, including not in the chain of title when Plaintiffs purchased the Property from the Trust. *See* Canfield Decl., Ex. D (Property Abstract and Weber County Judgment Index).

6.      The claimed interests of Defendant Alum Rock in or to the Property is/are based and premised upon a certain *Notice of Judgment* filed on October 23, 2020 in the Third Judicial District Court, Salt Lake County, which Notice was recorded in the office and general records of the Weber County Recorder on October 23, 2020 as Entry No. 3101770*, but which was not abstracted to or against the Property* (the "**Alum Rock Lien**"). *See* Canfield Decl., Ex. E; *see also* Ex. D.

7.      Pursuant to searches by Mulligans' title company, no judgments against either Co-Trustee were recorded on the Property; no judgments against either Co-Trustee appear in any Weber County Recorder abstract or title search of the Property; and no judgments against either Co-Trustee appear in the searchable court index where the Property is located, **including not during the time leading up to and including when the Mulligans purchased the Property**. *See* Canfield Decl., Ex. D.

8.      The Alum Rock Lien relates to an underlying foreign judgment which was entered on March 18, 2020 against Brett (among other judgment debtors) in his individual and personal capacity only and not in his capacity as one of the Co-Trustees of the Trust. *See* Canfield Decl., Ex. E (Notice of Judgment).

9.      On June 22, 2021, in a writ "proceeding" brought in the Third District Court in

and for Salt Lake County, Utah, Civil No. 206927043, Alum Rock obtained a *Writ of Execution* to enforce its Lien against the Mulligan Property. *See* Canfield Decl., Ex. F (Writ); *see also Mulligan* ¶ 66 in Canfield Decl., Ex. G (*Mulligan v. Alum Rock Riverside, LLC*, 2024 UT 22).

10.      Pursuant to an appeal of the Writ, in *Mulligan v. Alum Rock Riverside, LLC*, 2024 UT 22, ¶¶ 58, 62, 66 and n. 8, 69, the Utah Supreme Court held that Alum Rock created a judgment lien when it recorded its *Notice of Judgment* generally with the Weber County recorder on October 23, 2020 (the "**Alum Rock Lien**"); that its Writ was validly issued in the writ "proceeding", including because Brett was a settlor and co-trustee of the Trust that sold the Property to the Mulligans; and, that Utah's Third Judicial District court had jurisdiction to issue a writ on real property in Weber County. *Id.* n. 7. *See* Canfield Decl., Ex. G.

11.      Utah Code Section 75-7-505(1) provides that: "If a trust has more than one settlor, the amount the creditor or assignee of a particular settlor may reach may not exceed the settlor's interest in the portion of the trust attributable to that settlor's contribution." *See* Canfield Decl., Ex. H (Utah Code Section 75-7-505).

12.      The Trust was not recorded, and neither the Warranty Deed, nor the *Special Warranty Deed* by which the Trust obtained title to the Property, recorded on May 3, 2007 as Entry No. 2261271 in the official records of the Weber County Recorder's office (the "**Special Warranty Deed**"), disclose any claim that sets forth the names of the beneficiaries, specifies the interest claimed, and describes the real property subject to the interest.  *See* Canfield Decl., Ex. I (Special Warranty Deed); *see also* Exs A and D.

13.      Utah Code Section 57-3-102(4) states, in pertinent part: "The fact that a recorded document … names the grantee as trustee, or otherwise purports to be in trust without naming

beneficiaries or stating the terms of the trust does not charge any third person with notice of any interest of the grantor or of the interest of any other person not named in the document." *See* Canfield Decl., Ex. J (Utah Code Section 57-3-102).

14.    Utah Code Section 57-3-102(5) states: "The grantee in a recorded document may convey the interest granted to him free and clear of all claims not disclosed in the document in which he appears as grantee or in any other document recorded in accordance with this title that sets forth the names of the beneficiaries, specifies the interest claimed, and describes the real property subject to the interest." *See* Canfield Decl., Ex. J.

