Benjamin D. Johnson (10275)
KC Hooker (18018)
BENNETT TUELLER JOHNSON & DEERE
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Email: ben.johnson@btjd.com;
kchooker@btjd.com
*Attorneys for Defendant Alum Rock Riverside, LLC*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| MOLLY J. MULLIGAN; and JOHN P. MULLIGAN,<br><br>   Plaintiffs,<br><br>v.<br><br>ALUM ROCK RIVERSIDE, LLC, a California limited liability company; BRETT H. DEL VALLE and TRACI M. DEL VALLE as Co-Trustees of the Del Valle Family Trust dated October 30, 2002,<br><br>   Defendants. | **MOTION TO DISMISS**<br><br>Case No. 1:25-cv-00008-DAK<br><br>Judge Dale A. Kimball |

Defendant Alum Rock Riverside, LLC ("***Alum Rock***"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, files this Motion to Dismiss Plaintiffs Molly J. Mulligan and John P. Mulligan's Claims (the "***Motion***").

## **RELIEF SOUGHT AND GROUNDS**

This lawsuit represents the Mulligans' *third attempt* to delay enforcement of a writ of execution that has been upheld by the Utah Supreme Court. In November 2020, Alum Rock

domesticated a multi-million-dollar judgment against Brett Del Valle ("*Del Valle*") in Utah's Third Judicial District Court. Alum Rock then recorded the judgment in the Weber County Recorder's office, which became a lien on Del Valle's property located at 1453 South Basinview Road in Huntsville, Utah (the "*Property*"). Several months after Alum Rock recorded its judgment, Del Valle sold the Property to the Mulligans. Alum Rock then applied for a writ of execution, which Judge Mow in Utah's Third Judicial District Court granted. A years-long legal battle then ensued, which culminated in the Utah Supreme Court affirming Alum Rock's lien rights and upholding the writ of execution.

Only a week after losing their appeal, the Mulligans attempted to challenge the writ of execution a second time in a case pending before Judge Hyde in Utah's Second Judicial District Court. But when Judge Hyde issued a ruling that the Mulligans didn't like, they filed this current lawsuit instead and asserted the same claims. It is clear that the Mulligans are seeking to collaterally attack valid judgments from other courts and are forum shopping in the hopes of obtaining a favorable decision maker.

This Court should reject the Mulligans' attempts to endlessly drag out this dispute and litigate defenses that should have been raised in earlier proceedings. The Court should dismiss the Mulligans' claims for three independent reasons. First, the Mulligans' new claims are barred by claim preclusion. Second, each of the Mulligans' new claims represent an impermissible collateral attack on the Utah Supreme Court's decision. And third, this Court should decline to exercise jurisdiction over the Mulligans' claim for injunctive relief so as not to interfere with the proceedings pending before Judge Mow in Utah's Third Judicial District Court.

Legal disputes should be adjudicated only once. The Mulligans believe legal disputes should be litigated until they win. The Court should reject the Mulligans' delay tactics and endless court filings and dismiss their claims.

## RELEVANT FACTS

### *Alum Rock Obtains a Writ of Execution*

1. Several years ago, Alum Rock sued Brett Del Valle ("**Del Valle**") in California Superior Court for various claims. Alum Rock prevailed in that suit, and in June 2020, the California court entered a multi-million-dollar judgment. *See* Ruling and Order on Mulligans' Reply to Writ of Execution, attached as **Exhibit 1**; *Mulligan v. Alum Rock Riverside LLC*, 2024 UT 22, attached as **Exhibit 2**.[1]

2. Alum Rock domesticated the judgment in the Third District Court on October 23, 2020 and recorded it in the Weber County Recorder's office on November 16, 2020. *See id.*; *see also* Notice of Judgment, attached as **Exhibit 3**.[2]

---

[1] Alum Rock's primary argument in this Motion is that the Mulligans' claims are barred under the claim preclusion doctrine. While it is generally true that a court cannot consider matters outside the pleadings without converting a motion to dismiss into a motion for summary judgment, *see* Fed R. Civ. P. 12(d), an exception applies to a court's "files and records." *See Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (noting that a court may "take judicial notice of its own files and records, as well as facts which are a matter of public record, without converting a motion to dismiss into a motion for summary judgment" (cleaned up)). The Tenth Circuit has noted that "courts frequently take judicial notice of prior judicial acts found in records and files when evaluating the merits of a purported claim-preclusion defense." *Id.* Because the claim preclusion doctrine is meant to prevent litigants from getting "a second bite at the apple," it makes sense for a court to consider public court filings on a motion to dismiss to quickly dispose of claims. *Daz Mgmt., LLC v. Honnen Equipment Co.*, 2022 UT 15, ¶ 66, 508 P.3d 84. Accordingly, pursuant to Rule 201 of the Federal Rules of Evidence, Alum Rock asks the Court to take judicial notice of the public court filings attached to this Motion.

