Benjamin D. Johnson (10275)
KC Hooker (18018)
BENNETT TUELLER JOHNSON & DEERE
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Email: ben.johnson@btjd.com;
kchooker@btjd.com
*Attorneys for Defendant Alum Rock Riverside, LLC*

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| MOLLY J. MULLIGAN; and JOHN P. MULLIGAN, | **OPPOSITION TO PLAINTIFFS' MOTION FOR ISSUANCE OF A PRELIMINARY INJUNCTION** |
| Plaintiffs, | |
| v. | Case No. 1:25-cv-00008-DAK-CMR |
| ALUM ROCK RIVERSIDE, LLC, a California limited liability company; BRETT H. DEL VALLE and TRACI M. DEL VALLE as Co-Trustees of the Del Valle Family Trust dated October 30, 2002, | Judge Dale A. Kimball |
| Defendants. | |

Defendant Alum Rock Riverside, LLC ("***Alum Rock***"), pursuant to DUCivR 7-1 and Rule 65A of the Federal Rules of Civil Procedure, files this opposition to Plaintiffs Molly J. Mulligan and John P. Mulligan's (collectively, the "***Mulligans***") Motion for Issuance of a Preliminary Injunction (the "***Motion***").

## PREFERRED DISPOSITION AND SUPPORTING GROUNDS

In this lawsuit, the Mulligans are attempting to enjoin a hypothetical sheriff's sale that

has not been scheduled. In November 2020, Alum Rock recorded a multi-million-dollar judgment against Brett Del Valle ("*Del Valle*") in the Weber County Recorder's office. That judgment then became a lien on Del Valle's property located at 1453 South Basinview Road in Huntsville, Utah (the "*Property*"). Several months after Alum Rock recorded its judgment, Del Valle sold the Property to the Mulligans. Alum Rock then applied for a writ of execution, which Judge Mow in Utah's Third Judicial District granted. A legal battle then ensued, which culminated in the Utah Supreme Court affirming Alum Rock's judgment lien rights and upholding the writ of execution issued in Utah's Third Judicial District. Since losing their appeal, the Mulligans have attempted to assert additional defenses against Alum Rock in two separate lawsuits.

The Court should deny the Mulligans' request for a preliminary injunction for six reasons. First, under principles of comity, this Court should decline to enjoin enforcement of an order from Utah's Third Judicial District court. Second, each of the Mulligans' new claims represent an impermissible collateral attack on the Utah Supreme Court's decision. Third, the Mulligans' new claims are barred by claim preclusion and lack merit. Fourth, the Mulligans will not experience irreparable harm because no sheriff's sale for the Property is scheduled. Fifth, if this Court grants an injunction, Alum Rock stands to suffer greater harm than the Mulligans would experience in the absence of an injunction. And sixth, the Mulligans' requested injunction violates the public interest because the Mulligans are attempting to pit this Court against Utah's judicial system.

## OBJECTION TO EVIDENCE

Pursuant to DUCiv 7-1(b)(2), Alum Rock objects to the following factual statements

from the Mulligans' Motion:

**Mulligans' Paragraph No. 6**: "The claimed interests of Defendant Alum Rock in or
to the Property is/are based and premised upon a certain *Notice of Judgment* filed on October
23, 2020 in the Third Judicial District Court, Salt Lake County, which Notice was recorded
in the office and general records of the Weber County Recorder on October 23, 2020 as
Entry No. 3101770, but which was not abstracted to or against the Property (the "**Alum
Rock Lien**"). *See* Canfield Decl., Ex. E; *see also* Ex. D."

**Objection**: Alum Rock objects to Paragraph No. 6 because it misstates the evidence.

Alum Rock recorded the Notice of Judgment on November 16, 2020, not October 23, 2020.

*See* Notice of Judgment, attached as **Exhibit 1**.

**Mulligans' Paragraph No. 7**: "Pursuant to searches by the Mulligans' title company,
no judgments against either Co-Trustee were recorded on the Property; no judgments
against either Co-Trustee appear in any Weber County Recorder abstract or title search of
the Property; and no judgments against either Co-Trustee appear in the searchable court
index where the Property is located, including not during the time leading up to and
including when the Mulligans purchased the Property. *See* Canfield Decl., Ex. D."

**Objection**: Alum Rock objects to Paragraph No. 7 because it misstates the evidence

contained in Exhibit D to Felicia Canfield's declaration. Exhibit D appears to contain

information regarding judgments recorded in the Weber County Recorder's in October

2020. Based on this information, the Mulligans' counsel claims that no recorded judgments

appear against Brett Del Valle "leading up to and including when the Mulligans purchased

the Property." But Exhibit D to Felicia Canfield's declaration provides no support for this

statement for two reasons. First, the Mulligans purchased the Property on May 11, 2021, but

the information in Exhibit D only contains information from October 2020. The Mulligans

cannot claim that because judgments purportedly did not appear in October 2020, they did

not appear seven months later in May 2021. And second, Alum Rock did not record its

Notice of Judgment until November 16, 2020. A judgment search limited to October 2020

would not identify a judgment recorded in November 2020, so the Mulligans' statement that

the judgment did not appear in a title search before they purchased the home in May 2021

has no evidentiary support.

