# EXHIBIT 2
## (Ruling and Order)

**IN THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT
IN AND FOR SALT LAKE COUNTY, STATE OF UTAH**

| | |
|---|---|
| **ALUM ROCK RIVERSIDE LLC**,<br><br>    Plaintiff,<br><br>                    **vs.**<br><br>**PRP INVESTORS MADISON, LLC**, a California limited liability company; **BRETT DEL VALLE**, an individual; and **DOES 1 through 50** inclusive,<br><br>    Defendants. | **RULING & ORDER ON MULLIGANS' REPLY TO WRIT OF EXECUTION**<br><br><br>**Case No. 206927043**<br><br>**Judge Adam T. Mow** |

The Utah Foreign Judgment Act provides that a foreign judgment entered in a district court becomes a lien if a stay of execution has not been granted, the requirements of the Act are satisfied, and the judgment is recorded in the office of the county recorder where the property of the judgment debtor is located. Plaintiff Alum Rock Riverside LLC sued Brett Del Valle (and others) in California Superior Court for breach of a settlement agreement and breach of an indemnity agreement, among other claims. Alum Rock prevailed in that suit, and in June 2020, the California court issued a judgment for $4,338,964.45. On October 23, 2020, Alum Rock domesticated the California judgment in the Third District Court. On November 16, 2020, Alum Rock recorded the judgment with the Weber County Recorder. On May 11, 2021, the Del Valle Family Trust—a revocable trust controlled by Brett and Traci Del Valle as both the trustors and the trustees—conveyed property located at 1453 S. Basinview Road, Huntsville, Utah 84317 ("Property") to Molly and John Mulligan. On June 22, 2021, Alum Rock applied for a writ of execution against the Property, which this Court granted that same day. The Mulligans ask the Court to set aside the writ and find that Alum Rock does not have a lien on the Property. This

Case No. 206927043
Page 2 of 10

Court is asked to decide whether the domesticated judgment is a valid lien under Utah law. The Court is further asked to decide whether this Court has authority to issue a writ of execution for the Property, notwithstanding that the Property is in Weber County—outside the Third District. Because Alum Rock satisfied the requirements of both the Utah Foreign Judgment Act and the Judgment Lien Act, the domesticated judgment is a valid lien on the Property. And as the Utah Code of Judicial Administration authorizes this Court to issue all extraordinary writs and other writs necessary to carry into effect its orders, judgments, and decrees, the Court properly issued a writ of execution notwithstanding that the Property is located outside the Third District. The domesticated judgment is a valid lien on the Property and Alum Rock may proceed with the sale of the Property.

## **DISCUSSION**

A.  *Alum Rock's Lien on the Property*

The Mulligans first argue, in the Reply to Writ of Execution and Request for Hearing, that the Property "is not presently, and it never has been, owned by Brett Del Valle in his individual and personal capacity."[1] However, Utah Rule of Civil Procedure 64E provides "[a] writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment or order requiring the delivery of property or the payment of money."[2] Rule 64E does not contain any provision limiting its application to owners of property nor does it require the property be in the possession or under the control of the defendant at the time a judgment creditor files a writ of execution. Moreover, where a trust

---

[1] *See* Reply & Request for Hr'g 2, July 7, 2021.
[2] UTAH R. CIV. P. 64E(a).

Case No. 206927043
Page 3 of 10

agreement "identifies [an individual] as the trustor-trustee of [a] Trust during her lifetime . . . she

retains considerable control over the Trust property."[3]

In this case, the Del Valle Family Trust designates Brett and Traci Del Valle as trustors

of the Trust and appoints them both as co-trustees.[4] The Trust further provides:

> During the joint lifetimes of the Trustors, the community estate may be revoked in
> whole or in part by an instrument in writing signed by either Trustor, and any
> separate estate may be revoked in whole or in part by an instrument in writing
> signed by the Trustor who contributed that property to the trust.[5]

The Trust also provides that, except for the separate property interest of a Trustor in any life

insurance policy, "the Trustors may at any time during their joint lifetimes amend any of the

terms of this instrument by an instrument in writing signed by the Trustors and delivered to the

Trustee."[6] Finally, the Trust provides:

> During the joint lifetimes of the Trustors, the Trustors acting jointly with respect
> to the community estate, or a Trustor acting individually with respect to such
> Trustor's separate estate, may at any time direct the Trustee in writing to transfer
> property or sums of money out of the trust estate to any other person or
> organization.[7]

These provisions, taken together, establish unambiguously that, just as the plaintiff in *Perez*,

Brett Del Valle retained considerable control over the Property. Indeed, the Del Valles retained

the ability to revoke the Trust, to amend it, and to transfer property from it. In essence, they

retained all control regarding the Property they would have had if they had not transferred the

Property to the Trust. As the Property was under the control of Brett Del Valle at the time the

---

[3] *See Perez v. Dep't of Health*, No. 20050895-CA, 2006 WL 1882279, at *1 (Utah Ct. App. July 7, 2006).
[4] *See* Opp'n to Mulligans' Reply Ex. 6, at 1, Sept. 16, 2022.
[5] *See id.* at 3.
[6] *See id.*
[7] *See id.* at 5.

