# EXHIBIT 3
## (*Mulligan v. Alum Rock*)

*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2024 UT 22**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

————————

MOLLY J. MULLIGAN and JOHN P. MULLIGAN,
*Appellants,*

*v.*

ALUM ROCK RIVERSIDE, LLC,
*Appellee.*

————————

No. 20221024
Heard April 10, 2024
Filed July 18, 2024

————————

On Direct Appeal

————————

Third District, Salt Lake County
The Honorable Adam T. Mow
No. 206927043

————————

Attorneys:

Bradley L. Tilt, Salt Lake City, Felicia B. Canfield, Cody, Wyo.,
for appellants

Benjamin D. Johnson, KC Hooker, Salt Lake City, for appellee

————————

JUSTICE HAGEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE PETERSEN, and JUSTICE POHLMAN joined.

————————

JUSTICE HAGEN, opinion of the Court:

### INTRODUCTION

¶1    This case stems from a California judgment that Alum
Rock Riverside, LLC obtained against Brett Del Valle. After
domesticating the judgment in Utah and recording it with the
county recorder, Alum Rock received a writ of execution allowing
it to seize and sell a property in Weber County.

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

¶2    At the time Alum Rock recorded the judgment with the county recorder, the property was owned by a revocable trust that was established and administered by Brett and his wife. But the trust had sold the property by the time Alum Rock applied for the writ. And when the court issued the writ, the property's new owners—the Mulligans—objected, arguing that (1) Alum Rock failed to create a judgment lien because it did not record the judgment in the registry of judgments, (2) the writ was not available because the trust—not Brett—held title to the property when the judgment was domesticated in Utah, and (3) the district court lacked jurisdiction to issue the writ because the property was located in a different judicial district.

¶3    The district court upheld the writ over the Mulligans' objections, and we affirm. First, we hold that Alum Rock created a judgment lien when it recorded the judgment in the county recorder's office. As of July 1, 2002, a party seeking a judgment lien is not required to record the judgment in the registry of judgments. Second, we hold that the writ was available against the property, even though the title was held in the name of a revocable trust, because Brett retained all indicia of ownership over the property when the lien was created. And third, we hold that the Mulligans have not identified a relevant limitation on the district court's jurisdiction that would prevent it from issuing the writ.

## BACKGROUND

¶4    Alum Rock Riverside, LLC sued Brett Del Valle in California state court for breach of contract and other claims. Alum Rock prevailed, and the court issued a judgment in its favor totaling more than $4 million. Soon after, Alum Rock domesticated the judgment in Utah's Third District Court. Because the Del Valle Family Trust owned property in Weber County, Utah, Alum Rock recorded the judgment in the Weber County Recorder's Office.

¶5    Brett and his wife, Traci, had formed the trust years earlier, naming themselves as trustees. Brett and Traci retained broad powers over the trust and its property, including the power to revoke the trust, amend it, and transfer property from it. In addition, the trust empowered Brett and Traci, as trustees, to hold, manage, control, lease, and encumber trust property. Several years after they created the trust, Brett and Traci, acting as trustees, acquired the Weber County property at issue in this case.

¶6    The trust continued to hold title to the property when Alum Rock recorded its judgment against Brett in the county

Cite as: 2024 UT 22

Opinion of the Court

recorder's office. A few months after Alum Rock recorded the judgment, however, the trust conveyed the property to Molly and John Mulligan. And one month after that, Alum Rock applied for a writ of execution against the property, identifying Brett as the judgment debtor and asking the district court to "direct the sheriff to seize and sell" the property to satisfy the judgment.

¶7    When the court issued the writ as requested, the Mulligans challenged it. Acknowledging that their challenge "rises or falls" on whether a lien "was created and attached to the property," they asserted that Alum Rock did not do what the Judgment Act requires to create a judgment lien on real property.[1] Specifically, they claimed that Alum Rock did not fully comply with the following statutory requirements, found in Utah Code section 78B-5-201:

> (2) On or after July 1, 1997, a judgment entered in a district court does not create a lien upon or affect the title to real property unless the judgment is filed in the Registry of Judgments of the office of the clerk of the district court of the county in which the property is located.

> (3)(a) On or after July 1, 2002, . . . a judgment entered in a district court does not create a lien upon or affect the title to real property unless the judgment or an abstract of judgment is recorded in the office of the county recorder in which the real property of the judgment debtor is located.

UTAH CODE § 78B-5-201(2)–(3)(a) (2021).

¶8    The Mulligans argued that because Alum Rock obtained its judgment against Brett in 2020—after both July 1, 1997, and July 1, 2002—Alum Rock needed to comply with the requirements of both subsections: filing the judgment in the registry of judgments and recording it with the county recorder. Because Alum Rock did not file the judgment in the registry of judgments, the Mulligans reasoned, a lien was not created.

---

[1] We refer to Utah Code, Title 78B, Chapter 5, Part 2 as the Judgment Act. Effective July 1, 2024, the Judgment Act was renumbered, and the legislature made minor stylistic changes. We cite the version in effect at the time the district court issued the writ.

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

¶9   The Mulligans also claimed that, under the Judgment Act and the Utah Rules of Civil Procedure, the writ was not "available" against the property. Under the Judgment Act, real property subject to a judgment lien "includes all the real property . . . owned or acquired at any time by the judgment debtor during the time the judgment is effective." *Id.* § 78B-5-202(7)(c)(ii) (2021). And under rule 64E of the Utah Rules of Civil Procedure, "[a] writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment." UTAH R. CIV. P. 64E(a). According to the Mulligans, the writ was "issued improperly" because (1) Brett never owned the property (the trust did), and (2) in any event, he did not possess or control the property at the relevant time (the Mulligans did).

