# EXHIBIT 12
## (Declaration of Felicia Canfield)

Bradley L. Tilt (07649)
FREEMAN LOVELL, PLLC
4568 S Highland Drive, Suite 290
Salt Lake City, Utah 84117
Office: (385) 355-4826
bradley.tilt@freemanlovell.com
*Attorney for Plaintiffs*

Felicia B. Canfield (09686)
CANFIELD LAW LLC
2413 Newton Avenue
Cody, WY 82414
Cell: (307) 228-5986
canfieldlawllc@gmail.com
*Attorney for Plaintiffs*

---

## IN THE SECOND JUDICIAL DISTRICT COURT
## WEBER COUNTY, STATE OF UTAH

| | |
|---|---|
| MOLLY J. MULLIGAN; and JOHN P. MULLIGAN, <br><br> Plaintiffs <br><br> v. <br><br> SINGLE BOX, L.P.; SB AB WEST LOOP, L.P.; BRETT H. DEL VALLE and TRACI M. DEL VALLE, as Co-Trustees of The Del Valle Family Trust dated October 30, 2002, <br><br> Defendants. | **DECLARATION OF FELICIA B. CANFIELD** <br><br><br> Civil No. 210904774 <br><br> Judge: Craig Hall |

I, Felicia B. Canfield, declare and state as follows:

1.    I am over the age of 18 years, and am fully competent to testify.

2.    I am currently employed as an attorney with Canfield Law LLC.

3.      I am, and since 2003 have been, an attorney duly licensed in the State of Utah.

4.      I am personally familiar with the above-captioned action, and have been an attorney of record for Plaintiffs throughout the above-captioned case.

5.      I am a custodian of, and I have reviewed and am familiar with all of the documents that are referenced in this declaration as discussed below.

6.      In and throughout the past more than twenty-one years, my legal practice has centered primarily on real property related litigation, including particularly real property title issues and cases.

7.      True and correct copies of the following documents and filings are attached to this Declaration, which is filed in support of the contemporaneously filed *Motion of Plaintiffs for Leave to File a Supplemental Complain*t:

1.  "**Exhibit 1**" contains the *Notice of Judgment* filed by Alum Rock Riverside, LLC ("**Alum Rock**") on October 23, 2020 in the Third Judicial District Court, Salt Lake County, in Case No. 20692704 (the "**Third District Court Action**") which they claim was recorded on October 23, 2020 as Entry No. 3101770 in the office and records of the Weber County Recorder (the "**Alum Rock Claimed Judgment Lien**");

2.  "**Exhibit 2**" contains the *Writ of Execution* filed by Alum Rock against the Mulligan Property in the Third District Court Action;

3.  "**Exhibit 3**" contains the *Reply and Request for Hearing* filed by Plaintiffs on July 7, 2021 in the Third District Court Action;

4.  "**Exhibit 4**" contains the *Ruling & Order on Mulligans' Reply to Writ of Execution* entered in the Third District Court Action;

5.  "**Exhibit 5**" contains a copy of *Molly J. Mulligan and John P. Mulligan v. Alum Rock Riverside, L.L.C.*, 2024 UT 22 (the "**Appeal Decision**");

6.  "**Exhibit 6**" contains the *Order Staying Proceedings to Enforce Judgment Against Mulligans' Property Pending Appeal* entered in the Third District Court Action; and,

7.  "**Exhibit 7**" contains the Plaintiffs' proposed Supplemental Complaint, in Redline and clean formats.

I declare under criminal penalty under the law of Utah that the foregoing is true and correct.

DATED this 27th day of August, 2024.

**CANFIELD LAW LLC**

/s/ Felicia B. Canfield
Felicia B. Canfield
*Attorney for Plaintiffs*

## SERVICE CERTIFICATE

I certify that on August 27, 2024, I caused true and correct copies of the forgoing **DECLARATION OF FELICIA B. CANFIELD, together with all referenced exhibits thereto,** to be served in the manner indicated to the following parties at the addresses listed below:

| | |
|---|---|
| R. Jeremy Adamson<br>Chad S. Pehrson<br>Kunzler Bean & Adamson, PC<br>50 W. Broadway, 10th Floor<br>Salt Lake City, UT 84101<br>jadamson@kba.law<br>cpehrson@kba.law<br>*Attorneys for Single Box, L.P.*<br>*and SB AB West Loop, L.P.* | _____Hand Delivery<br>_____First Class, United States Mail,<br>          Postage Prepaid<br>  X   E-filing via GreenFiling<br>_____E-filing via CM/ECF<br>_____Email<br>_____Other:_____ |
| Bradley L. Tilt<br>Freeman Lovell, PLLC<br>4568 S Highland Drive, Suite 290<br>Salt Lake City, Utah 84117<br>Office: (385) 355-4826<br>bradley.tilt@freemanlovell.com<br>*Attorneys for Plaintiffs* | _____Hand Delivery<br>_____First Class, United States Mail,<br>          Postage Prepaid<br>  X   E-filing via GreenFiling<br>_____E-filing via CM/ECF<br>_____Email<br>_____Other:_____<br>_____ |

_/s/Felicia B. Canfield_____
Felicia B. Canfield

4

# EXHIBIT  1

The Order of the Court is stated below:
Dated: October 23, 2020          At the direction of:
      03:13:01 PM            /s/  ADAM T. MOW
                                  District Court Judge
                      by
                            /s/  SCOTT KRIM
                                  District Court Clerk

Benjamin D. Johnson (10275)
Bennett Tueller Johnson & Deere
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121-5027
Telephone: (801) 438-2000
Facsimile: (801) 438-2050
Email: ben.johnson@btjd.com
*Attorneys for Plaintiff*

**IN THE THIRD JUDICIAL DISTRICT COURT,
SALT LAKE COUNTY, STATE OF UTAH**

| | |
|---|---|
| ALUM ROCK RIVERSIDE LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>PRP INVESTORS MADISON, LLC, a California limited liability company, and BRETT DEL VALLE, an individual, and DOES 1 through 50 inclusive,<br><br>        Defendants. | **NOTICE OF JUDGMENT**<br><br>Case No. 206927043<br><br>Judge Adam Mow |

PLEASE TAKE NOTICE that the judgment filed from the Superior Court of California, County of Riverside, State of California, has been filed in the 3RD JUDICIAL DISTRICT COURT OF UTAH under the provisions of the UTAH FOREIGN JUDGMENT ACT (UCA 78B-5-301). Under this act, THIS JUDGMENT HAS THE SAME LEGAL FORCE AND EFFECT AS A JUDGMENT RENDERED BY THE UTAH STATE COURT.

A hearing to contest the validity of the registered determination shall be requested within 20 days after service of notice.

1

Failure to contest the registration will result in confirmation of the foreign order.

Executed on this 13th day of October, 2020.

Bennett Tueller Johnson & Deere

/s/ Benjamin D. Johnson
Benjamin D. Johnson
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE BY MAILING

STATE OF UTAH           :
                        ss.
COUNTY OF SALT LAKE     :

_____, being first duly sworn, upon oath states that he/she has mailed a

copy of the notice of judgment to the judgment debtor:

Brett Del Valle
1803 E. Bay Avenue
Newport Beach, CA 92661

PRP Investors Madison, LLC
c/o Brett Del Valle, Reg. Agent
417 29th Street
Newport Beach, CA 92663

BDV, Inc.
c/o Brett Del Valle, Reg. Agent
417 29th Street
Newport Beach, CA 92663

BDV, LLC

2

c/o Brett Del Valle, Reg. Agent
417 29th Street
Newport Beach, CA 92663

Dated this _____ day of _____, 2020.

_____
Deputy Clerk

3

U C W

JUN 2 3 2020

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUN 1 9 2020

Lucero Zuniga

1
2
3
4
5
6
7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF RIVERSIDE

10                       PALM SPRINGS COURTHOUSE

11
12

13  ALUM ROCK RIVERSIDE LLC, a            CASE NO.  RIC 1601942
    California limited liability company
14                                        [PROPOSED] FINAL JUDGMENT AFTER
                                          COURT TRIAL
              Plaintiff,
15
16        v.

17  PRP INVESTORS MADISON, LLC, a         Trial:   November 18, 2019 [POST]
    California Limited Liability Company,  Dept:    PS1
    and BRETT DEL VALLE, an individual     Judge:   Hon. Kira L. Klatchko
18  and DOES 1 through 50 inclusive,

19            Defendants.

20
21  AND RELATED CROSS-
    COMPLAINTS
22

23        This matter came on for Trial on November 18, 2019 before this Court and assigned to

24  Department PS1 of the Riverside County Superior Court, the Honorable Kira L. Klatchko

25  presiding. Trial proceeded each day through December 11, 2019. Each case was submitted, with

26  closing arguments on December 11, 2019 and December 18, 2019

27
28

1    Kenneth R. Van Vleck, Esq. of GCA Law Partners LLP appeared for plaintiff Alum Rock

2    Riverside, LLC ("Alum Rock"). Donald J. Hamman, Esq. and Eve A. Brackmann, Esq. of Stuart

3    Kane LLP appeared for defendants Brett Del Valle, PRP Investors Madison, LLC, BDV, Inc., and

4    BDV, LLC.

5    After close of evidence, BDV, Inc., and BDV, LLC dismissed their cross-complaint and

6    Brett Del Valle and PRP Investors Madison, LLC dismissed their cross-complaint.

7    The Court reviewed and considered the testimony, evidence, demeanor, and credibility of

8    witnesses and arguments presented to the Court. On January 2, 2020, the Court filed its Tentative

9    Decision and Minute Order, which were served that day by the Clerk of the Court.  Defendants

10   timely requested a statement of decision under Cal. Code of Civil Procedure § 632. On February

11   11, 2020, the Court filed its Proposed Statement Of Decision. On February 26, 2020, Plaintiff

12   served the Proposed Statement of Decision by mail. No party objected. The Proposed Statement

13   of Decision became the Statement of Decision by operation of law.

14   The Court hereby renders its FINAL JUDGMENT:

15   On the First Cause of Action for Breach of the 2012 Settlement Agreement: JUDGMENT

16   IS HEREBY ENTERED for plaintiff Alum Rock, LLC against PRP Investors Madison, LLC and

17   its alter ego Brett Del Valle for $2,834,276.95.

18   On the Fourth Cause of Action for Breach of the 2009 Indemnity Agreement:

19   JUDGMENT IS HEREBY ENTERED for plaintiff Alum Rock, LLC against PRP Investors

20   Madison, LLC; BDV, Inc.; BDV, LLC; and Brett Del Valle for $1,504,687.50.

21   The Court found insufficient evidence to support the Second Cause of Action for Breach

22   of Fiduciary Duty and the Third Cause of Action for Unjust Enrichment.

23

24   Dated: _3/18/20_

Hon. Kira L. Klatchko
JUDGE OF THE SUPERIOR COURT

25

26

27

28

-1-

[PROPOSED] JUDGMENT AFTER COURT TRIAL - CASE NO.: 1601942

This must be in red to be a
"CERTIFIED COPY"

Each document to which this certificate is attached
is certified to be a full, true and correct copy of the
original on file and of record in my office.

Superior Court of California
County of Riverside

By _____
DEPUTY

Dated:_____ 7/20/3c

Certification must be in red to be a
"CERTIFIED COPY"

# EXEMPLIFICATION CERTIFICATE

The documents to which this certificate is attached are full, true and correct copies of the originals on file and of record in my office. All of which we have caused by these presents to be exemplified, and the seal of our Superior Court of California, County of Riverside to be hereunto affixed.

IN WITNESS WHEREOF, I have hereto set my hand and affixed the Seal of the said Court,

This _____ day of _____, _____

_____
W. Samuel Hamrick Jr., Clerk
Superior Court of California, County of Riverside


I, _____ Judge Harold W. Hopp _____, Judge of the Superior Court of the State of California, in and for the County of Riverside, do hereby certify that W. SAMUEL HAMRICK JR., whose name is subscribed to the preceding exemplification, is the Clerk of the said Superior Court of the State of California, in and for the County of Riverside, and that full faith and credit are due to his official acts. I further certify, that the seal affixed to the exemplification is the seal of our said Superior Court and that the attestation thereof is in due form and according to the form of attestation used in this State.

Date _____, _____
Judge of the Superior Court of California
County of Riverside

28 USCA, Sec. 1738
Form No. 334 (1/90; 10/97; 2/99; 3/00; 10/00; 5/01;1/03; 4/03; 6/03)

## CERTIFICATE OF NOTIFICATION

I certify that a copy of the attached document was sent to the following people for case 206927043 by the method and on the date specified.

MAIL: BRETT DEL VALLE 1803 E. BAY AVENUE NEWPORT BEACH, CA 92661

10/28/2020          /s/ SCOTT KRIM

Date: _____          _____

                                                Signature

EXHIBIT 2

Benjamin D. Johnson (10275)
BENNETT TUELLER JOHNSON & DEERE
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Facsimile: (801) 438-2050
Email: ben.johnson@btjd.com

*Attorneys for Plaintiff*

---

**IN THE THIRD JUDICIAL DISTRICT COURT**

**IN AND FOR SALT LAKE COUNTY, STATE OF UTAH**

---

| | |
|---|---|
| ALUM ROCK RIVERSIDE LLC,<br><br>     Plaintiff,<br><br>vs.<br><br>PRP INVESTORS MADISON, LLC, a California limited liability company, and BRETT DEL VALLE, an individual, and DOES 1 through 50 inclusive,<br><br>Defendants. | **APPLICATION FOR WRIT OF EXECUTION**<br><br><br>Case No. 206927043<br><br>Judge Adam Mow |

Judgment Creditor, by and through counsel, states as follows:

(1)    On October 23, 2021, a judgment against debtor Brett Del Valle was entered in the amount of $4,338,964.45.

(2)    The amount due is:

| | |
|---|---|
| Amount of Original Judgment | $4,338,964.45 |
| Pre-Judgment Interest | $0.00 |
| Post-Judgment Interest | TBD |
| Cost to file Application for Writ | $50.00 |

| Cost to serve this Writ | $75.00 |
|---|---|
| Filing and Service Fees for other Writs (Attach receipts.) | $0.00 |
| Subtotal | $4,339,089.45 |
| Less Payments Made | $0.00 |
| Total Amount Due | $4,339,089.45 |

(3)    The judgment debtor is:

| Name | Brett Del Valle |
|---|---|
| Address | 417 29th Street<br>Newport Beach, CA 92663<br>--or--<br>1201 Estelle Lane<br>Newport Beach, CA 92660-4904 |
| Social security number (Last 4 digits only, if known) | xxx-xx-2003 |
| Driver's license number and state of issuance (Last 4 digits only, if known) | N8067219 |
| Year and month of birth (if known) | 12/1961 |

(4)    I request that a Writ of Execution be issued directing the Sheriff or Constable to seize and sell enough of the judgment debtor's property described below to satisfy the judgment. I request that the Writ be served on the debtor and on the people named in Paragraphs (5) and (6), along with the attached forms.

(5)    I request that the Writ of Execution direct the Sheriff or Constable to seize and sell the debtor's following personal property:

| Description | Location | Estimated Value | Name & address of anyone other than debtor claiming an interest |
|---|---|---|---|
|  |  |  |  |

(6)    I request that the Writ of Execution direct the Sheriff to seize and sell the debtor's following real property.

| Property Description or Address | Estimated Value | Name and address of anyone other than debtor claiming an interest |
|---|---|---|
| 1453 S. Basinview Road, Huntsville, Utah 84317<br><br>Parcel No. 20-119-0007<br><br>Legal:  Lot 7, BASINVIEW ESTATES CLUSTER SUBDIVISION 1ST AMENDMENT | $1,800,000.00 | Molly J. Mulligan<br>John P. Mulligan<br>51 Chestnut Avenue<br>Clarendon Hills, IL 60514 |

I have not included any non-public information in this document.

I declare under penalty of Utah Code Section 78B-5-705 that everything stated in this document is true and correct.

Date _____ 6/22/2021    Sign here ▶ _____ /s/ Benjamin D. Johnson

Benjamin D. Johnson, Attorneys for Plaintiff

Typed or printed name _____

**The Order of the Court is stated below:**
**Dated:**  June 22, 2021          /s/   KATHERINE CARLSON
              12:41:19 PM                District Court Clerk

Benjamin D. Johnson (10275)
BENNETT TUELLER JOHNSON & DEERE
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Facsimile: (801) 438-2050
Email: ben.johnson@btjd.com

*Attorneys for Plaintiff*

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| ALUM ROCK RIVERSIDE LLC, | **WRIT OF EXECUTION** |
| Plaintiff, | |
| vs. | |
| PRP INVESTORS MADISON, LLC, a California limited liability company, and BRETT DEL VALLE, an individual, and DOES 1 through 50 inclusive, | Case No. 206927043 Judge Adam Mow |
| Defendants. | |

To the SHERIFF OR CONSTABLE:

(1)    A judgment has been entered against the judgment debtor. After calculation of interest, costs and payments, the judgment debtor owes $4,339,089.45.

(2)    You are directed to seize and sell enough of the judgment debtor's non-exempt property described in Paragraphs (5) and (6) of the Application for Writ of Execution to satisfy that amount.

(3)    You are directed to serve this Writ and all attachments on the debtor and on the people named in Paragraphs (5) and (6) of the Application for Writ of Execution.

---

(4)    You are to return this Writ within 10 days after receiving it, with a signed account of your actions in executing this Writ.

**HEREBY ENTERED BY THE COURT**

**Effective on the Date When the Court Stamp Is Affixed to the First Page of this Document**

EXHIBIT 3

Bradley L. Tilt (07649)
FREEMAN LOVELL, PLLC
4568 S Highland Drive, Suite 290
Salt Lake City, Utah 84117
office: 385-355-4826
bradley.tilt@freemanlovell.com
*Attorneys for Molly J. Mulligan and John P. Mulligan*

I am the ☐ Plaintiff/Petitioner
          ☐ Defendant/Respondent
          ☐ Person claiming a property interest
          ☒ Attorney for the
               ☐    Plaintiff/Petitioner
               ☐    Defendant/Respondent
               X    Person claiming a property interest and my Utah Bar number is 7649

IN THE THIRD JUDICIAL DISTRICT COURT
IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| ALUM ROCK RIVERSIDE LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>PRP INVESTORS MADISON, LLC, a<br>California limited liability company;<br>BRETT DEL VALLE, an individual;<br>and DOES 1 through 50 inclusive,<br><br>Defendants. | **REPLY AND REQUEST FOR HEARING**<br><br>Case No. 206927043<br><br>Judge Adam Mow |

*(1)*    *X*    I have read the Notice of Execution and Exemptions form. I understand that, by filing this form, I cannot object to the judgment that I owe money to the creditor. I am filing this form because ***I believe that the creditor has improperly seized my clients' property to pay the judgment.***

*(2)*    *X*    ***My clients request that this matter be scheduled for a hearing***.

***(3)    X    Statements in the Application for Writ of Execution are inaccurate because:***

Paragraph 1 of the *Application for Writ of Execution* appears to **correctly state** that the underlying judgment which Plaintiff seeks to collect is "a judgment against debtor Brett Del Valle" in his individual and personal capacity. *See also e.g.*, the underlying foreign judgment, which Plaintiff filed in this above-named Utah court on October 13, 2020 (identifying "Brett Del Valle, an individual" as a defendant in its caption, and entering judgment for various amounts against "Brett Del Valle"); the Plaintiff's *Judgment Information Statement* also filed herein on October 13, 2020 (stating at paragraph 5: "Judgment Debtor Brett Del Valle is a natural person").

But the Plaintiff's *Application for Writ of Execution* then goes on to **incorrectly state** that the real property located at and commonly known as 1453 S. Basinview Road, Huntsville, Utah 84137, and more particularly described (in part) as Lot 7, Basinview Estates Cluster Subdivision 1st Amendment, and which bears Parcel No. 20-119-0007 (which real property is referred to hereinafter as the "**Property**"), is "the judgment debtor's property"; the *Application for Writ of Execution* then **incorrectly requests** that a Writ of Execution be issued to direct the Sheriff to seize and sell the Property purportedly as if it was "the debtor's … real property."  ¶¶ 4 and 6 of the Plaintiff's *Application for Writ of Execution*.

Those statements and requests in Plaintiff's *Application for Writ of Execution* are **incorrect, inaccurate, and improper, because** the Property is not presently – and it never has been – the judgment debtor's real property; the Property is not presently – and it never has been – owned by Brett Del Valle in his individual and personal capacity.

The relevant chain of title to the Property is as follows.  In the year 2007, the Property was conveyed from Basinview Development, LC to "Brett H. Del Valle and Traci M. Del Valle, as Co-Trustees of The Del Valle Family Trust dated October 30, 2002" (the "**Trust**").  Also in 2007, the Property was conveyed from the Trust to itself.  The Trust continued to own the Property at all times from 2007 until May 11, 2021, when the Trust then conveyed the Property to the Mulligans.  The Property has never been owned by "Brett Del Valle, an individual," as was **incorrectly and inaccurately** claimed in the Plaintiff's *Application for Writ of Execution*, and certainly not at any time since the foreign judgment was entered by the foreign court and/or filed with this Utah Court, both of which were in the year 2020.[1]

---

[1] Plaintiff's above-referenced *Judgment Information Statement* filed herein on October 13, 2020, also appears to identify the above-named Defendant PRP Investors Madison, LLC also as a judgment debtor on the foreign judgment that was filed with this above-named Utah Court.  The underlying foreign judgment, which Plaintiff filed in this above-named Utah court on October 13, 2020, as referenced in the main text above, appears to name PRP Investors Madison, LLC among the defendants in the caption, and at page two also appears to identify "PRP Investors" as one of the parties against whom judgment was entered in that foreign court.  But neither PRP Investors Madison, LLC, nor "PRP Investors" has at any time ever owned the Property, either; the Property is not presently, and never has been, that judgment debtor's property, either.

**_(4)    X    The Writ of Execution was issued improperly because:_**

Rule 64E(a) of the Utah Rules of Civil Procedure states (with emphasis added): "A writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment".  Rule 64(a)(2) states that for purposes of Rule 64E (among other rules): "'Defendant' means the party against whom a claim is filed or against whom judgment has been entered."  Rule 64(a)(1) further states: "'Claim' means a claim, counterclaim, cross claim, third party claim or any other claim."

As applied to the case at bar, those governing rules state, provide, and mean that a Writ of Execution is available only to seize property in the possession or under the control of the judgment debtor "Brett Del Valle, an individual" after the entry of the judgment at issue.  However, as shown under item (3) hereinabove, and by this reference incorporated here, "Brett Del Valle, an individual" does not own the Property presently, has not owned it following the entry of the judgment at issue, and indeed he has never owned the Property.   Further, ever since their purchase of it in May of 2021, the Property has been in the possession and under the control of the Mulligans exclusively, and not in the possession or under the control of "Brett Del Valle, an individual".  A Writ of Execution as to the Property, therefore, was not properly available under the express terms of those governing Utah Rules of Civil Procedure.  Accordingly, the Writ of Execution in this case was issued improperly.[2]

Additionally, the Writ of Execution also was issued improperly because the foreign judgment domesticated to this above-named Court in Salt Lake County, Utah, is not, and as a matter of law it cannot be, any lien or encumbrance upon nor can it otherwise affect the Property which is located in Weber County, Utah.  Utah statutory law clearly, expressly, and unequivocally provides that a judgment "does not create a lien upon or affect the title to real property unless the judgment is filed in the Registry of Judgments of the office of the clerk of the district court of the county in which the property is located."  Utah Code § 78B-5-201(2) (emphases added).  It further expressly provides that even then, "a judgment entered in a district court does not create a lien upon or affect the title to real property unless the judgment or an abstract of judgment is recorded in the office of the county recorder in which the real property of the judgment debtor is located."  Id. § -201(3)(a) (emphases added).  It further and provides and confirms that a judgment can become a lien upon real property only if the above-referenced filings and recordings are made in the county in which the property is located, and that the property affected by the judgment is only the property that is located "in the county in which the recording … occurs.  Id. § -202(7)(c)(i).[3]  Likewise, Utah's Foreign Judgment Act also and

---

[2]  Even if the Writ of Attachment in this case was issued purportedly as against apparent judgment debtor PRP Investors Madison, LLC, or "PRP Investors", it still would be improperly issued for all of the same reasons as set forth in items (4) and (3) of the main text above, and in footnote 1 above, all of which are by this reference incorporated as if fully set forth here, showing neither of those entities own, nor ever owned, the Property, either, nor is it under the possession or control of either of them.

[3] That same Utah Code Section 78B-5-202(7)(c) & (c)(ii) also and further confirm that even if all of those requirements are met, the judgment then affects only real property in that county "of the judgment debtor" and specifically such property "owned or acquired at any time by the judgment debtor during the time the judgment is effective."  (Emphases added).  As shown above and throughout this Reply, and incorporated

further provides that even if a foreign judgment like the one at issue in this case is otherwise properly domesticated to Utah, nevertheless it still "is subject to the same procedures, defenses … as a judgment of a district court of this state," including particularly but without limitation that it becomes a lien upon real property only if (among other things) the foreign judgment "is recorded in the office of the county recorder where the property of the judgment debtor is located, as provided in Section 78B-5-202." Utah Code § 78B-5-302(3) & -305(1)(c).