15.    On December 20, 2024 Mulligans filed a *Complaint and Jury Demand*, as Civil No. 240908957, in the Second Judicial District Court for the State of Utah (the "**state court**"), in which they asserted claims and causes of action against Defendant Alum Rock for:

      a.  Declaratory Judgment and Quiet Title;
      b.  Equitable Subordination;
      c.  Equitable Subrogation;
      d.  Declaratory Judgment – No Constructive Notice;
      e.  Declaratory Judgment – Bona Fide Purchasers; and,
      f.  Injunctive Relief – Restraining Order.

*See* Canfield Decl., Ex. K.

16.    On January 9, 2025 the state court issued a *Temporary Restraining Order* canceling Alum Rock's scheduled sheriff's sale (the "**TRO**"), but the TRO expired by its terms 14 days later on January 23, 2025.  The TRO further set a preliminary injunction hearing, however, for January 17, 2025, which hearing was held and in which the state court orally granted the Mulligans' request for a preliminary injunction.  *See* Canfield Decl., Ex. L.

17.    On January 23, 2025, before the state court had entered either of the proposed injunction orders submitted by the parties Defendant Alum Rock removed the action to this

Court. *See Notice of Removal* on file herein [2].

<u>**ARGUMENT**</u>

**I.    ALL THE ELEMENTS FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION ARE PRESENT HERE AND PLAINTIFFS' MOTION SHOULD BE GRANTED.**

Preliminary injunctive relief is appropriate if the moving party establishes: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1197 (D. Utah 2014) (balance favoring injunction) (citing *RoDa Drilling Co. v. Siegal,* 552 F.3d 1203, 1208 (10th Cir.2009)). In this case, Plaintiffs Mulligans meet each of those elements and their Motion should therefore be granted.

<u>**Element No. 1**</u>**: There is a likelihood of success on the merits of Mulligans' claims.** Mulligans' Complaint raises serious questions about their real property rights that need to be the subject of a litigated action.  Further, there is a substantial likelihood that Mulligans will prevail on the merits of at least one, if not every, of their causes of action as follows:

<u>**Quiet Title:**</u> Mulligans have alleged and can prove from the public record that they own the Property pursuant to their purchase and the Warranty Deed given by the Trust. Utah law, which governs Utah real property, provides: "A true quiet title action is a suit brought 'to quiet an *existing* title against an adverse or hostile claim of another,' and 'the effect of a decree quieting title is not to *vest* title but rather is to *perfect* an existing title as against other claimants.'" *Dep't of Social Servs. v. Santiago,* 590 P.2d 335, 337–38 (Utah 1979); *see also In re*

*Hoopiiaina Tr.*, 2006 UT 53, ¶ 26, 144 P.3d 1129, 1137; *accord Gillmor v. Blue Ledge Corp.,* 2009 UT App 230, ¶ 28, 217 P.3d 723, 731. "[A]ll [a party] need do is prove prima facie that he has title which, if not overcome by [the opposing party], is sufficient." *Babcock v. Dangerfield,* 98 Utah 10, 94 P.2d 862, 863 (1939). *Gillmor v. Blue Ledge Corp.,* 2009 UT App 230, ¶ 14, 217 P.3d 723, 728. Alum Rock is a hostile judgment creditor claimant that claims an interest in the Mulligans' home such that it has attempted and intends to sell their Property pursuant to its Writ. But Alum Rock has not proved that its claimed interest *vis a vis* co-trustee/apparent settlor, debtor Brett, defeats the Mulligans' existing title.  Further, Utah Code 75-7-505(1) provides: "If a trust has more than one settlor, the amount the creditor or assignee of a particular settlor may reach may not exceed the settlor's interest in the portion of the trust ***attributable to that settlor's contribution***". Alum Rock has not proved what contribution interest, if any, is available for it to execute upon. The Special Warranty Deed conveying the Property to the Trust, for example, shows that the Trust itself purchased the Property from Basinview Development, LC, the former owner in the chain of title, and that debtor Brett did not contribute the Property to the Trust at all, including since he was never in title. *Compare* Exhibits D and I to Canfield Decl.

Thus, there is a substantial likelihood that Plaintiffs will prevail on their Quiet Title claim and this Motion should be granted.