[2] Because Alum Rock recorded the Notice of Judgment in the Weber County Recorder's Office, it is a matter of public record. Alum Rock accordingly asks the Court to take judicial notice of its existence and contents. *See* Fed. R. Evid. 201; *see also Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d

3

3.     Proceedings relating to the judgment are currently pending before Judge Mow in Utah's Third Judicial District Court as Case No. 206927043 (the "***First Lawsuit***").

4.     On May 11, 2021 (after Alum Rock recorded the judgment), Del Valle transferred the Property the Mulligans. *See id.*; *see also* Complaint ¶ 12.

5.     In June 2021, Alum Rock applied for and obtained a writ of execution for the Property. *See* Writ of Execution, attached as **Exhibit 4**.

6.     A few weeks later, the Mulligans filed a reply to the writ of execution (the "***Reply***"). In that Reply, the Mulligans argued that (1) a writ was not available because Del Valle owned the Property through his trust (the "***Trust***"), not in his individual capacity, and (2) Alum Rock had no judgment lien because it did not file the judgment in the registry of judgments. *See* Reply to Writ of Execution, attached as **Exhibit 5**.

7.     Importantly, the Reply contained a section where the Mulligans were required to list all reasons why "the Writ of Execution was issued improperly." *See id.*

8.     In September 2021—two months after filing the Reply—the Mulligans filed a lawsuit against Single Box, L.P. ("***Single Box***"), an alleged judgment lien creditor who filed a judgment lien on the Property, arguing that the alleged lien was invalid because (1) Del Valle never owned the property in an individual capacity and (2) the Mulligans' interests were superior to the judgment creditor's lien under the doctrines of equitable subordination/subrogation (the "***Second Lawsuit***"). *See* Complaint (Case No. 210904774), attached as **Exhibit 6**.

---

560, 568 (10th Cir. 2000) ("We note, however, that the court is permitted to take judicial notice of . . . facts which are a matter of public record.").

4

9. Nearly a year after filing the Second Lawsuit, Judge Mow in the First Lawsuit asked Alum Rock and the Mulligans to file supplemental briefs on the validity of Alum Rock's lien and the writ of execution. *See* Minutes from Scheduling Conference, Docket No. 28 (Case No. 206927043), attached as **Exhibit 7**.

10. In the Mulligans' supplemental brief, they added a new argument that the Third District Court did not have authority to issue a writ for property located outside the district. The Mulligans did not include any of the defenses they raise in this lawsuit. *See* Mulligan's Supplemental Brief, attached as **Exhibit 8**.

11. After considering supplemental briefing, Judge Mow issued a 10-page order rejecting each of the Mulligans' arguments. Specifically, Judge Mow held that (1) Alum's Rock's "judgment is a valid lien on the Property" and (2) the "Property . . . was subject to execution under rule 64E." *See* Ruling and Order at 2, 10, Exhibit 1.

### The Utah Supreme Court Upholds the Writ of Execution

12. On July 17, 2024, the Utah Supreme Court issued an opinion and affirmed Judge Mow in all respects. Specifically, the Court held that (1) Alum Rock had a valid judgment lien on the Property and (2) the writ of execution was properly issued and is enforceable. *See* Exhibit 2.

13. Undeterred, on August 1, 2024, the Mulligans filed a petition for reconsideration that essentially reiterated the arguments the Utah Supreme Court had already rejected. The Court denied the petition for rehearing on August 21, without asking Alum Rock to respond. *See* Petition for Rehearing, attached as **Exhibit 9**; *see also* Denial of Petition for Rehearing, attached as **Exhibit 10**.