## **RELEVANT FACTS**

### *Alum Rock Obtains a Writ of Execution*

1.    Several years ago, Alum Rock sued Brett Del Valle ("*Del Valle*") in California

Superior Court for various claims. Alum Rock prevailed in that suit, and in June 2020, the

California court entered a multi-million-dollar judgment. *See* Ruling and Order on Mulligans'

Reply to Writ of Execution, attached as **Exhibit 2**; *Mulligan v. Alum Rock Riverside LLC*, 2024

UT 22, attached as **Exhibit 3**.[1]

2.    Alum Rock domesticated the judgment in the Third District Court on

October 23, 2020 and recorded it in the Weber County Recorder's office on November 16,

2020. *See id*.

3.    Proceedings relating to the judgment are currently pending before Judge Mow

in Utah's Third Judicial District Court as Case No. 206927043 (the "*First Lawsuit*").

4.    On May 11, 2021 (after Alum Rock recorded the judgment), Del Valle

transferred the Property the Mulligans. *See id*.

---

[1] Unless otherwise noted, Alum Rock cites to Judge Mow's decision in Case No. 206927043 and the Utah Supreme Court's decision on appeal for the factual and procedural history between Alum Rock and the Mulligans.

5.      The Mulligans' purchase of the Property is covered by a $1.8 million dollar title insurance policy, which covers the risk of a "judgment, state or federal tax lien" on the Property. *See* Title Insurance Policy, attached as **Exhibit 4**.

6.      In June 2021, Alum Rock applied for and obtained a writ of execution for the Property. *See* **Exhibit 5**.

7.      A few weeks later, the Mulligans filed a reply to the writ of execution (the "***Reply***"). In that Reply, the Mulligans argued that (1) a writ was not available because Del Valle owned the Property through his trust (the "***Trust***"), not in his individual capacity, and (2) Alum Rock had no judgment lien because it did not file the judgment in the registry of judgments. *See* Reply to Writ of Execution, attached as **Exhibit 6**.

8.      Importantly, the Reply contained a section where the Mulligans were required to list all reasons why "the Writ of Execution was issued improperly." *See id.*

9.      In September 2021—two months after filing the Reply—the Mulligans filed a lawsuit against Single Box, L.P. ("***Single Box***"), an alleged judgment lien creditor who also has a judgment lien on the Property, arguing that the alleged lien was invalid because (1) Del Valle never owned the property in an individual capacity and (2) the Mulligans' interests were superior to the judgment creditor's lien under the doctrines of equitable subordination/subrogation (the "***Second Lawsuit***"). *See* Complaint (Case No. 210904774), attached as **Exhibit 7**.

10.     In other words, the Mulligans knew about their equitable subordination and equitable subrogation defenses against Alum Rock since at least September 2021.

11.     Nearly a year after filing the Second Lawsuit, Judge Mow in the First Lawsuit asked Alum Rock and the Mulligans to file supplemental briefs on the validity of Alum Rock's lien and the writ of execution. *See* Minutes from Scheduling Conference, Docket No. 28 (Case No. 206927043).

12.     In the Mulligans' supplemental brief, they added a new argument that the Third District Court did not have authority to issue a writ for property located outside the district. But despite the fact that the Mulligans knew about their equitable subrogation/subordination arguments at that time (because they had asserted those claims against Single Box a year earlier), the Mulligans chose not to raise them in their supplemental brief. *See* Mulligan's Supplemental Brief, attached as **Exhibit 8**.

13.     After considering supplemental briefing, Judge Mow issued a 10-page order rejecting each of the Mulligans' arguments. Specifically, Judge Mow held that (1) Alum's Rock's "judgment is a valid lien on the Property" and (2) the "Property . . . was subject to execution under rule 64E." *See* Ruling and Order at 2, 10, Exhibit 2.

### *The Utah Supreme Court Upholds the Judgment Lien and Writ of Execution*

14.     On July 17, 2024, the Utah Supreme Court issued an opinion and affirmed Judge Mow in all respects. Specifically, the Court held that (1) Alum Rock had a valid judgment lien on the Property and (2) the Writ of Execution was properly issued and enforceable. *See* Exhibit 3.

15.     Undeterred, on August 1, 2024, the Mulligans filed a petition for reconsideration that essentially reiterated the arguments the Utah Supreme Court had already rejected. The Court denied the petition for rehearing on August 21, without asking Alum

Rock to respond. *See* Petition for Rehearing, attached as **Exhibit 9**; Denial of Petition for Rehearing, attached as **Exhibit 10**.

### *After Losing the Appeal, the Mulligans Attempt to Add Alum Rock to a Second Lawsuit*

16.    On August 27—less than a week after the Utah Supreme Court denied the petition for rehearing—the Mulligans filed a motion to supplement their complaint in the Second Lawsuit against Single Box (the "***Motion to Amend***"). *See* Case No. 210904774, Docket No. 184, attached as **Exhibit 11**.

17.    In the Motion to Amend, the Mulligans asked Judge Hyde from the Second District for permission to add Alum Rock as a party and challenge the writ of execution (in addition to challenging Single Box's alleged lien). *See* Case No. 210904774, Declaration of Felcia Canfield (Exhibit 7), Docket No. 185, attached as **Exhibit 12**.