Case No. 206927043
Page 4 of 10

judgment was entered in this action, the Property is properly subject to a writ of execution under

rule 64E.

The Mulligans next argue that Alum Rock failed to comply with the statutory

requirements for the creation of a judgment lien and therefore no lien attached to the Property.

The Mulligans base their argument on section 78B-5-201, which provides "[o]n or after July 1,

1997, a judgment entered in a district court does not create a lien upon or affect the title to real

property unless the judgment is filed in the Registry of Judgments of the office of the clerk of the

district court of the county in which the property is located."[8] Furthermore, "[o]n or after July 1,

2002 . . . a judgment entered in a district court does not create a lien upon or affect the title to

real property unless the judgment or an abstract of judgment is recorded in the office of the

county recorder in which the real property of the judgment debtor is located."[9] Finally, section

78B-5-202 provides:

> After July 1, 2002, a judgment entered by a district court or a justice court in the
> state becomes a lien upon real property if: (i) the judgment or an abstract of the
> judgment containing the information identifying the judgment debtor as described
> in Subsection 78B-5-201(4)(b) is recorded in the office of the county recorder; or
> (ii) the judgment or an abstract of the judgment and a separate information
> statement of the judgment creditor as described in Subsection 78B-5-201(5) is
> recorded in the office of the county recorder.[10]

The Mulligans further rely on section 78B-5-302 of the Utah Foreign Judgment Act,

which provides "[a] foreign judgment filed under this part has the same effect and is subject to

the same procedures, defenses, enforcement, satisfaction, and proceedings for reopening,

---

[8] Utah Code Ann. § 78B-5-201(2).
[9] *Id.* § 78B-5-201(3)(a).
[10] *Id.* § 78B-5-202(7)(a)(i)-(ii).

Case No. 206927043
Page 5 of 10

vacating, setting aside, or staying a judgment of a district court of this state."[11] The Foreign

Judgment Act further provides:

> A foreign judgment entered in a district court under this part becomes a lien as
> provided in Section 78B-5-202 if: (a) a stay of execution has not been granted; (b)
> the requirements of this chapter are satisfied; and (c) the judgment is recorded in
> the office of the county recorder where the property of the judgment debtor is
> located, as provided in Section 78B-5-202.[12]

Under the plain language of these provisions, a foreign judgment will not create a lien until the

requirements in subsections 78B-5-201 and -202 have been satisfied.

The Court must therefore determine what section 78B-5-201 requires. In doing that, the

Court must also examine subsection 78B-5-201(4), which provides "[i]n addition to the

requirements of Subsections (2) and (3)(a), any judgment that is filed in the Registry of

Judgments on or after September 1, 1998, or any judgment or abstract of judgment that is

recorded in the office of a county recorder after July 1, 2002, shall include" a judgment

information statement.[13] Moreover, subsection 78B-5-201(6) provides:

> Any judgment that requires payment of money and is entered in a district court on
> or after September 1, 1998, or any judgment or abstract of judgment recorded in
> the office of a county recorder after July 1, 2002, that does not include the debtor
> identifying information as required in Subsection (4) is not a lien until a separate
> information statement of the judgment creditor is recorded.[14]

In interpreting these provisions, as well as section 78B-5-202, the Utah Court of Appeals

reasoned that "[h]ad the legislature intended that subsections (2) and (3) of section [78B-5-201]

be read together, as separate requirements for the creation of a lien on real property, it could have

---

[11] *Id.* §78B-5-302(3).
[12] *Id.* § 78B-5-305(1)(a)-(c).
[13] *Id.* § 78B-5-201(4)(a)-(b).
[14] *Id.* § 78B-5-201(6)(a).