¶10   Finally, the Mulligans questioned the district court's jurisdiction. In their view, the court lacked jurisdiction to issue the writ because the proceedings fall within reach of a venue statute that lists actions that "shall be tried in the county in which the [property] . . . is situated." *See* UTAH CODE § 78B-3-301(1) (2021).[2] The Mulligans also claimed that under Utah caselaw, actions in which the "main question . . . involves title to real property" may be heard only by the district court where the property is located. (Quoting *Calder v. Third Jud. Dist. Ct.*, 273 P.2d 168, 171 (Utah 1954).) Because the property here is outside the district court's geographic boundaries, the Mulligans maintained that the court lacked jurisdiction to issue the writ.

¶11   The district court upheld the writ against the Mulligans' challenge. It first concluded that the Judgment Act did not require Alum Rock to file its judgment in the registry of judgments, as the Mulligans had argued, and that Alum Rock's lien attached when the judgment was recorded with the county recorder. Next, the court determined that because the property was under Brett's control when Alum Rock domesticated the judgment, the property was subject to execution under rule 64E. Finally, the court rejected the Mulligans' challenge to its jurisdiction, explaining that it had the power to issue the writ even though the property is located outside the Third District.

---

   [2] This venue statute has been renumbered and slightly altered, effective July 1, 2024. *See* UTAH CODE § 78B-3a-202(1). We cite the version in effect at the time the district court issued the writ.

Cite as: 2024 UT 22

Opinion of the Court

¶12  The Mulligans appeal, and we have jurisdiction under Utah Code subsection 78A-3-102(3)(j).

## ISSUES AND STANDARDS OF REVIEW

¶13  The parties dispute whether Alum Rock created a judgment lien on the property. "Judgment liens are creatures of statute . . . ." *Gildea v. Wells Fargo Bank, N.A.*, 2015 UT 11, ¶ 12, 347 P.3d 385. Accordingly, whether the property here is encumbered by Alum Rock's purported judgment lien raises a question of statutory interpretation, a legal question that we review for correctness. *See Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863.

¶14  The Mulligans also contest the district court's conclusions that the property is subject to the writ and that the court had jurisdiction to issue the writ. Because these determinations were premised on the court's interpretation of Utah law, they also present legal questions, which we review for correctness. *See Peak Alarm Co. v. Salt Lake City Corp.*, 2010 UT 22, ¶ 16, 243 P.3d 1221.

## ANALYSIS

¶15  The Mulligans challenge three aspects of the district court's decision, each of which turns in part on statutory interpretation. "The aim of statutory interpretation is to ascertain the intent of the legislature, and the best evidence of the legislature's intent is the plain language of the statute itself." *SunStone Realty Partners X LLC v. Bodell Constr. Co.*, 2024 UT 9, ¶ 11, 545 P.3d 260 (cleaned up). But because "statutory text may not be plain when read in isolation," *State v. J.M.S. (In re J.M.S.)*, 2011 UT 75, ¶ 13, 280 P.3d 410 (cleaned up), "we determine the meaning of the text given the relevant context of the statute (including, particularly, the structure and language of the statutory scheme)," *McKitrick v. Gibson*, 2021 UT 48, ¶ 19, 496 P.3d 147 (cleaned up).

¶16  We first address the Mulligans' contention that Alum Rock skipped a necessary step to create a lien on the property by not filing its judgment in the registry of judgments. We clarify that to create a lien from a foreign judgment, creditors must adhere to relevant requirements under the Judgment Act as well as the Foreign Judgment Act. But since July 1, 2002, creditors do not need to file judgments in the registry of judgments to create a lien. Thus, Alum Rock created a valid lien when it recorded its judgment in the county recorder's office.

5

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

¶17 Next, we assess whether Brett "owned" the property, allowing Alum Rock's lien to attach, even though the revocable trust that he and his wife created and administered held title to it. We conclude that he did.

¶18 Finally, we consider and reject the Mulligans' argument that limitations on the district court's jurisdiction prohibited the court from issuing the writ.

### I. ALUM ROCK CREATED A VALID LIEN ON THE PROPERTY

¶19 To resolve this appeal, we must decide whether Alum Rock created a valid lien on the property before it was sold to the Mulligans. The answer to that question largely depends on the meaning of two provisions of the Judgment Act.

¶20 These provisions, subsections (2) and (3)(a) of Utah Code section 78B-5-201, set out actions that judgment creditors have needed to perform at different times to create a judgment lien on real property:

> (2) On or after July 1, 1997, a judgment entered in a district court does not create a lien upon or affect the title to real property unless the judgment is filed in the Registry of Judgments of the office of the clerk of the district court of the county in which the property is located.

> (3)(a) On or after July 1, 2002, . . . a judgment entered in a district court does not create a lien upon or affect the title to real property unless the judgment or an abstract of judgment is recorded in the office of the county recorder in which the real property of the judgment debtor is located.

UTAH CODE § 78B-5-201(2)–(3)(a) (2021). The Mulligans argue that these requirements—the registry-of-judgments requirement and the county-recorder requirement—"work together, cumulatively." Under their reading, because the judgment was domesticated in 2020, which is "on or after" both July 1, 1997, and July 1, 2002, *see id.*, Alum Rock could not create a lien on the property unless it (1) filed its judgment in the registry of judgments and (2) recorded it with the county recorder.