Because real property can be encumbered or otherwise affected by a judgment only if (i) the judgment (foreign or otherwise) is filed in the court in the county in which the property is located; and (ii) the judgment and certain additional documents also are recorded in the office of the county recorder in which the real property is located – and because neither of those two things occurred in this case – the Writ of Execution purportedly to execute upon a judgment was issued improperly.

**(5)    X    All [or this part: $10,000] of the property is exempt because:**
Even if the Mulligans' Property could properly be subjected to the Writ of Execution issued in this case (which it cannot be), the Mulligans would be entitled to a homestead exemption in and to the Property under and pursuant to Utah Code § 78B-5-503(2)(b)(i).

**(6)    X    My clients are not the judgment debtor, and they claim the following ownership in all or part of the property. (Explain.)**
By this reference Mulligans incorporate as if fully set forth here all of the contents and discussion set forth above in this Reply, including in particular, but without limitation, the response to and under paragraph (3) hereinabove. As set forth more fully above, the Property that is the subject of the Writ of Execution is owned by Mulligans, in its entirety, and exclusively.

**(7)    X    I have attached documents that support my client's claims.**

I have not included any non-public information in this document.

Dated July 7, 2021.                    FREEMAN LOVELL, PLLC

                                        /s/ Bradley L. Tilt
                                        Bradley L. Tilt
                                        *Attorneys for Molly J. Mulligan*
                                        *and John P. Mulligan*

here by this reference, the Property that is the subject of the Writ of Execution issued in this case is not owned by any of the subject judgment debtors, and never has been.

## CERTIFICATE OF SERVICE

I certify that on July 7, 2021, I caused true and correct copies of this **REPLY AND REQUEST FOR HEARING, together with all attachments hereto,** to be served in the manner indicated below to the following-listed parties at their respective addresses listed below:

| | |
|---|---|
| Benjamin D. Johnson | _____Hand Delivery |
| Bennett Tueller Johnson & Deere | _____First Class, United States Mail, |
| 3165 East Millrock Drive, Suite 500 | Postage Prepaid |
| Salt Lake City, Utah 84121 | __X__E-filing via GreenFiling |
| ben.johnson@btjd.com | _____E-filing via CM/ECF |
| *Attorneys for Plaintiff* | _____Email |
| | _____Other:_____ |

*/s/ Bradley L. Tilt*_____

File No. 014551
**When recorded return to:**
Lincoln Title Insurance Agency
4723 Harrison Boulevard, Suite 201
Ogden, UT 84403

**Mail tax notice to:**
Grantee
1201 Estelle Lane
Newport Beach, CA 92660

E# 2261271 PG 1 OF 1
ERNEST D ROWLEY, WEBER COUNTY RECORDER
03-MAY-07 346 PM FEE $10.00 DEP VD
REC FOR: LINCOLN TITLE INSURANCE AGENCY
ELECTRONICALLY RECORDED

# SPECIAL WARRANTY DEED

**Basinview Development, LC,**                    "Grantor",

hereby CONVEYS and WARRANTS against all claiming by, through, or under it to:

**Brett H. Del Valle and Traci M. Del Valle, Trustees of The Del Valle Family Trust Dated October 30, 2002,**              "Grantees",

for the sum of TEN DOLLARS and other good and valuable consideration the following described tract of land in Weber County, State of Utah:

**ALL OF LOT 7, BASINVIEW ESTATES CLUSTER SUBDIVISION, WEBER COUNTY, UTAH, ACCORDING TO THE OFFICIAL PLAT THEREOF.**

20-108-0007

SUBJECT TO: County and/or City taxes not delinquent; Bonds and/or Special Assessments not delinquent and Covenants, Conditions, Restrictions, Rights-of-Way, Easements, and Reservations now of Record or enforceable in law or equity.

WITNESS, the hand of said grantor, this 27 day of April , A.D. 2007 .

Basinview Development, LC
By:

Mark A. Bates, Managing Member

STATE OF UTAH        )
                     )ss.
COUNTY OF Weber      )

On the 27 day of April , 2007 , personally appeared before me, Mark A. Bates, who did say that he is a Managing Member of Basinview Development, LC, that the foregoing instrument was signed on behalf of said Limited Liability Company by authority of Basinview Development, LC and that he duly acknowledged to me that said Limited Liability Company executed the same.

Notary Public

My Commission Expires:

Residing at:

DENISE W PAGE
NOTARY PUBLIC - STATE OF UTAH
4723 HARRISON BLVD
OGDEN, UT 84403
COMM. EXP. 11-05-2009

*W2293650*

E# 2293650 PG 1 OF 2
ERNEST D ROWLEY, WEBER COUNTY RECORDER
24-SEP-07  1146 AM  FEE $12.00 DEP VD
REC FOR: LINCOLN TITLE INSURANCE AGENCY
ELECTRONICALLY RECORDED

File No. 014551
When recorded return to:
Lincoln Title Insurance Agency
4723 Harrison Boulevard, Suite 201
Ogden, UT  84403

Mail tax notice to:
Grantees
1201 Estelle Lane
Newport Beach, CA 92660

# WARRANTY DEED

Brett H. Del Valle and Traci M. Del Valle, Trustees of The Del Valle Family Trust Dated October
30, 2002, "Grantors",

hereby CONVEY and WARRANT to:

Brett H. Del Valle and Traci M. Del Valle, Trustees of The Del Valle Family Trust Dated October
30, 2002, as "Grantees",

for the sum of TEN DOLLARS and other good and valuable consideration the following described tract
of land in Weber County, State of Utah:

ALL OF LOT 7, BASINVIEW ESTATES CLUSTER SUBDIVISION 1st AMENDMENT, WEBER
COUNTY, UTAH, ACCORDING TO THE OFFICIAL PLAT THEREOF.    20-119-0007

SUBJECT TO: County and/or City taxes not delinquent; Bonds and/or Special Assessments not
delinquent and Covenants, Conditions, Restrictions, Rights-of-Way, Easements, and Reservations now of
Record or enforceable in law or equity.

WITNESS, the hand of said grantor, this ___18___ day of ___September___, A.D. 20_07_.

Brett H. Del Valle, Trustee

Traci M. Del Valle, Trustee

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of ___California_____ )

County of _Orange_____ )

On _Sept 18, 2007___ before me, _Deborah Fauerbach, Notary Public_
(here insert name and title of the officer)

personally appeared _Brett H. Del Valle and Traci M. Del Valle_
_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature of Notary Public

DEBORAH FAUERBACH
COMM. #1698508
Notary Public - California
Orange County
My Comm. Expires Oct. 10, 2010

(Seal)

---

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER
☐ Individual (s)
☐ Corporate Officer

_____
(Title)

☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other_____

### INSTRUCTIONS FOR COMPLETING THIS FORM
Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

CAPA v12.10.03 © by Association of Professional Notaries & CSA 800-873-9865 www.notaryclasses.com


*W3151874*

Mail Tax notice to:
Grantee
51 Chestnut Avenue
Clarendon Hills, IL 60514
MNT File No.: 49967
Tax ID No.: 20-119-0007

E# 3151874  PG 1 OF 3
Leann H. Kilts, WEBER COUNTY RECORDER
11-May-21  1215 PM    FEE $40.00 DEP DA(
REC FOR: METRO NATIONAL TITLE
ELECTRONICALLY RECORDED

# WARRANTY DEED

Brett H. Del Valle and Traci M. Del Valle, as Co-Trustees of the Del Valle Family Trust dated October 30, 2002

**GRANTOR** of Newport Beach, State of California, hereby CONVEYS and WARRANTS TO:

Molly J. Mulligan and John P. Mulligan, wife and husband, as joint tenants

**GRANTEE** of 51 Chestnut Avenue, Clarendon Hills, IL 60514 for the sum of TEN AND 00/100'S DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATION, the following described tract of land in Weber County, State of Utah:

Lot 7, BASINVIEW ESTATES CLUSTER SUBDIVISION 1ST AMENDMENT, according to the official plat thereof on file and of record in the office of the Weber County Recorder.

Together with a right of use for an easement for ingress and egress over and across Basinview Road (a private road), as shown on the official dedicated plat, to and from said Lot to a physically open and legally dedicated public street.

**SUBJECT TO:** County and/or City Taxes not delinquent; Bonds and/or Special Assessments not delinquent and Covenants, Conditions, Restrictions, Rights-of-Way, Easements, Leases and Reservations now of Record.

Warranty Deed

Page 1

**WITNESS**, the hand(s) of said grantor(s), May _10_ 2021.

Brett H. Del Valle, Co-Trustee of the Del Valle
Family Trust dated October 30, 2002

Traci M. Del Valle, Co-Trustee of the Del Valle
Family Trust dated October 30, 2002

State of CALIFORNIA _____, County of ORANGE _____ )ss:

On MAY 10th, 2021 _____ personally appeared before me Brett H. Del Valle and Traci M. Del Valle, who upon being duly sworn (or affirmed) upon oath that they did sign the foregoing instrument with authority as granted in the capacity as Co-Trustees of the Del Valle Family Trust dated October 30, 2002, and that the said Brett H. Del Valle and Traci M. Del Valle, duly acknowledged to me that they executed the same.

— Please see Attached —
Notary Public

---

E# 3151874   PG 3 OF 3

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

**CIVIL CODE § 1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )

County of ORANGE )

On MAY 10TH 2021 before me, Chavon Kane, NOTARY PUBLIC
_____
Date                                    Here Insert Name and Title of the Officer

personally appeared BRETT H. DEL VALLE AND

TRACI M. DEL VALLE
_____
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

CHAVON KANE
COMM...2213310
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Term Exp. October 5, 2021

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
Signature of Notary Public

Place Notary Seal Above

──────── **OPTIONAL** ────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: WARRANTY DEED _____ Document Date: _____

Number of Pages: 2 Signer(s) Other Than Named Above: NONE

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907



**Weber County Government**
**Property Information System**

# WEBER COUNTY RECORDER

## ABSTRACT OF TITLE

### 05/11/2021

**PARCEL NUMBER: 20-119-0007**

**Prior Parcel Numbers:**

20-108-0007

| OWNER: DEL VALLE FAMILY TRUST | ADDRESS: 1201 ESTELLE LN | TAX UNIT |
|---|---|---|
| | NEWPORT BEACH CA 92660 | 520 |

**LEGAL DESCRIPTION:** 2007  ORIG          **ACRES:** 1.52

ALL OF LOT 7, BASINVIEW ESTATES CLUSTER SUBDIVISION, 1ST
AMENDMENT, WEBER COUNTY, UTAH.

| Grantor/ Grantee | Kind of Document Consideration | Time Period Entry # | Book-Page Doc Date | Record Date | Time Release | Abstract Date Entry Ref |
|---|---|---|---|---|---|---|
| ZIONS FIRST NATL BANK | RECON | | 1367-1567 | | 04:08 | |
| CRAIG, E D | $0.00 | 821408 | 10/03/1980 | 06-OCT-1980 | 1343- 477 | |
| CRAIG, E D | TRUST DD | | 1367-1568 | | 04:09 | |
| ZIONS FIRST NATL BK | $35,000.00 | 821409 | 10/03/1980 | 06-OCT-1980 | - | |
| ZIONS FIRST NATIONAL BANK TR | PT RECONVEYANCE | | 1372- 532 | | 02:56 | |
| WEBBER, JOHN U & WF | $0.00 | 825575 | 12/03/1980 | 03-DEC-1980 | 1323- 52 | |
| ZIONS FIRST NATL BANK TR | RECON | | 1372- 533 | | 02:57 | |
| WEBBER, JOHN U & WF | $0.00 | 825576 | 11/07/1980 | 03-DEC-1980 | 1273- 286 | |
| FACKRELL, ANN SWENSON | RELEASE | | 1378-0065 | | 03:36 | |
| WEBBER, JOHN U & RUTH M | $0.00 | 831722 | 03/11/1981 | 11-MAR-1981 | 1003-0732 | |
| WILLOUGHBY, DAVID R | TRUST DD | | 1384-0437 | | 12:39 | |
| BROWN DISTRIBUTING CO ETAL | $15,000.00 | 838323 | 02/23/1981 | 22-JUN-1981 | - | |
| WEBBER, JOHN U | WD | | 1390-1262 | | 02:34 | |
| WADMAN, V JAY | $10.00 | 844791 | 09/18/1981 | 01-OCT-1981 | - | |
| WEBBER, JOHN U & WF | WD | | 1380-1264 | | 02:35 | |
| JOHN U WEBBER CO | $10.00 | 844792 | 09/18/1981 | 01-OCT-1981 | - | |
| WADMAN, V JAY ETAL | WD | | 1390-1265 | | 02:36 | |
| SUMMERHAWKS LTD ETAL | $10.00 | 844793 | 09/18/1981 | 01-OCT-1981 | - | |
| SUMMERHAWKS LTD | DEED OF TRST | | 1390-1268 | | 02:37 | |
| JOHN U WEBBER CO ETAL | $408,000.00 | 844794 | 09/18/1981 | 01-OCT-1981 | - | |
| BOARD OF COUNTY COMMISSIONER | ORDNCE | | 1394-1772 | | 11:57 | |
| WHOM IT MAY CONCERN | $0.00 | 849262 | 12/21/1981 | 22-DEC-1981 | - | |
| AHLBERG, WILLIAM D | RELEASE | | 1395-0054 | | 09:56 | |
| WEBBER, JOHN U & WF | $0.00 | 849304 | 12/19/1981 | 23-DEC-1981 | - | |
| WILLOUGHBY, DAVID R & JEAN G | QCD | | 1399-0363 | | 03:53 | |
| BROWN DISTRIBUTING | $10.00 | 853531 | 10/00/1981 | 09-MAR-1982 | - | |
| WEBBER, JOHN U & WF | RELEASE | | 1401-1669 | | 10:19 | |
| ADAMS, ALFRED W & WF | $0.00 | 856371 | 04/27/1982 | 28-APR-1982 | 1003-0733 | |
| ZIONS FIRST NATL BANK TR | RECON | | 1402-0074 | | 01:52 | |
| WEBBER, JOHN U & RUTH M | $0.00 | 856503 | 04/26/1982 | 29-APR-1982 | 1323-0052 | |
| WEBER BASIN WTR CONSERV DIST V | WATER CONTRACT | | 1405-1501 | | 01:17 | |
| SUMMERHAWKS LTD WTR | $0.00 | 860593 | 06/14/1982 | 13-JUL-1982 | - | |
| ZIONS FIRST NATIONAL BANK | RECON | | 1413-0821 | | 04:13 | |
| CRAIG, E D | $0.00 | 868216 | 11/18/1982 | 22-NOV-1982 | 1367-1568 | |
| WEBBER, JOHN U & WF | WD | | 1432-1327 | | 02:42 | |
| BROWN DISTRIBUTING CO | $10.00 | 890715 | 09/20/1983 | 21-SEP-1983 | - | |

| Party | Document Type | Amount | Doc No. | Recorded | Date | Ref / Time |
|---|---|---|---|---|---|---|
| BANK OF UTAH | RELEASE | | | | 1439-1244 | 11:07 |
| WEBBER, JOHN U & WF | $0.00 | | 899767 | 01/17/1984 | 18-JAN-1984 | 1235-0810 |
| CARDON LAND TITLE CO TR | PT RECONVEYANCE | | | | 1467-1692 | 11:12 |
| SUMMERHAWKS LTD ETAL | $0.00 | | 937356 | 05/10/1985 | 15-MAY-1985 | 1390-1268 |
| KEITER, JOHN E TR | WD | | | | 1467-1756 | 01:10 |
| SUMMERS, CLARKE C & WF | $10.00 | | 937370 | 05/15/1985 | 15-MAY-1985 | - |
| SUMMERHAWKS LTD | WD | | | | 1467-1759 | 01:11 |
| SUMMERS, CLARKE C & WF | $10.00 | | 937371 | 05/15/1985 | 15-MAY-1985 | - |
| SUMMERS, CLARKE C & WF | DEED TRST | | | | 1469-0329 | 03:03 |
| DESERET FEDERAL SV & LN ASSN | $168,750.00 | | 939126 | 06/06/1985 | 06-JUN-1985 | - |
| WEBER BASIN WTR CONSERV DIST V | ORDER ON PETN | | | | 1471-1851 | 04:37 |
| SUMMERS, CLARKE C & WF WTR | $99.66 | | 942577 | 06/28/1985 | 18-JUL-1985 | - |
| WEBBER, JOHN U | TRUST DD | | | | 1480-0360 | 01:14 |
| ZIONS FIRST NATIONAL BANK | $111,000.00 | | 953779 | 10/01/1985 | 22-NOV-1985 | - |
| WEBBER, JOHN U | ASSIGN OF CONTRT | | | | 1480-0365 | 01:15 |
| ZIONS FIRST NATIONAL BANK | $10.00 | | 953780 | 10/01/1985 | 22-NOV-1985 | - |
| SUMMERS, CLARKE C & MARCIA H | NTC OF LIEN | | | | 1483-1787 | 08:13 |
| HUGHES, BILL | $7,923.50 | | 958462 | // | 22-JAN-1986 | - |
| SUMMERS, CLARKE C & MARCIA H | NTC OF LIEN | | | | 1486-2134 | 12:25 |
| URE, BERT | $5,000.00 | | 963036 | // | 14-MAR-1986 | - |
| CARDON LAND TITLE CO TR | PT RECONVEYANCE | | | | 1495-2518 | 09:16 |
| SUMMERHAWKS LTD ETAL | $0.00 | | 977430 | 06/06/1986 | 04-AUG-1986 | 1380-1268 |
| URE, BERT | REL OF LIEN | | | | 1497-0815 | 03:10 |
| WHOM IT MAY CONCERN | $5,000.00 | | 979676 | 08/22/1986 | 22-AUG-1986 | 1486-2134 |
| KITCHEN STUDIO | REL OF LIEN | | | | 1505-1673 | 11:40 |
| WHOM IT MAY CONCERN | $7,927.50 | | 992691 | 09/02/1986 | 17-DEC-1986 | 1483-1787 |
| ZIONS FIRST NATIONAL BANK | PT RECONVEYANCE | | | | 1505-1676 | 11:41 |
| WEBBER, JOHN U | $0.00 | | 992692 | 09/11/1986 | 17-DEC-1986 | 1480-0360 |
| ZIONS FIRST NATL BANK | PT RELEASE | | | | 1505-1678 | 11:42 |
| WEBBER, JOHN U | $0.00 | | 992693 | 09/11/1986 | 17-DEC-1986 | 1480-0365 |
| SUMMERHAWKS LTD | WD | | | | 1505-1681 | 11:42 |
| SUMMERS, CLARKE C & WF | $10.00 | | 992694 | 06/11/1986 | 17-DEC-1986 | - |
| KEITER, JOHN E TR | WD | | | | 1505-1681 | 11:43 |
| SUMMERS, CLARKE C & WF | $10.00 | | 992695 | 06/11/1986 | 17-DEC-1986 | - |
| SUMMERS, CLARKE C & WF | DEED OF TRST | | | | 1505-1682 | 11:43 |
| MOORE FINANCIAL SERVICES INC E' | $147,550.00 | | 992696 | 12/11/1986 | 17-DEC-1986 | - |
| SUMMERS, CLARKE C ETAL | TRUST DD | | | | 1505-1687 | 11:46 |
| CONTINENTAL BANK & TRUST CO | $30,000.00 | | 992697 | 12/11/1986 | 17-DEC-1986 | - |
| CLAYSON, CRAIG D | ASGNMT | | | | 1506-0954 | 03:08 |
| CITICORP HOMEOWNERS INC | $0.00 | | 993964 | 12/18/1986 | 29-DEC-1986 | 1505-1682 |
| MORGAN, TERRILYN B | REQ FOR NTC | | | | 1509-1280 | 12:58 |
| WHOM IT MAY CONCERN | $0.00 | | 998977 | // | 11-FEB-1987 | 1505-1682 |
| DESERET FED SV & LN ASSN TR | RECON | | | | 1523-2253 | 03:37 |
| SUMMERS, CLARKE C & WF | $0.00 | | 1021465 | 07/17/1987 | 11-AUG-1987 | 1469-0329 |
| CITICORP MTG INC FKA | ASGNMT | | | | 1539-2706 | 09:05 |
| LOMAS & NETTLETON CO | $0.00 | | 1046898 | 01/29/1988 | 20-MAY-1988 | 1505-1682 |
| ZIONS FIRST NATL BK | PT RELEASE ASSIGN | | | | 1551-2861 | 10:04 |
| WEBBER, JOHN U | $0.00 | | 1064975 | 12/02/1988 | 07-DEC-1988 | 1480-0365 |
| ZIONS FIRST NATL BK | PT RECONVEYANCE | | | | 1551-2863 | 10:05 |
| WEBBER, JOHN U | $0.00 | | 1064976 | 12/02/1988 | 07-DEC-1988 | 1480-0360 |
| WEBBER, JOHN U | ASSIGN INTEREST | | | | 1557-2264 | 03:20 |

| Party | Type | Book-Page | Date Recorded | Ref | Time |
|---|---|---|---|---|---|
| WADMAN, V JAY | | 1557-2273 | | 03:24 | |
| WEBBER, JOHN U | WD | 1557-2276 | | 03:29 | |
| WADMAN, V JAY | $10.00 | 1073781 | 09/21/1978 | 27-MAR-1989 | - |
| SUMMERHAWKS LTD | WD | 1565-2145 | | 11:40 | |
| WADMAN, V JAY ETAL | $0.00 | 1073782 | 09/21/1978 | 27-MAR-1989 | - |
| WADMAN, V JAY ETAL | WD | 1565-2148 | | 11:44 | |
| SUMMERS, CLARKE C TR ETAL | $10.00 | 1085860 | 07/20/1989 | 10-AUG-1989 | - |
| SUMMERS, CLARKE C ETAL | TRUST DD | 1576-0695 | | 03:49 | |
| WEST ONE BK UT | $19,529.84 | 1085861 | 07/20/1989 | 10-AUG-1989 | - |
| SUMMERS, CLARKE C & WF | NON ASSUMP AGRMT | 1576-0699 | | 03:50 | |
| WEST ONE BK UT | $0.00 | 1101910 | 02/12/1990 | 21-FEB-1990 | - |
| ZIONS FIRST NATL BANK TR | RECON | 1578-0869 | | 08:05 | |
| WEBBER, JOHN U | $0.00 | 1101911 | 02/12/1990 | 21-FEB-1990 | - |
| JOHN U WEBBER CO | ASGNMT | 1588-1262 | | 01:30 | |
| PETERSEN, JERRY TR ETAL | $0.00 | 1105213 | 03/26/1990 | 03-APR-1990 | 1480-0360 |
| JOHN U WEBBER CO ETAL | TRUST DD | 1590-2497 | | 04:31 | |
| AMERICA FIRST CR UN ETAL | $100,000.00 | 1121698 | 10/19/1990 | 19-OCT-1990 | 1390-1268 |
| ZIONS FIRST NATL BK | REL | 1592-1918 | | 02:29 | |
| WEBBER, JOHN U | $0.00 | 1125426 | 11/28/1990 | 28-NOV-1990 | - |
| WEBBER, JOHN U | WD | 1593-0599 | | 01:36 | |
| WADMAN, V JAY | $10.00 | 1128555 | 12/27/1990 | 07-JAN-1991 | 1480-0365 |
| WADMAN, V JAY | WD | 1593-0601 | | 01:38 | |
| WADMAN INVESTMENT | $10.00 | 1129569 | 01/18/1991 | 22-JAN-1991 | - |
| WADMAN, V JAY | WD | 1606-0582 | | 12:26 | |
| WADMAN INV | $10.00 | 1129570 | 01/18/1991 | 22-JAN-1991 | - |
| WADMAN, V JAY | WD | 1606-0585 | | 12:27 | |
| WADMAN INV | $10.00 | 1149606 | 08/21/1991 | 21-AUG-1991 | - |
| WEST ONE BK TR | RECON | 1610-0855 | | 08:15 | |
| SUMMERS, CLARKE C & WF | $0.00 | 1149607 | 08/21/1991 | 21-AUG-1991 | - |
| SUMMERS, CLARKE C TR | QCD | 1610-1011 | | 11:50 | |
| SUMMERS, CLARKE C & WF | $10.00 | 1155526 | 10/17/1991 | 22-OCT-1991 | 1576-0695 |
| KEITER, JOHN E TR | QCD | 1610-1012 | | 11:51 | |
| SUMMERS, CLARKE C & WF | $10.00 | 1155615 | 10/21/1991 | 22-OCT-1991 | - |
| SUMMERS, CLARKE C & WF | TRUST DD | 1610-1013 | | 11:52 | |
| WEST ONE BK UT | $135,000.00 | 1155616 | 10/22/1991 | 22-OCT-1991 | - |
| WEST ONE BK UT | REQ FOR NTC | 1610-1018 | | 11:53 | |
| WHOM IT MAY CONCERN | $0.00 | 1155617 | 10/10/1991 | 22-OCT-1991 | - |
| SUMMERS, CLARKE C & WF | NON ASSUMP AGRMNT | 1610-1020 | // | 11:54 | |
| WEST ONE BK UT | $135,000.00 | 1155618 | | 22-OCT-1991 | 1505-1682 |
| WEST ONE BK TR | RECON | 1610-2995 | | 08:15 | |
| SUMMERS, CLARKE C & WF | $0.00 | 1155619 | 10/10/1991 | 22-OCT-1991 | - |
| WEST ONE BK TR | RECON | 1611-0787 | | 08:29 | |
| SUMMERS, CLARKE C ETAL | $0.00 | 1156485 | 10/17/1991 | 31-OCT-1991 | 1576-0695 |
| SUMMERS, CLARKE C ETAL | QCD | 1628-0660 | | 08:52 | |
| KEITER, JOHN E TR | $10.00 | 1156884 | 10/30/1991 | 05-NOV-1991 | 1505-1687 |
| CROWTHER, MARVIN | NTC ASSMNT | 1639-2597 | | 02:34 | |
| WHOM IT MAY CONCERN | $0.00 | 1179922 | 05/29/1992 | 01-JUN-1992 | - |
| PETERSEN, JERRY TR ETAL | SUB TR | 1640-1080 | // | 09:59 | |
| ASSOCIATED TITLE CO | $0.00 | 1195168 | | 01-OCT-1992 | - |
| ASSOCIATED TITLE CO TR | RECON | 1640-1082 | | 10:01 | |
| KEITER, JOHN E TR ETAL | $0.00 | 1195772 | 05/14/1992 | 07-OCT-1992 | 1588-1262 |
| | | | 09/25/1992 | 07-OCT-1992 | 1390-1268 |