**Equitable Subordination and Equitable Subrogation**: The doctrine of equitable subrogation hold that when a prior creditor is paid off – in this case the Mulligans and their lender paid off the First and Second Position Trust Deeds, the Delinquent Property Taxes and Delinquent HOA Dues – the subsequent homeowner and/or lender acquires the lien priority of the prior creditor(s). The doctrine of equitable subordination essentially is the flip side of

10

equitable subrogation, and holds that any creditor – in this case judgment creditor Alum Rock – whose interest in the property arose <u>between</u> the time of the prior creditors (the beneficiaries of the First and Second Position Trust Deeds as well as Weber County and the homeowners association) and the subsequent homeowner and/or lender, the intervening creditor (Alum Rock) is <u>equitably subordinated</u> to the interest of the subsequent homeowner and/or lender <u>to the extent of the prior creditors were paid off, whose interests were ahead of the intervening creditor's interest (*i.e.*, Alum Rock's Lien)</u>.  *See e.g., Martin v. Hickenlooper*, 59 P.2d 1139 (Utah 1936); *George v. Butler*, 50 P. 1032 (Utah 1897).

The Arizona case of *Sourcecorp, Inc. v. Norcutt*, 227 Ariz. 463, 258 P.3d 281 (Ct. App. 2011), *aff'd,* 229 Ariz. 270, 274 P.3d 1204 (2012), *as amended on denial of reconsideration* (Apr. 25, 2012) has an extensive discussion of equitable subrogation – including as applied in various jurisdictions, and is instructive:

> ¶ 13…The very nature of equitable subrogation is to substitute a party into the position of another. If the Norcutts are entitled to equitable subrogation as they claim, then they would be substituted into the position of Zions Bank, ***and their interest would be deemed to have attached before the judgment lien***.
> …
>
> ¶ 21 In arguing that equitable subrogation should be available to purchasers of property who pay off a senior encumbrance, the Norcutts argue that the Restatement (Third) of Property: Mortgages § 7.6 (1997) ("the Restatement") makes no distinction between purchasers and creditors regarding the application of equitable subrogation. <u>The Restatement provides as follows</u>:
>
> > (a) One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.
> >
> > (b) By way of illustration, subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation:

> (1) in order to protect his or her interest;
> (2) under a legal duty to do so;
> (3) on account of misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition; or
> (4) upon a request from the obligor ... to do so, if the person performing was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate.

Restatement § 7.6. As noted by the Norcutts, this provision does not preclude the application of equitable subrogation to a purchaser paying off an encumbrance and would seem to be broad enough to encompass such a situation.

(emphasis added).

In other words, because the First and Second Position Trust Deeds encumbered the Property <u>before</u> the creation of Alum Rock's judgment lien, and because the Mulligans and their lender paid those encumbrances off (*in addition to* the Delinquent Property Taxes and Delinquent HOA Dues), <u>judgment creditor Alum Rock must be equitably subordinated</u> to those paid off encumbrances and to the Mulligans and their lender. Otherwise, Alum Rock would be unjustly enriched and *reap a windfall* by virtue of those prior encumbrances having been paid off – encumbrances that Alum Rock would have been subordinate to in any event and which would have otherwise burdened the Property upon which Alum Rock now seeks to execute its judgment lien. Thus, because Mulligans paid off the prior liens and, Alum Rock's judgment Lien cannot have priority over Mulligans' interests in and to the Property.

Thus, there is a substantial likelihood that Plaintiffs will prevail on their Equitable Subordination and Equitable Subrogation claims and their Motion should be granted.