### *After Losing the Appeal, the Mulligans Attempt to Add Alum Rock to a Second Lawsuit*

14. On August 27—less than a week after the Utah Supreme Court denied the petition for rehearing—the Mulligans filed a motion to supplement their complaint in the Second Lawsuit against Single Box (the "***Motion to Amend***"). *See* Motion to Amend, Case No. 210904774, Docket No. 184, attached as **Exhibit 11**.

15. In the Motion to Amend, the Mulligans asked Judge Hyde from the Second District for permission to add Alum Rock as a party and challenge the writ of execution (in addition to challenging Single Box's alleged lien). *See* Declaration of Felicia Canfield (Exhibit 7), Case No. 210904774, Docket No. 185, attached as **Exhibit 12**.

16. The claims the Mulligans sought to assert against Alum Rock in the Second Lawsuit are identical to this lawsuit—just in a different order:

| **Second Lawsuit** | | **Current Lawsuit** | |
|---|---|---|---|
| First Cause of Action | Quiet Title | First Cause of Action | Quiet Title |
| Second Cause of Action | Equitable Subordination | Second Cause of Action | Equitable Subordination |
| Third Cause of Action | Equitable Subrogation | Third Cause of Action | Equitable Subrogation |
| Sixth Cause of Action | Bona Fide Purchasers | Fifth Cause of Action | Bona Fide Purchasers |
| Seventh Cause of Action | No Constructive Notice | Fourth Cause of Action | No Constructive Notice |
| Fifth Cause of Action | Injunctive Relief | Seventh Cause of Action | Injunctive Relief |

17. Alum Rock intervened in the Second Lawsuit and opposed the Mulligans' Motion to Amend. *See* Order Granting Motion to Intervene, Case No. 210904774, Docket

6

No. 210, attached as **Exhibit 13**; Opposition to Motion to Amend, Case No. 210904774, Docket No. 198, attached as **Exhibit 14.**

18. Judge Hyde held a hearing on the Motion to Amend on November 26, 2024. *See* Notice of In-Person Oral Argument, Case No. 210904774, Docket No. 212, attached as **Exhibit 15**.

19. Rather than follow through on their motion, the Mulligans withdrew the Motion to Amend and filed this identical lawsuit instead. *See* Notice of Withdrawal of Motion to Amend, Case No. 210904774, Docket No. 219, attached as **Exhibit 16**.

## ARGUMENT

On a 12(b)(6) motion to dismiss, courts "accept as true all well-pleaded factual allegations in the complaint." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017). However, the complaint must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The "requirement of plausibility serves . . . to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). To avoid dismissal, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## I.    The Mulligans Claims are Barred by Claim Preclusion.

Because the Court is considering the preclusive effect of Utah state court proceedings, the Court should apply Utah claim preclusion law. *See Razo v. Jefferson Capitalsystems LLC*, Case No. 2:23-CV-183-DAK-CMR, 2024 WL 4519174, *4 (D. Utah Oct. 17, 2024) ("Federal courts apply the underlying state law in a claim preclusion analysis because in determining whether a state court judgment precludes a subsequent action in federal court, courts must afford the state judgment full faith and credit, giving it the same preclusive effect as would the courts of the state issuing the judgment.") (cleaned up).

"The doctrine of res judicata embraces two distinct branches: claim preclusion and issue preclusion. Claim preclusion corresponds to causes of action; issue preclusion corresponds to the facts and issues underlying causes of action." *Mack v. Utah State Dep't of Com., Div. of Sec.*, 2009 UT 47, ¶ 29, 221 P.3d 194 (cleaned up). An important purpose of claim preclusion is to "prevent litigants from getting a second bite at the apple." *Daz Mgmt., LLC v. Honnen Equip. Co.*, 2022 UT 15, ¶ 46, 508 P.3d 84. Claim preclusion has three elements: "[f]irst, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits." *Mack*, 2009 UT 47, ¶ 29 (quoting *Snyder v. Murray City Corp.*, 2003 UT 13, ¶ 34, 73 P.3d 325).

Because Alum Rock and the Mulligans were parties to, and participated fully in, the First Lawsuit, the first element is satisfied. And because the Mulligans could have and should

8

have raised their new defenses in the First Lawsuit and ultimately litigated that case to a final judgment, their new claims are barred by claim preclusion.