18.    The claims the Mulligans sought to assert against Alum Rock in the Second Lawsuit are identical to this lawsuit—just in a different order:

| Second Lawsuit | | Current Lawsuit | |
|---|---|---|---|
| First Cause of Action | Quiet Title | First Cause of Action | Quiet Title |
| Second Cause of Action | Equitable Subordination | Second Cause of Action | Equitable Subordination |
| Third Cause of Action | Equitable Subrogation | Third Cause of Action | Equitable Subrogation |
| Sixth Cause of Action | Bona Fide Purchasers | Fifth Cause of Action | Bona Fide Purchasers |
| Seventh Cause of Action | No Constructive Notice | Fourth Cause of Action | No Constructive Notice |
| Fifth Cause of Action | Injunctive Relief | Seventh Cause of Action | Injunctive Relief |

19.     Alum Rock intervened in the Second Lawsuit and opposed the Mulligans'
Motion to Amend. Judge Hyde held a hearing on the Motion to Amend on November 26,
2024. *See* Order Granting Motion to Intervene, attached as **Exhibit 13**; Opposition to
Motion to Amend, attached as **Exhibit 14**; Notice of In Person Oral Argument, attached as
**Exhibit 15**.

20.     Judge Hyde instructed the Mulligans' counsel to prepare an order reflecting his
oral ruling. Seemingly not pleased with the ruling, rather than follow Judge Hyde's
instructions, the Mulligans withdrew the Motion to Amend and filed this identical lawsuit
instead. *See* Notice of Withdrawal of Motion to Amend, attached as **Exhibit 16**.

### The Del Valle Family Trust

21.     At all relevant times, Del Valle and his wife, Traci M. Del Valle served as Co-
Trustees of The Del Valle Family Trust. *See generally* The Del Valle Family Trust (the "*Trust
Agreement*"), attached as **Exhibit 17**.

22.     Pursuant to the Trust Agreement, transferring property to the Trust estate
would convert the character of that property to community property. *See id.* at 2, § 2.3(a).

23.     Pursuant to the Trust, either Trustee had the power to "convey, encumber or
otherwise dispose of community, real and personal property held [in the Trust] without the
consent of or prior notice to either husband or wife." *See id.* at 2–3, § 2.3(b).

### Alum Rock Cancels a Scheduled Execution Sale

24.     A sheriff's sale for the Property was scheduled to occur on January 21, 2025.
The Weber County Sheriff's Office, at the direction of Alum Rock, cancelled that sale, and
no execution sale is pending. *See* January 17, 2025 Email, attached as **Exhibit 18**.

## **ARGUMENT**

To be entitled to a preliminary injunction, "[a] movant must show that the follow four factors weigh in his favor:" "(1) he is substantially likely to succeed on the merits; (2) he will suffer irreparable injury if the injunction is denied; (3) his threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Brooks v. Colorado Dept. of Corrections*, 730 Fed. Appx. 628, 630 (10th Cir. 2018) (cleaned up). "[A] preliminary injunction is an extraordinary remedy that is granted only when the movant's right to relief is clear and unequivocal." *First Western Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1145 (10th Cir. 2017) (cleaned up). Therefore, "a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004).

The Mulligans do not even come close to satisfying any of these elements. The Court should accordingly deny the Motion.[2]

---

[2] Though the Mulligans do not develop the argument, they claim that the "Complaint raises serious questions about their real property rights that need to be the subject of a litigated action." *See* Motion at 9. It is true that in the past, the 10th Circuit has allowed a movant to rely on the "serious questions" test "if the movant has satisfied the last three requirements for a preliminary injunction." *New Mexico Dept. of Game & Fish v. U.S. Dept. of the Interior*, 854 F.3d 1236, 1246 (10th Cir. 2017). But the Tenth Circuit has emphasized that "[a]lthough we have applied this modified approach in the past, our recent decisions admonish that it is not available after the Supreme Court's ruling in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)." *Id.* Accordingly, the Mulligans must demonstrate a substantial likelihood of prevailing on the merits—they cannot rely on a "modified" standard based on a "serious questions" analysis.

I.    **The Mulligans Improperly Ask the Court to Interfere with a Pending Case.**

At the outset, the Court should deny the Motion because the Mulligans' new lawsuit suffers from two significant procedural defects. First, this dispute is already pending before Judge Mow in Utah's Third Judicial District, and this Court has strong grounds to decline jurisdiction over the Mulligans' claim for injunctive relief. And second, this lawsuit represents an impermissible collateral attack on the First Lawsuit and the Utah Supreme Court's decision. The Court can, and should, deny the Motion on these grounds alone.

a.    <u>This Court Should Not Enjoin Enforcement of the Third District's Writ of Execution.</u>

The Court should summarily deny the Motion because this dispute is already pending before Judge Mow in the Third District. In other words, because a coordinate and co-equal court already has jurisdiction over this dispute and has decided critical legal issues— decisions that have been upheld by the Utah Supreme Court—this Court has strong reasons to decline jurisdiction. The Mulligans are indisputably (and improperly) forum shopping in the hopes of drawing a more favorable decision-maker, and this Court should not allow them to do so.