Case No. 206927043
Page 6 of 10

used the word 'and' instead of 'or' in sections [78B-5-201(4)] and [78B-5-201(6)]."[15] It further

determined "that a proper reading of section [78B-5-201] requires subsections (2) and (3) to be

read independently."[16] This "allows section [78B-5-202], which provides that a judgment

becomes a lien upon real property if it is recorded in the office of the county recorder, to be read

in harmony with section [78B-5-201]."[17] The Court of Appeals ultimately determined that "after

July 1, 2002, a person seeking a lien on property need only file in the office of the county

recorder."[18] This interpretation accords with the unambiguous language of section 78B-5-202 as

well as subsections 78B-5-201(4) and (6), all of which are stated in the disjunctive—clarifying

that a judgment creditor must either file a judgment in the Registry of Judgments or in the office

of the county recorder.

Nevertheless, the Mulligans argue that *Kitches* was decided incorrectly, urging the Court

to instead rely on other cases interpreting the Judgment Lien Act. However, the primary case on

which the Mulligans rely for their assertion, *T3 Properties, LLC v. Persimmon Investments,

Inc.*,[19] involved the interpretation of the pre-2002 version of the Act. Subsection 78B-5-201(3)

had yet to be added to the statute. And, in *T3 Investments*, the judgment creditor had failed to

record an information statement with the judgment.[20] The Utah Court of Appeals ultimately

determined in that case that "the 2001 version of section [78B-5-201] of the judgment lien statute

---

[15] *See Kitches & Zorn, L.L.C. v. Yong Woo Kim*, 2005 UT App 164, ¶13, 112 P.3d 1210. The Court notes section 78B-5-201 and -202 were renumbered in 2008. However, these provisions have not been substantively amended since *Kitches* was decided. Accordingly, the Court may properly rely on *Kitches* notwithstanding that it cites to the prior version of the statute.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] 2013 UT App 38, 299 P.3d 613.
[20] *See id.* at ¶17.

Case No. 206927043
Page 7 of 10

requires that a judgment be recorded in the Registry of Judgments with a separate information statement in order to create a judgment lien."[21] *T3 Investments* is distinguishable on this point—the Mulligans, in opposing the Writ, have not raised a failure to file a separate information sheet. Furthermore, *T3 Investments* involved the 2001 version of the Act and therefore provides no clarification regarding whether a judgment creditor must comply with both subsection (2) and subsection (3)—which was added to the statute in 2002—prior to converting a judgment to a lien. Accordingly, the Mulligans' argument on this issue is unavailing.

The Mulligans also argue that, if the Court were to adopt Alum Rock's interpretation of the statute, it would require less for a foreign judgment debtor to create a lien than is required for a domestic judgment debtor to do so. However, *Kitches* applies with equal weight to both foreign and domestic judgments. The decision addressed the requirements of the Judgment Lien Act, which apply, according to the plain language of the applicable statutes, to both foreign and domestic judgments.[22] To interpret the Foreign Judgment Act as requiring only the recording of a judgment in the office of the county recorder where the real property subject to the lien is located would not relieve foreign judgment creditors from any of the requirements in the Judgment Lien Act. Therefore, the Mulligans' arguments are unavailing, and the Court determines Alum Rock complied with sections 78B-5-201 and -202 when it recorded the judgment in Weber County on November 16, 2020.

Finally, the Mulligans argue that because they purchased the Property prior to the issuance of the writ of execution, they purchased the property prior to the attachment of any lien

---

[21] *See Id.* at ¶28.
[22] *See Kitches & Zorn*, 2005 UT App 164, at ¶13, 112 P.3d 1210.

Case No. 206927043
Page 8 of 10

related to the judgment.[23] The judgment lien attached on November 16, 2020, when Alum Rock recorded the judgment with the Weber County Recorder. Thus, the lien attached before the Mulligans' purchase of the Property on May 11, 2021. "The transfer of property subsequent to the attachment of [a] lien does not affect the lien for it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes *cum onere*."[24] And where liens attach before a purchaser receives legal title, the purchaser acquires title "subject to the previous encumbrances."[25] As the lien attached prior to the Mulligans' purchase of the Property, the Mulligans acquired title subject to the lien.