¶21 Before interpreting these provisions, we address a threshold issue raised by Alum Rock: whether section 78B-5-201 of the Judgment Act even applies here, given that Alum Rock's

Cite as: 2024 UT 22

Opinion of the Court

judgment is a foreign judgment. After explaining why the section applies, we interpret its provisions.

*A. Creditors Domesticating Foreign Judgments Must Adhere to the Judgment Act's Requirements for Creating a Lien*

¶22  Alum Rock argues that the Judgment Act's registry-of-judgments requirement is not implicated here because Alum Rock's judgment is governed by the Foreign Judgment Act, which makes no mention of the registry of judgments. We disagree.

¶23  As it relates to converting a foreign judgment into a lien, the Foreign Judgment Act provides:

> (1) A foreign judgment entered in a district court under this part becomes a lien as provided in Section 78B-5-202 if:
>
> > (a) a stay of execution has not been granted;
> >
> > (b) the requirements of this chapter are satisfied; and
> >
> > (c) the judgment is recorded in the office of the county recorder where the property of the judgment debtor is located, as provided in Section 78B-5-202 [of the Judgment Act].

UTAH CODE § 78B-5-305(1).

¶24  Alum Rock points out that this section of the Foreign Judgment Act mentions section 78B-5-202 of the Judgment Act but not section 78B-5-201. And, it adds, section 202 also does not mention section 201 or its registry-of-judgments requirement, on which the Mulligans' argument turns. *See id.* § 78B-5-202(7)(a) (2021) ("After July 1, 2002, a judgment . . . becomes a lien upon real property if . . . the judgment . . . is recorded in the office of the county recorder."").

¶25  These points are well taken. Still, the Foreign Judgment Act declares that foreign judgments are treated the same as domestic ones. Specifically, it provides that "[a] foreign judgment filed under [the Foreign Judgment Act] has the same effect and is subject to the same procedures, defenses, enforcement, satisfaction, and proceedings for reopening, vacating, setting aside, or staying as a judgment of a district court of this state." *Id.* § 78B-5-302(3). Alum Rock argues that this language does not "incorporate[] the Judgment Act wholesale into the Foreign Judgment Act." Instead, Alum Rock urges us to parse this language and treat the phrase "for

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

reopening, vacating, setting aside, or staying" as modifying and limiting the entire preceding series—"procedures, defenses, enforcement, satisfaction, and proceedings."

¶26  To take one example, as Alum Rock sees it, foreign judgments are not generally "subject to the same procedures" as domestic judgments; they are merely "subject to the same procedures . . . *for reopening, vacating, setting aside, or staying*" as domestic judgments. Alum Rock thus argues that the Judgment Act applies to foreign judgments only when reopening, vacating, setting aside, or staying a foreign judgment, none of which Alum Rock seeks to do here.

¶27  But Alum Rock's argument is undercut by a decision that we issued after the briefing in this appeal was completed, *SunStone Realty Partners X LLC v. Bodell Construction Co.*, 2024 UT 9, 545 P.3d 260. There, the parties disputed whether, under the Foreign Judgment Act, Utah's or Hawaii's postjudgment interest rate applied to a Hawaii judgment that was domesticated in Utah. *Id.* ¶¶ 1–2. In resolving the dispute, we explained that the Foreign Judgment Act "mandates that foreign judgments domesticated using the [Foreign Judgment Act] are 'subject to the same procedures, defenses, enforcement, satisfaction, and proceedings . . . as a judgment of a district court of this state.'" *Id.* ¶ 13 (quoting UTAH CODE § 78B-5-302(3)). In line with this principle, we held that "[b]ecause postjudgment interest is an enforcement mechanism," Utah's postjudgment interest rate applied. *Id.* ¶ 21.

¶28  In *SunStone* we did not read the phrase "for reopening, vacating, setting aside, or staying" as modifying "enforcement." *See id.* ¶ 13; *see also* UTAH CODE § 78B-5-302(3). Indeed, it would be unreasonable to read the phrase to modify terms like "enforcement" and "satisfaction" because a judgment's enforcement or satisfaction would not be at issue in proceedings to reopen, vacate, set aside, or stay a judgment. This leads us to conclude that the phrase limits and modifies only the nearest item in the series to it—"proceedings."

¶29  We reject Alum Rock's reading for another reason as well. Under its reading, a creditor intending to create a lien based on a domestic judgment would be subject to all the Judgment Act's constraints, but a foreign-judgment creditor would not. This would result, counterintuitively, in a foreign judgment being *easier* to convert into a lien than a domestic one, which is contrary to an express purpose of the Foreign Judgment Act—to treat foreign

Cite as: 2024 UT 22

Opinion of the Court

judgments the same as domestic ones in key respects. *See* UTAH CODE § 78B-5-302(2)–(3).

¶30  Like postjudgment interest, a lien is a means of enforcing a judgment. As such, a foreign judgment is subject to the same requirements for lien creation as domestic judgments. Thus, the Foreign Judgment Act incorporates the Judgment Act's requirements for creating a judgment lien, including those found in section 78B-5-201.

### B. Alum Rock Did Not Need to File Its Judgment in the Registry of Judgments to Create a Lien

¶31  Having concluded that section 201 applies, we must interpret subsections (2) and (3)(a) and determine whether their requirements are cumulative (as the Mulligans argue) or sequential (as Alum Rock argues). We hold that they are sequential, not cumulative.