| Party | Instrument | Amount | Number | Book-Page | Date | Date | Time | Ref |
|---|---|---|---|---|---|---|---|---|
| SUMMERS, CLARKE C | DEED OF TRST | | | 1691-0522 | | | 11:20 | |
| WEST ONE BK UT ETAL | | $202,300.00 | 1259805 | 11/23/1993 | 29-NOV-1993 | | | |
| WEST ONE BK UT | SUBORD AGRMT | | | 1691-0530 | | | 11:22 | |
| WEST ONE BK | | $0.00 | 1259806 | 11/23/1993 | 29-NOV-1993 | 1691-0522 | | |
| SUMMERS, CLARKE C ETAL | QCD | | | 1696-1793 | | | 01:20 | |
| CLARKE C SUMMERS PN & PR SH PLN | | $10.00 | 1266242 | 10/00/1993 | 30-DEC-1993 | - | | |
| WEST ONE BK UT | ASGNMT | | | 1700-2557 | | | 12:29 | |
| MORTGAGE AUTHORITY INC | | $0.00 | 1271860 | 01/03/1994 | 31-JAN-1994 | 1691-0530 | | |
| MORTGAGE AUTHORITY INC | ASGNMT | | | 1732-1543 | | | 10:02 | |
| SOURCE ONE MTG SERV CORP | | $1.00 | 1314006 | 01/17/1994 | 29-SEP-1994 | 1691-0522 | | |
| WEBER COUNTY | RESOL #18-96 | | | 1801-0295 | | | 10:42 | |
| WHOM IT MAY CONCERN | | $0.00 | 1399404 | 04/03/1996 | 12-APR-1996 | - | | |
| WEBER COUNTY | RESOL #25-96 | | | 1811-2786 | | | 09:23 | |
| WHOM IT MAY CONCERN | | $0.00 | 1413086 | 05/15/1996 | 18-JUN-1996 | - | | |
| SOURCE ONE MTG SERV CORP | ASGNMT | | | 1930-2820 | | | 09:12 | |
| CAPSTEAD INC | | $0.00 | 1547548 | 02/01/1997 | 27-MAY-1998 | 1691-522 | | |
| CAPSTEAD INC | ASGNMT | | | 2007-2124 | | | 08:24 | |
| GMAC MTG CORP | | $0.00 | 1631210 | 02/01/1999 | 28-APR-1999 | 1691-522 | | |
| US BK NATL ASSOC TR FKA ETAL | RECON | | | 2316-0181 | | | 09:29 | |
| SUMMERS, CLARKE C ETAL | | $0.00 | 1911178 | 01/16/2003 | 06-FEB-2003 | 1610-1013 | | 1155617 |
| GMAC MTG CORP | SUB TR | | | 2373-1436 | | | 08:13 | |
| RIVERS, ROD | | $0.00 | 1941533 | // | 27-MAY-2003 | 1691-522 | | 1259805 |
| RIVERS, ROD TR | RECON | | | 2373-1438 | | | 08:13 | |
| SUMMERS, CLARKE C | | $0.00 | 1941534 | // | 27-MAY-2003 | 1691-522 | | 1259805 |
| WEBER BASIN CONSERV DIST | ORDR ON PETN | | | 2389-0252 | | | 09:35 | |
| SUMMERS, CLARKE C | | $0.00 | 1949479 | 04/25/2003 | 20-JUN-2003 | - | | |
| WEBER BASIN WTR CONSERV DIST | ORD ON PETN | | | - | | | 08:45 | |
| CLARKE C SUMMERS PENSION & PRO | | $0.00 | 2017007 | 01/30/2004 | 11-MAR-2004 | - | | |
| WEBER BASIN WTR CONSERV DIST | ORDR ON PETN | | | - | | | 08:45 | |
| CLARKE C SUMMERS PEN & PROF | | $0.00 | 2017008 | 01/30/2004 | 11-MAR-2004 | - | | |
| CLARKE C SUMMERS PROFIT SHARIN | QCD | | | - | | | 04:28 | |
| SUMMERS, CLARKE C ETAL | | $400,000.00 | 2098267 | 04/21/2005 | 21-APR-2005 | - | | |
| WEBER COUNTY | RESOL 23-2005 | | | - | | | 02:31 | |
| WHOM IT MAY CONCERN | | $0.00 | 2156401 | 07/12/2005 | 24-JAN-2006 | - | | |
| CLARK C SUMMERS PNSN PRFT PLN | ASGNMT | | | - | | | 09:17 | |
| BASIN VIEW EST HOMEOWNERS ASS | | $0.00 | 2193577 | 04/07/2006 | 14-JUL-2006 | 2389-252 | | 2017007 |
| SUMMERS, CLARKE C ETAL | SP WD | | | - | | | 12:11 | |
| BASINVIEW DEV LC | | $10.00 | 2193657 | 07/07/2006 | 14-JUL-2006 | - | | |
| BASINVIEW DEV LC | DEED OF TRST | | | - | | | 12:11 | |
| SUMMERS, CLARKE C & WF ETAL | | $2,990,517.95 | 2193658 | 07/07/2006 | 14-JUL-2006 | - | | |
| BASINVIEW DEVL LC | DED PLAT | | | - | | | 02:26 | |
| WHOM IT MAY CONCERN | | $0.00 | 2202617 | 08/04/2006 | 22-AUG-2006 | 64-55 | | |
| BASINVIEW DEV LC ETAL | AGRMT | | | - | | | 02:28 | 27-JAN-2010 |
| WHOM IT MAY CONCERN | | $0.00 | 2202618 | 08/04/2006 | 22-AUG-2006 | - | | |
| BASINVIEW DEV LLC | AGRMT | | | - | | | 02:31 | |
| WHOM IT MAY CONCERN | | $0.00 | 2202619 | 08/04/2006 | 22-AUG-2006 | - | | |
| BASINVIEW DEV LC | DECL COV REST | | | - | | | 03:45 | |
| WHOM IT MAY CONCERN | | $0.00 | 2203027 | 08/22/2006 | 23-AUG-2006 | - | | |
| WEBER COUNTY ETAL | AMD AGRMT | | | - | | | 11:04 | 27-JAN-2010 |
| WHOM IT MAY CONCERN | | $0.00 | 2204634 | 08/28/2006 | 30-AUG-2006 | - | | |
| BASINVIEW DEVL LLC | AGRMT | | | - | | | 03:23 | |

| Party | Doc Type / Amount | Number | Date 1 | Date 2 | Time | Ref |
|---|---|---|---|---|---|---|
| BASINVIEW DEV LC | SPWD | | | | 03:46 | |
| DEL VALLE FAMLY TRST | $10.00 | 2261271 | 04/27/2007 | 03-MAY-2007 | - | |
| DEL VALLE FAMLY TRST | DEED OF TRST | - | | | 03:46 | |
| WELLS FARGO BK ETAL | $500,000.00 | 2261272 | 04/25/2007 | 03-MAY-2007 | - | |
| LINCOLN TTL INS TR | PT RECON | - | | | 09:05 | |
| BASINVIEW DEV LC | $0.00 | 2264396 | 05/16/2007 | 17-MAY-2007 | - | 2193658 |
| WEBER COUNTY | ORDNCE 2007-24 | | | | 03:56 | |
| WHOM IT MAY CONCERN | $0.00 | 2290050 | 09/04/2007 | 05-SEP-2007 | - | |
| DEL VALLE FAMILY TRUST ETAL | DED PLAT | 66-87 | | | 03:58 | |
| WHOM IT MAY CONCERN | $0.00 | 2290051 | 08/13/2007 | 05-SEP-2007 | - | |
| BASINVIEW DEV LC ETAL | NTC | - | | | 04:00 | |
| WHOM IT MAY CONCERN | $0.00 | 2290052 | 08/31/2007 | 05-SEP-2007 | - | |
| VEL VALLE FMLY TRST | WD | - | | | 11:46 | |
| DEL VALLE FMLY TRST | $10.00 | 2293650 | 09/18/2007 | 24-SEP-2007 | - | |
| DEL VALLE TRST | DEED OF TRST | - | | | 12:16 | |
| CALIFORNIA NATL BK ETAL | $1,750,000.00 | 2313274 | 12/12/2007 | 31-DEC-2007 | - | |
| DEL VALLE TRST | ASGNMT | - | | | 12:16 | |
| CALIFORNIA NATL BK | $0.00 | 2313275 | 12/21/2007 | 31-DEC-2007 | - | |
| WELLS FARGO BK NW TR | RECON | - | | | 08:57 | |
| DEL VALLE TRST | $0.00 | 2319710 | 01/15/2008 | 05-FEB-2008 | - | 2261272 |
| DEL VALLE, BRETT H | NTC COMP | - | | | 10:47 | |
| WHOM IT MAY CONCERN | $0.00 | 2350137 | 06/23/2008 | 25-JUN-2008 | - | |
| CALIFORNIA NATL BK | MOD AGRMT | - | | | 12:08 | |
| DEL VALLE FAMILY TRUST | $0.00 | 2432420 | 07/01/2009 | 31-AUG-2009 | - | 2313274 |
| US BANK NATL ASSN ETAL | MOD AGRMT | - | | | 10:26 | |
| WHOM IT MAY CONCERN | $1,750,000.00 | 2453101 | 10/01/2009 | 07-JAN-2010 | - | 2313274 |
| FDIC | ASGNMT | - | | | 08:22 | 10-AUG-2010 |
| US BK NATL ASSOC | $0.00 | 2485659 | 10/30/2009 | 10-AUG-2010 | - | |
| SCHIMMELPFENNIG, TODD | REQ FOR NTC | - | | | 08:20 | 18-MAY-2011 |
| WHOM IT MAY CONCERN | $0.00 | 2527425 | 05/04/2011 | 18-MAY-2011 | - | 2261272 |
| SCHIMMELPHENNIG, TODD | REQ FOR NTC | - | | | 08:20 | 18-MAY-2011 |
| WHOM IT MAY CONCERN | $0.00 | 2527426 | // | 18-MAY-2011 | - | 2313274 |
| DEL VALLE FMLY TRST ETAL | MOD AGRMT | - | | | 08:06 | 19-MAY-2011 |
| WHOM IT MAY CONCERN | $0.00 | 2527547 | 04/26/2011 | 19-MAY-2011 | - | 2313274 |
| US BANK NATL ASSN | SUB TR | - | | | 03:06 | 29-JUN-2012 |
| WALKER, RUSSELL S | $0.00 | 2583677 | 06/27/2012 | 29-JUN-2012 | - | 2313274 |
| WALKER, RUSSELL S | NTC OF DFLT | - | | | 03:06 | 29-JUN-2012 |
| DEL VALLE FAMILY TRUST | $0.00 | 2583678 | 06/29/2012 | 29-JUN-2012 | - | 2313274 |
| CHASE BK FKA ETAL | SUB TR/RECON | - | | | 09:49 | 04-FEB-2014 |
| JPMORGAN CHASE BANK ETAL | $0.00 | 2601884 | 10/04/2012 | 23-OCT-2012 | - | 2067446 |
| WEBER COUNTY | RESOL #27-2012 | - | | | 10:38 | |
| WHOM IT MAY CONCERN | $0.00 | 2610456 | 12/11/2012 | 13-DEC-2012 | - | |
| DEL VALLE, BRETT | DEED OF TRST | - | | | 03:01 | 03-MAR-2014 |
| PRP INVESTORS FONTANA LLC ETAL | $360,009.12 | 2677120 | 12/19/2013 | 03-MAR-2014 | - | |
| US BANK | SUB TR | - | | | 01:10 | 05-JUN-2014 |
| HALLIDAY JR, PAUL M | $0.00 | 2689333 | 05/29/2014 | 05-JUN-2014 | - | 2527547 |
| HALLIDAY JR, PAUL M TR | NTC OF DFLT | - | | | 03:02 | 15-JUL-2014 |
| DEL VALLE, BRETT H ETAL | $214,000.00 | 2692310 | 06/27/2014 | 27-JUN-2014 | - | |
| STATE OF UTAH | CERT OF CREATION | - | | | 01:50 | 20-JAN-2015 |
| WHOM IT MAY CONCERN | $0.00 | 2718461 | 12/01/2014 | 20-JAN-2015 | - | |
| WEBER COUNTY | AFFT | - | | | 09:38 | |
| WHOM IT MAY CONCERN | $0.00 | 2725109 | 03/09/2015 | 09-MAR-2015 | - | |

| | | | | 03/11/2016 | 11-MAR-2016 | - | 2433101 |
|---|---|---|---|---|---|---|---|
| STATE OF UTAH | CERT DISSOLUTION | - | | | | 11:23 | 15-JUN-2016 |
| WHOM IT MAY CONCERN | $0.00 | 2795066 | // | 25-MAY-2016 | | - | |
| WEBER COUNTY | RESOL #12-2016 | - | | | | 11:24 | 13-JUN-2016 |
| WHOM IT MAY CONCERN | $0.00 | 2795067 | 05/10/2016 | 25-MAY-2016 | | - | |
| US BANK ETAL | SUB TR/RECON | - | | | | 12:10 | 03-JUL-2017 |
| US BANK TRUST CO ETAL | $0.00 | 2866077 | 06/22/2017 | 03-JUL-2017 | | - | 2313274 |
| DEL VALLE FAMILY TRUST | DEED OF TRST | - | | | | 09:37 | 20-SEP-2017 |
| BOFI FED BANK ETAL | $750,000.00 | 2879566 | 09/13/2017 | 20-SEP-2017 | | - | |
| OGDEN VALLEY PARKS SERVICE AR | ANNEX PLAT | - | | | | 12:58 | 10-JAN-2018 |
| WHOM IT MAY CONCERN | $0.00 | 2897531 | // | 28-DEC-2017 | | - | |
| STATE OF UTAH | CERT ANEX | - | | | | 12:58 | 10-JAN-2018 |
| WHOM IT MAY CONCERN | $0.00 | 2897532 | 12/27/2017 | 28-DEC-2017 | | - | |
| OGDEN VALLEY PARKS SERVICE AR | NTC BNDRY ADJUST | - | | | | 12:59 | 10-JAN-2018 |
| WHOM IT MAY CONCERN | $0.00 | 2897533 | 12/20/2017 | 28-DEC-2017 | | - | |
| WEBER COUNTY | RESOL 43-2017 | - | | | | 12:59 | 10-JAN-2018 |
| WHOM IT MAY CONCERN | $0.00 | 2897534 | 10/17/2017 | 28-DEC-2017 | | - | |
| OGDEN VALLEY PARKS SERVICES A | RESOL BNDRY ADJUST | - | | | | 01:00 | 10-JAN-2018 |
| WHOM IT MAY CONCERN | $0.00 | 2897535 | 12/28/2017 | 28-DEC-2017 | | - | |
| PRP INVESTORS FONATNA LLC ETAL | SUB TR/RECON | - | | | | 04:20 | 17-JUL-2018 |
| PRP INVESTORS FONTANA LLC ETAL | $0.00 | 2931280 | 07/16/2018 | 17-JUL-2018 | | - | 2677120 |
| DE VALLE FAMILY TRUST | TRUST DD | - | | | | 04:20 | 17-JUL-2018 |
| SINGLE BOX CALI LP ETAL | $9,558,800.00 | 2931281 | 07/16/2018 | 17-JUL-2018 | | - | |
| BASINVIEW ESTATES HOA INC | AMD DECL COV | - | | | | 12:53 | 10-JUL-2019 |
| WHOM IT MAY CONCERN | $0.00 | 2990355 | 04/16/2019 | 10-JUL-2019 | | - | 2203027 |
| LINCOLN TTL INS AGENCY TR | NTC OF DFLT | - | | | | 10:55 | 18-JUL-2019 |
| DEL VALLE FAMILY TRUST | $0.00 | 2991776 | 07/18/2019 | 18-JUL-2019 | | - | 2931281 |
| SINGLE BOX CALI LP | ASGNMT OF TRST DD | - | | | | 10:06 | 19-JUL-2019 |
| SB FB HOUSTON LP | $0.00 | 2991983 | 07/18/2019 | 19-JUL-2019 | | - | 2931281 |
| SB FB HOUSTON LP | SUB TR | - | | | | 10:06 | 19-JUL-2019 |
| LINCOLN TTL INS AGENCY | $0.00 | 2991984 | 07/18/2019 | 19-JUL-2019 | | - | 2931281 |
| FOUNDERS TTL CO | AFFT | - | | | | 04:04 | 30-SEP-2019 |
| WHOM IT MAY CONCERN | $0.00 | 3006790 | 09/27/2019 | 30-SEP-2019 | | - | |
| LINCOLN TTL INS AGENCY TR | RECON | - | | | | 09:24 | 22-NOV-2019 |
| DEL VALLE FAMILY TRUST | $0.00 | 3018148 | 11/22/2019 | 22-NOV-2019 | | - | 2931281 |
| DEL VALLE, BRETT H ETAL | DEED OF TRST | - | | | | 03:52 | 06-JUL-2020 |
| TSS ENTERPRISES INC ETAL | $0.00 | 3066407 | 05/08/2019 | 06-JUL-2020 | | - | |
| SCHIMMELPFENNING, TODD | REQ FOR NTC | - | | | | 03:03 | 10-MAR-2021 |
| WHOM IT MAY CONCERN | $0.00 | 3133579 | 02/25/2021 | 10-MAR-2021 | | - | 2879566 |

*04-07-2021 ABSTRACTED THROUGH*

**\*\*\* RUN DATE: May 11, 2021, 11:23 an \*\*\***                    **\*\*\* END OF ABSTRACT \*\*\***

EXHIBIT  4

**IN THE DISTRICT COURT OF THE THIRD JUDICIAL DISTRICT
IN AND FOR SALT LAKE COUNTY, STATE OF UTAH**

| | |
|---|---|
| **ALUM ROCK RIVERSIDE LLC**, <br><br>    Plaintiff, <br><br>       **vs.** <br><br> **PRP INVESTORS MADISON, LLC**, a California limited liability company; **BRETT DEL VALLE**, an individual; and **DOES 1 through 50** inclusive, <br><br>    Defendants. | **RULING & ORDER ON MULLIGANS' REPLY TO WRIT OF EXECUTION** <br><br><br>      **Case No. 206927043** <br><br>      **Judge Adam T. Mow** |

The Utah Foreign Judgment Act provides that a foreign judgment entered in a district court becomes a lien if a stay of execution has not been granted, the requirements of the Act are satisfied, and the judgment is recorded in the office of the county recorder where the property of the judgment debtor is located. Plaintiff Alum Rock Riverside LLC sued Brett Del Valle (and others) in California Superior Court for breach of a settlement agreement and breach of an indemnity agreement, among other claims. Alum Rock prevailed in that suit, and in June 2020, the California court issued a judgment for $4,338,964.45. On October 23, 2020, Alum Rock domesticated the California judgment in the Third District Court. On November 16, 2020, Alum Rock recorded the judgment with the Weber County Recorder. On May 11, 2021, the Del Valle Family Trust—a revocable trust controlled by Brett and Traci Del Valle as both the trustors and the trustees—conveyed property located at 1453 S. Basinview Road, Huntsville, Utah 84317 ("Property") to Molly and John Mulligan. On June 22, 2021, Alum Rock applied for a writ of execution against the Property, which this Court granted that same day. The Mulligans ask the Court to set aside the writ and find that Alum Rock does not have a lien on the Property. This

Case No. 206927043
Page 2 of 10

Court is asked to decide whether the domesticated judgment is a valid lien under Utah law. The Court is further asked to decide whether this Court has authority to issue a writ of execution for the Property, notwithstanding that the Property is in Weber County—outside the Third District. Because Alum Rock satisfied the requirements of both the Utah Foreign Judgment Act and the Judgment Lien Act, the domesticated judgment is a valid lien on the Property. And as the Utah Code of Judicial Administration authorizes this Court to issue all extraordinary writs and other writs necessary to carry into effect its orders, judgments, and decrees, the Court properly issued a writ of execution notwithstanding that the Property is located outside the Third District. The domesticated judgment is a valid lien on the Property and Alum Rock may proceed with the sale of the Property.

## **DISCUSSION**

### A.  *Alum Rock's Lien on the Property*

The Mulligans first argue, in the Reply to Writ of Execution and Request for Hearing, that the Property "is not presently, and it never has been, owned by Brett Del Valle in his individual and personal capacity."[1] However, Utah Rule of Civil Procedure 64E provides "[a] writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment or order requiring the delivery of property or the payment of money."[2] Rule 64E does not contain any provision limiting its application to owners of property nor does it require the property be in the possession or under the control of the defendant at the time a judgment creditor files a writ of execution. Moreover, where a trust

---

[1] *See* Reply & Request for Hr'g 2, July 7, 2021.
[2] UTAH R. CIV. P. 64E(a).

Case No. 206927043
Page 3 of 10

agreement "identifies [an individual] as the trustor-trustee of [a] Trust during her lifetime . . . she

retains considerable control over the Trust property."[3]

In this case, the Del Valle Family Trust designates Brett and Traci Del Valle as trustors

of the Trust and appoints them both as co-trustees.[4] The Trust further provides:

> During the joint lifetimes of the Trustors, the community estate may be revoked in
> whole or in part by an instrument in writing signed by either Trustor, and any
> separate estate may be revoked in whole or in part by an instrument in writing
> signed by the Trustor who contributed that property to the trust.[5]

The Trust also provides that, except for the separate property interest of a Trustor in any life

insurance policy, "the Trustors may at any time during their joint lifetimes amend any of the

terms of this instrument by an instrument in writing signed by the Trustors and delivered to the

Trustee."[6] Finally, the Trust provides:

> During the joint lifetimes of the Trustors, the Trustors acting jointly with respect
> to the community estate, or a Trustor acting individually with respect to such
> Trustor's separate estate, may at any time direct the Trustee in writing to transfer
> property or sums of money out of the trust estate to any other person or
> organization.[7]

These provisions, taken together, establish unambiguously that, just as the plaintiff in *Perez*,

Brett Del Valle retained considerable control over the Property. Indeed, the Del Valles retained

the ability to revoke the Trust, to amend it, and to transfer property from it. In essence, they

retained all control regarding the Property they would have had if they had not transferred the

Property to the Trust. As the Property was under the control of Brett Del Valle at the time the

---

[3] *See Perez v. Dep't of Health*, No. 20050895-CA, 2006 WL 1882279, at *1 (Utah Ct. App. July 7, 2006).
[4] *See* Opp'n to Mulligans' Reply Ex. 6, at 1, Sept. 16, 2022.
[5] *See id.* at 3.
[6] *See id.*
[7] *See id.* at 5.

Case No. 206927043
Page 4 of 10

judgment was entered in this action, the Property is properly subject to a writ of execution under rule 64E.