**<u>Bona Fide Purchasers with No Constructive Notice</u>**: Mulligans have alleged and can prove from the public record that when they purchased the Property from the Trust, no judgments

against either Co-Trustee <u>were recorded **on the Property**</u>; no judgments against either Co-Trustee <u>appear in any Weber County Recorder abstract or title search of the Property</u>; and no judgments against either Co-Trustee <u>appear in the searchable court index where the Property is located</u>. *See* Canfield Decl., Ex. D (Abstract and Judgment Index). Thus, they purchased the Property from the Trust as bona fide purchasers for value with no notice of Alum Rock's Lien, constructive or otherwise. "A bona fide purchaser is one who pays valuable consideration for a conveyance, acts in good faith, and takes without notice of an adverse claim or others' outstanding rights to the seller's title." *Baldwin v. Burton*, 850 P.2d 1188, 1197 (Utah 1993) (purchasers who purchased property from judgment debtor's wife were bona fide purchasers whose interests in property were not affected by judgment creditor's execution on property; no liens of record existed against wife at time of purchase and there was no evidence purchasers had notice of creditors' judgment lien when they purchased property).

Because Alum Rock's judgment Lien was not indexed to the Property, the Mulligans had no constructive notice of its existence. *See, e.g., In re Hiseman*, 330 B.R. 251, 254 and n. 6 (Bankr. D. Utah 2005) ("Thus, in this case, a bona fide purchaser of the Debtors' property may be able to void Chase's Trust Deed because Chase's error caused the Recorder to fail to index the Trust Deed with the Debtors' property in the Tract Index"). Further, the *Hiseman* court expressly rejected the argument that searching elsewhere would have provided such notice:

> Chase also argues that because Title 17 of the Utah Code requires the county recorder to maintain a Grantor/Grantee Index, the Trustee should have looked there too. That argument fails, however, because constructive notice is defined by Title 57, not by Title 17,[18] [§ 57-3-102(1) (2003)] and because recording under Title 57 is different from indexing under Title 17.

*Id.* at 257; *see also Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1228–30 (10th Cir. 2021) (erroneous indexing results in lack of constructive notice: "it defies reason to

assert that subsequent purchasers should have an obligation, no less the ability, to find an unknown instrument lodged in thousands of volumes of records, when it is not properly indexed in the first place. 14 Powell on Real Property § 82.03 (2020) …Real property purchasers … cannot be charged with constructive notice of documents they cannot locate.").

In addition, the Trust document itself was not recorded, and no other document was recorded that disclosed any claim to the Property that set forth the Trust's beneficiaries' names, specified the beneficiaries' interest on which the claim was based, and described the Property as being subject to any such interest. Utah Code 57-3-102(4) states, in pertinent part: "The fact that a recorded document … names the grantee as trustee, or otherwise purports to be in trust without naming beneficiaries or stating the terms of the trust does not charge any third person with notice of any interest of the grantor or of the interest of any other person not named in the document." Utah Code 57-3-102(4) thus dictates that the Mulligans were not charged with any notice of any individual contribution interests of Brett H. Del Valle and Traci M. Del Valle, in their respective individual and personal capacities, in the Property to which the Alum Rock Lien could attach.

Utah Code 57-3-102(5) further states: "The grantee in a recorded document may convey the interest granted to him free and clear of all claims not disclosed in the document in which he appears as grantee or in any other document recorded in accordance with this title that sets forth the names of the beneficiaries, specifies the interest claimed, and describes the real property subject to the interest."  The Warranty Deed that conveyed the Property from the Trust to the Mulligans did not disclose any such claims or information – thus it expressly imparted notice to Mulligans, grantees, that the Co-Trustees of the Trust could and did convey the Property to them "free and clear" of all claims not disclosed therein, and "free and clear" of all unrecorded equitable

14

interests in the Property held or claimed by anyone, including Alum Rock, whose interest was not disclosed in any other recorded document that sets forth the names of the beneficiaries, specifies the interest claimed by Alum Rock, and describes the real property subject to the interest.

Thus, there is a substantial likelihood that Plaintiffs will prevail on their declaratory judgment claims for Bona Fide Purchasers and No Constructive Notice; their Motion should therefore be granted.