> a) *The Mulligans Could Have and Should Have Raised Their Claims in the First Proceeding.*

Claim preclusion bars not only claims that were adjudicated in a prior dispute, it also bars claims that should have been raised, but were not. "The Utah Supreme Court has fully embraced the Restatement's transactional test for analyzing whether the claims in two cases are the same under the second requirement of the claim preclusion branch of res judicata." *Van Leeuwen v. Bank of Am. NA*, 2016 UT App 212, ¶ 9, 387 P.3d 521 (cleaned up). This same test applies "[i]n determining whether a claim should have been brought in the first action." *Daz Mgmt.*, 2022 UT 15, ¶ 57. "Under the transactional test, the claims are the same if they arise from the same operative facts, or in other words from the same transaction." *Gillmor v. Fam. Link, LLC*, 2012 UT 38, ¶ 12, 284 P.3d 622 (cleaned up). "There are a variety of considerations in the transactional test because, rather than resting on the specific legal theory invoked, claim preclusion generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims." *Van Leeuwen*, 2016 UT App 212, ¶ 9 (cleaned up). These considerations include "whether the facts are related in time, space, origin, or motivation." *Gillmor,* 2012 UT 38, ¶ 14. In sum, if a new claim arises from the same transaction as a prior lawsuit, then the plaintiff is barred from asserting the new claim in a subsequent lawsuit.

In this case, the "underlying events" that gave rise to the First Lawsuit are (1) Alum Rock's judgment against Del Valle; (2) Alum Rock's domestication of that judgment in Utah; (3) Alum Rock's lien on the Property; (4) Del Valle's transfer of the Property to the Mulligans;

9

and (5) Alum Rock's writ of execution. *See Van Leeuwen*, 2016 UT App 212, ¶ 9. These same events form the basis of the Mulligans' new claims and defenses, and it appears that the Mulligans are simply attempting to delay Alum Rock's right to execute on the Property (for the third time). Alum Rock addresses each of the Mulligans' new claims in turn:

    1.    <u>Declaratory Judgment and Quiet Title (First Cause of Action)</u>: This claim seeks a declaration that Alum Rock's lien only attaches to that portion of the Property stemming from Del Valle's contribution and that Alum Rock must prove what that contribution was. This claim arises from the same transaction as the First Lawsuit—Alum Rock's judgment lien and Del Valle's transfer of the Property to the Mulligans. The Mulligans could have and should have raised this claim in the First Lawsuit.

    2.    <u>Equitable Subordination (Second Cause of Action) and Equitable Subrogation (Third Cause of Action)</u>: The Mulligans claim that because they allegedly paid off senior liens when they purchased the Property, they can claim a priority position over Alum Rock's lien. Again, this claim is based on the same set of events as the First Lawsuit, i.e., the Mulligan's purchase of the Property from Del Valle and Alum Rock's judgment lien. There is no reason why the Mulligans could not have brought this defense in the First Lawsuit. What's more, by the time the parties engaged in supplemental briefing in the First Lawsuit, the Mulligans had already asserted claims of equitable subordination and equitable subrogation against Single Box. The fact that the Mulligans had already asserted these claims against Single Box means that they were fully aware that they could have asserted the claims against Alum Rock as well. The Mulligans simply chose to withhold this defense and only assert it if they lost their appeal. And based on the Mulligans' reaction to Judge Hyde's decision in the Second

Lawsuit, the Mulligans apparently plan to refile their claims and try their luck with a different judge any time they receive an adverse ruling.

      3.    <u>No Constructive Notice (Fourth Cause of Action) and Bona Fide Purchasers (Fifth Cause of Action)</u>: The Mulligans claim that because they were bona fide purchasers with no constructive notice, they took the Property without any encumbrances they didn't know about. This claim is based on the same events as the First Lawsuit—Alum Rock's judgment lien and the Mulligans' purchase of the Property from Del Valle. If the Mulligans really are bona fide purchasers with no constructive notice, they were as much so three years ago as they are now. The Mulligans could have and should have asserted this claim earlier, and they are barred from doing so now.