Encountering the same kind of litigation tactics the Mulligans have employed, "federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985). This rule is particularly strong when a plaintiff seeks an injunction. *See Bergh v. State of Wash.*, 535 F.2d 505, 507 (9th Cir. 1976) ("When an injunction

sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases."). In other words, when "two federal courts are of coordinate jurisdiction, and their decisions are reviewed by the same Court of Appeals, the issuance of such an injunction is rarely, if ever, justified." *Id.*; *see also Brittingham v. U.S. C.I.R.*, 451 F.2d 315, 318 (5th Cir. 1971) ("[C]omity dictates that courts of coordinate jurisdiction not review, enjoin or otherwise interfere with one another's jurisdiction."); *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981) ("Generally, principles of comity and judicial economy make courts reluctant to exercise jurisdiction over claims involving the orders of coordinate courts."); *Exxon Corp. v. U.S. Dept. of Energy*, 594 F. Supp. 84, 89 (D. Del. 1984) ("[T]his Court is convinced that it should not, based on the notion of comity and the orderly administration of justice, become involved in a phase of this litigation that could seriously interfere with the continuing jurisdiction of a coordinate court.").

In this case, Alum Rock and the Mulligans have been litigating the Writ of Execution in the Third District for more than three years. And the Writ of Execution has been confirmed and upheld by the Utah Supreme Court. The Writ of Execution is an enforceable court order, and any issues relating to that order must be adjudicated in the Third District. What the Mulligans are asking of this Court is nothing short of incredible: they want a judge in Utah's Federal District Court to enjoin enforcement of an order from the Utah's Third Judicial District Court. The Mulligans' request seriously interferes with the Third District's continuing jurisdiction over this dispute and its ability to enforce its own orders. This Court should decline to "trench upon the authority of [a] sister court[]" and rebuke the Mulligans

for attempting to cause an internal conflict between this Court and the Third District. *West Gulf Maritime Ass'n*, 751 F.2d 721, 728.

      b.  <u>This Lawsuit is an Impermissible Collateral Attack on the Utah Supreme Court's Decision.</u>

The Mulligans' efforts to assert new defenses against Alum Rock also constitute an impermissible collateral attack on the First Lawsuit. "With rare exception, when a court with proper jurisdiction enters a final judgment, that judgment can only be attacked on direct appeal." *Moss v. Parr Waddoups Brown Gee & Loveless*, 2010 UT App 170, ¶ 9, 237 P.3d 899 (cleaned up). In Utah, "[t]he general rule of law is that a judgment may not be drawn in question in a collateral proceeding." *Tolle v. Fenley*, 2006 UT App 78, ¶ 15, 132 P.3d 63. A proceeding is considered a collateral attack when "a judgment is attacked in other ways than by proceedings in the original action to have it vacated or revised or modified or by a proceeding in equity to prevent its enforcement." *Ostler v. Retirement Bd.*, 2017 UT App 96, ¶ 22, 400 P.3d 1099.

In this case, the Mulligans attempt to (1) attack the validity of Alum Rock's judgment lien and (2) prevent enforcement of the writ of execution. But Judge Mow determined that Alum Rock has a valid judgment lien and that the writ of execution is proper. What's more, these conclusions have been upheld by the Utah Supreme Court—the final and definitive arbiter of Utah law. The Mulligans appear determined to collaterally attack and delay the writ of execution by any means necessary. Within a week of losing their appeal, the Mulligans attempted to bring Alum Rock into the Second Lawsuit. And when Judge Hyde made a decision that the Mulligans didn't like, the Mulligans withdrew their motion and decided to try their luck with a new lawsuit. But because a judgment can only be "attacked on direct

appeal," the Mulligans are barred from directly or indirectly challenging Judge Mow's or the Utah Supreme Court's decision in this separate proceeding. *Moss*, 2010 UT App 170, ¶ 9.

## II.    The Mulligans Face No Irreparable Harm.

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (cleaned up). In other words, a preliminary injunction cannot be "based only on a possibility of irreparable harm." *New Mexico Dept. of Game & Fish*, 854 F.3d at 1253. At the outset, the Mulligans' claim of irreparable harm is theoretical and speculative because no execution sale is scheduled, and the Mulligans have presented no evidence that a sale is imminent. In fact, the Weber County Sheriff's Office cancelled a scheduled execution sale more than a month ago. Federal courts have held that when the occurrence of a future foreclosure sale is speculative, a party is not entitled to a preliminary injunction. *See, e.g.*, *Rubacky v. Morgan Stanley Dean Witter Credit Corp.*, 104 Fed. Appx. 757, 758 (1st Cir. 2024) (denying request for preliminary injunction because "[a]lthough plaintiff's motion . . . sought to enjoin any future foreclosure sale, there [was] no evidence that any future sale has been or will be scheduled before the trial"); *Smith v. Midland Mortgage*, 181 F. Supp. 3d 73 (D. D.C. 2013) (denying a motion for preliminary injunction because "plaintiff has not alleged that foreclosure proceedings have commenced on her property" and "defendants respond to plaintiff's motion by stating that they have not commenced foreclosure proceedings"). Accordingly, the Mulligans are not entitled to a preliminary injunction.

There are two other reasons why the Mulligans will not suffer irreparable harm in the absence of an injunction. First, it is important to note that the Mulligans offer no evidentiary

support for their assertion that the "Property is the Mulligans' home." *See* Motion at 15. The Mulligans submitted no declarations, sworn statements, or other testimony that the Property is the Mulligan's home or primary residence—it is simply an unsworn statement from the Mulligans' counsel. *See* Utah R. Evid. 603 (requiring testimony to be made under oath). For all we know, the Property is simply an investment property, which would mean that any alleged injury the Mulligans may experience could be compensated through reimbursement from their title insurer.