### B.   The Writ of Execution

The Mulligans also assert that the Court lacked jurisdiction to enter a writ of execution regarding the Property, which is located outside the Third District. In support, the Mulligans cite two cases, *Sherman v. Droubay*[26] and *Ashton-Jenkins Co. v. Bramel*.[27] This reliance is misplaced. *Sherman* involved a statute requiring actions for the foreclosure of all liens and mortgages on real property to be "tried in the county in which the subject of the action or some part thereof is situated."[28] Similarly, in *Ashton-Jenkins*, the Utah Supreme Court interpreted a statute requiring notice of a lis pendens to "be published in the county where the land lies."[29] No

---

[23] Again, the Mulligans have raised only Alum Rock's failure to file the judgment in the Registry of Judgments, they have not raised any issue with the sufficiency of the information statement included with the recorded judgment. So there is no need to further address the sufficiency of the judgment information statement.
[24] *See Utah Farm Prod. Credit Ass'n v. Wasatch Bank of Pleasant Grove*, 734 P.2d 904, 906 (Utah 1986).
[25] *F.D.I.C. v. Taylor*, 2011 UT App 416, ¶21, 267 P.3d 949.
[26] 74 P.348 (Utah 1903).
[27] 192 P. 375 (Utah 1920).
[28] *Sherman v. Droubay*, 74 P. 348, 348 (Utah 1903).
[29] *Ashton-Jenkins Co. v. Bramel*, 192 P. 375, 381 (Utah 1920).

Case No. 206927043
Page 9 of 10

such provision is found in rule 64E.[30] Thus, these cases are distinguishable and do not control this Court's determination.

The Mulligans also argue that the language of section 78B-5-302 should apply to limit the issuance of a writ of execution to the boundaries of the corresponding judicial district. However, Rule 64E provides "[a] writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment or order requiring the delivery of property or the payment of money."[31] Rule 64 provides, in turn, that "[i]f the writ directs the seizure of real property, the clerk of the court shall issue the writ to the sheriff of the county in which the real property is located."[32] In interpreting this provision, courts have determined that "Utah courts and clerks have no authority to direct sheriffs of other states' counties to seize property."[33] Implicit in this determination is the correlate—that Utah courts have authority to issue writs for the seizure of real property to sheriffs of Utah counties, regardless where the district court is located in the state. Supporting such determination is the Utah Code of Judicial Administration, which provides "[a] district court judge may issue all extraordinary writs and other writs necessary to carry into effect the district court judge's orders, judgments, and decrees."[34] "District courts are courts of general jurisdiction. As such, they maintain jurisdiction to consider all matters except as limited by statute or constitution . . . . Under this broad jurisdictional grant, district courts maintain a certain degree of inherent power

---

[30] *See generally* UTAH R. CIV. P. 64E.
[31] UTAH R. CIV. P. 64E(a).
[32] *Id.* R. 64(d)(1).
[33] *See Aequitas Enters., LLC v. Interstate Inv. Grp., LLC*, 2011 UT 82, ¶17, 267 P.3d 923.
[34] Utah Code Ann. § 78A-5-102(2).

Case No. 206927043
Page 10 of 10

to properly discharge their duties."[35] Accordingly, contrary to the Mulligans' assertion, the Court

possessed the requisite authority to issue the Writ notwithstanding that the Property was located

outside the Third District.

## CONCLUSION

Sections 78B-5-201 and -202, read in concert, require only that a judgment creditor file a

judgment in the Registry of Judgments or that it file a judgment in the office of the county

recorder of the county in which the property subject to the lien is located and file a separate

information statement to convert a judgment to a lien. Alum Rock complied with these

provisions, recording the judgment and a separate judgment information sheet in the Weber

County Recorder's Office on November 16, 2020. As the Property was under the control of Mr.

Del Valle at the time the judgment was domesticated in Utah, it was subject to execution under

rule 64E. Finally, this Court is a court of general jurisdiction and may therefore issue writs,

including the writ at issue in this case. The location of the Property outside the Third District

does not invalidate the writ. The Court properly issued a writ of execution for the Property on

June 22, 2021, and the Court declines to set aside that writ.

This is the Order of the Court, and no further writing is required.

DATED October 27, 2022.

Judge Adam T. Mow
Third Judicial District Court

---

[35] *W. Water, LLC v. Olds*, 2008 UT 18, ¶42, 184 P.3d 578.

## CERTIFICATE OF NOTIFICATION

I certify that a copy of the attached document was sent to the following people for case 206927043 by the method and on the date specified.

MAIL: PRP INVESTORS MADISON LLC 417 29TH STREET NEWPORT BEACH, CALIFORNIA 92663

MAIL: BDV INC 417 29TH STREET NEWPORT BEACH, CALIFORNIA 92663

MAIL: BDV LLC 417 29TH STREET NEWPORT BEACH, CALIFORNIA 92663

MANUAL EMAIL: BRADLEY TILT BRADLEY.TILT@FREEMANLOVELL.COM

MANUAL EMAIL: BENJAMIN JOHNSON BEN.JOHNSON@BTJD.COM

10/27/2022          /s/ TANNER FLINDERS

Date: _____     _____

Signature