¶32  Although we have yet to decisively interpret these provisions, the court of appeals previously interpreted a substantively similar version of the statute under analogous circumstances and rejected the cumulative reading now advanced by the Mulligans. In *Kitches & Zorn, L.L.C. v. Yong Woo Kim*, 2005 UT App 164, 112 P.3d 1210, judgment creditors recorded an abstract of their judgment in the county recorder's office and applied for a writ of execution permitting them to sell a property that was owned by the judgment debtor. *Id.* ¶¶ 2–3. But the judgment debtor deeded his interest in the property to his wife between the time the creditors recorded the judgment with the county recorder and the time they applied for the writ. *Id.* ¶ 2.

¶33  When the district court issued the writ, the judgment debtor objected, claiming that the creditors did not create a lien on the property before the debtor conveyed the property to his wife because they "had not . . . filed the Judgment in the Registry of Judgments." *Id.* ¶ 4. On appeal, the debtor argued that the registry-of-judgments and county-recorder provisions "must be read together, thereby creating a two-step process" that required post-2002 judgments to be filed "in both the Registry of Judgments and the office of the county recorder." *Id.* ¶ 12.

¶34  The *Kitches* court rejected this cumulative reading and held that "after July 1, 2002, a person seeking a lien on real property need only file in the office of the county recorder." *Id.* ¶ 13. We reach the same conclusion because it is supported by the structure of section

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

78B-5-201, other sections of the Utah Code from the Judgment Act and the Foreign Judgment Act, and the prior-construction canon of statutory interpretation.

¶35  The structure of section 201 itself signals that the registry-of-judgments and county-recorder requirements are to be read sequentially, creating independent requirements for successive time periods. For context, a district court's entry of judgment historically "create[d] a lien upon the real property of the judgment debtor" automatically. *See* UTAH CODE § 78B-5-202(2) (2021) ("Prior to July 1, 1997, . . . the entry of judgment by a district court creates a lien upon the real property of the judgment debtor . . . ."). But the legislature did away with this automatic-lien regime. As recognized by subsection (2) of section 78B-5-201, beginning July 1, 1997, a judgment lien does not arise automatically upon a district court's entry of judgment; such a judgment does not create a lien "unless the judgment is filed in the Registry of Judgments of the office of the clerk of the district court of the county in which the property is located." *Id.* § 78B-5-201(2) (2021).

¶36  As with the automatic-lien regime, the legislature also phased out subsection (2)'s registry-of-judgments requirement. Subsection (3)(a) of section 201 marks this evolution in the law. Rather than allow a judgment to create a lien automatically (before July 1, 1997) or require judgment creditors to file the judgment in the registry of judgments (on or after July 1, 1997), beginning July 1, 2002, a judgment entered in the district court does not create a lien "unless the judgment or an abstract of judgment is recorded in the office of the county recorder in which the real property of the judgment debtor is located." *Id.* § 78B-5-201(3)(a) (2021).

¶37  This sequential reading makes sense when we zoom in on the grammatical structure of subsections (2) and (3)(a). The two subsections are separate, stand-alone provisions, each punctuated with a period. Their requirements are not joined with a conjunction such as "and" or "or." And subsection (3)(a) does not expressly incorporate subsection (2)'s registry-of-judgments requirement.

¶38  Contrast this with subsection (4) of the same section, which also imposes requirements on judgment creditors, requiring them to include certain information when filing or recording a judgment:

> (4) In addition to the requirements of Subsections (2) and (3)(a), any judgment that is filed in the Registry of Judgments on or after September 1, 1998, or any judgment or abstract of judgment that is

10

Cite as: 2024 UT 22

Opinion of the Court

recorded in the office of a county recorder after July
1, 2002, shall include:

> (a) the information identifying the judgment
> debtor as required under Subsection (4)(b) on
> the judgment or abstract of judgment; or
>
> (b) a copy of the separate information statement
> of the judgment creditor that contains:
>
> > (i) the correct name and last-known address
> > of each judgment debtor and the address at
> > which each judgment debtor received
> > service of process;
> >
> > (ii) the name and address of the judgment
> > creditor;
> >
> > (iii) the amount of the judgment as filed in
> > the Registry of Judgments;
> >
> > (iv) if known, the judgment debtor's Social
> > Security number, date of birth, and driver's
> > license number if a natural person; and
> >
> > (v) whether or not a stay of enforcement has
> > been ordered by the court and the date the
> > stay expires.

*Id.* § 78B-5-201(4) (2021). Unlike subsections (2) and (3)(a),
subsection (4)'s requirements are unified, with the cumulative
requirements indented, punctuated with semicolons, and joined
with a conjunction. And with the opening phrase "in addition to,"
subsection (4) expressly incorporates the requirements of previous
subsections.

¶39  As subsection (4) demonstrates, the legislature knows how
to signal when it intends requirements to be cumulative. But unlike
subsection (4), subsection (3) does not state that recording in the
county recorder's office must be done "[i]n addition to" the
registry-of-judgments requirement in subsection (2). And instead
of listing both requirements as indented subsections separated by
semicolons and a conjunction, the legislature listed the two
requirements as stand-alone provisions triggered on different
dates. That structure supports our reading that subsection (3)'s
requirements supplant those in subsection (2) after July 1, 2002.

¶40  Reading the subsections sequentially also makes sense
when we zoom out and look at related sections of the Utah Code.