The Mulligans next argue that Alum Rock failed to comply with the statutory requirements for the creation of a judgment lien and therefore no lien attached to the Property. The Mulligans base their argument on section 78B-5-201, which provides "[o]n or after July 1, 1997, a judgment entered in a district court does not create a lien upon or affect the title to real property unless the judgment is filed in the Registry of Judgments of the office of the clerk of the district court of the county in which the property is located."[8] Furthermore, "[o]n or after July 1, 2002 . . . a judgment entered in a district court does not create a lien upon or affect the title to real property unless the judgment or an abstract of judgment is recorded in the office of the county recorder in which the real property of the judgment debtor is located."[9] Finally, section 78B-5-202 provides:

> After July 1, 2002, a judgment entered by a district court or a justice court in the state becomes a lien upon real property if: (i) the judgment or an abstract of the judgment containing the information identifying the judgment debtor as described in Subsection 78B-5-201(4)(b) is recorded in the office of the county recorder; or (ii) the judgment or an abstract of the judgment and a separate information statement of the judgment creditor as described in Subsection 78B-5-201(5) is recorded in the office of the county recorder.[10]

The Mulligans further rely on section 78B-5-302 of the Utah Foreign Judgment Act, which provides "[a] foreign judgment filed under this part has the same effect and is subject to the same procedures, defenses, enforcement, satisfaction, and proceedings for reopening,

---

[8] Utah Code Ann. § 78B-5-201(2).
[9] *Id.* § 78B-5-201(3)(a).
[10] *Id.* § 78B-5-202(7)(a)(i)-(ii).

Case No. 206927043
Page 5 of 10

vacating, setting aside, or staying a judgment of a district court of this state."[11] The Foreign

Judgment Act further provides:

> A foreign judgment entered in a district court under this part becomes a lien as
> provided in Section 78B-5-202 if: (a) a stay of execution has not been granted; (b)
> the requirements of this chapter are satisfied; and (c) the judgment is recorded in
> the office of the county recorder where the property of the judgment debtor is
> located, as provided in Section 78B-5-202.[12]

Under the plain language of these provisions, a foreign judgment will not create a lien until the

requirements in subsections 78B-5-201 and -202 have been satisfied.

The Court must therefore determine what section 78B-5-201 requires. In doing that, the

Court must also examine subsection 78B-5-201(4), which provides "[i]n addition to the

requirements of Subsections (2) and (3)(a), any judgment that is filed in the Registry of

Judgments on or after September 1, 1998, or any judgment or abstract of judgment that is

recorded in the office of a county recorder after July 1, 2002, shall include" a judgment

information statement.[13] Moreover, subsection 78B-5-201(6) provides:

> Any judgment that requires payment of money and is entered in a district court on
> or after September 1, 1998, or any judgment or abstract of judgment recorded in
> the office of a county recorder after July 1, 2002, that does not include the debtor
> identifying information as required in Subsection (4) is not a lien until a separate
> information statement of the judgment creditor is recorded.[14]

In interpreting these provisions, as well as section 78B-5-202, the Utah Court of Appeals

reasoned that "[h]ad the legislature intended that subsections (2) and (3) of section [78B-5-201]

be read together, as separate requirements for the creation of a lien on real property, it could have

---

[11] *Id.* §78B-5-302(3).
[12] *Id.* § 78B-5-305(1)(a)-(c).
[13] *Id.* § 78B-5-201(4)(a)-(b).
[14] *Id.* § 78B-5-201(6)(a).

5

Case No. 206927043
Page 6 of 10

used the word 'and' instead of 'or' in sections [78B-5-201(4)] and [78B-5-201(6)]."[15] It further

determined "that a proper reading of section [78B-5-201] requires subsections (2) and (3) to be

read independently."[16] This "allows section [78B-5-202], which provides that a judgment

becomes a lien upon real property if it is recorded in the office of the county recorder, to be read

in harmony with section [78B-5-201]."[17] The Court of Appeals ultimately determined that "after

July 1, 2002, a person seeking a lien on property need only file in the office of the county

recorder."[18] This interpretation accords with the unambiguous language of section 78B-5-202 as

well as subsections 78B-5-201(4) and (6), all of which are stated in the disjunctive—clarifying

that a judgment creditor must either file a judgment in the Registry of Judgments or in the office

of the county recorder.

Nevertheless, the Mulligans argue that *Kitches* was decided incorrectly, urging the Court

to instead rely on other cases interpreting the Judgment Lien Act. However, the primary case on

which the Mulligans rely for their assertion, *T3 Properties, LLC v. Persimmon Investments,

Inc.*,[19] involved the interpretation of the pre-2002 version of the Act. Subsection 78B-5-201(3)

had yet to be added to the statute. And, in *T3 Investments*, the judgment creditor had failed to

record an information statement with the judgment.[20] The Utah Court of Appeals ultimately

determined in that case that "the 2001 version of section [78B-5-201] of the judgment lien statute

---

[15] *See Kitches & Zorn, L.L.C. v. Yong Woo Kim*, 2005 UT App 164, ¶13, 112 P.3d 1210. The Court notes section
78B-5-201 and -202 were renumbered in 2008. However, these provisions have not been substantively amended
since *Kitches* was decided. Accordingly, the Court may properly rely on *Kitches* notwithstanding that it cites to the
prior version of the statute.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] 2013 UT App 38, 299 P.3d 613.
[20] *See id.* at ¶17.

Case No. 206927043
Page 7 of 10

requires that a judgment be recorded in the Registry of Judgments with a separate information

statement in order to create a judgment lien."[21] *T3 Investments* is distinguishable on this point—

the Mulligans, in opposing the Writ, have not raised a failure to file a separate information sheet.

Furthermore, *T3 Investments* involved the 2001 version of the Act and therefore provides no

clarification regarding whether a judgment creditor must comply with both subsection (2) and

subsection (3)—which was added to the statute in 2002—prior to converting a judgment to a

lien. Accordingly, the Mulligans' argument on this issue is unavailing.

 The Mulligans also argue that, if the Court were to adopt Alum Rock's interpretation of

the statute, it would require less for a foreign judgment debtor to create a lien than is required for

a domestic judgment debtor to do so. However, *Kitches* applies with equal weight to both foreign

and domestic judgments. The decision addressed the requirements of the Judgment Lien Act,

which apply, according to the plain language of the applicable statutes, to both foreign and

domestic judgments.[22] To interpret the Foreign Judgment Act as requiring only the recording of a

judgment in the office of the county recorder where the real property subject to the lien is located

would not relieve foreign judgment creditors from any of the requirements in the Judgment Lien

Act. Therefore, the Mulligans' arguments are unavailing, and the Court determines Alum Rock

complied with sections 78B-5-201 and -202 when it recorded the judgment in Weber County on

November 16, 2020.

 Finally, the Mulligans argue that because they purchased the Property prior to the

issuance of the writ of execution, they purchased the property prior to the attachment of any lien

---

[21] *See Id.* at ¶28.
[22] *See Kitches & Zorn*, 2005 UT App 164, at ¶13, 112 P.3d 1210.

Case No. 206927043
Page 8 of 10

related to the judgment.[23] The judgment lien attached on November 16, 2020, when Alum Rock recorded the judgment with the Weber County Recorder. Thus, the lien attached before the Mulligans' purchase of the Property on May 11, 2021. "The transfer of property subsequent to the attachment of [a] lien does not affect the lien for it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes *cum onere*."[24] And where liens attach before a purchaser receives legal title, the purchaser acquires title "subject to the previous encumbrances."[25] As the lien attached prior to the Mulligans' purchase of the Property, the Mulligans acquired title subject to the lien.

B. *The Writ of Execution*

The Mulligans also assert that the Court lacked jurisdiction to enter a writ of execution regarding the Property, which is located outside the Third District. In support, the Mulligans cite two cases, *Sherman v. Droubay*[26] and *Ashton-Jenkins Co. v. Bramel*.[27] This reliance is misplaced. *Sherman* involved a statute requiring actions for the foreclosure of all liens and mortgages on real property to be "tried in the county in which the subject of the action or some part thereof is situated."[28] Similarly, in *Ashton-Jenkins*, the Utah Supreme Court interpreted a statute requiring notice of a lis pendens to "be published in the county where the land lies."[29] No

---

[23] Again, the Mulligans have raised only Alum Rock's failure to file the judgment in the Registry of Judgments, they have not raised any issue with the sufficiency of the information statement included with the recorded judgment. So there is no need to further address the sufficiency of the judgment information statement.
[24] *See Utah Farm Prod. Credit Ass'n v. Wasatch Bank of Pleasant Grove*, 734 P.2d 904, 906 (Utah 1986).
[25] *F.D.I.C. v. Taylor*, 2011 UT App 416, ¶21, 267 P.3d 949.
[26] 74 P.348 (Utah 1903).
[27] 192 P. 375 (Utah 1920).
[28] *Sherman v. Droubay*, 74 P. 348, 348 (Utah 1903).
[29] *Ashton-Jenkins Co. v. Bramel*, 192 P. 375, 381 (Utah 1920).

Case No. 206927043
Page 9 of 10

such provision is found in rule 64E.[30] Thus, these cases are distinguishable and do not control this Court's determination.

The Mulligans also argue that the language of section 78B-5-302 should apply to limit the issuance of a writ of execution to the boundaries of the corresponding judicial district. However, Rule 64E provides "[a] writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment or order requiring the delivery of property or the payment of money."[31] Rule 64 provides, in turn, that "[i]f the writ directs the seizure of real property, the clerk of the court shall issue the writ to the sheriff of the county in which the real property is located."[32] In interpreting this provision, courts have determined that "Utah courts and clerks have no authority to direct sheriffs of other states' counties to seize property."[33] Implicit in this determination is the correlate—that Utah courts have authority to issue writs for the seizure of real property to sheriffs of Utah counties, regardless where the district court is located in the state. Supporting such determination is the Utah Code of Judicial Administration, which provides "[a] district court judge may issue all extraordinary writs and other writs necessary to carry into effect the district court judge's orders, judgments, and decrees."[34] "District courts are courts of general jurisdiction. As such, they maintain jurisdiction to consider all matters except as limited by statute or constitution . . . . Under this broad jurisdictional grant, district courts maintain a certain degree of inherent power

---

[30] *See generally* UTAH R. CIV. P. 64E.
[31] UTAH R. CIV. P. 64E(a).
[32] *Id.* R. 64(d)(1).
[33] *See Aequitas Enters., LLC v. Interstate Inv. Grp., LLC*, 2011 UT 82, ¶17, 267 P.3d 923.
[34] Utah Code Ann. § 78A-5-102(2).

Case No. 206927043
Page 10 of 10

to properly discharge their duties."[35] Accordingly, contrary to the Mulligans' assertion, the Court

possessed the requisite authority to issue the Writ notwithstanding that the Property was located

outside the Third District.

### **CONCLUSION**

Sections 78B-5-201 and -202, read in concert, require only that a judgment creditor file a

judgment in the Registry of Judgments or that it file a judgment in the office of the county

recorder of the county in which the property subject to the lien is located and file a separate

information statement to convert a judgment to a lien. Alum Rock complied with these

provisions, recording the judgment and a separate judgment information sheet in the Weber

County Recorder's Office on November 16, 2020. As the Property was under the control of Mr.

Del Valle at the time the judgment was domesticated in Utah, it was subject to execution under

rule 64E. Finally, this Court is a court of general jurisdiction and may therefore issue writs,

including the writ at issue in this case. The location of the Property outside the Third District

does not invalidate the writ. The Court properly issued a writ of execution for the Property on

June 22, 2021, and the Court declines to set aside that writ.

This is the Order of the Court, and no further writing is required.

DATED October 27, 2022.

Judge Adam T. Mow
Third Judicial District Court

---

[35] *W. Water, LLC v. Olds*, 2008 UT 18, ¶42, 184 P.3d 578.

10

**CERTIFICATE OF NOTIFICATION**

I certify that a copy of the attached document was sent to the following people for case 206927043 by the method and on the date specified.

MAIL: PRP INVESTORS MADISON LLC 417 29TH STREET NEWPORT BEACH, CALIFORNIA 92663

MAIL: BDV INC 417 29TH STREET NEWPORT BEACH, CALIFORNIA 92663

MAIL: BDV LLC 417 29TH STREET NEWPORT BEACH, CALIFORNIA 92663

MANUAL EMAIL: BRADLEY TILT BRADLEY.TILT@FREEMANLOVELL.COM

MANUAL EMAIL: BENJAMIN JOHNSON BEN.JOHNSON@BTJD.COM

10/27/2022          /s/ TANNER FLINDERS

Date: _____          _____

                                        Signature

EXHIBIT 5

*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2024 UT 22**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

MOLLY J. MULLIGAN and JOHN P. MULLIGAN,
*Appellants,*

*v.*

ALUM ROCK RIVERSIDE, LLC,
*Appellee.*

No. 20221024
Heard April 10, 2024
Filed July 18, 2024

On Direct Appeal

Third District, Salt Lake County
The Honorable Adam T. Mow
No. 206927043

Attorneys:

Bradley L. Tilt, Salt Lake City, Felicia B. Canfield, Cody, Wyo.,
for appellants

Benjamin D. Johnson, KC Hooker, Salt Lake City, for appellee

JUSTICE HAGEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE PETERSEN, and JUSTICE POHLMAN joined.

JUSTICE HAGEN, opinion of the Court:

### INTRODUCTION

¶1    This case stems from a California judgment that Alum
Rock Riverside, LLC obtained against Brett Del Valle. After
domesticating the judgment in Utah and recording it with the
county recorder, Alum Rock received a writ of execution allowing
it to seize and sell a property in Weber County.

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

¶2    At the time Alum Rock recorded the judgment with the county recorder, the property was owned by a revocable trust that was established and administered by Brett and his wife. But the trust had sold the property by the time Alum Rock applied for the writ. And when the court issued the writ, the property's new owners — the Mulligans — objected, arguing that (1) Alum Rock failed to create a judgment lien because it did not record the judgment in the registry of judgments, (2) the writ was not available because the trust — not Brett — held title to the property when the judgment was domesticated in Utah, and (3) the district court lacked jurisdiction to issue the writ because the property was located in a different judicial district.

¶3    The district court upheld the writ over the Mulligans' objections, and we affirm. First, we hold that Alum Rock created a judgment lien when it recorded the judgment in the county recorder's office. As of July 1, 2002, a party seeking a judgment lien is not required to record the judgment in the registry of judgments. Second, we hold that the writ was available against the property, even though the title was held in the name of a revocable trust, because Brett retained all indicia of ownership over the property when the lien was created. And third, we hold that the Mulligans have not identified a relevant limitation on the district court's jurisdiction that would prevent it from issuing the writ.

## BACKGROUND

¶4    Alum Rock Riverside, LLC sued Brett Del Valle in California state court for breach of contract and other claims. Alum Rock prevailed, and the court issued a judgment in its favor totaling more than $4 million. Soon after, Alum Rock domesticated the judgment in Utah's Third District Court. Because the Del Valle Family Trust owned property in Weber County, Utah, Alum Rock recorded the judgment in the Weber County Recorder's Office.

¶5    Brett and his wife, Traci, had formed the trust years earlier, naming themselves as trustees. Brett and Traci retained broad powers over the trust and its property, including the power to revoke the trust, amend it, and transfer property from it. In addition, the trust empowered Brett and Traci, as trustees, to hold, manage, control, lease, and encumber trust property. Several years after they created the trust, Brett and Traci, acting as trustees, acquired the Weber County property at issue in this case.

¶6    The trust continued to hold title to the property when Alum Rock recorded its judgment against Brett in the county

2

Cite as: 2024 UT 22

Opinion of the Court

recorder's office. A few months after Alum Rock recorded the judgment, however, the trust conveyed the property to Molly and John Mulligan. And one month after that, Alum Rock applied for a writ of execution against the property, identifying Brett as the judgment debtor and asking the district court to "direct the sheriff to seize and sell" the property to satisfy the judgment.

¶7   When the court issued the writ as requested, the Mulligans challenged it. Acknowledging that their challenge "rises or falls" on whether a lien "was created and attached to the property," they asserted that Alum Rock did not do what the Judgment Act requires to create a judgment lien on real property.[1] Specifically, they claimed that Alum Rock did not fully comply with the following statutory requirements, found in Utah Code section 78B-5-201:

> (2) On or after July 1, 1997, a judgment entered in a district court does not create a lien upon or affect the title to real property unless the judgment is filed in the Registry of Judgments of the office of the clerk of the district court of the county in which the property is located.

> (3)(a) On or after July 1, 2002, . . . a judgment entered in a district court does not create a lien upon or affect the title to real property unless the judgment or an abstract of judgment is recorded in the office of the county recorder in which the real property of the judgment debtor is located.

UTAH CODE § 78B-5-201(2)–(3)(a) (2021).

¶8   The Mulligans argued that because Alum Rock obtained its judgment against Brett in 2020—after both July 1, 1997, and July 1, 2002—Alum Rock needed to comply with the requirements of both subsections: filing the judgment in the registry of judgments and recording it with the county recorder. Because Alum Rock did not file the judgment in the registry of judgments, the Mulligans reasoned, a lien was not created.

---

[1] We refer to Utah Code, Title 78B, Chapter 5, Part 2 as the Judgment Act. Effective July 1, 2024, the Judgment Act was renumbered, and the legislature made minor stylistic changes. We cite the version in effect at the time the district court issued the writ.

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

¶9    The Mulligans also claimed that, under the Judgment Act
and the Utah Rules of Civil Procedure, the writ was not "available"
against the property. Under the Judgment Act, real property
subject to a judgment lien "includes all the real property . . . owned
or acquired at any time by the judgment debtor during the time the
judgment is effective." *Id.* § 78B-5-202(7)(c)(ii) (2021). And under
rule 64E of the Utah Rules of Civil Procedure, "[a] writ of execution
is available to seize property in the possession or under the control
of the defendant following entry of a final judgment." UTAH R. CIV.
P. 64E(a). According to the Mulligans, the writ was "issued
improperly" because (1) Brett never owned the property (the trust
did), and (2) in any event, he did not possess or control the property
at the relevant time (the Mulligans did).

¶10    Finally, the Mulligans questioned the district court's
jurisdiction. In their view, the court lacked jurisdiction to issue the
writ because the proceedings fall within reach of a venue statute
that lists actions that "shall be tried in the county in which the
[property] . . . is situated." *See* UTAH CODE § 78B-3-301(1) (2021).[2]
The Mulligans also claimed that under Utah caselaw, actions in
which the "main question . . . involves title to real property" may
be heard only by the district court where the property is located.
(Quoting *Calder v. Third Jud. Dist. Ct.*, 273 P.2d 168, 171 (Utah 1954).)
Because the property here is outside the district court's geographic
boundaries, the Mulligans maintained that the court lacked
jurisdiction to issue the writ.

¶11    The district court upheld the writ against the Mulligans'
challenge. It first concluded that the Judgment Act did not require
Alum Rock to file its judgment in the registry of judgments, as the
Mulligans had argued, and that Alum Rock's lien attached when
the judgment was recorded with the county recorder. Next, the
court determined that because the property was under Brett's
control when Alum Rock domesticated the judgment, the property
was subject to execution under rule 64E. Finally, the court rejected
the Mulligans' challenge to its jurisdiction, explaining that it had
the power to issue the writ even though the property is located
outside the Third District.

---

[2] This venue statute has been renumbered and slightly altered,
effective July 1, 2024. *See* UTAH CODE § 78B-3a-202(1). We cite the
version in effect at the time the district court issued the writ.

Cite as: 2024 UT 22

Opinion of the Court

¶12  The Mulligans appeal, and we have jurisdiction under
Utah Code subsection 78A-3-102(3)(j).

## ISSUES AND STANDARDS OF REVIEW

¶13  The parties dispute whether Alum Rock created a
judgment lien on the property. "Judgment liens are creatures of
statute . . . ." *Gildea v. Wells Fargo Bank, N.A.*, 2015 UT 11, ¶ 12, 347
P.3d 385. Accordingly, whether the property here is encumbered
by Alum Rock's purported judgment lien raises a question of
statutory interpretation, a legal question that we review for
correctness. *See Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50,
¶ 12, 267 P.3d 863.

¶14  The Mulligans also contest the district court's conclusions
that the property is subject to the writ and that the court had
jurisdiction to issue the writ. Because these determinations were
premised on the court's interpretation of Utah law, they also
present legal questions, which we review for correctness. *See Peak
Alarm Co. v. Salt Lake City Corp.*, 2010 UT 22, ¶ 16, 243 P.3d 1221.

## ANALYSIS

¶15  The Mulligans challenge three aspects of the district
court's decision, each of which turns in part on statutory
interpretation. "The aim of statutory interpretation is to ascertain
the intent of the legislature, and the best evidence of the
legislature's intent is the plain language of the statute itself."
*SunStone Realty Partners X LLC v. Bodell Constr. Co.*, 2024 UT 9, ¶ 11,
545 P.3d 260 (cleaned up). But because "statutory text may not be
plain when read in isolation," *State v. J.M.S. (In re J.M.S.)*, 2011 UT
75, ¶ 13, 280 P.3d 410 (cleaned up), "we determine the meaning of
the text given the relevant context of the statute (including,
particularly, the structure and language of the statutory scheme),"
*McKitrick v. Gibson*, 2021 UT 48, ¶ 19, 496 P.3d 147 (cleaned up).

¶16  We first address the Mulligans' contention that Alum Rock
skipped a necessary step to create a lien on the property by not
filing its judgment in the registry of judgments. We clarify that to
create a lien from a foreign judgment, creditors must adhere to
relevant requirements under the Judgment Act as well as the
Foreign Judgment Act. But since July 1, 2002, creditors do not need
to file judgments in the registry of judgments to create a lien. Thus,
Alum Rock created a valid lien when it recorded its judgment in
the county recorder's office.

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

¶17 Next, we assess whether Brett "owned" the property, allowing Alum Rock's lien to attach, even though the revocable trust that he and his wife created and administered held title to it. We conclude that he did.

¶18 Finally, we consider and reject the Mulligans' argument that limitations on the district court's jurisdiction prohibited the court from issuing the writ.

### I. ALUM ROCK CREATED A VALID LIEN ON THE PROPERTY

¶19 To resolve this appeal, we must decide whether Alum Rock created a valid lien on the property before it was sold to the Mulligans. The answer to that question largely depends on the meaning of two provisions of the Judgment Act.

¶20 These provisions, subsections (2) and (3)(a) of Utah Code section 78B-5-201, set out actions that judgment creditors have needed to perform at different times to create a judgment lien on real property:

> (2) On or after July 1, 1997, a judgment entered in a district court does not create a lien upon or affect the title to real property unless the judgment is filed in the Registry of Judgments of the office of the clerk of the district court of the county in which the property is located.

> (3)(a) On or after July 1, 2002, . . . a judgment entered in a district court does not create a lien upon or affect the title to real property unless the judgment or an abstract of judgment is recorded in the office of the county recorder in which the real property of the judgment debtor is located.

UTAH CODE § 78B-5-201(2)–(3)(a) (2021). The Mulligans argue that these requirements—the registry-of-judgments requirement and the county-recorder requirement—"work together, cumulatively." Under their reading, because the judgment was domesticated in 2020, which is "on or after" both July 1, 1997, and July 1, 2002, *see id.*, Alum Rock could not create a lien on the property unless it (1) filed its judgment in the registry of judgments and (2) recorded it with the county recorder.

¶21 Before interpreting these provisions, we address a threshold issue raised by Alum Rock: whether section 78B-5-201 of the Judgment Act even applies here, given that Alum Rock's

Cite as: 2024 UT 22

Opinion of the Court

judgment is a foreign judgment. After explaining why the section applies, we interpret its provisions.

### A. Creditors Domesticating Foreign Judgments Must Adhere to the Judgment Act's Requirements for Creating a Lien

¶22  Alum Rock argues that the Judgment Act's registry-of-judgments requirement is not implicated here because Alum Rock's judgment is governed by the Foreign Judgment Act, which makes no mention of the registry of judgments. We disagree.

¶23  As it relates to converting a foreign judgment into a lien, the Foreign Judgment Act provides:

> (1) A foreign judgment entered in a district court under this part becomes a lien as provided in Section 78B-5-202 if:
>
> (a) a stay of execution has not been granted;
>
> (b) the requirements of this chapter are satisfied; and
>
> (c) the judgment is recorded in the office of the county recorder where the property of the judgment debtor is located, as provided in Section 78B-5-202 [of the Judgment Act].

UTAH CODE § 78B-5-305(1).

¶24  Alum Rock points out that this section of the Foreign Judgment Act mentions section 78B-5-202 of the Judgment Act but not section 78B-5-201. And, it adds, section 202 also does not mention section 201 or its registry-of-judgments requirement, on which the Mulligans' argument turns. *See id.* § 78B-5-202(7)(a) (2021) ("After July 1, 2002, a judgment . . . becomes a lien upon real property if . . . the judgment . . . is recorded in the office of the county recorder.").