**Element No. 2: There is a likelihood that Mulligans will suffer irreparable harm in the absence of preliminary relief.**

The Property is the Mulligans' home. Each parcel of "[r]eal estate has always been regarded as unique because no two parcels can be exactly alike." *Utah Dept. of Transp. v. Jones*, 694 P.2d 1031, 1036. Should this Court allow a sale of the Property to proceed without granting Plaintiffs a full and fair opportunity to assert and prove their claims, Plaintiffs will be irreparably harmed. The Mulligans will have lost their home and irreplaceable property along with their purchase money proceeds, including all amounts paid thereunder to date—and the amounts that Mulligans paid in satisfaction of various liens and encumbrances, including the Trust's First Position and Second Position Trust Deeds, the Property Tax Lien and the HOA Lien – in at least the amount of $1,708,583.81. Furthermore, Plaintiffs are innocent parties, bona fide purchasers, without any notice, constructive or otherwise, of any claims made by Alum Rock and should not be prevented from having their claims adjudicated in this action prior to any sale by Alum Rock.

Thus, since Plaintiffs would be irreparably harmed otherwise, this Court should issue a preliminary injunction barring Defendant Alum Rock from proceeding with any sale of the Property pending the outcome of this action.

**Element No. 3**: **The balance of equities tips in the Mulligans' favor.**

Defendant Alum Rock will suffer no harm by the granting of Plaintiffs' Motion for a preliminary injunction, since if Mulligans' claims and legal theories prove true, then Alum Rock is not entitled to sell the Property at all. But absent any injunction preventing Alum Rock from executing upon its judgment lien and/or Writ of Execution before this action is concluded, the Mulligans will be irreparably harmed and injured, including since they will *lose* their irreplicable residential property and be *evicted* therefrom, and their funds used to pay off the prior liens, trust deeds and encumbrances in connection with their purchase of the Property – all as set forth in the discussion of Element No. 2 above. Further, even if Alum Rock ultimately prevails in this action, as a judgment creditor of debtor Brett, it will only be *delayed* in the execution of its judgment lien. Thus, the balance of equities tips in the Mulligans' favor absent any actual harm to Alum Rock.

**Element No. 4**: **The injunction is in the public interest.**

The public has no interest, whatsoever, in permitting unlawful and illegal sale of real property to occur – much less the sale of the home and residence of bona fide purchasers without any notice, constructive or otherwise, of any claims that a judgment creditor (Alum Rock) had against a prior non-owner of the Property (Brett), which judgment lien did not appear in any title search or record of the Property itself prior to the Mulligans' purchase. Had the Mulligans had any notice, constructive or otherwise, of Alum Rock's claimed interest in the Property they would not have paid off the prior liens, trust deeds, and encumbrances against the Property.

Issuing a preliminary injunction would further the public interest in allowing claims, like the ones brought herein, to be fully and fairly adjudicated before the property that is subject to

those claims is sold and placed out of reach of Plaintiffs and homeowners, like the Mulligans. It can only be in the public interest to stop judgment creditor Alum Rock from selling the Mulligans' Property pending the outcome of this action and the adjudication of Mulligans' claims and causes of action pled herein.

A sale of the Property pursuant to Alum Rock's Writ prior to a ruling by this Court on Mulligans' claims, including for Quiet Title, Equitable Subordination, Equitable Subrogation, Declaratory Judgment of No Constructive Notice and that Mulligans are Bona Fide Purchasers without notice of Alum Rock's judgment lien, would actually be contrary to the public interest, while the granting of an injunction would further the public's interest in protecting homeowners real property rights, particularly for purchasers without notice of any judgment creditors' claims against a debtor who was never in title to the Property in the first instance <u>and whose adverse interest could not be discovered in the chain of title</u>.

Additionally, allowing a sale to proceed in the absence of any ruling on these claims would result in material chilling of any bidding due to substantial uncertainty that the sale would even be valid or effective to convey any interest in the Property to the successful bidder. Nobody would know whether or how to bid to protect their respective interests, which would still be left for this Court to have to decide after any such sale. Moreover, any sale held before a ruling by this Court as to the claims Plaintiffs have asserted, would itself be subject to challenge and additional litigation. <u>And</u> the Mulligans would be ejected from their real property.