"Claim preclusion is premised on the principle that a controversy should be adjudicated only once." *Nelson v. Nelson*, 2023 UT App 38, ¶ 30, 529 P.3d 370 (cleaned up). This lawsuit is the Mulligans' *third attempt* to litigate the writ of execution, and they seem intent on endlessly dragging out this dispute by filing successive lawsuits. Because the Mulligans could have and should have brought each of their claims in the First Lawsuit, the claims are barred.

      b)    <u>The First Proceedings Resulted in a Final Judgment on the Merits.</u>

"A judgment is upon the merits when it amounts to a declaration of the law as to the respective rights and duties of the parties based on facts and evidence upon which the rights of recovery depend, irrespective of formal, technical, or dilatory objections or contentions." *Peterson v. Armstrong*, 2014 UT App 247, ¶ 14, 337 P.3d 1058 (cleaned up). "To be on the merits, a judgment does not have to proceed to trial. Rather, a judgment on the merits may

11

be made at any stage of the litigation, so long as the judgment rendered is based upon a proper application of the relevant law to the facts of the case." *State v. Sommerville*, 2013 UT App 40, ¶ 32, 297 P.3d 665. Under the Utah Rules of Civil Procedure, the definition of "judgment" is broad and includes "a decree or order that adjudicates all claims and the rights and liabilities of all parties or any other order from which an appeal of right lies." Utah R. Civ. P. 54(a).

Applied here, the issue is (1) whether an order was entered "from which an appeal of right lies" and (2) whether the First Lawsuit resulted in a ruling based on the law and facts of the case. On the first issue, it is clear that Judge Mow's ruling on the writ of execution was an appealable order because the Mulligans, in fact, appealed that decision to the Utah Supreme Court (and lost). And on the second issue, the First Lawsuit was substantively resolved on the merits and resulted in a declaration that Alum's Rock's "judgment is a valid lien on the Property" and that the "Property . . . [is] subject to execution under rule 64E." *See* Ruling and Order at 2, 10, Exhibit 2. Accordingly, the First Lawsuit resulted in a final judgment on the merits and has preclusive effects.[3]

Because all elements of claim preclusion are satisfied, the Mulligans' new claims are barred. The Court should dismiss each of the Mulligans' claims.

---

[3] What's more, many cases have held that res judicata can apply to supplemental proceedings like executions. *See Eckhaus v. Blauner*, No. 94 CIV. 5635(CSH), 1997 WL 362166, *5 (S.D.N.Y. June 26, 1997) ("There is authority for the proposition that supplemental proceedings may lay the foundation for application of res judicata."); *Leslie v. Laprade*, 726 A.2d 1228 (D.C. Ct. App. 1999) (finding that a party could not challenge a writ of execution in a separate action when the party moved to "strike the writ of execution," "was denied that relief," and "took no appeal").

### II. This Lawsuit is an Impermissible Collateral Attack on the Utah Supreme Court's Decision.

The Mulligans' efforts to assert new defenses against Alum Rock also constitute an impermissible collateral attack on the First Lawsuit. "With rare exception, when a court with proper jurisdiction enters a final judgment, that judgment can only be attacked on direct appeal." *Moss v. Parr Waddoups Brown Gee & Loveless*, 2010 UT App 170, ¶ 9, 237 P.3d 899 (cleaned up). In Utah, "[t]he general rule of law is that a judgment may not be drawn in question in a collateral proceeding." *Tolle v. Fenley*, 2006 UT App 78, ¶ 15, 132 P.3d 63. A proceeding is considered a collateral attack when "a judgment is attacked in other ways than by proceedings in the original action to have it vacated or revised or modified or by a proceeding in equity to prevent its enforcement." *Ostler v. Retirement Bd.*, 2017 UT App 96, ¶ 22, 400 P.3d 1099.

In this case, the Mulligans attempt to (1) attack the validity of Alum Rock's judgment lien and (2) prevent enforcement of the writ of execution. But Judge Mow determined that Alum Rock has a valid judgment lien and that the writ of execution is proper. What's more, these conclusions have been upheld by the Utah Supreme Court—the final and definitive arbiter of Utah law. The Mulligans appear determined to collaterally attack and delay the writ of execution by any means necessary. Within a week of losing their appeal, the Mulligans attempted to bring Alum Rock into the Second Lawsuit. And when Judge Hyde made a decision that the Mulligans didn't like, the Mulligans withdrew their motion and decided to try their luck with a new lawsuit. But because a judgment can only be "attacked on direct appeal," the Mulligans are barred from directly or indirectly challenging Judge Mow's or the Utah Supreme Court's decision in this separate proceeding. *Moss*, 2010 UT App 170, ¶ 9.