Second, a majority of the Mulligans' claims do not center on *whether* the Property can be sold at auction, but *how much* Alum Rock is entitled to receive from the sale. For the Mulligans' quiet title claim, for example, they seek a declaration regarding what portion of the Property is traceable to Del Valle's contribution. This claim does not affect whether Alum Rock can execute on the Property (it can), it only affects how much of the proceeds will go to Alum Rock. In addition, the Mulligans' equitable subrogation/subordination claim only goes to whether the Mulligans can claim priority over Alum Rock's lien—and if the Property sells for more than what the Mulligans paid for it, then Alum Rock would still receive a payout. Like the quiet title claim, the equitable subrogation/subordination claim can only affect how the sales proceeds are divided between Alum Rock and the Mulligans. Because most of the Mulligans' claims can only affect distribution of the sales proceeds, the Mulligans will not be irreparably harmed by a sale.

### III. The Mulligans Have No Chance of Prevailing on the Merits.

In addition to the serious procedural defects and lack of irreparable harm, the Mulligans will not prevail on the merits of their claims because (1) those claims are barred by

claim preclusion and (2) the claims lack merit.

      a.  <u>The Mulligans' Claims are Barred by Claim Preclusion</u>.

On February 20, 2025, Alum Rock filed a motion to dismiss that explained why the Mulligans' new claims are barred by claim preclusion. *See* ECF 14. Alum Rock incorporates those arguments by reference.

      b.  <u>The Mulligans' Claims Fail on the Merits</u>

In addition to being barred by claim preclusion, the Mulligans' claims fail for substantive reasons. The Mulligans base their claim for injunctive relief on three claims: (1) quiet title; (2) equitable subrogation/subordination; and (3) bona fide purchaser/constructive notice. *See* Motion at 8-11. Alum Rock will discuss the weakness of each claim in turn:

**Quiet Title:** For this claim, the Mulligans rely on Utah Code § 75-7-505(1), which says that "[i]f a revocable trust has more than one settlor, the amount the creditor or assignee of a particular settlor may reach may not exceed the settlor's interest in the portion of the trust attributable to that settlor's contribution." The Mulligans claim they will prevail based on nothing but the assertion that "Alum Rock has not proved what contribution interest, if any, is available for it to execute upon." *See* Motion at 8. But the Mulligans get it backwards. Because the Mulligans bear the burden of proof on their quiet title claim, they must put forth evidence on this issue in order to prevail. Even in a generic lawsuit where a party is not subjected to the heightened standards imposed by Rule 65A, the plaintiff bears the burden of proof. *See Pioneer Centres Holding Company v. Alerus Fin., N.A.*, 858 F.3d 1324, 1335 (10th Cir. 2017). "Where a statute is silent on burden allocation, the 'ordinary default rule [is] that plaintiffs bear the risk of failing to prove their claims.'" *Id.* (quoting another

source).[3] The reason for this general rule is "because the burdens of pleading and proof with regard to most facts have been and should be assigned to the plaintiff who generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion." *Id.* (quoting 2 McCormick on Evid. § 337 (7th ed. 2013). The Mulligans cannot point to Alum Rock (a party that does not bear the burden of proof) and claim that because Alum Rock has not disproved their claim, they are substantially likely to prevail. Because the Mulligans have failed to put forth any evidence to support their quiet title claim, they have not shown that they are substantially likely to prevail on the merits.

Even if the Mulligans had made the required prima facia case to show a substantial likelihood of success (they have not), the Trust Agreement cuts against their argument. *Cutter v. Seror* is instructive. *See* 398 B.R. 6 (B.A.P. 9th Cir. 2008). In *Cutter*, the court first pointed out that a creditor[4] typically may only reach property equal to the amount the debtor contributed to the trust. *See id.* at 21. But where the debtor is able to exercise control over

---

[3] The Supreme Court has likewise held in a number of circumstances that plaintiffs bear the burden of proof when the statute or Constitution is silent. *See, e.g.,* *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (Title VII); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (Endangered Species Act); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (Americans with Disabilities Act); *Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 593, 121 S.Ct. 1776, 149 L.Ed.2d 845 (2001) (Rule 10b-5 securities fraud); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (preliminary injunctions); *Hunt v. Cromartie*, 526 U.S. 541, 553, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (Equal Protection Clause); *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (First Amendment).

[4] In *Cutter*, the court was trying to determine whether the trust corpus belonged to the bankruptcy estate. *See generally id.* The bankruptcy estate was operating similar to Alum Rock here—as creditor—and seeking to go after assets held in trust.

16

that property, regardless of who contributed to the property, the creditor is entitled to "the maximum amount" of the property that the debtor had power over. *See id; see also In re Kiesewetter*, Civil Action No. 11-109, 2011 WL 4527365, at *5 (W.D. Pa. Sep. 28, 2011) (holding that where debtor exercises dominion and control over trust assets, creditors may reach those assets). Because the debtor in *Cutter* had "unfettered access to and dominion and control over the Trust and its assets," the creditor was able to reach those assets. *Cutter*, 398 B.R. at 22. Here, Del Valle was similarly granted "unfettered access to and dominion and control over the" Property. The Trust Agreement provides that Del Valle—as trustee— could alone make the decision to convey the Property. Indeed, the Trust Agreement makes clear that he could convey the Property "without the consent of or prior notice to either husband or wife." *See* Trust Agreement, Ex. 10, at 2–3, § 2.3(b).  Given Del Valle's ability to exercise control over the Property, Alum Rock is entitled to reach the entirety of that asset.