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

We have a "duty to harmonize and reconcile statutory provisions." *Field v. Boyer Co.*, 952 P.2d 1078, 1081 (Utah 1998) (cleaned up). Reading section 201's requirements as being sequential harmonizes and reconciles them with section 78B-5-202 of the Judgment Act and section 78B-5-305 of the Foreign Judgment Act. Properly understood, all three statutes provide that, since July 1, 2002, a judgment becomes a lien on real property if it is recorded in the office of the county recorder. Utah Code section 78B-5-202 provides that, after July 1, 2002, a judgment becomes a lien on real property if it "is recorded in the office of the county recorder." UTAH CODE § 78B-5-202(7)(a) (2021). And Utah Code section 78B-5-305, part of the Foreign Judgment Act, provides:

> (1) A foreign judgment entered in a district court under this part becomes a lien as provided in Section 78B-5-202 if:
>
>> (a) a stay of execution has not been granted;
>>
>> (b) the requirements of this chapter are satisfied; and
>>
>> (c) the judgment is recorded in the office of the county recorder where the property of the judgment debtor is located, as provided in Section 78B-5-202.

*Id.* § 78B-5-305(1).

¶41  Notice that these sections do not refer to the registry of judgments. If, as the Mulligans suggest, the legislature intended judgment creditors to continue filing in both the registry of judgments and the county recorder's office, this absence would be hard to reconcile. For example, consider how the text of section 202 squares with the Mulligans' reading of section 201. Section 202 provides, "After July 1, 2002, a judgment . . . becomes a lien upon real property if . . . the judgment . . . is recorded in the office of the county recorder." *Id.* § 78B-5-202(7)(a) (2021). But under the Mulligans' reading of section 201, after July 1, 2002, a judgment *does not* become a lien on real property if the judgment is recorded in the office of the county recorder; the judgment must also be filed in the registry of judgments.

¶42  Historical context helps explain why sections 202 and 305 mention the county-recorder requirement but not the registry-of-judgments requirement. In 2001, the legislature passed a bill that amended the Judgment Act and the Foreign Judgment Act in

Cite as: 2024 UT 22

Opinion of the Court

significant ways. *See* Judgment Lien Amendments, H.B. 305, 2001 Leg., Gen. Sess. (Utah 2001) (available at https://le.utah.gov/~2001/bills/hbillenr/HB0305.htm). The bill—which ushered in the county-recorder regime for judgment-lien creation—provided that the statutory overhaul was to take effect July 1, 2002. *See id.* Before that date, the sections that are now codified as sections 202 and 305 did not specify the manner of recording a judgment lien. *See* UTAH CODE §§ 78-22-1, 78-22a-5 (2001). As of July 1, 2002, however, the sections recognized and reflected the incoming county-recorder requirement. *See id.* §§ 78-22-1, 78-22a-5 (July 2002). Each section was amended to specify that for a judgment to create a lien, the judgment must be "recorded in the office of the county recorder." *See id.* §§ 78B-5-202(7)(a), -305(1)(c). But the legislature did not add similar language referring to the registry-of-judgments requirement. That omission further supports our conclusion that the outdated registry-of-judgments requirement was entirely supplanted by the county-recorder regime as of July 1, 2002.

¶43  The prior-construction canon of statutory interpretation also reinforces our reading of section 201. Under that canon, if a word or phrase has been uniformly interpreted in caselaw, "a later version of that act perpetuating the wording is presumed to carry forward that interpretation." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 322 (2012). In other words, "where a legislature amends a portion of a statute but leaves other portions unamended, or re-enacts them without change, the legislature is presumed to have been satisfied with prior judicial constructions of the unchanged portions of the statute and to have adopted them as consistent with its own intent." *Christensen v. Indus. Comm'n*, 642 P.2d 755, 756 (Utah 1982).

¶44  In *Kitches*, the court of appeals interpreted the section that is now codified as section 201 to mean that "after July 1, 2002, a person seeking a lien on real property need only file in the office of the county recorder." 2005 UT App 164, ¶ 13. That decision has stood as controlling law in this jurisdiction for nearly two decades, and during that time judgment creditors have presumably relied on it as such. The legislature has amended the Judgment Act—including section 201—several times since *Kitches* was decided, yet

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

it has not modified the language to abrogate the case's holding.[3] We presume that by amending the statute but leaving the portions relevant here unamended, the legislature was satisfied with *Kitches*' reading.

¶45 The Mulligans maintain that *Kitches* has not been the controlling law in Utah since 2013 because it was overtaken by the court of appeals' decision in *T3 Properties, LLC v. Persimmon Investments, Inc.*, 2013 UT App 38, 299 P.3d 613. There, a creditor obtained a court judgment in 2001, at which time the judgment debtor owned property in Salt Lake County. *Id.* ¶¶ 2–3. Not long after, however, the debtor conveyed his interest in the property to a third party. *Id.* ¶ 3. And not until years later did the creditor begin efforts to execute the judgment by having the property sold. *Id.* ¶ 4.