¶25  These points are well taken. Still, the Foreign Judgment Act declares that foreign judgments are treated the same as domestic ones. Specifically, it provides that "[a] foreign judgment filed under [the Foreign Judgment Act] has the same effect and is subject to the same procedures, defenses, enforcement, satisfaction, and proceedings for reopening, vacating, setting aside, or staying as a judgment of a district court of this state." *Id.* § 78B-5-302(3). Alum Rock argues that this language does not "incorporate[] the Judgment Act wholesale into the Foreign Judgment Act." Instead, Alum Rock urges us to parse this language and treat the phrase "for

7

MULLIGAN v. ALUM ROCK RIVERSIDE

Opinion of the Court

reopening, vacating, setting aside, or staying" as modifying and limiting the entire preceding series—"procedures, defenses, enforcement, satisfaction, and proceedings."

¶26  To take one example, as Alum Rock sees it, foreign judgments are not generally "subject to the same procedures" as domestic judgments; they are merely "subject to the same procedures . . . *for reopening, vacating, setting aside, or staying*" as domestic judgments. Alum Rock thus argues that the Judgment Act applies to foreign judgments only when reopening, vacating, setting aside, or staying a foreign judgment, none of which Alum Rock seeks to do here.

¶27  But Alum Rock's argument is undercut by a decision that we issued after the briefing in this appeal was completed, *SunStone Realty Partners X LLC v. Bodell Construction Co.*, 2024 UT 9, 545 P.3d 260. There, the parties disputed whether, under the Foreign Judgment Act, Utah's or Hawaii's postjudgment interest rate applied to a Hawaii judgment that was domesticated in Utah. *Id.* ¶¶ 1–2. In resolving the dispute, we explained that the Foreign Judgment Act "mandates that foreign judgments domesticated using the [Foreign Judgment Act] are 'subject to the same procedures, defenses, enforcement, satisfaction, and proceedings . . . as a judgment of a district court of this state.'" *Id.* ¶ 13 (quoting UTAH CODE § 78B-5-302(3)). In line with this principle, we held that "[b]ecause postjudgment interest is an enforcement mechanism," Utah's postjudgment interest rate applied. *Id.* ¶ 21.

¶28  In *SunStone* we did not read the phrase "for reopening, vacating, setting aside, or staying" as modifying "enforcement." *See id.* ¶ 13; *see also* UTAH CODE § 78B-5-302(3). Indeed, it would be unreasonable to read the phrase to modify terms like "enforcement" and "satisfaction" because a judgment's enforcement or satisfaction would not be at issue in proceedings to reopen, vacate, set aside, or stay a judgment. This leads us to conclude that the phrase limits and modifies only the nearest item in the series to it—"proceedings."

¶29  We reject Alum Rock's reading for another reason as well. Under its reading, a creditor intending to create a lien based on a domestic judgment would be subject to all the Judgment Act's constraints, but a foreign-judgment creditor would not. This would result, counterintuitively, in a foreign judgment being *easier* to convert into a lien than a domestic one, which is contrary to an express purpose of the Foreign Judgment Act—to treat foreign

Cite as: 2024 UT 22

Opinion of the Court

judgments the same as domestic ones in key respects. *See* UTAH CODE § 78B-5-302(2)–(3).

¶30  Like postjudgment interest, a lien is a means of enforcing a judgment. As such, a foreign judgment is subject to the same requirements for lien creation as domestic judgments. Thus, the Foreign Judgment Act incorporates the Judgment Act's requirements for creating a judgment lien, including those found in section 78B-5-201.

### B. Alum Rock Did Not Need to File Its Judgment in the Registry of Judgments to Create a Lien

¶31  Having concluded that section 201 applies, we must interpret subsections (2) and (3)(a) and determine whether their requirements are cumulative (as the Mulligans argue) or sequential (as Alum Rock argues). We hold that they are sequential, not cumulative.

¶32  Although we have yet to decisively interpret these provisions, the court of appeals previously interpreted a substantively similar version of the statute under analogous circumstances and rejected the cumulative reading now advanced by the Mulligans. In *Kitches & Zorn, L.L.C. v. Yong Woo Kim*, 2005 UT App 164, 112 P.3d 1210, judgment creditors recorded an abstract of their judgment in the county recorder's office and applied for a writ of execution permitting them to sell a property that was owned by the judgment debtor. *Id.* ¶¶ 2–3. But the judgment debtor deeded his interest in the property to his wife between the time the creditors recorded the judgment with the county recorder and the time they applied for the writ. *Id.* ¶ 2.

¶33  When the district court issued the writ, the judgment debtor objected, claiming that the creditors did not create a lien on the property before the debtor conveyed the property to his wife because they "had not . . . filed the Judgment in the Registry of Judgments." *Id.* ¶ 4. On appeal, the debtor argued that the registry-of-judgments and county-recorder provisions "must be read together, thereby creating a two-step process" that required post-2002 judgments to be filed "in both the Registry of Judgments and the office of the county recorder." *Id.* ¶ 12.

¶34  The *Kitches* court rejected this cumulative reading and held that "after July 1, 2002, a person seeking a lien on real property need only file in the office of the county recorder." *Id.* ¶ 13. We reach the same conclusion because it is supported by the structure of section

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

78B-5-201, other sections of the Utah Code from the Judgment Act and the Foreign Judgment Act, and the prior-construction canon of statutory interpretation.

¶35  The structure of section 201 itself signals that the registry-of-judgments and county-recorder requirements are to be read sequentially, creating independent requirements for successive time periods. For context, a district court's entry of judgment historically "create[d] a lien upon the real property of the judgment debtor" automatically. *See* UTAH CODE § 78B-5-202(2) (2021) ("Prior to July 1, 1997, . . . the entry of judgment by a district court creates a lien upon the real property of the judgment debtor . . . ."). But the legislature did away with this automatic-lien regime. As recognized by subsection (2) of section 78B-5-201, beginning July 1, 1997, a judgment lien does not arise automatically upon a district court's entry of judgment; such a judgment does not create a lien "unless the judgment is filed in the Registry of Judgments of the office of the clerk of the district court of the county in which the property is located." *Id.* § 78B-5-201(2) (2021).

¶36  As with the automatic-lien regime, the legislature also phased out subsection (2)'s registry-of-judgments requirement. Subsection (3)(a) of section 201 marks this evolution in the law. Rather than allow a judgment to create a lien automatically (before July 1, 1997) or require judgment creditors to file the judgment in the registry of judgments (on or after July 1, 1997), beginning July 1, 2002, a judgment entered in the district court does not create a lien "unless the judgment or an abstract of judgment is recorded in the office of the county recorder in which the real property of the judgment debtor is located." *Id.* § 78B-5-201(3)(a) (2021).

¶37  This sequential reading makes sense when we zoom in on the grammatical structure of subsections (2) and (3)(a). The two subsections are separate, stand-alone provisions, each punctuated with a period. Their requirements are not joined with a conjunction such as "and" or "or." And subsection (3)(a) does not expressly incorporate subsection (2)'s registry-of-judgments requirement.

¶38  Contrast this with subsection (4) of the same section, which also imposes requirements on judgment creditors, requiring them to include certain information when filing or recording a judgment:

> (4) In addition to the requirements of Subsections (2) and (3)(a), any judgment that is filed in the Registry of Judgments on or after September 1, 1998, or any judgment or abstract of judgment that is

10

Cite as: 2024 UT 22

Opinion of the Court

recorded in the office of a county recorder after July 1, 2002, shall include:

(a) the information identifying the judgment debtor as required under Subsection (4)(b) on the judgment or abstract of judgment; or

(b) a copy of the separate information statement of the judgment creditor that contains:

(i) the correct name and last-known address of each judgment debtor and the address at which each judgment debtor received service of process;

(ii) the name and address of the judgment creditor;

(iii) the amount of the judgment as filed in the Registry of Judgments;

(iv) if known, the judgment debtor's Social Security number, date of birth, and driver's license number if a natural person; and

(v) whether or not a stay of enforcement has been ordered by the court and the date the stay expires.

*Id.* § 78B-5-201(4) (2021). Unlike subsections (2) and (3)(a), subsection (4)'s requirements are unified, with the cumulative requirements indented, punctuated with semicolons, and joined with a conjunction. And with the opening phrase "in addition to," subsection (4) expressly incorporates the requirements of previous subsections.

¶39  As subsection (4) demonstrates, the legislature knows how to signal when it intends requirements to be cumulative. But unlike subsection (4), subsection (3) does not state that recording in the county recorder's office must be done "[i]n addition to" the registry-of-judgments requirement in subsection (2). And instead of listing both requirements as indented subsections separated by semicolons and a conjunction, the legislature listed the two requirements as stand-alone provisions triggered on different dates. That structure supports our reading that subsection (3)'s requirements supplant those in subsection (2) after July 1, 2002.

¶40  Reading the subsections sequentially also makes sense when we zoom out and look at related sections of the Utah Code.

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

We have a "duty to harmonize and reconcile statutory provisions." *Field v. Boyer Co.*, 952 P.2d 1078, 1081 (Utah 1998) (cleaned up). Reading section 201's requirements as being sequential harmonizes and reconciles them with section 78B-5-202 of the Judgment Act and section 78B-5-305 of the Foreign Judgment Act. Properly understood, all three statutes provide that, since July 1, 2002, a judgment becomes a lien on real property if it is recorded in the office of the county recorder. Utah Code section 78B-5-202 provides that, after July 1, 2002, a judgment becomes a lien on real property if it "is recorded in the office of the county recorder." UTAH CODE § 78B-5-202(7)(a) (2021). And Utah Code section 78B-5-305, part of the Foreign Judgment Act, provides:

> (1) A foreign judgment entered in a district court under this part becomes a lien as provided in Section 78B-5-202 if:
>
> > (a) a stay of execution has not been granted;
> >
> > (b) the requirements of this chapter are satisfied; and
> >
> > (c) the judgment is recorded in the office of the county recorder where the property of the judgment debtor is located, as provided in Section 78B-5-202.

*Id.* § 78B-5-305(1).

¶41  Notice that these sections do not refer to the registry of judgments. If, as the Mulligans suggest, the legislature intended judgment creditors to continue filing in both the registry of judgments and the county recorder's office, this absence would be hard to reconcile. For example, consider how the text of section 202 squares with the Mulligans' reading of section 201. Section 202 provides, "After July 1, 2002, a judgment . . . becomes a lien upon real property if . . . the judgment . . . is recorded in the office of the county recorder." *Id.* § 78B-5-202(7)(a) (2021). But under the Mulligans' reading of section 201, after July 1, 2002, a judgment *does not* become a lien on real property if the judgment is recorded in the office of the county recorder; the judgment must also be filed in the registry of judgments.

¶42  Historical context helps explain why sections 202 and 305 mention the county-recorder requirement but not the registry-of-judgments requirement. In 2001, the legislature passed a bill that amended the Judgment Act and the Foreign Judgment Act in

Cite as: 2024 UT 22

Opinion of the Court

significant ways. *See* Judgment Lien Amendments, H.B. 305, 2001
Leg., Gen. Sess. (Utah 2001) (available at
https://le.utah.gov/~2001/bills/hbillenr/HB0305.htm). The
bill—which ushered in the county-recorder regime for judgment-
lien creation—provided that the statutory overhaul was to take
effect July 1, 2002. *See id.* Before that date, the sections that are now
codified as sections 202 and 305 did not specify the manner of
recording a judgment lien. *See* UTAH CODE §§ 78-22-1, 78-22a-5
(2001). As of July 1, 2002, however, the sections recognized and
reflected the incoming county-recorder requirement. *See id.* §§ 78-
22-1, 78-22a-5 (July 2002). Each section was amended to specify that
for a judgment to create a lien, the judgment must be "recorded in
the office of the county recorder." *See id.* §§ 78B-5-
202(7)(a), -305(1)(c). But the legislature did not add similar
language referring to the registry-of-judgments requirement. That
omission further supports our conclusion that the outdated
registry-of-judgments requirement was entirely supplanted by the
county-recorder regime as of July 1, 2002.

¶43 The prior-construction canon of statutory interpretation
also reinforces our reading of section 201. Under that canon, if a
word or phrase has been uniformly interpreted in caselaw, "a later
version of that act perpetuating the wording is presumed to carry
forward that interpretation." ANTONIN SCALIA & BRYAN A. GARNER,
READING LAW: THE INTERPRETATION OF LEGAL TEXTS 322 (2012). In
other words, "where a legislature amends a portion of a statute but
leaves other portions unamended, or re-enacts them without
change, the legislature is presumed to have been satisfied with
prior judicial constructions of the unchanged portions of the statute
and to have adopted them as consistent with its own intent."
*Christensen v. Indus. Comm'n*, 642 P.2d 755, 756 (Utah 1982).

¶44 In *Kitches*, the court of appeals interpreted the section that
is now codified as section 201 to mean that "after July 1, 2002, a
person seeking a lien on real property need only file in the office of
the county recorder." 2005 UT App 164, ¶ 13. That decision has
stood as controlling law in this jurisdiction for nearly two decades,
and during that time judgment creditors have presumably relied
on it as such. The legislature has amended the Judgment Act—
including section 201—several times since *Kitches* was decided, yet

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

it has not modified the language to abrogate the case's holding.[3] We presume that by amending the statute but leaving the portions relevant here unamended, the legislature was satisfied with *Kitches'* reading.

¶45  The Mulligans maintain that *Kitches* has not been the controlling law in Utah since 2013 because it was overtaken by the court of appeals' decision in *T3 Properties, LLC v. Persimmon Investments, Inc.*, 2013 UT App 38, 299 P.3d 613. There, a creditor obtained a court judgment in 2001, at which time the judgment debtor owned property in Salt Lake County. *Id.* ¶¶ 2–3. Not long after, however, the debtor conveyed his interest in the property to a third party. *Id.* ¶ 3. And not until years later did the creditor begin efforts to execute the judgment by having the property sold. *Id.* ¶ 4.

¶46  Between the time the court entered the judgment and the time the debtor transferred the property, the creditor recorded the judgment in the registry of judgments but did not file an information statement with the judgment.[4] *Id.* ¶¶ 16–17. The issue was whether the judgment creditor created a lien on the property before the debtor conveyed it away. *Id.* ¶ 17. To answer that question, the court interpreted the 2001 version of the Judgment Act, *id.* ¶¶ 16–28, which, like the current version, provided that "[o]n or after July 1, 1997, a judgment . . . does not create a lien upon or affect the title to real property unless the judgment is recorded in the Registry of Judgments," *see id.* ¶ 15 (quoting UTAH CODE § 78-22-1.5(2) (2001)). The next subsection provided, "In addition to the requirement of [the previous subsection], any judgment that is recorded in the Registry of Judgments on or after September 1,

---

[3] For examples of how section 201 has been amended over the years, see H.B. 46, 2011 Leg., Gen. Sess. (Utah 2011) (available at https://le.utah.gov/~2011/bills/static/HB0046.html); H.B. 315, 2014 Leg., Gen. Sess. (Utah 2014) (available at https://le.utah.gov/~2014/bills/hbillenr/hb0315.htm); H.B. 16, 2014 Leg., Gen. Sess. (Utah 2014) (available at https://le.utah.gov/~2014/bills/static/hb0016.html); H.B. 251, 2023 Leg., Gen. Sess. (Utah 2023) (available at https://le.utah.gov/~2023/bills/static/HB0251.html).

[4] There was some uncertainty about whether the judgment was recorded in the registry of judgments, but the court assumed that it was. *See T3 Pros., LLC v. Persimmon Invs., Inc.*, 2013 UT App 38, ¶¶ 16, 28, 299 P.3d 613.

Cite as: 2024 UT 22

Opinion of the Court

1998, shall include a separate information statement of the judgment creditor." *Id.* (quoting UTAH CODE § 78-22-1.5(3) (2001)).

¶47 The *T3* court concluded that under the 2001 version of the Judgment Act, "both requirements"—the registry-of-judgments and information-statement requirements—"must be satisfied to create a judgment lien." *Id.* ¶ 19. To support this conclusion, the court analyzed the relevant text by noting that (1) the legislature's "[u]se of the word 'shall' . . . indicates that filing an information statement is mandatory," and (2) the information-statement requirement "must be completed 'in addition' to" the registry-of-judgments requirement. *Id.* (cleaned up); *see also id.* ¶ 21. Even though the court's decision was based on the language of the 2001 version of the Judgment Act and turned on the information-statement requirement, the court added a footnote stating that "the 2002 version [of the Judgment Act] required that the judgment and the information statement be recorded in both the Registry of Judgments and in the county recorder's office." *Id.* ¶ 14 n.5.

¶48 According to the Mulligans, *T3* overtook *Kitches* as controlling law interpreting the Judgment Act. We disagree. Although the *T3* court included a footnote suggesting that the registry-of-judgments and county-recorder requirements of the 2002 Judgment Act are cumulative, *see id.*, that statement was dicta because it was "unnecessary to the decision in the case and therefore not precedential," *see Obiter Dictum*, BLACK'S LAW DICTIONARY (12th ed. 2024). A separate panel of the court, squarely presented with the issue, had held that those requirements are sequential and that judgments no longer need to be filed in the registry of judgments for a lien to attach. *See supra* ¶¶ 32–34. The *T3* court did not even mention *Kitches*, much less purport to overrule it. *Kitches* remained controlling law on the sequential nature of the recording requirements despite the footnote dicta in *T3*. We therefore presume that when the legislature amended section 201 post-*Kitches*, it saw no need to amend the recording requirements because it was satisfied with the prior judicial interpretation of those requirements in *Kitches*.

¶49 The Mulligans also argue that the court's analysis in *T3* favors a cumulative reading of the registry-of-judgments and county-recorder requirements. They maintain that *T3* "involved a deep analysis" of section 201 and "laid out a roadmap for how courts should analyze [the Judgment Act's] cumulative amendments over time." Although we are not bound to follow

15

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

court of appeals decisions, we often look to those decisions for their persuasive value. *Eaton Kenway, Inc. v. Auditing Div. of Utah State Tax Comm'n*, 906 P.2d 882, 885 (Utah 1995). But we see little persuasive value in *T3* relative to the issue in the present case.

¶50 The court in *T3* interpreted a different provision in the 2001 version of the Judgment Act, which did not contain the county-recorder requirement. *See* 2013 UT App 38, ¶ 15. The question before the court was whether the registry-of-judgments and information-statement requirements were cumulative. *See id.* ¶ 28. Unlike the county-recorder requirement at issue here, the information-statement requirement specified that it was "[i]n addition to" the registry-of-judgments requirement found in section 201(2). *Id.* ¶ 12 (quoting Utah Code § 78-22-1.5(3) (2001)). This additional language, which expressly made the registry-of-judgments and the information-statement requirements cumulative, easily distinguishes *T3* from both *Kitches* and the present case.

¶51 We endorse *Kitches'* holding that, since July 1, 2002, a lien on real property is created by recording the judgment, along with other required information, with the county recorder where the real property is located. Alum Rock therefore did not need to record the judgment in the registry of judgments, and it created a lien by recording the judgment in the county recorder's office.

## II. BRETT OWNED THE PROPERTY FOR PURPOSES OF ALUM ROCK'S LIEN ATTACHING

¶52 The Mulligans argue that, under the Judgment Act, "[t]here is no basis for any judgment lien against the Property" because the trust, not Brett, held title to the property. Before explaining why we disagree, we pause to address the Mulligans' criticism of the district court's analysis.

¶53 The Mulligans criticize the district court for relying on rule 64E of the Utah Rules of Civil Procedure, rather than the Judgment Act, in concluding that the property is "subject to the execution." Rule 64E allows writs of execution to be issued against property that is "*in the possession or under the control of* the defendant." UTAH R. CIV. P. 64E(a) (emphasis added). The Judgment Act, in contrast, sets the conditions under which a judgment lien attaches in the first instance, providing that real property subject to a judgment lien "includes all the real property . . . *owned or acquired* at any time by the judgment debtor during the time the judgment is effective." UTAH CODE § 78B-5-202(7)(c)(ii) (2021) (emphasis added).

16

Cite as: 2024 UT 22

Opinion of the Court

¶54  The Mulligans argue that the district court should have focused its analysis on the Judgment Act, rather than on rule 64E, which they contend "has nothing whatsoever to do with whether the Foreign Judgment against Brett personally could become a lien against Property he never owned." But because they principally relied on rule 64E, not the Judgment Act, before the district court, the court's reliance on rule 64E was understandable. In their principal filing below, the Mulligans cited rule 64E and quoted, with emphasis, the rule's language regarding possession and control. In contrast, they mentioned the Judgment Act's "owned or acquired" language only in passing in a footnote.

¶55  It is true that the Mulligans argued to the district court that the property was "never . . . *owned* by Brett Del Valle in his individual and personal capacity." (Emphasis added.) Yet they never tied that argument to the language of the Judgment Act, and the thrust of their argument below was that the writ "was not properly available under the express terms" of the "governing Utah Rules of Civil Procedure." In its decision, the court rejected that rule-based argument because rule 64E "does not contain any provision limiting its application to owners of property."

¶56  On appeal, the Mulligans distance themselves from their prior reliance on rule 64E and embrace the Judgment Act's "owned or acquired" language.[5] Under the Judgment Act, real property subject to a judgment lien "includes all the real property. . . owned or acquired at any time by the judgment debtor during the time the judgment is effective."[6] *Id.* To the Mulligans, holding title is the essence of ownership. Because Brett "was never in title," they maintain that "he never owned the Property" and the lien never attached to it.

¶57  When the judgment was entered against Brett, the property was held by the Del Valle Family Trust, which is a revocable trust that Brett formed with his wife, Traci. "A trust is a form of ownership in which the legal title to property is vested in a trustee, who has equitable duties to hold and manage it for the benefit of the beneficiaries." *Cont'l Bank & Tr. Co. v. Country Club Mobile Ests., Ltd.*, 632 P.2d 869, 872 (Utah 1981). A revocable trust is "[a] trust in which the settlor" (the person who creates the trust)

---

[5] Alum Rock has not challenged this issue as unpreserved.

[6] The Utah Code defines "[r]eal property" as "any right, title, estate, or interest in land." UTAH CODE § 57-1-1(3).

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

"reserves the right to terminate the trust and recover the trust property and any undistributed income." *Revocable Trust*, BLACK'S LAW DICTIONARY (12th ed. 2024). One standard estate-planning practice is to form "[a] revocable trust in which the settlor[s] . . . are also the trustees and manage the trust for their own benefit during their lifetimes." *West v. West (In re Est. of West)*, 948 P.2d 351, 355 (Utah 1997). When done properly, this strategy serves to "avoid probate of the assets while allowing the settlor to retain control of the trust property during his or her own lifetime." *See id.*

¶58  Under the terms of the Del Valle Family Trust, either Brett or Traci, as co-settlors, may revoke the "community estate" (community property held in trust), wholly or partially. Upon revocation, this property would be delivered to Brett and/or Traci and would continue to be their community property. Similarly, the "separate estate" (separate property and quasi-community property held in trust) may be revoked unilaterally by Brett or Traci, whichever of them contributed the property to the trust; and upon revocation, the property would be delivered to the contributor.

¶59  Brett and Traci may also amend the trust and transfer property from it. While they are both living, Brett and Traci may amend "any of the terms of [the trust] by an instrument in writing signed by [Brett and Traci] and delivered to the Trustee." And they may—acting jointly for community property, or individually for separate and quasi-community property—"transfer property . . . out of the trust estate to any other person or organization." In addition, as trustees, Brett and Traci may hold, manage, control, lease, and encumber trust property. With this backdrop, the question is whether, for purposes of the Judgment Act, Brett "owned" the property when the judgment was entered against him, even though the trust held title to it. *See* UTAH CODE § 78B-5-202(7)(c)(ii) (2021).

¶60  Because "the settlor of a revocable trust necessarily retains the functional equivalent of ownership of the trust assets," 6 AUSTIN WAKEMAN SCOTT ET AL., SCOTT AND ASCHER ON TRUSTS § 15.4.2 (6th ed. 2024), "[i]n . . . substantive respects (such as creditors' rights), the property held in a revocable trust is ordinarily to be treated as if it were property of the settlor," RESTATEMENT (THIRD) OF TRUSTS § 25 cmt. a. (AM. L. INST. 2003). Thus, in certain situations—"by reason of a power of revocation, appointment, or withdrawal"—a person may have "the equivalent of ownership of

18

Cite as: 2024 UT 22

Opinion of the Court

the trust property, even though the legal title to the property is held by the trustee." *See id.* § 74 cmt. a (AM. L. INST. 2007).

¶61  In effect, the Mulligans argue that the trust shielded the property from Brett's judgment creditor, Alum Rock. But under Utah law, "[d]uring the lifetime of the settlor, the property of a revocable trust is subject to the claims of the settlor's creditors." UTAH CODE § 75-7-505(1). That approach is consistent with the general rule that "property held in [a revocable] trust is subject to the claims of creditors of the settlor . . . if the same property belonging to the settlor . . . would be subject to the claims of the creditors." RESTATEMENT (THIRD) OF TRUSTS § 25 cmt. e (AM. L. INST. 2003). And other courts "generally have concluded that the assets of a revocable trust are properly subject to the claims of the settlor's creditors." *Pandy v. Indep. Bank*, 372 P.3d 1047, 1050 (Colo. 2016) (en banc) (collecting cases).