The requested preliminary injunction therefore is actually in the public interest because it does not upset Plaintiffs ownership while substantial issues are pending and because it will allow Mulligans and any potential third-party bidders to know exactly what, if any, interest is being

sold, so they can make appropriate and informed decisions of whether, how, and what to bid, secure in the knowledge they will not be buying into uncertain litigation. Public policy is to maximize the price obtained for property at a sheriff's sale. That cannot be accomplished when the sale is chilled for lack of certainty as to the outcome of this case.

## II.    THE COURT SHOULD NOT REQUIRE A BOND IN THIS CASE

Under Rule 65(c), F.R.Civ.P., 28 U.S.C.A., "the trial judge has wide discretion in the matter of requiring security and if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary." *Cont'l Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 782 (10th Cir. 1964). Defendant Alum Rock will not incur any harm as a result of the requested preliminary injunction in this case. Even if Alum Rock ultimately prevailed, then it will only have been *delayed* in the execution of its judgment Lien and by then the Property may have increased in value. Therefore, the Court need not and should not require a bond. Alum Rock will only be stopped from proceeding with a sale – none of its claimed interest in the Property by way of the its judgment lien will be affected by the preliminary injunction, and it will have the opportunity to respond to Plaintiffs Mulligans' claims in this lawsuit.

This is not a situation where Mulligans could abscond with the Property thus harming Alum Rock's security. Furthermore, this Court's issuance of a preliminary injunction is the appropriate action given Mulligans' claims and likelihood of success, as discussed above. If Mulligans ultimately prevail in their claims, then the requested preliminary injunction *a fortiori* will have been proper. Alternatively, even if judgment creditor Alum Rock ultimately prevails in this case it already has a judgment lien. Either way, Alum Rock will suffer no harm, and no additional security should be required.

Furthermore, if Alum Rock was allowed to sell the Property it would not be marketable by them until the entry of a final ruling by this Court on Mulligans' claims. Mulligans' *Lis Pendens* recorded on the title to the Property gives <u>specific notice</u> of the pendency of this lawsuit and all of their claims asserted herein. The Property is therefore unmarketable until this case is resolved. No bond, therefore, is necessary or should be required in this case.

<u>**CONCLUSION**</u>

The Mulligans meet every element necessary for this Court to grant their Motion and to issue a preliminary injunction. Mulligans therefore respectfully request the Court to issue a preliminary injunction barring Defendant Alum Rock from holding any sale and/or from attempting to otherwise foreclose under or pursuant to the Alum Rock judgment lien or its Writ pending the conclusion of this action. A proposed Order is attached as "**Exhibit 2**" to this Motion.

DATED February 13, 2025

CANFIELD LAW LLC

*/s/ Felicia B. Canfield*
Felicia B. Canfield
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on February 13, 2025 I caused true and correct copies of the foregoing **MOTION OF PLAINTIFFS FOR ISSUANCE OF A PRELIMINARY INJUNCTION and MEMORANDUM IN SUPPORT** to be served in the manner indicated below to the following-listed parties at their respective addresses listed below:

| | |
|---|---|
| Benjamin D. Johnson<br>KC Hooker<br>BENNETT TUELLER JOHNSON & DEERE<br>3165 East Millrock Drive, Suite 500<br>Salt Lake City, UT 84121<br>ben.johnson@btjd.com<br>kchooker@btjd.com<br>*Attorneys for Defendant Alum Rock Riverside, LLC* | _____Hand Delivery<br>_____First Class, United States Mail,<br>Postage Prepaid<br>_____E-filing via GreenFiling<br>\_\_X\_\_E-filing via CM/ECF<br>_____Email<br>_____Other: _____ |
| Bradley L. Tilt<br>FREEMAN LOVELL, PLLC<br>4568 S Highland Drive, Suite 290<br>Salt Lake City, Utah 84117<br>office: 385-355-4826<br>bradley.tilt@freemanlovell.com<br>*Attorneys for Plaintiffs* | _____Hand Delivery<br>_____First Class, United States Mail,<br>Postage Prepaid<br>_____E-filing via GreenFiling<br>\_\_X\_\_E-filing via CM/ECF<br>_____Email<br>_____Other: _____ |

*/s/ Felicia B. Canfield*