### III. This Court Should Dismiss the Mulligans' Request for Injunctive Relief.

In addition, the Court should, under principles of comity, dismiss the Mulligans' request for injunctive relief because the requested relief would interfere with valid court orders from Utah's Third Judicial District Court. In other words, because a coordinate and co-equal court already has jurisdiction over this dispute and has decided critical legal issues—decisions that have been upheld by the Utah Supreme Court—this Court has strong reasons to decline jurisdiction. The Mulligans are indisputably (and improperly) forum shopping in the hopes of drawing a more favorable decision-maker, and this Court should not allow them to do so.

Encountering the same kind of litigation tactics the Mulligans have employed, "federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985). This rule is particularly strong when a plaintiff seeks an injunction. *See Bergh v. State of Wash.*, 535 F.2d 505, 507 (9th Cir. 1976) ("When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases."). In other words, when "two federal courts are of coordinate jurisdiction, and their decisions are reviewed by the same Court of Appeals, the issuance of such an injunction is rarely, if ever, justified." *Id.*; *see also Brittingham v. U.S. C.I.R.*, 451 F.2d 315, 318 (5th Cir. 1971) ("[C]omity dictates that courts of coordinate jurisdiction not review, enjoin or otherwise interfere with one another's

14

jurisdiction."); *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981) ("Generally, principles of comity and judicial economy make courts reluctant to exercise jurisdiction over claims involving the orders of coordinate courts."); *Exxon Corp. v. U.S. Dept. of Energy*, 594 F. Supp. 84, 89 (D. Del. 1984) ("[T]his Court is convinced that it should not, based on the notion of comity and the orderly administration of justice, become involved in a phase of this litigation that could seriously interfere with the continuing jurisdiction of a coordinate court.").

In this case, Alum Rock and the Mulligans have been litigating the writ of execution in the Third District for more than three years. And the writ of execution has been confirmed and upheld by the Utah Supreme Court. The writ of execution is an enforceable court order, and any issues relating to that order must be adjudicated in the Third District. What the Mulligans are asking of this Court is nothing short of incredible: they want a federal district court to enjoin enforcement of a state court order that has been upheld on appeal. The Mulligans' request seriously interferes with the Third District's continuing jurisdiction over this dispute and its ability to enforce its own orders. This Court should decline to "trench upon the authority of [a] sister court[]" and rebuke the Mulligans for attempting to cause an internal conflict between this Court and the Third District. *West Gulf Maritime Ass'n*, 751 F.2d 721, 728.

## CONCLUSION

The Mulligans already had their day in court and lost. This Court should dismiss the Mulligans' claims and decline to interfere with the enforcement of a lawful writ of execution that has been upheld by the Utah Supreme Court.

DATED this 20th day of February, 2025.

BENNETT TUELLER JOHNSON & DEERE


/s/  *KC Hooker*
Benjamin D. Johnson
KC Hooker
*Attorneys for Defendant Alum Rock Riverside, LLC*

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February, 2025, I caused a true and correct copy of the foregoing **MOTION TO DISMISS** to be electronically filed with the Court's ECF system and served by the method indicated below to the following:

| | | |
|---|---|---|
| Bradley L. Tilt | (X) | ECF |
| FREEMAN LOVELL, PLLC | ( ) | E-Mailed |
| 4568 S Highland Drive, Suite 290 | ( ) | E-Mail via GreenFiling |
| Salt Lake City, Utah 84117 | ( ) | U.S. Mail, Postage Prepaid |
| bradley.tilt@freemanlovell.com | ( ) | U.S. Mail via GreenFiling |
| *Attorney for Plaintiffs* | ( ) | Certified Mail |

| | | |
|---|---|---|
| Felicia B. Canfield | (X) | ECF |
| CANFIELD LAW LLC | ( ) | E-Mailed |
| 2413 Newton Avenue | ( ) | E-Mail via GreenFiling |
| Cody, WY 82414 | ( ) | U.S. Mail, Postage Prepaid |
| canfieldlawllc@gmail.com | ( ) | U.S. Mail via GreenFiling |
| *Attorneys for Plaintiffs* | ( ) | Certified Mail |

*/s/ Angelica Torres*