*Cutter*'s reasoning is also consistent with the plain language of Utah Code § 75-7-505(1). According to the Mulligans, the statute requires courts to analyze contribution interests on an asset-by-asset basis and determine what amount a creditor can reach from each particular trust asset. But Utah Code § 75-7-505(1) does not support the Mulligan's asset-by-asset approach. The statute says that if a trust has more than one settlor, "the *amount* the creditor or assignee of a particular settlor may reach may not exceed the settlor's interest in the *portion of the trust* attributable to that settlor's contribution." *See id.* (emphasis added). Under its plain language, Utah Code § 75-7-505(1) only limits the total *amount* a creditor may recover from trust assets, but it does not limit how which assets a creditor may go after. For example, say a trust has two settlors, and each settlor contributes $100,000 worth of assets

17

($200,000 total). Under Utah Code § 75-7-505(1), if a creditor of only one of the settlors
wishes to recover from trust assets, then the total "amount" the credit may reach is "the
portion of the trust attributable to that settlor's contribution"—in this case, $100,000. But to
recover that $100,000, the creditor can recover from any trust asset until the $100,000 is paid
in full.

      **<u>Equitable Subordination/Subrogation:</u>** The Mulligans argue that because they
allegedly paid off senior liens and mortgages when they purchased the Property, they can
claim the same priority as the liens they paid off. While Utah courts have generally
recognized the doctrines of equitable subordination/subrogation, no Utah court has
addressed the specific issue presented in this case: whether a party who pays off a senior
mortgage as part of a property purchase can rely on equitable subrogation to defeat a
recorded junior lien. Many courts have held that when a purchaser has constructive notice of
a lien at the time they purchase property, equitable subrogation/subordination does not
apply. For example, in *Blecher v. Blecher*, the Oregon Supreme Court held that a person "who
assumes and agrees to pay an existing indebtedness as part of the purchase price of real
property" is properly "den[ied] the right of subrogation . . . as attempted to be exercised
against the holder of a recorded junior lien or mortgage." 87 P.2d 762, 765 (Or. 1939). The
Oregon Supreme Court reasoned that this rule (1) encourages prospective purchasers "to
consult available records in regard to contemplated real property transactions" and (2)
"minimizes . . . the effect of any uncertainty of representation between vendor and vendee
concerning existing incumbrances of record." *Id.* In making its ruling, the Oregon Supreme
Court noted that this rule had been adopted by courts in Iowa, Kansas, Indiana,

Washington, Texas, Wisconsin, Georgia, Kentucky, and Pennsylvania. *See id.* at 764 (collecting cases).

And in a more recent case, the Florida District Court of Appeals adopted *Blecher*'s reasoning and held that "[a]lthough the equitable principle of subrogation is a meritorious doctrine and should be applied where necessary to do justice between the parties, it will not be allowed where its application would lead to confusion by undermining the orderly scheme established by the recording statute." *Hieber v. Florida Nat. Bank*, 522 So.2d 878, 879 (Fla. Dist. Ct. App. 1988). The court also noted that the appellant's "title insurer was under a duty to discovery the lien" and that "[r]elief from folly of those who in respect of contemplated property transactions do not consult available lien records seems more the task of the school than of the court." *Id.* at 879-80 (cleaned up).[5]

In this case, it is undisputed that Alum Rock recorded the judgment on November 16, 2020. And as discussed more fully below, the simple act of recording gave the Mulligans (and their title insurer) notice of the judgment. Based on the reasoning of *Blecher*, *Hieber*, and the other cases cited above, the doctrine of equitable subrogation/subordination does not apply to defeat Alum Rocks' recorded lien. The Mulligans' remedy is against their title insurer, not Alum Rock. Therefore, the Mulligans are unlikely to prevail on their equitable subrogation/subordination claim, and the Court should deny the Motion.

---

[5] The Mulligans ask the Court to adopt the rule from *Sourcecorp, Inc. v. Norcutt*, 258 P.3d 281 (Ariz. Ct. App. 2011). But the Mulligans have not made any argument that *Sourcecorp* represents the majority rule or that Utah courts would adopt it. Given the fact that the *Blecher* rule has been adopted in Oregon, Kansas, Indiana, Washington, Texas, Wisconsin, Georgia, Kentucky, Pennsylvania, and Florida, this Court would be in good company if it adopted the *Blecher* rule.

**Bona Fide Purchaser/Constructive Notice:** The Mulligans also claim that they are bona fide purchasers because they had no constructive notice of Alum Rock's judgment lien. The Mulligans are incorrect. Utah Code § 57-3-102 says that "[e]ach document . . . shall, from the time of recording with the appropriate county recorder, impart notice to all persons of their contents." Utah courts call this "[r]ecord notice," which "results from a record or is imputed by the recording statutes." *Pioneer Builders Co. of Nevada, Inc. v. K D A Corp.*, 2012 UT 74, ¶ 24, 292 P.3d 672 (cleaned up). While "[a] party who takes an interest in [property in] good faith" can generally claim protection "as a bona fide purchaser, or BFP," *Morris v. Off-Poste Capital LLC*, 2018 UT App 7, ¶ 30, 418 P.3d 66, this rule does not apply when someone has record notice. As the Utah Supreme Court explained: "when documents filed with the county recorder disclose an interest in a particular property, a subsequent purchaser has record notice of the competing interest and does not take in good faith." *Pioneer Builders Co. of Nevada*, 2012 UT 74, ¶ 24 (cleaned up).