¶46 Between the time the court entered the judgment and the time the debtor transferred the property, the creditor recorded the judgment in the registry of judgments but did not file an information statement with the judgment.[4] *Id.* ¶¶ 16–17. The issue was whether the judgment creditor created a lien on the property before the debtor conveyed it away. *Id.* ¶ 17. To answer that question, the court interpreted the 2001 version of the Judgment Act, *id.* ¶¶ 16–28, which, like the current version, provided that "[o]n or after July 1, 1997, a judgment . . . does not create a lien upon or affect the title to real property unless the judgment is recorded in the Registry of Judgments," *see id.* ¶ 15 (quoting UTAH CODE § 78-22-1.5(2) (2001)). The next subsection provided, "In addition to the requirement of [the previous subsection], any judgment that is recorded in the Registry of Judgments on or after September 1,

_____

[3] For examples of how section 201 has been amended over the years, see H.B. 46, 2011 Leg., Gen. Sess. (Utah 2011) (available at https://le.utah.gov/~2011/bills/static/HB0046.html); H.B. 315, 2014 Leg., Gen. Sess. (Utah 2014) (available at https://le.utah.gov/~2014/bills/hbillenr/hb0315.htm); H.B. 16, 2014 Leg., Gen. Sess. (Utah 2014) (available at https://le.utah.gov/~2014/bills/static/hb0016.html); H.B. 251, 2023 Leg., Gen. Sess. (Utah 2023) (available at https://le.utah.gov/~2023/bills/static/HB0251.html).

[4] There was some uncertainty about whether the judgment was recorded in the registry of judgments, but the court assumed that it was. *See T3 Pros., LLC v. Persimmon Invs., Inc.*, 2013 UT App 38, ¶¶ 16, 28, 299 P.3d 613.

14

Cite as: 2024 UT 22

Opinion of the Court

1998, shall include a separate information statement of the judgment creditor." *Id.* (quoting UTAH CODE § 78-22-1.5(3) (2001)).

¶47  The *T3* court concluded that under the 2001 version of the Judgment Act, "both requirements"—the registry-of-judgments and information-statement requirements—"must be satisfied to create a judgment lien." *Id.* ¶ 19. To support this conclusion, the court analyzed the relevant text by noting that (1) the legislature's "[u]se of the word 'shall' . . . indicates that filing an information statement is mandatory," and (2) the information-statement requirement "must be completed 'in addition' to" the registry-of-judgments requirement. *Id.* (cleaned up); *see also id.* ¶ 21. Even though the court's decision was based on the language of the 2001 version of the Judgment Act and turned on the information-statement requirement, the court added a footnote stating that "the 2002 version [of the Judgment Act] required that the judgment and the information statement be recorded in both the Registry of Judgments and in the county recorder's office." *Id.* ¶ 14 n.5.

¶48  According to the Mulligans, *T3* overtook *Kitches* as controlling law interpreting the Judgment Act. We disagree. Although the *T3* court included a footnote suggesting that the registry-of-judgments and county-recorder requirements of the 2002 Judgment Act are cumulative, *see id.*, that statement was dicta because it was "unnecessary to the decision in the case and therefore not precedential," *see Obiter Dictum*, BLACK'S LAW DICTIONARY (12th ed. 2024). A separate panel of the court, squarely presented with the issue, had held that those requirements are sequential and that judgments no longer need to be filed in the registry of judgments for a lien to attach. *See supra* ¶¶ 32–34. The *T3* court did not even mention *Kitches*, much less purport to overrule it. *Kitches* remained controlling law on the sequential nature of the recording requirements despite the footnote dicta in *T3*. We therefore presume that when the legislature amended section 201 post-*Kitches*, it saw no need to amend the recording requirements because it was satisfied with the prior judicial interpretation of those requirements in *Kitches*.

¶49  The Mulligans also argue that the court's analysis in *T3* favors a cumulative reading of the registry-of-judgments and county-recorder requirements. They maintain that *T3* "involved a deep analysis" of section 201 and "laid out a roadmap for how courts should analyze [the Judgment Act's] cumulative amendments over time." Although we are not bound to follow

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

court of appeals decisions, we often look to those decisions for their persuasive value. *Eaton Kenway, Inc. v. Auditing Div. of Utah State Tax Comm'n*, 906 P.2d 882, 885 (Utah 1995). But we see little persuasive value in *T3* relative to the issue in the present case.

¶50  The court in *T3* interpreted a different provision in the 2001 version of the Judgment Act, which did not contain the county-recorder requirement. *See* 2013 UT App 38, ¶ 15. The question before the court was whether the registry-of-judgments and information-statement requirements were cumulative. *See id.* ¶ 28. Unlike the county-recorder requirement at issue here, the information-statement requirement specified that it was "[i]n addition to" the registry-of-judgments requirement found in section 201(2). *Id.* ¶ 12 (quoting Utah Code § 78-22-1.5(3) (2001)). This additional language, which expressly made the registry-of-judgments and the information-statement requirements cumulative, easily distinguishes *T3* from both *Kitches* and the present case.

¶51  We endorse *Kitches*' holding that, since July 1, 2002, a lien on real property is created by recording the judgment, along with other required information, with the county recorder where the real property is located. Alum Rock therefore did not need to record the judgment in the registry of judgments, and it created a lien by recording the judgment in the county recorder's office.

## II. BRETT OWNED THE PROPERTY FOR PURPOSES OF ALUM ROCK'S LIEN ATTACHING

¶52  The Mulligans argue that, under the Judgment Act, "[t]here is no basis for any judgment lien against the Property" because the trust, not Brett, held title to the property. Before explaining why we disagree, we pause to address the Mulligans' criticism of the district court's analysis.

¶53  The Mulligans criticize the district court for relying on rule 64E of the Utah Rules of Civil Procedure, rather than the Judgment Act, in concluding that the property is "subject to the execution." Rule 64E allows writs of execution to be issued against property that is "*in the possession or under the control of* the defendant." UTAH R. CIV. P. 64E(a) (emphasis added). The Judgment Act, in contrast, sets the conditions under which a judgment lien attaches in the first instance, providing that real property subject to a judgment lien "includes all the real property . . . *owned or acquired* at any time by the judgment debtor during the time the judgment is effective." UTAH CODE § 78B-5-202(7)(c)(ii) (2021) (emphasis added).