¶62  In short, because settlors of revocable trusts can access the full bundle of property-rights sticks, they cannot keep those sticks from their creditors. Here, as co-settlor and co-trustee, Brett retained the hallmarks of ownership over the property. As the district court noted, Brett and Traci could, at any time, "revoke the Trust, . . . amend it, . . . [or] transfer property from it." Under these circumstances, we hold that, for purposes of the Judgment Act, Brett owned the property at the time the judgment was entered against him.[7] Accordingly, Alum Rock's lien attached to the property when Alum Rock recorded the lien with the county recorder.

### III. THE MULLIGANS HAVE NOT IDENTIFIED A LIMITATION ON THE DISTRICT COURT'S AUTHORITY TO ISSUE A WRIT OF EXECUTION ON PROPERTY LOCATED IN A COUNTY OUTSIDE THE THIRD DISTRICT

¶63  The Mulligans contend that the Third District Court "lacked authority and jurisdiction" to issue the writ because the property sits in Weber County, which is outside the court's geographic boundaries. Because they have not identified a relevant limitation on the district court's jurisdiction to issue the writ, we reject that argument.

---

[7] Neither side has addressed whether Traci's joint ownership of the property has any effect on the judgment lien. For that reason, we express no opinion on the matter.

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

¶64  This matter arose when Alum Rock filed a notice of
judgment with the Third District Court. There is no question that
this was proper, because under the Foreign Judgment Act a foreign
judgment like Alum Rock's California judgment "may be filed with
the clerk of any district court in Utah." UTAH CODE § 78B-5-302(2).
Once Alum Rock domesticated the judgment, the judgment
inherited "the same effect . . . as a judgment" of a Utah district
court. *Id.* § 78B-5-302(3). Such a judgment may be enforced through
a writ of execution. *Id.* § 78A-5-102 ("A district court judge may
issue all extraordinary writs and other writs necessary to carry into
effect the district court judge's orders, judgments, and decrees.").

¶65  The Mulligans have not identified any relevant law that
would limit a district court's authority to issue a writ of execution
to be effectuated in a county outside that court's judicial district.
They first cite a venue statute, which provides that "[a]ctions" for
certain "causes involving real property shall be tried in the county
in which the subject of the action . . . is situated." *Id.* § 78B-3-301(1)
(2021). Those "causes" are

> for the recovery of real property, or of an estate or
> interest in the property; . . . for the determination . . .
> of the right or interest in the property; . . . for injuries
> to real property; . . . for the partition of real property;
> and . . . for the foreclosure of all liens and mortgages
> on real property.

*Id.*

¶66  But the Mulligans' reliance on this statute is misguided
because no "[a]ction[] . . . involving real property" is at issue here.
*See id.* Indeed, no cause of action is at issue at all. The causes of
action that gave rise to Alum Rock's judgment against Brett (for
breach of contract) were brought in California and, from what we
can tell, had nothing to do with the Weber County property. Simply
put, this proceeding to enforce that judgment through a writ of
execution is not an action involving real property governed by the
venue statute.[8]

---

[8] For the same reason, the caselaw that the Mulligans cite
regarding "action[s]" that "involve[] title to real property" misses
the mark. *See Calder v. Third Jud. Dist. Ct.*, 273 P.2d 168, 171 (Utah
1954).

Cite as: 2024 UT 22

Opinion of the Court

¶67  The Mulligans also cite rule 64 of the Utah Rules of Civil
Procedure as an additional limitation on the district court's
authority. According to them, a distinction in word choice between
two sentences in rule 64(d)(1) "precludes courts in one county from
ordering seizure of real property located in a different county."
Rule 64(d)(1) explains how court clerks are to issue writs for real
and personal property:

> If the writ directs the seizure of real property, the
> court clerk will issue the writ to the sheriff of the
> county in which the real property is located. If the
> writ directs the seizure of personal property, the
> court may issue the writ to an officer of any county.

UTAH R. CIV. P. 64(d)(1). From this language, the Mulligans glean
that "the rule expressly authorizes any court in any county in Utah
to direct the seizure . . . of *personal property* located in any county in
Utah" but does not do the same for *real property*.

¶68  Although the Mulligans are correct that the rule
distinguishes between writs of execution for personal property
versus real property and requires that the latter be directed to the
"sheriff of the county in which the real property is located," *see id.*,
the rule says nothing about which court may issue the writ. Rule
64(d)(1) contains no requirement that the district court issuing the
writ be in the same county as the real property. If anything, by
specifying that writs involving real property must be "issue[d] . . .
to the sheriff of the county in which the real property is located,"
*see id.*, the rule seems to presuppose that the issuing court may be
located elsewhere.

¶69  The Mulligans have not established that the district court
exceeded its authority by issuing the writ. Neither the venue statute
nor rule 64(d)(1) prohibits a district court from issuing a writ of
execution for real property located in another Utah judicial district.

## CONCLUSION

¶70  Although Alum Rock needed to comply with the
Judgment Act's requirements for creating a lien, filing in the
registry of judgments was not one of those requirements. The lien
attached to the property once Alum Rock recorded the judgment
with the Weber County Recorder's Office. When the judgment was
recorded, Brett owned the property for purposes of the Judgment
Act because the property's title was held in a revocable trust settled
by Brett and his wife. And the Mulligans have not shown that the

MULLIGAN *v.* ALUM ROCK RIVERSIDE

Opinion of the Court

district court lacked authority to issue the writ. Accordingly, we affirm.

———————————

EXHIBIT 6

The Order of the Court is stated below:
**Dated:** December 05, 2022       /s/   ADAM T. MOW
              02:51:10 PM                        District Court Judge

Bradley L. Tilt (Utah Bar No. 07649)
Freeman Lovell, PLLC
4568 S Highland Drive, Suite 290
Salt Lake City, Utah 84117
Office: (385) 355-4826                                    **Tax ID No. 20-119-0007**
bradley.tilt@freemanlovell.com
*Attorney for Molly J. Mulligan and John P. Mulligan*

## IN THE THIRD JUDICIAL DISTRICT COURT
## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| ALUM ROCK RIVERSIDE LLC, | **ORDER STAYING PROCEEDINGS TO ENFORCE JUDGMENT AGAINST MULLIGANS' PROPERTY PENDING APPEAL** |
| Plaintiff | |
| v. | |
| PRP INVESTORS MADISON, LLC, a California limited liability company, and BRETT DEL VALLE, an individual, and  DOES 1 through 50 inclusive, | Case No. 206927043 |
| Defendants. | Judge Adam Mow |

The *Motion for Stay of Proceedings to Enforce Judgment Against Mulligans' Property*

*Pending Appeal and Request for Hearing,* dated November 18, 2022 (the "**Motion for Stay**")

came on for hearing before the above-named Court, the Honorable Judge Adam Mow presiding,

at 8:30 a.m. on December 5, 2022 (the "**Hearing**").  Plaintiff Alum Rock Riverside LLC

("**Plaintiff**" or "**Alum Rock**") was represented at the Hearing by Benjamin D. Johnson, of

Bennett Tueller Johnson & Deere.  Property owners Molly J. Mulligan and John P. Mulligan (the

1

"**Mulligans**") were represented at the Hearing by Bradley L. Tilt, of Freeman Lovell.

The Court having reviewed the Mulligans' Motion for Stay and the *Declaration of Bradley L. Tilt* and other supporting exhibits and materials filed with the Motion for Stay, having reviewed Alum Rock's *Opposition to Motion for Stay of Proceedings*, dated November 30, 2022 and the exhibits thereto, and the Mulligans' *Reply Memorandum in Support of Motion for Stay of Proceedings to Enforce Judgment Against Mulligans' Property Pending Appeal and Request for Hearing*, dated December 2, 2022, and having reviewed all other applicable pleadings and papers on file herein, and the Court having heard oral argument from legal counsel for Alum Rock and from legal counsel for Mulligans at the Hearing, the Court being duly informed in the premises, and for good cause shown,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

1.      Mulligans' Motion for Stay is granted, without any requirement to post any bond nor any other security.

2.      Effective immediately as of 9:00 a.m. on December 5, 2022, any and all action to in any way foreclose, sell, and/or otherwise execute upon and/or against Mulligans' Property (as that term is hereinafter defined) as any part of any effort to collect the judgment entered against Brett Del Valle and others in California case no. RIC 1601942, which is on file in and/or relates to this above-captioned Court in this above-captioned case, and/or which has been recorded on November 16, 2020, as Entry No. 3101770 in the office and records of the Weber County Recorder (all of which are referred to hereinafter individually and/or collectively as the "**Judgment Against Del Valle**") is stayed pending the outcome of the appeal in and of this

2

above-captioned case which the Mulligans have filed and which is presently pending in the Supreme Court of the State of Utah and which is presently known as *Molly J. Mulligan and John P. Mulligan v. Alum Rock Riverside, LLC, PRP Investors Madison, LLC, and Brett Del Valle*, Appellate Case No. 20221024-SC (collectively, the "**Appeal**").  The Appeal is potentially subject to transfer to the intermediate Utah Court of Appeals; this above-captioned Order will remain in full force and effect to, after, and notwithstanding any such transfer.

3.      Without limitation of any kind upon any of the foregoing, the Weber County Sheriff's sale of the Mulligans' Property (as that term is hereinafter defined) which is presently scheduled for 2:00 p.m. on December 6, 2022, is stayed, and may not proceed.

4.      Further without limitation of any kind upon any of the foregoing, the term "**Mulligans' Property**" appearing in this Order means and refers to that certain real property which is located in Weber County, State of Utah, more particularly described as follows:

Lot 7, BASINVIEW ESTATES CLUSTER SUBDIVISION 1ST AMENDMENT, according to the official plat thereof on file and of record in the office of the Weber County Recorder.

Together with a right of use for an easement for ingress and egress over and across Basinview Road (a private road), as shown on the official dedicated plat, to and from said Lot to a physically open and legally dedicated public street.

Tax ID No. 20-119-0007

5.      The grounds for granting the Motion for Stay, including without need or requirement of posting any bond and/or other security include without limitation the following:

a.      This Court's *Ruling & Order on Mulligans' Reply to Writ of Execution*, entered on October 27, 2022, declared that Mulligans' Property is subject to a lien of/from the Judgment Against Brett Del Valle.  Unless and until that ruling and determination is overruled on Appeal, Mulligans' Property serves to secure Alum Rock to some extent of and from the Judgment Against Brett Del Valle.

b.      This case presents serious issues on the merits warranting appellate review under Rule 8(b)(2) of the Utah Rules of Appellate Procedure due to the potential loss by the Mulligans of the Mulligans' Property.

c.      There is a likelihood of irreparable harm to the Mulligans in the absence of a stay as ordered herein, including loss of real property which outweighs any of the speculative potential harms identified by Alum Rock due to the resulting delay of collecting its Judgment Against Brett Del Valle (*i.e.*, changes in property market/values, potential natural disasters such as fire, foreclosure by other creditors, loss of rents), and the stay ordered herein is not adverse to the public interest.

d.      Additionally, and in any event, this case presents unique and extraordinary circumstances which justify issuing the stay ordered herein, including the fact that the Mulligans, whose real property is protected by this stay, are not the judgment debtors on the Judgment Against Brett Del Valle and could lose their real property.

**\*\*END OF ORDER – entered when indicated by the Court's seal at the top of first page\*\***

4

APPROVED AS TO FORM AND CONTENT:

BENNETT TUELLER JOHNSON & DEERE

_____/s/ Benjamin D. Johnson*_____
Benjamin D. Johnson
*Attorneys for Alum Rock*
*signed by filing attorney Bradley L. Tilt with*
*email permission of signing attorney Benjamin D. Johnson*

<u>**SERVICE CERTIFICATE**</u>

I certify that on December 5, 2022, I caused a true and correct copy of the foregoing
**ORDER STAYING PROCEEDINGS TO ENFORCE JUDGMENT AGAINST
MULLIGANS' PROPERTY PENDING APPEAL** to be served in the manner indicated to
the following parties at the addresses listed below:

| | |
|---|---|
| Benjamin D. Johnson | _____ Hand Delivery |
| KC Hooker | _____ First Class, United States Mail, |
| Bennett Tueller Johnson & Deere | Postage Prepaid |
| 3165 East Millrock Drive, Suite 500 | __X__ E-filing via GreenFiling |
| Salt Lake City, Utah 84121 | _____ E-filing via CM/ECF |
| ben.johnson@btjd.com | __X__ Email |
| kchooker@btjd.com | _____ Other:_____ |
| *Attorneys for Plaintiff* | |

_____/s/ Bradley L. Tilt_____
Bradley L. Tilt

5

EXHIBIT 7

Bradley L. Tilt (07649)
FREEMAN LOVELL, PLLC
4568 S Highland Drive, Suite 290
Salt Lake City, Utah 84117
office: 385-355-4826
bradley.tilt@freemanlovell.com
*Attorneys for Plaintiffs*

Felicia B. Canfield (09686)
CANFIELD LAW LLC
2413 Newton Avenue
Cody, WY 82414
Cell: (307) 228-5986
canfieldlawllc@gmail.com
*Attorney for Plaintiffs*

> **If you do not respond to this document within applicable time limits, judgment could be entered against you as requested.**

---

**IN THE SECOND DISTRICT COURT IN AND FOR
WEBER COUNTY, STATE OF UTAH**

| | |
|---|---|
| MOLLY J. MULLIGAN; and<br>JOHN P. MULLIGAN,<br><br>       Plaintiffs<br><br>       v.<br><br>SINGLE BOX, L.P.;<br>SB AB WEST LOOP, L.P.;<br>BRETT H. DEL VALLE and TRACI M.<br>DEL VALLE, as Co-Trustees of The Del<br>Valle Family Trust dated October 30, 2002, <br>ALUM ROCK RIVERSIDE, LLC, a<br>California limited liability company,<br><br>       Defendants. | **SUPPLEMENTAL** COMPLAINT<br><br>Case No. _____<br><br>Judge _____ |

Deleted: ,

Plaintiffs assert, allege, and pray for relief as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs Molly M. Mulligan and John P. Mulligan each are individuals (referred

to hereinafter collectively as "**Plaintiffs**" or "**Mulligans**") who together, as wife and husband

and as joint tenants, own and claim that certain real property which is the subject of this case.

2.      The real property which is the subject of this case is located in Weber County,

State of Utah, and is more particularly described as follows (the "**Property**"):

Lot 7, BASINVIEW ESTATES CLUSTER SUBDIVISION 1ST AMENDMENT,
according to the official plat thereof on file and of record in the office of the Weber
County Recorder.

Together with a right of use for an easement for ingress and egress over and across
Basinview Road (a private road), as shown on the official dedicated plat, to and from
said Lot to a physically open and legally dedicated public street.

Tax ID No. 20-119-0007

3.      Defendant Single Box, L.P. ("**Single Box**") is an entity which claims or may

claim to have an interest in or to the Property.

4.      Defendant SB AB West Loop, L.P. ("**West Loop**") is an entity which claims or

may claim to have an interest in or to the Property.

5.      Defendants Brett H. Del Valle and Traci M. Del Valle, as Co-Trustees of The Del

Valle Family Trust dated October 30, 2002 (referred to hereinafter individually and/or

collectively as the "**Trust**") previously owned the Property and conveyed it by warranty deed to

Plaintiffs.

6.      Defendant Alum Rock Riverside, LLC ("**Alum Rock**"), is a California limited

2

liability company which claims or may claim to have an interest in or to the Property.

7.      Jurisdiction is proper in this Court, including without limitation pursuant to Utah Code Ann. § 78B-6-401.

8.      Venue is proper in this Court, including without limitation pursuant to Utah Code Ann. § 78B-3-301(1) & § 78B-3-304 because this action involves real property located in Wasatch County, Utah.

9.      This matter is a Tier 3 case under and pursuant to Rule 26(c)(3) of the Utah Rules of Civil Procedure.

**Deleted:** 2

## GENERAL ALLEGATIONS

10.     The Trust purchased and obtained title of record to the Property in 2007 by way of a *Special Warranty Deed* from Basinview Development, LC, which deed was recorded on May 3, 2007 as Entry No. 2261271 in the official records of the Weber County Recorder's office.

11.     The Trust at all times owned the Property from its purchase in 2007 until the Trust, as Grantor, sold the Property to Plaintiffs, as joint tenants, conveying title by way of a *Warranty Deed* recorded on May 11, 2021 as Entry No. 3151874 in the official records of the Weber County Recorder's office (the "**Warranty Deed**").

**Deleted:** in the spring of 2021

12.     The claimed interests of Defendant Single Box and/or Defendant West Loop (collectively referred to hereinafter as "**Single Box**" or the "**Single Box Defendants**") in or to the Property is/are based and premised upon a certain document entitled *Entry of Foreign*

**Deleted:** <#>Plaintiffs purchased the Property from the Trust in the spring of 2021, and the Trust conveyed the Property to Plaintiffs by that certain *Warranty Deed* which was recorded on May 11, 2021, as Entry No. 3151874 in the office and records of the Weber County Recorder (the "**Warranty Deed**").¶

3

*Judgment Pursuant to Utah Code Ann. § 78B-5-302*, which they claim was recorded on October 5, 2020, as Entry No. 3090706 in the office and records of the Weber County Recorder, and which they claim is, created, and constitutes a judgment lien upon and/or against the Property (the "**Single Box Claimed Judgment Lien**").

13.  The Single Box Claimed Judgment Lien relates to a claimed underlying foreign judgment which was entered against Brett Del Valle individually and personally (among others, but not including and/or not against the Trust).

14.  Defendants Single Box nevertheless claim that the Single Box Claimed Judgment Lien attached to and encumbered the Property, including particularly but without limitation purportedly ahead of and with priority over Plaintiffs' interests in and ownership of the Property, they have failed and/or refused to release of record the Single Box Claimed Judgment Lien which therefore is and constitutes a cloud upon Plaintiffs' title to the Property, and they have stated that they intend to enforce the Single Box Claimed Judgment Lien against the Property.

15.  The claimed interests of efendant Alum Rock in or to the Property is/are based and premised upon a certain document entitled *Notice of Judgment* filed on October 23, 2020 in the Third Judicial District Court, Salt Lake County, which they claim was recorded on October 23, 2020 as Entry No. 3101770 in the office and records of the Weber County Recorder, and which they claim is, created, and constitutes a judgment lien upon and/or against the Property (the "**Alum Rock Claimed Judgment Lien**").

16.  The Alum Rock Claimed Judgment Lien relates to a claimed underlying foreign judgment which was entered against Brett Del Valle individually and personally (among others,

> **Deleted:** and/or West Loop

> **Formatted:** Font:

but not including and/or not against the Trust).

17.      Defendant Alum Rock nevertheless claims that the Alum Rock Claimed Judgment Lien attached to and encumbered the Property, including particularly but without limitation purportedly ahead of and with priority over Plaintiffs' interests in and ownership of the Property, it has failed and/or refused to release of record the Alum Rock Claimed Judgment Lien which therefore is and constitutes a cloud upon Plaintiffs' title to the Property, and it has stated that it intends to enforce the Alum Rock Claimed Judgment Lien against the Property.

18.      Leading up to and at the time that the Mulligans purchased the Property, the Single Box Claimed Judgment Lien and the Alum Rock Claimed Judgment Lien did not appear of record in any Weber County abstract of title for the Property.

19.      Defendants claim the Trust is a revocable Trust and that the Property owned by the Trust was subject to each of their respective above-referenced claimed judgment liens even though their above-referenced underlying claimed judgments were not against the Trust.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment and Quiet Title – against all Defendants)**

20.      Plaintiffs incorporate into and make a part of this cause of action each and every other paragraph in this Supplemental Complaint.

21.      An actual controversy has arisen and now exists regarding the Single Box Claimed Judgment Lien of the Single Box Defendants and/or the Alum Rock Claimed Judgment Lien of Defendant Alum Rock upon and/or against the Property which has been conveyed to and is owned by Plaintiffs.

22.    The interests of the parties are adverse, concrete, and justiciable, and declaratory relief is warranted.

23.    Either the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien did not attach at all as any lien upon nor encumbrance against the Property because the claimed judgment debtor Brett Del Valle personally never owned the Property at any time relevant to this case, or, in the alternative only, the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien attached to, encumber, and/or affect, if anything and, at most, only a one half interest in and/or against the Property (leaving the other one half interest in and to the Property free and clear of and from, and unaffected by, the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and each of them), including without limitation by virtue of and pursuant to, perhaps among other things:

a.    Paragraph 12.12 of the Trust document which provides that the Trust "shall be governed by the laws of the state of [the] situs" with respect to real property rights and interests;

b.    Utah Code Section 75-7-505(1) which provides that: "If a trust has more than one settlor, the amount the creditor or assignee of a particular settlor may reach may not exceed the settlor's interest in the portion of the trust attributable to that settlor's contribution."; and

c.    The fact that there appear to be two settlors of the Trust each of whom therefore had, at most, only a one half interest in and to the Property; Brett H. Del Valle, as one of two apparent settlors of the Trust had, and the Single Box Claimed Judgment

6

**Deleted:** s

**Deleted:** s

**Deleted:** an

Lien and/or the Alum Rock Claimed Judgment Lien therefore could attach to, at most only a one half interest, if any, in and to the Property.

24.     Plaintiffs seeks to quiet title to their ownership of the Property as against the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, in whole or in part.

25.     A judicial declaration is necessary and appropriate at this time in order that the Plaintiffs may confirm their rights with respect to ownership of the Property, including in advance of and before any attempt by Defendants Single Box and/or Alum Rock to enforce either of their respective claimed judgment liens against the Property.

**Deleted:** West Loop

**Deleted:** the Claimed Judgment Lien

26.     Pursuant to Utah Code Ann. §§ 78B-6-401, *et seq*., Rule 57 of the Utah Rules of Civil Procedure, and otherwise, Plaintiffs are entitled to declaratory judgment that either the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien did not attach at all as any lien upon nor encumbrance against the Property because the claimed judgment debtor Brett Del Valle personally never owned the Property at any time relevant to this case, or, in the alternative only, declaratory judgment that the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien attached to, encumber, and/or affect, if anything and, at most, only the same one half interest in and/or against the Property (leaving the other one half interest in and to the Property free and clear of and from, and unaffected by, the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and each of them).

**Deleted:** s

**Deleted:** s

**Deleted:** a

27.     Additionally, pursuant to Utah Code Ann. §§ 78B-6-1301, *et. seq*., Rule 57 of the Utah Rules of Civil Procedure, and otherwise, Plaintiffs are entitled to judgment quieting title of

the Property in Plaintiffs, either fully free and clear of and from, and unaffected by, any and all

estates, rights, titles, and/or interests which may be held and/or claimed by and/or under the

Single Box Claimed Judgment Lien and/or the Alum Rock claimed Judgment Lien, or, in the

alternative only, Plaintiffs are entitled to judgment quieting title of at least a one half interest in

and to the Property free and clear of and unaffected by the Single Box Claimed Judgment Lien

and/or the Alum Rock Claimed Judgment Lien, and each of them (*i.e.*, that the Claimed

Judgment Liens can affect, if anything and at most, only the same one half interest in and to the

Property).

> **Deleted:** a

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.


**SECOND CAUSE OF ACTION**
**(Equitable Subordination – against all Defendants)**

> **Deleted:** Single Box and West Loop

28.    Plaintiffs incorporate into and make a part of this cause of action each and every

other paragraph in this Supplemental Complaint.

29.    Prior to Plaintiffs' purchase of the Property from the Trust, the Property was

subject to and encumbered by a *Deed of Trust* which was recorded on September 20, 2017, as

Entry No. 2879566 in the office and records of the Weber County Recorder (the "**First Position**

**Trust Deed**").

30.    Also prior to Plaintiffs' purchase of the Property from the Trust, the Property was

subject to and encumbered by a *Deed of Trust With Assignment of Rents* which was recorded on

July 6, 2020, as Entry No. 3066407 in the office and records of the Weber County Recorder (the

"**Second Position Trust Deed**").

8

31.    Further prior to Plaintiffs' Purchase of the Property from the Trust, the Property

was subject to and encumbered by a lien for unpaid county property taxes (the "**Property Tax**

**Lien**").

32.    The First Position Trust Deed and the Second Position Trust Deed each were prior

and superior to the later-recorded Single Box Claimed Judgment Lien, the later-recorded Alum

Rock Claimed Judgment Lien, and each of them.

33.    As a matter of law the Property Tax Lien had super-priority ahead of and superior

to any interest of the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment

Lien, and each of them.

34.    Plaintiffs' proceeds for and from Plaintiffs' purchase of the Property were used to

pay off the First Position Trust Deed ($712,209.92), the Second Position Trust Deed

($948,000.00), and the Property Tax Lien ($46,248.89), all having priority over, ahead of, and

superior to any interest of the Single Box Claimed Judgment Lien, the Alum Rock Claimed

Judgment Lien, and each of them, in the total cumulative amount of at least $1,706,458.81.