Here, there is no dispute that Alum Rock recorded the judgment in the Weber County Recorder's office on November 16, 2020. Therefore, the Mulligans had constructive notice of Alum Rock's lien, and they cannot claim that they were bona fide purchasers or otherwise had no notice of the lien. It's that simple. Whether the Mulligans (or their title company) failed to discover the judgment or understand its significance before purchasing the Property does not change the conclusion.

The Mulligans rely on *In re Hiseman*, 330 B.R. 251 (Bankr. D. Utah 2005) and *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212 (10th Cir. 2021) for their argument that when a recorded document is not indexed correctly, there is no constructive

notice. But *In re Hiseman* is not relevant because, in that case, the person recording the document caused the indexing error by including an incorrect legal description. *See Heiseman*, 330 B.R. at 244. In this case, Alum Rock did not cause any alleged indexing error. And the *Marcantel* discussion of constructive is nonbinding dicta because, as the Tenth Circuit explicitly stated, "we needn't decide that [constructive notice] question because we conclude that, even if [the plaintiff] had constructive notice, that wouldn't defeat his fraudulent-nondisclosure claim." *Marcantel*, 993 F.3d at 1230. The statutes on constructive notice all state that once a document is *recorded*, it imparts notice to all persons of its contents. *See* Utah Code § 57-3-102(1) "Each document executed, acknowledged, and certified, in the manner prescribed by this title . . . shall, from the time of recording with the appropriate county recorder, impart notice to all persons of their contents."); Utah Code § 57-4a-2 ("A recorded document imparts notice of its contents regardless of any defect, irregularity, or omission in its execution, attestation, or acknowledgment."). If the legislature wanted constructive notice to apply only to documents that are properly indexed, it could have used the word "indexed" instead of "recorded" in the recording statutes.

But even if actual notice mattered (it does not), the Mulligans have failed to show that Alum Rock's judgment could not have been discovered by a title search. In the Motion, the Mulligans claim that "no judgments against either Co-Trustee appear in the searchable court index where the Property is located." *See* Motion at 13. The only support the Mulligans provide for this statement is Exhibit D to Felicia Canfield's declaration, but that exhibit only shows judgments recorded during October 2020. It goes without saying that a judgment recorded in November 2020 would not show up in a search limited to October 2020. And a

search limited to October 2020 would give no indication of whether a judgment appeared in the county records as of May 11, 2021—the day the Mulligans purchased the Property. Therefore, the Mulligans' assertion that "no judgments against [Del Valle] appear in the searchable court index" has no evidentiary support.

To avoid the straightforward conclusion that they had constructive notice of Alum Rock's judgment lien, the Mulligans rely on unrelated sections of Utah's recording statute, Utah Code § 57-3-102(4)–(5).[6] But these sections do not matter because the legal effect of a judgment lien is governed by the Judgments Act, Utah Code § 78B-6-201 *et seq.* As the Utah Supreme Court already determined in this case, Alum Rock properly recorded its judgment in the Weber County Recorder's office under Utah Code § 78B-5-202(7), which says that "a judgment entered by a district court, or the Business and Chancery Court, becomes a lien upon real property if . . . the judgment . . . is recorded in the office of the county recorder." Once Alum Rock recorded its judgment, it created a lien upon "all the real property of [Del Valle] . . . owned or acquired at any time by [Del Valle] during the time the judgment is effective." Utah Code § 78B-5-202(7)(c). And the Supreme Court determined that because Del Valle owned the Property through a revocable trust, Alum Rock's judgment lien attached to the Property because, under Utah law, property of revocable trust is subject to

---

[6] In addition to being irrelevant, the Mulligans' arguments about the meaning of Utah Code § 57-3-102(4)–(5) are downright absurd. For instance, the Mulligans' claim that under Utah Code § 57-3-102(5), Del Valle transferred the property to them "free and clear" of Alum Rock's judgment lien because Alum Rock's judgment lien was "not disclosed in the 2007 Specialty Warranty Deed" through which Del Valle obtained title to the Property. *See* Motion at 14. But how could the judgment lien—which was recorded in 2020—have been disclosed in a warranty deed from thirteen years earlier? This reading of the statute is absurd and shows that the Mulligans are grasping at straws to stop the execution sale.

claims of the settlor's creditors. *See Mulligan v. Alum Rock Riverside*, 2024 UT 22, ¶¶ 52-62. Therefore, under these statutes, the Mulligans had constructive notice of both Alum Rock's judgment lien and the fact that the lien attached to the Property.

In sum, the Mulligans have no chance of prevailing on the merits of their claims. This necessarily means that the Mulligans are not substantially likely to prevail, and the Court must deny the Motion.