Cite as: 2024 UT 22

Opinion of the Court

¶54  The Mulligans argue that the district court should have focused its analysis on the Judgment Act, rather than on rule 64E, which they contend "has nothing whatsoever to do with whether the Foreign Judgment against Brett personally could become a lien against Property he never owned." But because they principally relied on rule 64E, not the Judgment Act, before the district court, the court's reliance on rule 64E was understandable. In their principal filing below, the Mulligans cited rule 64E and quoted, with emphasis, the rule's language regarding possession and control. In contrast, they mentioned the Judgment Act's "owned or acquired" language only in passing in a footnote.

¶55  It is true that the Mulligans argued to the district court that the property was "never . . . *owned* by Brett Del Valle in his individual and personal capacity." (Emphasis added.) Yet they never tied that argument to the language of the Judgment Act, and the thrust of their argument below was that the writ "was not properly available under the express terms" of the "governing Utah Rules of Civil Procedure." In its decision, the court rejected that rule-based argument because rule 64E "does not contain any provision limiting its application to owners of property."

¶56  On appeal, the Mulligans distance themselves from their prior reliance on rule 64E and embrace the Judgment Act's "owned or acquired" language.[5] Under the Judgment Act, real property subject to a judgment lien "includes all the real property. . . owned or acquired at any time by the judgment debtor during the time the judgment is effective."[6] *Id.* To the Mulligans, holding title is the essence of ownership. Because Brett "was never in title," they maintain that "he never owned the Property" and the lien never attached to it.

¶57  When the judgment was entered against Brett, the property was held by the Del Valle Family Trust, which is a revocable trust that Brett formed with his wife, Traci. "A trust is a form of ownership in which the legal title to property is vested in a trustee, who has equitable duties to hold and manage it for the benefit of the beneficiaries." *Cont'l Bank & Tr. Co. v. Country Club Mobile Ests., Ltd.*, 632 P.2d 869, 872 (Utah 1981). A revocable trust is "[a] trust in which the settlor" (the person who creates the trust)

---

[5] Alum Rock has not challenged this issue as unpreserved.

[6] The Utah Code defines "[r]eal property" as "any right, title, estate, or interest in land." UTAH CODE § 57-1-1(3).

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

"reserves the right to terminate the trust and recover the trust property and any undistributed income." *Revocable Trust*, BLACK'S LAW DICTIONARY (12th ed. 2024). One standard estate-planning practice is to form "[a] revocable trust in which the settlor[s] . . . are also the trustees and manage the trust for their own benefit during their lifetimes." *West v. West (In re Est. of West)*, 948 P.2d 351, 355 (Utah 1997). When done properly, this strategy serves to "avoid probate of the assets while allowing the settlor to retain control of the trust property during his or her own lifetime." *See id.*

¶58  Under the terms of the Del Valle Family Trust, either Brett or Traci, as co-settlors, may revoke the "community estate" (community property held in trust), wholly or partially. Upon revocation, this property would be delivered to Brett and/or Traci and would continue to be their community property. Similarly, the "separate estate" (separate property and quasi-community property held in trust) may be revoked unilaterally by Brett or Traci, whichever of them contributed the property to the trust; and upon revocation, the property would be delivered to the contributor.

¶59  Brett and Traci may also amend the trust and transfer property from it. While they are both living, Brett and Traci may amend "any of the terms of [the trust] by an instrument in writing signed by [Brett and Traci] and delivered to the Trustee." And they may—acting jointly for community property, or individually for separate and quasi-community property—"transfer property . . . out of the trust estate to any other person or organization." In addition, as trustees, Brett and Traci may hold, manage, control, lease, and encumber trust property. With this backdrop, the question is whether, for purposes of the Judgment Act, Brett "owned" the property when the judgment was entered against him, even though the trust held title to it. *See* UTAH CODE § 78B-5-202(7)(c)(ii) (2021).

¶60  Because "the settlor of a revocable trust necessarily retains the functional equivalent of ownership of the trust assets," 6 AUSTIN WAKEMAN SCOTT ET AL., SCOTT AND ASCHER ON TRUSTS § 15.4.2 (6th ed. 2024), "[i]n . . . substantive respects (such as creditors' rights), the property held in a revocable trust is ordinarily to be treated as if it were property of the settlor," RESTATEMENT (THIRD) OF TRUSTS § 25 cmt. a. (AM. L. INST. 2003). Thus, in certain situations—"by reason of a power of revocation, appointment, or withdrawal"—a person may have "the equivalent of ownership of

Cite as: 2024 UT 22

Opinion of the Court

the trust property, even though the legal title to the property is held by the trustee." *See id.* § 74 cmt. a (AM. L. INST. 2007).

¶61  In effect, the Mulligans argue that the trust shielded the property from Brett's judgment creditor, Alum Rock. But under Utah law, "[d]uring the lifetime of the settlor, the property of a revocable trust is subject to the claims of the settlor's creditors." UTAH CODE § 75-7-505(1). That approach is consistent with the general rule that "property held in [a revocable] trust is subject to the claims of creditors of the settlor . . . if the same property belonging to the settlor . . . would be subject to the claims of the creditors." RESTATEMENT (THIRD) OF TRUSTS § 25 cmt. e (AM. L. INST. 2003). And other courts "generally have concluded that the assets of a revocable trust are properly subject to the claims of the settlor's creditors." *Pandy v. Indep. Bank*, 372 P.3d 1047, 1050 (Colo. 2016) (en banc) (collecting cases).