35.    Plaintiffs paid and authorized the payment and disbursement of those proceeds of,

for and from their purchase of the Property to pay off those prior and superior obligations and

liens against the Property with the understanding and intent that Plaintiffs' Warranty Deed and

all other rights of Plaintiffs in and to the Property would be in a first priority position ahead of

and without any liens and/or encumbrances (other than those which Plaintiffs themselves may

have signed and pledged), including without limitation occupying the priority places of and

instead of the First Position Trust Deed, the Second Position Trust Deed, the Property Tax Lien,

9

**Deleted:** Plaintiffs'

**Deleted:** s

**Deleted:** pay off

and ahead of and superior to all other estates, rights, titles, claims, and/or interests in, to, on, and/or against the Property (other than those which Plaintiffs themselves may have signed and pledged).

36.    At the time Plaintiffs purchased the Property and disbursed and/or authorized disbursement of their purchase proceeds, Plaintiffs did not know that of Defendants Single Box and/or Alum Rock, or any of them, held or would claim to hold any priority position pursuant to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, or otherwise, over, ahead of, or superior to Plaintiffs' ownership of the Property pursuant to Plaintiffs' Warranty Deed or otherwise.

37.    It would be inequitable and unjust if the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien were not equitably subordinated to Plaintiffs' ownership of and Warranty Deed on and to the Property.

38.    By virtue of Plaintiffs' purchase proceeds having paid off prior liens and obligations on and against the Property, including, without limitation, prior liens and obligations to which the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and any and all other interests held or claimed by Defendants Single Box, and/or Alum Rock, and each of them, were at all times junior, subject, and inferior, their Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and all other interests of the Single Box Defendants, Defendant Alum Rock, and each of them, should be equitably subordinated to Plaintiffs' ownership and Warranty Deed, to at least the extent that Plaintiffs' purchase proceeds paid off and reduced prior liens and obligations on and against the Property to which any and all

Deleted: West Loop,

Deleted: either

Deleted: their

Deleted: '

Deleted: , West Loop

Deleted: and

interests of Defendants Single Box, and/or Alum Rock, and each of them, were at all times junior, subject, and inferior.

39.     Plaintiffs are entitled, pursuant to Utah Code Ann. §§ 78B-6-401 *et seq*., Rule 57 of the Utah Rules of Civil Procedure, and otherwise, to declaratory judgment that, by virtue of Plaintiffs having paid off liens and obligations on and against the Property that were prior and superior to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien and to any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box, and/or Alum Rock, and each and any of them, and to which they always were subject and inferior, the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien and any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box, and/or Alum Rock, and each and any of them, are equitably subordinated to and do not affect Plaintiffs' ownership, Warranty Deed, and other interests, at least to the extent that Plaintiffs' purchase proceeds paid off or reduced prior liens and obligations on and against the Property.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION
**(Equitable Subrogation – against all Defendants)**

40.     Plaintiffs incorporate into and make a part of this cause of action each and every other paragraph in this Supplemental Complaint.

41.     It would be inequitable and unjust if Plaintiffs' ownership, Warranty Deed, and other interests in and to the Property were not equitably and otherwise subrogated to a position of

11

**Deleted:** , West Loop

**Deleted:** , West Loop

**Deleted:** either

**Deleted:** , West Loop

**Deleted:** either

**Deleted:** Single Box and West Loop

priority ahead of and superior to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien and to any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them, due to and in light of Plaintiffs' purchase proceeds having paid off liens and obligations on and against the Property that were prior and superior to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien and to any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them, and to which they always were subject and inferior.

**Deleted:** , West Loop
**Deleted:** either
**Deleted:** , West Loop
**Deleted:** either

42.    If Plaintiffs' ownership, Warranty Deed, and other interests were not equitably subrogated to a position of priority ahead of and superior to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and to any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them, then Defendants Single Box and/or Alum Rock, and each and any of them would be unjustly enriched and reap a windfall by virtue of Plaintiffs having paid off other liens and obligations to which the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and to any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them always were, and would otherwise have remained, subordinate.

**Deleted:** , West Loop
**Deleted:** either
**Deleted:** , West Loop
**Deleted:** either
**Deleted:** , West Loop
**Deleted:** either

43.    Plaintiffs are entitled, pursuant to Utah Code Ann. §§ 78B-6-401 *et seq.*, Rule 57 of the Utah Rules of Civil Procedure, and otherwise to declaratory judgment that Plaintiffs' ownership, Warranty Deed, and other interests in and to the Property should be and are

12

subrogated to the priority positions in, on, and to the Property of all prior liens and obligations, with priority over the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien and to any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box, and/or Alum Rock, and each and any of them, which were paid off with Plaintiffs' purchase proceeds, including particularly but without limitation to the priority position of the First Position Trust Deed, the Second Position Trust Deed, the Property Tax Lien, and each of them, ahead of and superior to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien and to any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box, and/or Alum Rock, and each and any of them, at least to the extent that Plaintiffs' purchase proceeds paid off or reduced such prior liens and obligations on and against the Property.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**(Declaratory Judgment of, and Damages for,**
**Breaches of Warranty Deed – against the Trust)**

44.    Plaintiffs incorporate into and make a part of this cause of action each and every other paragraph in this Supplemental Complaint.

45.    When the Trust executed the Warranty Deed to Plaintiffs, and by executing it, the Trust, among other things, as a matter of law (including without limitation under and pursuant to Utah Code Ann. § 57-1-12(2)), expressly covenanted and warranted, among other things, that the Trust was lawfully seised of good and marketable title of and to the Property, that the Trust had the right to and that by the Warranty Deed the Trust in fact did convey and warrant the Property

13

**Deleted:** , West Loop
**Deleted:** either
**Deleted:** , West Loop
**Deleted:** either

to Plaintiffs, and that the Trust would defend generally the title of the Property in Plaintiffs against all adverse claims and demands (subject only to certain specified interests stated on the face of the Warranty Deed which do not apply to this case).

46.    Plaintiffs have provided, and do again hereby provide, written notice to the Trust of and regarding the claims and potential interests in the Property which are the subject of this case, and has demanded, including in writing, that the Trust release, satisfy, and otherwise discharge the same to provide and ensure the full, free, clear, and marketable title of and to the Property to Plaintiffs as the Trust is legally and statutorily required to do by virtue of the Warranty Deed.

47.    To date, however, the Trust has failed, and/or refused, to comply with the requests and demands as stated in the immediately preceding paragraph.

48.    Pursuant to Utah Code Ann. §§ 78B-6-401, *et seq.*, Rule 57 of the Utah Rules of Civil Procedure, and otherwise, Plaintiffs are entitled to declaratory judgment that by virtue of the foregoing the Trust is in breach of its covenants and warranties of title with respect to the Property contained and implied as a matter of law in and as a part of the Warranty Deed.

49.    Plaintiffs have suffered, are continuing to suffer, and otherwise will suffer and are entitled to recover from the Trust, damages as a result of the Trust's breaches of the various covenants and warranties of the Warranty Deed, regarding ownership of and title to the Property, in amounts that will be shown at trial.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

14

**FIFTH CAUSE OF ACTION**
**(Injunctive Relief)**

50.    Plaintiffs incorporate into and make a part of this cause of action each and every

other paragraph in this Supplemental Complaint.

51.    Defendants Single Box and Allum Rock each have stated to Plaintiffs that they

intend to enforce the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed

Judgment Lien, respectively, against the Property.

52.    Defendants Single Box and/or Alum Rock, and each and/or any of them,

proceeding with any enforcement of their Single Box Claimed Judgment Lien and/or the Alum

Rock Claimed Judgment Lien against the Property, including without limitation any execution

upon and/or foreclosure of the Property allegedly pursuant to the Single Box Claimed Judgment

Lien and/or the Alum Rock Claimed Judgment Lien, including without limitation during the

pendency of this action and before the issues in this lawsuit have been ruled upon by the Court as

to the validity, scope, effect, and/or priority of the Single Box Claimed Judgment Lien and/or the

Alum Rock Claimed Judgment Lien, would result in immediate, great, and irreparable injury and

damage to Plaintiffs who have no plain, speedy, or adequate remedy at law to protect their

Property unless Defendants Single Box, Alum Rock, and each of them, is/are restrained from

taking such action.

53.    Defendants Single Box and/or Alum Rock, and each and/or any of them,

proceeding with any enforcement of the Single Box Claimed Judgment Lien and/or the Alum

Rock Claimed Judgment Lien against the Property could render a final judgment for Plaintiffs

15

| Deleted: West Loop |
| Deleted: ir |
| Deleted: , West Loop |
| Deleted: either |
| Deleted: ir |
| Deleted: West Loop |
| Deleted: and/or either |
| Deleted: , West Loop |
| Deleted: either |
| Deleted: ir |

ineffectual in the absence of temporary, preliminary, and permanent injunctive relief. Plaintiffs are entitled to a temporary restraining order and preliminary injunction during the pendency of this action, and thereafter to a permanent injunction, restraining and enjoining Defendants Single Box, Alum Rock, and each of them, from proceeding to any enforcement, execution, and/or foreclosure upon and/or against the Property pursuant to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and from attempting to enforce the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien against the Property in any way.

**SIXTH CAUSE OF ACTION**
**(Declaratory Judgment – Bona Fide Purchasers)**

54.     Plaintiffs incorporate into and make a part of this cause of action each and every other paragraph in this Supplemental Complaint.

55.     Plaintiffs paid valuable consideration and acted in good faith when they purchased the Property.

56.     When Plaintiffs purchased the Property the only owner of record was, and for fourteen years only ever had been, the Trust.

57.     When Plaintiffs purchased the Property no liens of record existed against the Trust, the grantor on the Warranty Deed conveying title to Plaintiffs, other than the First Position Trust Deed, the Second Position Trust Deed, and the Property Tax Lien (each of which were prior and superior to the later-recorded Single Box Claimed Judgment Lien and to the later-recorded Alum Rock Judgment Lien, and all of which were paid off and satisfied with Plaintiffs'

16

proceeds for and from Plaintiffs' purchase of the Property).

58.    As a result, Plaintiffs did not discover any judgment liens on the Property and therefore had no notice of any adverse interest in the Property.

59.    Plaintiffs purchased, paid for, and obtained title to the Property without notice of the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, each of which were related to foreign judgments which were not entered against the Trust, and without notice of any other claim in or to the Property by Defendants Single Box and/or Alum Rock, nor any of them.

60.    At the time the Mulligans purchased the Property, they had no knowledge of the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, nor of any other claim by Defendants Single Box and/or Alum Rock, nor any of them, in, to, and/or against the Property.

61.    At the time the Mulligans purchased the Property, nothing in the official records of the Weber County Recorder showed whether the Trust was a purportedly revocable trust.

62.    At the time the Mulligans purchased the Property, they did not know whether the Trust was a purportedly revocable trust.

63.    Pursuant to Utah Code Ann. §§ 78B-6-401, *et seq.*, Rule 57 of the Utah Rules of Civil Procedure, and otherwise, Plaintiffs are entitled to declaratory judgment that by virtue of the foregoing Plaintiffs are bona fide purchasers of the Property who paid valuable consideration, in good faith, without notice of any adverse claims of Defendants Single Box and/or Alum Rock, including without notice of the Single Box Claimed Judgment Lien and/or the Alum Rock

17

Claimed Judgment Lien, and that Plaintiffs' estates, rights, titles, and interests in and to the Property are free and clear of and are wholly unaffected by the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and any and all other claims by Defendants Single Box and/or Alum Rock to any estate, right, title, lien, encumbrance, and/or other interest in, on, or to the Property, and unable to be affected by any attempt of Defendants to execute upon and/or to foreclose any claimed lien upon and/or encumbrance against the Property.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### SEVENTH CAUSE OF ACTION
### (Declaratory Judgment and Quiet Title – No Constructive Notice – all Defendants)

64.    Plaintiffs incorporate into and make a part of this cause of action each and every other paragraph in this Supplemental Complaint.

65.    The Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien constituted material defects on and against the Property that were not disclosed to Plaintiffs.

66.    Plaintiffs caused a proper search to be done on the Property prior to their purchase.

67.    On information and belief, the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien were not indexed correctly in the official records of the Weber County Recorder's office.

68.    The Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien were not properly filed with the Weber County Recorder.

18

69.     Therefore, the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien were not properly recorded pursuant to Utah Code Ann. § 57-3-102.

70.     Plaintiffs thus had no constructive notice of the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, or any of them.

71.     Pursuant to Utah Code Ann. §§ 78B-6-401, *et seq.*, Rule 57 of the Utah Rules of Civil Procedure, and otherwise, Plaintiffs are entitled to declaratory judgment that Plaintiffs' estates, rights, titles, and interests in and to the Property are free and clear of and wholly unaffected by the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and any and all other claims by Defendants Single Box and/or Alum Rock to any estate, right, title, lien, encumbrance, and/or other interest in, on, or to the Property, and unable to be affected by any attempt of Defendants to execute upon and/or to foreclose any claimed lien upon and/or encumbrance against the Property.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

**EIGHTH CAUSE OF ACTION**
(Alternative Claim for Declaratory Judgment
as to Extent and Priority of Claimed Judgment Liens)

72.     Plaintiffs incorporate into and make a part of this cause of action each and every other paragraph in this Supplemental Complaint.

73.     In the alternative only to the foregoing claims and causes of action, and if and only if for any reason the court finds or determines that the Single Box Claimed Judgment Lien and the Alum Rock Claimed Judgment Lien both are good and valid liens and/or encumbrances upon or against any interest whatsoever in and/or to the Property, then, pursuant to Utah Code

Ann. §§ 78B-6-401, *et seq*., Rule 57 of the Utah Rules of Civil Procedure, and otherwise, Plaintiffs are entitled to declaratory judgment as to the scope and extent of any interest in and/or to the Property which is or may be affected by the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and each of them, and are entitled to declaratory judgment as to the respective priority of the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and each of them.

**WHEREFORE**, Plaintiffs pray for relief as follows:

1.      Judgment declaring that either the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien did not attach at all as any lien upon nor encumbrance against the Property because the claimed judgment debtor Brett Del Valle personally never owned the Property at any time relevant to this case, or, in the alternative only, declaring that the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien attached to, encumber, and/or affect, if anything and at most, only the same one half interest in and/or against the Property (leaving the other one half interest in and to the Property free and clear from, and unaffected by the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and each of them).

2.      Judgment quieting title of the Property in Plaintiffs, either fully free and clear of and from, and unaffected by, any and all estates, rights, titles, and/or interests which may be held and/or claimed by and/or under the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, or, in the alternative only, quieting title in Plaintiffs of and to at least a

| Deleted: s |
| Deleted: s |
| Deleted: a |

one half interest in and to the Property free and clear of and unaffected by the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien (*i.e.*, that the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Liens each can affect at most only the same one half interest in and to the Property).

**Deleted:** a

3.      Judgment declaring that, by virtue of Plaintiffs having paid off liens and obligations on and against the Property that were prior and superior to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and any and all other estates, rights, titles, and/or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them, and to which they always were subject and inferior, the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them, should be and are equitably subordinated to and do not affect Plaintiffs' ownership, Warranty Deed, and other interests, at least to the extent that Plaintiffs' purchase proceeds paid off or reduced prior liens and obligations on and against the Property to which any and all interests of Defendants Single Box and/or Alum Rock, and each of them, were at all times junior, subject, and inferior.

**Deleted:** , West Loop

**Deleted:** either

**Deleted:** , West Loop

**Deleted:** either

4.      Judgment declaring that Plaintiffs' ownership, Warranty Deed, and other interests in and to the Property should be and are subrogated to the priority positions in, on, and to the Property of all prior liens and obligations, with priority over the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien and over any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box and/or Alum

**Deleted:** to

**Deleted:** , West Loop

Rock, and each and either of them, which were paid off with Plaintiffs' purchase proceeds, including particularly but without limitation Plaintiffs' ownership, Warranty Deed, and other interests should be subrogated to the priority position of the First Position Trust Deed, the Second Position Trust Deed, the Property Tax Lien, and each of them, ahead of, superior to, and unable to be affected by the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien and/or any and all other estates, rights, titles, and/or interests in the Property held and/or claimed by Defendants Single Box, and/or Alum Rock, and each and any of them, at least to the extent that Plaintiffs' purchase proceeds paid off or reduced such prior liens and obligations on and against the Property.

> **Deleted:** , West Loop
>
> **Deleted:** either

5.      Judgment declaring that the Trust is in breach of its covenants and warranties of title with respect to the Property contained and implied as a matter of law in and as a part of the Warranty Deed.

6.      Awarding to Plaintiffs, and against the Trust, a money judgment for all damages Plaintiffs have suffered and are continuing to suffer as a result of the Trust's breaches of the various covenants and warranties of the Warranty Deed, in amounts that will be shown at trial.

7.      Issuance of a temporary restraining order, preliminary injunction, and permanent injunction, including without limitation during the pendency of this action, restraining and enjoining Defendants Single Box, and/or Alum Rock, and each and/or any of them, from proceeding to any enforcement, execution, and/or foreclosure upon and/or against the Property pursuant to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and from in any way, directly or indirectly, initiating, continuing, and/or otherwise

> **Deleted:** , West Loop
>
> **Deleted:** either

22

attempting to enforce the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien against the Property in any way.

8.      Judgment declaring that Plaintiffs are bona fide purchasers who paid valuable consideration, in good faith, without notice of any adverse claims of Defendants Single Box and/or Alum Rock, including without notice of the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and that Plaintiffs' estates, rights, titles, and interests in and to the Property are free and clear of and wholly unaffected by the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and any and all other claims by Defendants Single Box and/or Alum Rock to any estate, right, title, lien, encumbrance, and/or other interest in, on, or to the Property, and unable to be affected by any attempt of Defendants to execute upon and/or to foreclose any claimed lien upon and/or encumbrance against the Property. interests in and to the Property are wholly unaffected by any attempt of Defendants to execute upon or foreclose any claimed interest in or to the Property.

9.      Judgment declaring that Plaintiffs had no constructive notice of the Single Box Judgment Lien and/or the Alum Rock Judgment Lien, which constitute and are material defects upon the Property, and that Plaintiffs' estates, rights, titles, and interests in and to the Property are free and clear of and wholly unaffected by the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and any and all other claims by Defendants Single Box and/or Alum Rock to any estate, right, title, lien, encumbrance, and/or other interest in, on, or to the Property, and unable to be affected by any attempt of Defendants to execute upon and/or to foreclose any claimed lien upon and/or encumbrance against the Property. interests in and to the

23

Property are wholly unaffected by any attempt of Defendants to execute upon or foreclose any claimed interest in or to the Property.

10.    In the alternative only to the foregoing, and if and only if for any reason the court finds or determines that the Single Box Claimed Judgment Lien and the Alum Rock Claimed Judgment Lien both are good and valid liens and/or encumbrances upon or against any interest whatsoever in and/or to the Property, then Plaintiffs pray for judgment declaring the scope and extent of any interest in and/or to the Property which is or may be affected by the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and each of them, and for judgment declaring the respective priority of the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and each of them.

11.    For such other and further relief to which Plaintiffs are entitled at law or equity.

DATED August ____ 2021.

/s/ _____

*Attorneys for Plaintiffs*

| Deleted: September |
| Deleted: 9 |
| Deleted: FREEMAN LOVELL, PLLC |
| Deleted: *Bradley L. Tilt* |
| Deleted: Bradley L. Tilt |

24

Bradley L. Tilt (07649)
FREEMAN LOVELL, PLLC
4568 S Highland Drive, Suite 290
Salt Lake City, Utah 84117
office: 385-355-4826
bradley.tilt@freemanlovell.com
*Attorneys for Plaintiffs*

Felicia B. Canfield (09686)
CANFIELD LAW LLC
2413 Newton Avenue
Cody, WY 82414
Cell: (307) 228-5986
canfieldlawllc@gmail.com
*Attorney for Plaintiffs*

> **If you do not respond to this
> document within applicable time
> limits, judgment could be entered
> against you as requested.**

---

## IN THE SECOND DISTRICT COURT IN AND FOR
## WEBER COUNTY, STATE OF UTAH

| | |
|---|---|
| MOLLY J. MULLIGAN; and<br>JOHN P. MULLIGAN,<br><br>       Plaintiffs<br><br>      v.<br><br>SINGLE BOX, L.P.;<br>SB AB WEST LOOP, L.P.;<br>BRETT H. DEL VALLE and TRACI M.<br>DEL VALLE, as Co-Trustees of The Del<br>Valle Family Trust dated October 30, 2002;<br>ALUM ROCK RIVERSIDE, LLC, a<br>California limited liability company,<br><br>      Defendants. | **SUPPLEMENTAL COMPLAINT**<br><br><br>Case No. _____<br><br>Judge _____ |

Plaintiffs assert, allege, and pray for relief as follows:

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

1.      Plaintiffs Molly M. Mulligan and John P. Mulligan each are individuals (referred to hereinafter collectively as "**Plaintiffs**" or "**Mulligans**") who together, as wife and husband and as joint tenants, own and claim that certain real property which is the subject of this case.

2.      The real property which is the subject of this case is located in Weber County, State of Utah, and is more particularly described as follows (the "**Property**"):

> Lot 7, BASINVIEW ESTATES CLUSTER SUBDIVISION 1ST AMENDMENT, according to the official plat thereof on file and of record in the office of the Weber County Recorder.

> Together with a right of use for an easement for ingress and egress over and across Basinview Road (a private road), as shown on the official dedicated plat, to and from said Lot to a physically open and legally dedicated public street.

Tax ID No. 20-119-0007

3.      Defendant Single Box, L.P. ("**Single Box**") is an entity which claims or may claim to have an interest in or to the Property.

4.      Defendant SB AB West Loop, L.P. ("**West Loop**") is an entity which claims or may claim to have an interest in or to the Property.

5.      Defendants Brett H. Del Valle and Traci M. Del Valle, as Co-Trustees of The Del Valle Family Trust dated October 30, 2002 (referred to hereinafter individually and/or collectively as the "**Trust**") previously owned the Property and conveyed it by warranty deed to Plaintiffs.

6.      Defendant Alum Rock Riverside, LLC ("**Alum Rock**"), is a California limited

2

liability company which claims or may claim to have an interest in or to the Property.

7.      Jurisdiction is proper in this Court, including without limitation pursuant to Utah Code Ann. § 78B-6-401.

8.      Venue is proper in this Court, including without limitation pursuant to Utah Code Ann. § 78B-3-301(1) and § 78B-3-304 because this action involves real property located in Wasatch County, Utah.

9.      This matter is a Tier 3 case under and pursuant to Rule 26(c)(3) of the Utah Rules of Civil Procedure.

## GENERAL ALLEGATIONS

10.      The Trust purchased and obtained title of record to the Property in 2007 by way of a *Special Warranty Deed* from Basinview Development, LC, which deed was recorded on May 3, 2007 as Entry No. 2261271 in the official records of the Weber County Recorder's office.

11.      The Trust at all times owned the Property from its purchase in 2007 until the Trust, as Grantor, sold the Property to Plaintiffs, as joint tenants, conveying title by way of a *Warranty Deed* recorded on May 11, 2021 as Entry No. 3151874 in the official records of the Weber County Recorder's office (the "**Warranty Deed**".

12.      The claimed interests of Defendant Single Box and/or Defendant West Loop (collectively referred to hereinafter as "**Single Box**" or the "**Single Box Defendants**") in or to the Property is/are based and premised upon a certain document entitled *Entry of Foreign*

3

*Judgment Pursuant to Utah Code Ann. § 78B-5-302*, which they claim was recorded on October 5, 2020, as Entry No. 3090706 in the office and records of the Weber County Recorder, and which they claim is, created, and constitutes a judgment lien upon and/or against the Property (the "**Single Box Claimed Judgment Lien**").

13.     The Single Box Claimed Judgment Lien relates to a claimed underlying foreign judgment which was entered against Brett Del Valle individually and personally (among others, but not including and/or not against the Trust).

14.     Defendants Single Box nevertheless claim that the Single Box Claimed Judgment Lien attached to and encumbered the Property, including particularly but without limitation purportedly ahead of and with priority over Plaintiffs' interests in and ownership of the Property, they have failed and/or refused to release of record the Single Box Claimed Judgment Lien which therefore is and constitutes a cloud upon Plaintiffs' title to the Property, and they have stated that they intend to enforce the Single Box Claimed Judgment Lien against the Property.

15.     The claimed interests of efendant Alum Rock in or to the Property is/are based and premised upon a certain document entitled *Notice of Judgment* filed on October 23, 2020 in the Third Judicial District Court, Salt Lake County, which they claim was recorded on October 23, 2020 as Entry No. 3101770 in the office and records of the Weber County Recorder, and which they claim is, created, and constitutes a judgment lien upon and/or against the Property (the "**Alum Rock Claimed Judgment Lien**").