### IV.     Alum Rock's Injury Outweighs the Mulligans' Injury.

As explained above, the Mulligans will experience no irreparable injury if Alum Rock proceeds with the execution sale. But Alum Rock, on the other hand, stands to suffer great injury if the Court grants an injunction. The Mulligans already delayed an execution sale by more than three years. Their arguments were rejected by the Utah Supreme Court, and after that happened, the Mulligans attempted to add Alum Rock to the Second Lawsuit. And now, the Mulligans have filed yet another duplicative lawsuit in the hopes of further delay. All the while, Alum Rock has incurred years of attorney fees and experienced substantial delay in executing on the Property. Because the Mulligans have already lost this dispute, they will suffer no present injury from a valid execution sale—but Alum Rock stands to suffer greatly through continued delay.

### V.     The Injunction is Adverse to the Public Interest.

Regarding the public interest, the Mulligans claim that "[t]he public has no interest, whatsoever, in permitting [the] unlawful and illegal sale of real property." *See* Motion at 16. But the Utah Supreme Court has held that Alum Rock's judgment lien is valid and that the Third District properly issued the Writ of Execution. Given these facts, how could an

execution sale be "unlawful and illegal"? Aside from the Mulligans' incorrect assertion that the public would be harmed by an "unlawful" sale, the Mulligans' requested injunction violates two important societal interests. First, the Mulligans' requested injunction violates the public's interest in the "just, speedy, and inexpensive determination of every action." Utah R. Civ. P. 1. The law strongly favors resolving disputes in a single lawsuit and avoiding inconsistent rulings, which is why doctrines likes claim preclusion, issue preclusion, and compulsory counterclaims exist. *See Daz Mgmt., LLC v. Honnen Equip. Co.*, 2022 UT 15, ¶ 20, 508 P.3d 84 (noting that claim preclusion "fulfills several important purposes," including "preserving the integrity of the judicial system by preventing inconsistent judicial outcomes"). And second, the Mulligans' requested injunction requires this Court to intrude upon and interfere with Judge Mow's jurisdiction in the First Lawsuit. The public has an interest in consistent judicial outcomes, which is not served when judges in different judicial districts issue conflicting and inconsistent orders. Because the Mulligans' requested injunction violates several important societal interests, the Court should deny the Motion.

**VI.    The Court should Post a Bond.**

In the even the Court decides to grant the injunction, it should require the Mulligans to post a $1.8 million dollar bond, which represents the value of their title insurance policy. Contrary to the Mulligans' assertion, "a party is not entitled to a waiver of the supersedeas bond . . . solely because the judgment res consists of real property." *U.S. v. O'Callagan*, 805 F.Supp.2d 1321, 1325 (M.D. Fla. 2011). This is so because real property is not, as the Mulligans assume, an asset with an eternally fixed value. If the Mulligans could obtain an injunction without posting a bond, it would leave the value of Alum Rock's lien "subject to

the whims of the housing market and [the Mulligans'] willingness to maintain the value of the residence." *Bank of New York Mellon v. Worth*, No. 3:13–cv–1489 (MPS), 2015 WL 1780719, *3 (D. Conn. April 20, 2015). "Even if the housing market remains stable and [the Mulligans] maintain[] the residence, absent a bond [Alum Rock] lacks protection against damage to the house." *O'Callagan*, 805 F.Supp.2d at 1326. "[A]n assortment of natural disasters . . . could dramatically alter the value of the forfeited property." *U.S. v. Route 7, Box 7091, Chatsworth, Ga.*, Civ. A. No. 4:93–CV–0335–HLM, 1997 WL 412477, *1 (N.D. Ga. April 4, 1997). Because of the possibility that the Property could be completely destroyed by a natural disaster, a bond is required to protect Alum Rock against these risks. Contrary to the Mulligans' assertion, Alum Rock's lien does not provide sufficient security to protect it against the risks caused by an injunction without a bond. If the Court grants an injunction, it should require the Mulligans to post a $1.8-million-dollar bond and order the Mulligans to add Alum Rock to any applicable insurance policy.

## CONCLUSION

The Mulligans already had their day in court and lost, and they do not satisfy the strict requirements to be entitled to a preliminary injunction. The Court should deny the Motion.

DATED this 27th day of February, 2025.

BENNETT TUELLER JOHNSON & DEERE

/s/  KC Hooker
Benjamin D. Johnson
KC Hooker
*Attorneys for Defendant Alum Rock Riverside, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of February, 2025, I caused a true and correct copy of the foregoing **OPPOSITION TO PLAINTIFFS' MOTION FOR ISSUANCE OF A PRELIMINARY INJUNCTION** to be electronically filed with the Court's ECF system and served by the method indicated below to the following:

Bradley L. Tilt                 (X)   ECF
FREEMAN LOVELL, PLLC       ( )   E-Mailed
4568 S. Highland Drive, Suite 290    ( )   E-Mail via GreenFiling
Salt Lake City, Utah 84117         ( )   U.S. Mail, Postage Prepaid
bradley.tilt@freemanlovell.com     ( )   U.S. Mail via GreenFiling
*Attorney for Plaintiffs*             ( )   Certified Mail

Felicia B. Canfield             (X)   ECF
CANFIELD LAW LLC          ( )   E-Mailed
2413 Newton Avenue         ( )   E-Mail via GreenFiling
Cody, WY 82414               ( )   U.S. Mail, Postage Prepaid
canfieldlawllc@gmail.com       ( )   U.S. Mail via GreenFiling
*Attorneys for Plaintiffs*           ( )   Certified Mail

*/s/ Angelica Torres*