¶62  In short, because settlors of revocable trusts can access the full bundle of property-rights sticks, they cannot keep those sticks from their creditors. Here, as co-settlor and co-trustee, Brett retained the hallmarks of ownership over the property. As the district court noted, Brett and Traci could, at any time, "revoke the Trust, . . . amend it, . . . [or] transfer property from it." Under these circumstances, we hold that, for purposes of the Judgment Act, Brett owned the property at the time the judgment was entered against him.[7] Accordingly, Alum Rock's lien attached to the property when Alum Rock recorded the lien with the county recorder.

### III. THE MULLIGANS HAVE NOT IDENTIFIED A LIMITATION ON THE DISTRICT COURT'S AUTHORITY TO ISSUE A WRIT OF EXECUTION ON PROPERTY LOCATED IN A COUNTY OUTSIDE THE THIRD DISTRICT

¶63  The Mulligans contend that the Third District Court "lacked authority and jurisdiction" to issue the writ because the property sits in Weber County, which is outside the court's geographic boundaries. Because they have not identified a relevant limitation on the district court's jurisdiction to issue the writ, we reject that argument.

---

[7] Neither side has addressed whether Traci's joint ownership of the property has any effect on the judgment lien. For that reason, we express no opinion on the matter.

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

¶64  This matter arose when Alum Rock filed a notice of judgment with the Third District Court. There is no question that this was proper, because under the Foreign Judgment Act a foreign judgment like Alum Rock's California judgment "may be filed with the clerk of any district court in Utah." UTAH CODE § 78B-5-302(2). Once Alum Rock domesticated the judgment, the judgment inherited "the same effect . . . as a judgment" of a Utah district court. *Id.* § 78B-5-302(3). Such a judgment may be enforced through a writ of execution. *Id.* § 78A-5-102 ("A district court judge may issue all extraordinary writs and other writs necessary to carry into effect the district court judge's orders, judgments, and decrees.").

¶65  The Mulligans have not identified any relevant law that would limit a district court's authority to issue a writ of execution to be effectuated in a county outside that court's judicial district. They first cite a venue statute, which provides that "[a]ctions" for certain "causes involving real property shall be tried in the county in which the subject of the action . . . is situated." *Id.* § 78B-3-301(1) (2021). Those "causes" are

> for the recovery of real property, or of an estate or interest in the property; . . . for the determination . . . of the right or interest in the property; . . . for injuries to real property; . . . for the partition of real property; and . . . for the foreclosure of all liens and mortgages on real property.

*Id.*

¶66  But the Mulligans' reliance on this statute is misguided because no "[a]ction[] . . . involving real property" is at issue here. *See id.* Indeed, no cause of action is at issue at all. The causes of action that gave rise to Alum Rock's judgment against Brett (for breach of contract) were brought in California and, from what we can tell, had nothing to do with the Weber County property. Simply put, this proceeding to enforce that judgment through a writ of execution is not an action involving real property governed by the venue statute.[8]

---

[8] For the same reason, the caselaw that the Mulligans cite regarding "action[s]" that "involve[] title to real property" misses the mark. *See Calder v. Third Jud. Dist. Ct.*, 273 P.2d 168, 171 (Utah 1954).

Cite as: 2024 UT 22

Opinion of the Court

¶67  The Mulligans also cite rule 64 of the Utah Rules of Civil Procedure as an additional limitation on the district court's authority. According to them, a distinction in word choice between two sentences in rule 64(d)(1) "precludes courts in one county from ordering seizure of real property located in a different county." Rule 64(d)(1) explains how court clerks are to issue writs for real and personal property:

> If the writ directs the seizure of real property, the court clerk will issue the writ to the sheriff of the county in which the real property is located. If the writ directs the seizure of personal property, the court may issue the writ to an officer of any county.

UTAH R. CIV. P. 64(d)(1). From this language, the Mulligans glean that "the rule expressly authorizes any court in any county in Utah to direct the seizure . . . of *personal property* located in any county in Utah" but does not do the same for *real property*.

¶68  Although the Mulligans are correct that the rule distinguishes between writs of execution for personal property versus real property and requires that the latter be directed to the "sheriff of the county in which the real property is located," *see id.*, the rule says nothing about which court may issue the writ. Rule 64(d)(1) contains no requirement that the district court issuing the writ be in the same county as the real property. If anything, by specifying that writs involving real property must be "issue[d] . . . to the sheriff of the county in which the real property is located," *see id.*, the rule seems to presuppose that the issuing court may be located elsewhere.

¶69  The Mulligans have not established that the district court exceeded its authority by issuing the writ. Neither the venue statute nor rule 64(d)(1) prohibits a district court from issuing a writ of execution for real property located in another Utah judicial district.

## CONCLUSION

¶70  Although Alum Rock needed to comply with the Judgment Act's requirements for creating a lien, filing in the registry of judgments was not one of those requirements. The lien attached to the property once Alum Rock recorded the judgment with the Weber County Recorder's Office. When the judgment was recorded, Brett owned the property for purposes of the Judgment Act because the property's title was held in a revocable trust settled by Brett and his wife. And the Mulligans have not shown that the

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

district court lacked authority to issue the writ. Accordingly, we affirm.

————————