16.     The Alum Rock Claimed Judgment Lien relates to a claimed underlying foreign judgment which was entered against Brett Del Valle individually and personally (among others,

4

but not including and/or not against the Trust).

17.    Defendant Alum Rock nevertheless claims that the Alum Rock Claimed Judgment

Lien attached to and encumbered the Property, including particularly but without limitation

purportedly ahead of and with priority over Plaintiffs' interests in and ownership of the Property,

it has failed and/or refused to release of record the Alum Rock Claimed Judgment Lien which

therefore is and constitutes a cloud upon Plaintiffs' title to the Property, and it has stated that it

intends to enforce the Alum Rock Claimed Judgment Lien against the Property.

18.    Leading up to and at the time that the Mulligans purchased the Property, the

Single Box Claimed Judgment Lien and the Alum Rock Claimed Judgment Lien did not appear

of record in any Weber County abstract of title for the Property.

19.    Defendants claim the Trust is a revocable Trust and that the Property owned by

the Trust was subject to each of their respective above-referenced claimed judgment liens even

though their above-referenced underlying claimed judgments were not against the Trust.

### FIRST CAUSE OF ACTION
**(Declaratory Judgment and Quiet Title – against all Defendants)**

20.    Plaintiffs incorporate into and make a part of this cause of action each and every

other paragraph in this Supplemental Complaint.

21.    An actual controversy has arisen and now exists regarding the Single Box

Claimed Judgment Lien of the Single Box Defendants and/or the Alum Rock Claimed Judgment

Lien of Defendant Alum Rock upon and/or against the Property which has been conveyed to and

is owned by Plaintiffs.

22.     The interests of the parties are adverse, concrete, and justiciable, and declaratory relief is warranted.

23.     Either the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien did not attach at all as any lien upon nor encumbrance against the Property because the claimed judgment debtor Brett Del Valle personally never owned the Property at any time relevant to this case, or, in the alternative only, the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien attached to, encumber, and/or affect, if anything and at most, only a one half interest in and/or against the Property (leaving the other one half interest in and to the Property free and clear of and from, and unaffected by, the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and each of them), including without limitation by virtue of and pursuant to, perhaps among other things:

a.     Paragraph 12.12 of the Trust document which provides that the Trust "shall be governed by the laws of the state of [the] situs" with respect to real property rights and interests;

b.     Utah Code Section 75-7-505(1) which provides that: "If a trust has more than one settlor, the amount the creditor or assignee of a particular settlor may reach may not exceed the settlor's interest in the portion of the trust attributable to that settlor's contribution."; and

c.     The fact that there appear to be two settlors of the Trust each of whom therefore had, at most, only a one half interest in and to the Property; Brett H. Del Valle, as one of two apparent settlors of the Trust had, and the Single Box Claimed Judgment

6

Lien and/or the Alum Rock Claimed Judgment Lien therefore could attach to, at most only a one half interest, if any, in and to the Property.

24.     Plaintiffs seeks to quiet title to their ownership of the Property as against the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, in whole or in part.

25.     A judicial declaration is necessary and appropriate at this time in order that the Plaintiffs may confirm their rights with respect to ownership of the Property, including in advance of and before any attempt by Defendants Single Box and/or Alum Rock to enforce either of their respective claimed judgment liens against the Property.

26.     Pursuant to Utah Code Ann. §§ 78B-6-401, *et seq*., Rule 57 of the Utah Rules of Civil Procedure, and otherwise, Plaintiffs are entitled to declaratory judgment that either the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien did not attach at all as any lien upon nor encumbrance against the Property because the claimed judgment debtor Brett Del Valle personally never owned the Property at any time relevant to this case, or, in the alternative only, declaratory judgment that the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien attached to, encumber, and/or affect, if anything and at most, only the same one half interest in and/or against the Property (leaving the other one half interest in and to the Property free and clear of and from, and unaffected by, the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and each of them).

27.     Additionally, pursuant to Utah Code Ann. §§ 78B-6-1301, *et. seq*., Rule 57 of the Utah Rules of Civil Procedure, and otherwise, Plaintiffs are entitled to judgment quieting title of

the Property in Plaintiffs, either fully free and clear of and from, and unaffected by, any and all

estates, rights, titles, and/or interests which may be held and/or claimed by and/or under the

Single Box Claimed Judgment Lien and/or the Alum Rock claimed Judgment Lien, or, in the

alternative only, Plaintiffs are entitled to judgment quieting title of at least a one half interest in

and to the Property free and clear of and unaffected by the Single Box Claimed Judgment Lien

and/or the Alum Rock Claimed Judgment Lien, and each of them (*i.e.*, that the Claimed

Judgment Liens can affect, if anything and at most, only the same one half interest in and to the

Property).

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Equitable Subordination – against all Defendants)

28.     Plaintiffs incorporate into and make a part of this cause of action each and every

other paragraph in this Supplemental Complaint.

29.     Prior to Plaintiffs' purchase of the Property from the Trust, the Property was

subject to and encumbered by a *Deed of Trust* which was recorded on September 20, 2017, as

Entry No. 2879566 in the office and records of the Weber County Recorder (the "**First Position**

**Trust Deed**").

30.     Also prior to Plaintiffs' purchase of the Property from the Trust, the Property was

subject to and encumbered by a *Deed of Trust With Assignment of Rents* which was recorded on

July 6, 2020, as Entry No. 3066407 in the office and records of the Weber County Recorder (the

"**Second Position Trust Deed**").

8

31.     Further prior to Plaintiffs' Purchase of the Property from the Trust, the Property was subject to and encumbered by a lien for unpaid county property taxes (the "**Property Tax Lien**").

32.     The First Position Trust Deed and the Second Position Trust Deed each were prior and superior to the later-recorded Single Box Claimed Judgment Lien, the later-recorded Alum Rock Claimed Judgment Lien, and each of them.

33.     As a matter of law the Property Tax Lien had super-priority ahead of and superior to any interest of the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and each of them.

34.     Plaintiffs' proceeds for and from Plaintiffs' purchase of the Property were used to pay off the First Position Trust Deed ($712,209.92), the Second Position Trust Deed ($948,000.00), and the Property Tax Lien ($46,248.89), all having priority over, ahead of, and superior to any interest of the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and each of them, in the total cumulative amount of at least $1,706,458.81.

35.     Plaintiffs paid and authorized the payment and disbursement of those proceeds of, for and from their purchase of the Property to pay off those prior and superior obligations and liens against the Property with the understanding and intent that Plaintiffs' Warranty Deed and all other rights of Plaintiffs in and to the Property would be in a first priority position ahead of and without any liens and/or encumbrances (other than those which Plaintiffs themselves may have signed and pledged), including without limitation occupying the priority places of and instead of the First Position Trust Deed, the Second Position Trust Deed, the Property Tax Lien,

9

and ahead of and superior to all other estates, rights, titles, claims, and/or interests in, to, on, and/or against the Property (other than those which Plaintiffs themselves may have signed and pledged).

36.     At the time Plaintiffs purchased the Property and disbursed and/or authorized disbursement of their purchase proceeds, Plaintiffs did not know that of Defendants Single Box and/or Alum Rock, or any of them, held or would claim to hold any priority position pursuant to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, or otherwise, over, ahead of, or superior to Plaintiffs' ownership of the Property pursuant to Plaintiffs' Warranty Deed or otherwise.

37.     It would be inequitable and unjust if the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien were not equitably subordinated to Plaintiffs' ownership of and Warranty Deed on and to the Property.

38.     By virtue of Plaintiffs' purchase proceeds having paid off prior liens and obligations on and against the Property, including, without limitation, prior liens and obligations to which the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and any and all other interests held or claimed by Defendants Single Box and/or Alum Rock, and each of them, were at all times junior, subject, and inferior, their Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and all other interests of the Single Box Defendants, Defendant Alum Rock, and each of them, should be equitably subordinated to Plaintiffs' ownership and Warranty Deed, to at least the extent that Plaintiffs' purchase proceeds paid off and reduced prior liens and obligations on and against the Property to which any and all

interests of Defendants Single Box and/or Alum Rock, and each of them, were at all times junior, subject, and inferior.

39.     Plaintiffs are entitled, pursuant to Utah Code Ann. §§ 78B-6-401 *et seq*., Rule 57 of the Utah Rules of Civil Procedure, and otherwise, to declaratory judgment that, by virtue of Plaintiffs having paid off liens and obligations on and against the Property that were prior and superior to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien and to any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them, and to which they always were subject and inferior, the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien and any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them, are equitably subordinated to and do not affect Plaintiffs' ownership, Warranty Deed, and other interests, at least to the extent that Plaintiffs' purchase proceeds paid off or reduced prior liens and obligations on and against the Property.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### THIRD CAUSE OF ACTION
### (Equitable Subrogation – against all Defendants)

40.     Plaintiffs incorporate into and make a part of this cause of action each and every other paragraph in this Supplemental Complaint.

41.     It would be inequitable and unjust if Plaintiffs' ownership, Warranty Deed, and other interests in and to the Property were not equitably and otherwise subrogated to a position of

priority ahead of and superior to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien and to any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them, due to and in light of Plaintiffs' purchase proceeds having paid off liens and obligations on and against the Property that were prior and superior to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien and to any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them, and to which they always were subject and inferior.

42.    If Plaintiffs' ownership, Warranty Deed, and other interests were not equitably subrogated to a position of priority ahead of and superior to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and to any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them, then Defendants Single Box and/or Alum Rock, and each and any of them would be unjustly enriched and reap a windfall by virtue of Plaintiffs having paid off other liens and obligations to which the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and to any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them always were, and would otherwise have remained, subordinate.

43.    Plaintiffs are entitled, pursuant to Utah Code Ann. §§ 78B-6-401 *et seq*., Rule 57 of the Utah Rules of Civil Procedure, and otherwise to declaratory judgment that Plaintiffs' ownership, Warranty Deed, and other interests in and to the Property should be and are

subrogated to the priority positions in, on, and to the Property of all prior liens and obligations,

with priority over the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed

Judgment Lien and to any and all other estates, rights, titles, or interests in the Property held

and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them, which

were paid off with Plaintiffs' purchase proceeds, including particularly but without limitation to

the priority position of the First Position Trust Deed, the Second Position Trust Deed, the

Property Tax Lien, and each of them, ahead of and superior to the Single Box Claimed Judgment

Lien and/or the Alum Rock Claimed Judgment Lien and to any and all other estates, rights, titles,

or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock,

and each and any of them, at least to the extent that Plaintiffs' purchase proceeds paid off or

reduced such prior liens and obligations on and against the Property.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### FOURTH CAUSE OF ACTION
**(Declaratory Judgment of, and Damages for,
Breaches of Warranty Deed – against the Trust)**

44.    Plaintiffs incorporate into and make a part of this cause of action each and every

other paragraph in this Supplemental Complaint.

45.    When the Trust executed the Warranty Deed to Plaintiffs, and by executing it, the

Trust, among other things, as a matter of law (including without limitation under and pursuant to

Utah Code Ann. § 57-1-12(2)), expressly covenanted and warranted, among other things, that the

Trust was lawfully seised of good and marketable title of and to the Property, that the Trust had

the right to and that by the Warranty Deed the Trust in fact did convey and warrant the Property

to Plaintiffs, and that the Trust would defend generally the title of the Property in Plaintiffs against all adverse claims and demands (subject only to certain specified interests stated on the face of the Warranty Deed which do not apply to this case).

46.    Plaintiffs have provided, and do again hereby provide, written notice to the Trust of and regarding the claims and potential interests in the Property which are the subject of this case, and has demanded, including in writing, that the Trust release, satisfy, and otherwise discharge the same to provide and ensure the full, free, clear, and marketable title of and to the Property to Plaintiffs as the Trust is legally and statutorily required to do by virtue of the Warranty Deed.

47.    To date, however, the Trust has failed, and/or refused, to comply with the requests and demands as stated in the immediately preceding paragraph.

48.    Pursuant to Utah Code Ann. §§ 78B-6-401, *et seq*., Rule 57 of the Utah Rules of Civil Procedure, and otherwise, Plaintiffs are entitled to declaratory judgment that by virtue of the foregoing the Trust is in breach of its covenants and warranties of title with respect to the Property contained and implied as a matter of law in and as a part of the Warranty Deed.

49.    Plaintiffs have suffered, are continuing to suffer, and otherwise will suffer and are entitled to recover from the Trust, damages as a result of the Trust's breaches of the various covenants and warranties of the Warranty Deed, regarding ownership of and title to the Property, in amounts that will be shown at trial.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

14

## FIFTH CAUSE OF ACTION
### (Injunctive Relief)

50.     Plaintiffs incorporate into and make a part of this cause of action each and every

other paragraph in this Supplemental Complaint.

51.     Defendants Single Box and Allum Rock each have stated to Plaintiffs that they

intend to enforce the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed

Judgment Lien, respectively, against the Property.

52.     Defendants Single Box and/or Alum Rock, and each and/or any of them,

proceeding with any enforcement of their Single Box Claimed Judgment Lien and/or the Alum

Rock Claimed Judgment Lien against the Property, including without limitation any execution

upon and/or foreclosure of the Property allegedly pursuant to the Single Box Claimed Judgment

Lien and/or the Alum Rock Claimed Judgment Lien, including without limitation during the

pendency of this action and before the issues in this lawsuit have been ruled upon by the Court as

to the validity, scope, effect, and/or priority of the Single Box Claimed Judgment Lien and/or the

Alum Rock Claimed Judgment Lien, would result in immediate, great, and irreparable injury and

damage to Plaintiffs who have no plain, speedy, or adequate remedy at law to protect their

Property unless Defendants Single Box, Alum Rock, and each of them, is/are restrained from

taking such action.

53.     Defendants Single Box and/or Alum Rock, and each and/or any of them,

proceeding with any enforcement of the Single Box Claimed Judgment Lien and/or the Alum

Rock Claimed Judgment Lien against the Property could render a final judgment for Plaintiffs

15

ineffectual in the absence of temporary, preliminary, and permanent injunctive relief.

Plaintiffs are entitled to a temporary restraining order and preliminary injunction during the

pendency of this action, and thereafter to a permanent injunction, restraining and enjoining

Defendants Single Box, Alum Rock, and each of them, from proceeding to any enforcement,

execution, and/or foreclosure upon and/or against the Property pursuant to the Single Box

Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and from attempting to

enforce the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien

against the Property in any way.

## SIXTH CAUSE OF ACTION
### (Declaratory Judgment – Bona Fide Purchasers)

54.     Plaintiffs incorporate into and make a part of this cause of action each and every

other paragraph in this Supplemental Complaint.

55.     Plaintiffs paid valuable consideration and acted in good faith when they

purchased the Property.

56.     When Plaintiffs purchased the Property the only owner of record was, and for

fourteen years only ever had been, the Trust.

57.     When Plaintiffs purchased the Property no liens of record existed against the

Trust, the grantor on the Warranty Deed conveying title to Plaintiffs, other than the First Position

Trust Deed, the Second Position Trust Deed, and the Property Tax Lien (each of which were

prior and superior to the later-recorded Single Box Claimed Judgment Lien and to the later-

recorded Alum Rock Judgment Lien, and all of which were paid off and satisfied with Plaintiffs'

16

proceeds for and from Plaintiffs' purchase of the Property).

58. As a result, Plaintiffs did not discover any judgment liens on the Property and therefore had no notice of any adverse interest in the Property.

59. Plaintiffs purchased, paid for, and obtained title to the Property without notice of the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, each of which were related to foreign judgments which were not entered against the Trust, and without notice of any other claim in or to the Property by Defendants Single Box and/or Alum Rock, nor any of them.

60. At the time the Mulligans purchased the Property, they had no knowledge of the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, nor of any other claim by Defendants Single Box and/or Alum Rock, nor any of them, in, to, and/or against the Property.

61. At the time the Mulligans purchased the Property, nothing in the official records of the Weber County Recorder showed whether the Trust was a purportedly revocable trust.

62. At the time the Mulligans purchased the Property, they did not know whether the Trust was a purportedly revocable trust.

63. Pursuant to Utah Code Ann. §§ 78B-6-401, *et seq*., Rule 57 of the Utah Rules of Civil Procedure, and otherwise, Plaintiffs are entitled to declaratory judgment that by virtue of the foregoing Plaintiffs are bona fide purchasers of the Property who paid valuable consideration, in good faith, without notice of any adverse claims of Defendants Single Box and/or Alum Rock, including without notice of the Single Box Claimed Judgment Lien and/or the Alum Rock

17

Claimed Judgment Lien, and that Plaintiffs' estates, rights, titles, and interests in and to the Property are free and clear of and are wholly unaffected by the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and any and all other claims by Defendants Single Box and/or Alum Rock to any estate, right, title, lien, encumbrance, and/or other interest in, on, or to the Property, and unable to be affected by any attempt of Defendants to execute upon and/or to foreclose any claimed lien upon and/or encumbrance against the Property.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
### (Declaratory Judgment and Quiet Title – No Constructive Notice – all Defendants)

64.    Plaintiffs incorporate into and make a part of this cause of action each and every other paragraph in this Supplemental Complaint.

65.    The Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien constituted material defects on and against the Property that were not disclosed to Plaintiffs.

66.    Plaintiffs caused a proper search to be done on the Property prior to their purchase.

67.    On information and belief, the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien were not indexed correctly in the official records of the Weber County Recorder's office.

68.    The Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien were not properly filed with the Weber County Recorder.

18

69.     Therefore, the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien were not properly recorded pursuant to Utah Code Ann. § 57-3-102.

70.     Plaintiffs thus had no constructive notice of the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, or any of them.

71.     Pursuant to Utah Code Ann. §§ 78B-6-401, *et seq*., Rule 57 of the Utah Rules of Civil Procedure, and otherwise, Plaintiffs are entitled to declaratory judgment that Plaintiffs' estates, rights, titles, and interests in and to the Property are free and clear of and wholly unaffected by the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and any and all other claims by Defendants Single Box and/or Alum Rock to any estate, right, title, lien, encumbrance, and/or other interest in, on, or to the Property, and unable to be affected by any attempt of Defendants to execute upon and/or to foreclose any claimed lien upon and/or encumbrance against the Property.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

### EIGHTH CAUSE OF ACTION
(Alternative Claim for Declaratory Judgment
as to Extent and Priority of Claimed Judgment Liens)

72.     Plaintiffs incorporate into and make a part of this cause of action each and every other paragraph in this Supplemental Complaint.

73.     In the alternative only to the foregoing claims and causes of action, and if and only if for any reason the court finds or determines that the Single Box Claimed Judgment Lien and the Alum Rock Claimed Judgment Lien both are good and valid liens and/or encumbrances upon or against any interest whatsoever in and/or to the Property, then, pursuant to Utah Code

19

Ann. §§ 78B-6-401, *et seq*., Rule 57 of the Utah Rules of Civil Procedure, and otherwise,

Plaintiffs are entitled to declaratory judgment as to the scope and extent of any interest in and/or

to the Property which is or may be affected by the Single Box Claimed Judgment Lien, the Alum

Rock Claimed Judgment Lien, and each of them, and are entitled to declaratory judgment as to

the respective priority of the Single Box Claimed Judgment Lien, the Alum Rock Claimed

Judgment Lien, and each of them.

**WHEREFORE**, Plaintiffs pray for relief as follows:

1.     Judgment declaring that either the Single Box Claimed Judgment Lien and/or the

Alum Rock Claimed Judgment Lien did not attach at all as any lien upon nor encumbrance

against the Property because the claimed judgment debtor Brett Del Valle personally never

owned the Property at any time relevant to this case, or, in the alternative only, declaring that the

Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien attached to,

encumber, and/or affect, if anything and at most, only the same one half interest in and/or against

the Property (leaving the other one half interest in and to the Property free and clear from, and

unaffected by the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien,

and each of them).

2.     Judgment quieting title of the Property in Plaintiffs, either fully free and clear of

and from, and unaffected by, any and all estates, rights, titles, and/or interests which may be held

and/or claimed by and/or under the Single Box Claimed Judgment Lien and/or the Alum Rock

Claimed Judgment Lien, or, in the alternative only, quieting title in Plaintiffs of and to at least a

one half interest in and to the Property free and clear of and unaffected by the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien (*i.e.*, that the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Liens each can affect at most only the same one half interest in and to the Property).

3.      Judgment declaring that, by virtue of Plaintiffs having paid off liens and obligations on and against the Property that were prior and superior to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and any and all other estates, rights, titles, and/or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them, and to which they always were subject and inferior, the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them, should be and are equitably subordinated to and do not affect Plaintiffs' ownership, Warranty Deed, and other interests, at least to the extent that Plaintiffs' purchase proceeds paid off or reduced prior liens and obligations on and against the Property to which any and all interests of Defendants Single Box and/or Alum Rock, and each of them, were at all times junior, subject, and inferior.

4.      Judgment declaring that Plaintiffs' ownership, Warranty Deed, and other interests in and to the Property should be and are subrogated to the priority positions in, on, and to the Property of all prior liens and obligations, with priority over the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien and over any and all other estates, rights, titles, or interests in the Property held and/or claimed by Defendants Single Box and/or Alum

21

Rock, and each and either of them, which were paid off with Plaintiffs' purchase proceeds, including particularly but without limitation Plaintiffs' ownership, Warranty Deed, and other interests should be subrogated to the priority position of the First Position Trust Deed, the Second Position Trust Deed, the Property Tax Lien, and each of them, ahead of, superior to, and unable to be affected by the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien and/or any and all other estates, rights, titles, and/or interests in the Property held and/or claimed by Defendants Single Box and/or Alum Rock, and each and any of them, at least to the extent that Plaintiffs' purchase proceeds paid off or reduced such prior liens and obligations on and against the Property.

5.      Judgment declaring that the Trust is in breach of its covenants and warranties of title with respect to the Property contained and implied as a matter of law in and as a part of the Warranty Deed.

6.      Awarding to Plaintiffs, and against the Trust, a money judgment for all damages Plaintiffs have suffered and are continuing to suffer as a result of the Trust's breaches of the various covenants and warranties of the Warranty Deed, in amounts that will be shown at trial.

7.      Issuance of a temporary restraining order, preliminary injunction, and permanent injunction, including without limitation during the pendency of this action, restraining and enjoining Defendants Single Box and/or Alum Rock, and each and/or any of them, from proceeding to any enforcement, execution, and/or foreclosure upon and/or against the Property pursuant to the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed Judgment Lien, and from in any way, directly or indirectly, initiating, continuing, and/or otherwise

22

attempting to enforce the Single Box Claimed Judgment Lien and/or the Alum Rock Claimed

Judgment Lien against the Property in any way.

8.      Judgment declaring that Plaintiffs are bona fide purchasers who paid valuable

consideration, in good faith, without notice of any adverse claims of Defendants Single Box

and/or Alum Rock, including without notice of the Single Box Claimed Judgment Lien and/or

the Alum Rock Claimed Judgment Lien, and that Plaintiffs' estates, rights, titles, and interests in

and to the Property are free and clear of and wholly unaffected by the Single Box Claimed

Judgment Lien, the Alum Rock Claimed Judgment Lien, and any and all other claims by

Defendants Single Box and/or Alum Rock to any estate, right, title, lien, encumbrance, and/or

other interest in, on, or to the Property, and unable to be affected by any attempt of Defendants to

execute upon and/or to foreclose any claimed lien upon and/or encumbrance against the

Property. interests in and to the Property are wholly unaffected by any attempt of Defendants to

execute upon or foreclose any claimed interest in or to the Property.

9.      Judgment declaring that Plaintiffs had no constructive notice of the Single Box

Judgment Lien and/or the Alum Rock Judgment Lien, which constitute and are material defects

upon the Property, and that Plaintiffs' estates, rights, titles, and interests in and to the Property

are free and clear of and wholly unaffected by the Single Box Claimed Judgment Lien, the Alum

Rock Claimed Judgment Lien, and any and all other claims by Defendants Single Box and/or

Alum Rock to any estate, right, title, lien, encumbrance, and/or other interest in, on, or to the

Property, and unable to be affected by any attempt of Defendants to execute upon and/or to

foreclose any claimed lien upon and/or encumbrance against the Property. interests in and to the

23

Property are wholly unaffected by any attempt of Defendants to execute upon or foreclose any claimed interest in or to the Property.

10.     In the alternative only to the foregoing, and if and only if for any reason the court finds or determines that the Single Box Claimed Judgment Lien and the Alum Rock Claimed Judgment Lien both are good and valid liens and/or encumbrances upon or against any interest whatsoever in and/or to the Property, then Plaintiffs pray for judgment declaring the scope and extent of any interest in and/or to the Property which is or may be affected by the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and each of them, and for judgment declaring the respective priority of the Single Box Claimed Judgment Lien, the Alum Rock Claimed Judgment Lien, and each of them.

11.     For such other and further relief to which Plaintiffs are entitled at law or equity.

DATED August ___, 2021.

_____/s/_____

*Attorneys for Plaintiffs*

24