# EXHIBIT 17
## (Del Valley Trust)

# THE DEL VALLE FAMILY TRUST

By and Between

## BRETT H. DEL VALLE AND TRACI M. DEL VALLE
Trustors

and

## BRETT H. DEL VALLE AND TRACI M. DEL VALLE
Trustees

Dated October 30, 2002

## *TABLE OF CONTENTS*

### ARTICLE 1

### SUCCESSOR TRUSTEES

*Page*

| | | |
|---|---|---|
| 1.1 | Appointment | 1 |
| 1.2 | Liability of Successor Trustee | 1 |
| 1.3 | Vacancy | 1 |
| 1.4 | Powers of Successor Trustee | 2 |

### ARTICLE 2

### TRUST PROPERTY

| | | |
|---|---|---|
| 2.1 | Trust Estate | 2 |
| 2.2 | Addition of Property | 2 |
| 2.3 | Character of Property | 2 |

### ARTICLE 3

### RIGHTS RESERVED BY TRUSTORS

| | | |
|---|---|---|
| 3.1 | Revocation During Trustors' Joint Lifetimes | 3 |
| 3.2 | Amendment During Trustors' Joint Lifetimes | 4 |
| 3.3 | Revocation and Amendment by Survivor | 4 |

### ARTICLE 4

### INITIAL TRUST DURING JOINT
### LIFETIMES OF TRUSTORS

| | | |
|---|---|---|
| 4.1 | Principal and Income from Community Estate | 4 |
| 4.2 | Principal and Income from Separate Estates | 5 |
| 4.3 | Income or Principal on Request | 5 |
| 4.4 | Transfers Out of Trust Estate | 5 |
| 4.5 | Incapacitation of Trustor | 5 |
| 4.6 | Payment of Taxes, Debts and Expenses on Death of Decedent | 6 |

## ARTICLE 5

### DIVISION ON DECEDENT'S DEATH

5.1   Division of Trust Estate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7
    a.   Survivor's Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7
    b.   Decedent's Estate - Survivor Survives for Thirty (30) Days . . . . .   7
    c.   Decedent's Estate - Survivor Does Not Survive for Thirty (30)
        Days . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8
5.2   Marital Deduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

## ARTICLE 6

### SURVIVOR'S TRUST

6.1   Principal and Income from Survivor's Trust . . . . . . . . . . . . . . . . . . .   8
6.2   Lifetime Distributions Under Power of Appointment . . . . . . . . . . . . .   9
6.3   Distribution Upon Death of Survivor . . . . . . . . . . . . . . . . . . . . . . . .   9

## ARTICLE 7

### DISCLAIMER

## ARTICLE 8

### PAYMENT OF TAXES, DEBTS, AND EXPENSES ON
### DEATH OF SURVIVOR

## ARTICLE 9

### RESIDENCE

## ARTICLE 10

### DISCLAIMER TRUST

10.1   Principal and Income from Disclaimer Trust . . . . . . . . . . . . . . . . . . 11
10.2   Distribution Upon Death of Survivor . . . . . . . . . . . . . . . . . . . . . . . 11

## ARTICLE 11

### CHILDREN'S TRUST

11.1  Division and Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
11.2  Ultimate Contingent Beneficiaries . . . . . . . . . . . . . . . . . . . . . . . . . 14

## ARTICLE 12

### MISCELLANEOUS PROVISIONS

12.1   Notice to Trustee of Births, Etc.  . . . . . . . . . . . . . . . . . . . . . . . . . 14
12.2   Definition of Education . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
12.3   Segregation of Trusts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
12.4   Duty to Inquire . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
12.5   Payments to Other Than Beneficiary . . . . . . . . . . . . . . . . . . . . . . . 15
12.6   Perpetuities Savings Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
12.7   Severability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
12.8   Number and Gender . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
12.9   Qualified Retirement Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
12.10  Delayed Termination, Distribution or Division . . . . . . . . . . . . . . . . . 16
12.11  Headings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
12.12  Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
12.13  Undistributed Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
12.14  Allocation of Expenses Among Successive Beneficiaries . . . . . . . . . . . . 17
12.15  Distribution of Trust if Uneconomical Administration . . . . . . . . . . . . . 17
12.16  Changed Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
12.17  Obligation of Support . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
12.18  Transfer Agents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
12.19  Right of Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## ARTICLE 13

### TRUSTEE'S POWERS

13.1   Continue to Hold Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
13.2   Manage and Control . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
13.3   Lease Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
13.4   Borrow . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
13.5   Carry Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
13.6   Commence or Defend Litigation; Compromise or Adjust Claims . . . . . . 19
13.7   Budget Income and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
13.8   Invest and Reinvest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
13.9   Professional Assistance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
13.10  Nominee's Name . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

13.11  Bonds at Premium  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
13.12  Bonds at Discount  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
13.13  Undivided Interests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
13.14  Administration Expenses  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21
13.15  Divisions and Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21
13.16  Tax Elections  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21
13.17  Bank Accounts  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21
13.18  Disclaim, Release, or Restrict Powers  . . . . . . . . . . . . . . . . . . . . . .  21
13.19  Partnership  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21
13.20  Powers Concerning Businesses . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
13.21  Abandon Property  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
13.22  Principal and Income  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
13.23  General Powers Regarding Real Estate . . . . . . . . . . . . . . . . . . . . . . .  24
13.24  Granting Power to Subordinate  . . . . . . . . . . . . . . . . . . . . . . . . . .  24
13.25  Employment of Real Estate Brokers  . . . . . . . . . . . . . . . . . . . . . . . .  24
13.26  Authorizing Trustee To Foreclose and to Bid on Property  . . . . . . . . . .  24
13.27  Purchase Assets from Personal Representatives . . . . . . . . . . . . . . . . . .  24
13.28  Loans to Personal Representatives and Others  . . . . . . . . . . . . . . . . .  25
13.29  Insurance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25
13.30  Loans and Purchases by Trustee . . . . . . . . . . . . . . . . . . . . . . . . . .  26
13.31  Lend to Beneficiaries  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26
13.32  Guarantee Loans  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26
13.33  Consider Tax Consequences  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26
13.34  Death Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27
13.35  Oil, Gas, and Similar Interests . . . . . . . . . . . . . . . . . . . . . . . . . . .  27
13.37  General Powers and Limitations . . . . . . . . . . . . . . . . . . . . . . . . . .  28

## ARTICLE 14

## GENERATION SKIPPING TRANSFER TAX PROVISIONS

14.1  Definitional Material . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28
14.2  Executor's Generation-Skipping Authority:  Exemption Allocation  . . . . .  29
14.3  Separation of Exempt and Nonexempt Trusts . . . . . . . . . . . . . . . . . .  29
14.4  General Powers and Other Special Generation-Skipping Provisions . . . . .  31
14.5  Generation-Skipping "Favorable Interpretation" Clause . . . . . . . . . . . .  32

## ARTICLE 15

## TRUSTEE PROVISIONS

15.1  Incapacitation of Trustee  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32
15.2  Compensation of Trustee  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33
15.3  No Bond . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

15.4   Resignation of Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
15.5   Accounting  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## ARTICLE 16

### SPECIAL PROVISIONS

16.1   Additional Insurance Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
16.2   Definitions:  Children, Issue, Living, Etc.  . . . . . . . . . . . . . . . . . . . . . 35
16.3   Spendthrift Provision  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
16.4   Absence from Place of Administration . . . . . . . . . . . . . . . . . . . . . . . 36
16.5   Simultaneous Death  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
16.6   No Contest  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
16.7   Power to Delegate  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
16.8   Disinheritance of Omitted Heirs  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
16.9   Tangible Personal Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
16.10  Name of Trust  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

## SCHEDULE A

### INVENTORY OF TRUST ESTATE

## THE DEL VALLE FAMILY TRUST

THIS TRUST AGREEMENT is made between BRETT H. DEL VALLE and TRACI M. DEL VALLE, husband and wife, herein designated the "Trustors," or separately as "husband" and "wife" respectively, and BRETT H. DEL VALLE and TRACI M. DEL VALLE, herein acting as original Co-Trustees hereunder.

## ARTICLE 1

## SUCCESSOR TRUSTEES

**1.1    Appointment.** The Trustors have been appointed as Co-Trustees hereof. If for any reason during the joint lifetimes of the Trustors either Trustor shall cease to act as Co-Trustee, the other Trustor shall act as sole Trustee. Except as otherwise provided in this trust instrument, upon the death of the first Trustor to die, the other Trustor shall act as sole Trustee. Should both Trustors cease for any reason to act as Trustee, KIMBERLY SUSAN ROBERTS shall act as successor Trustee. Should KIMBERLY SUSAN ROBERTS fail or cease for any reason to act as Trustee, KIMBERLY DEL VALLE shall act as successor Trustee.

**1.2    Liability of Successor Trustee.** No successor Trustee shall be liable or responsible for any losses or expenses resulting from or occasioned by anything done or neglected to be done in the administration of any trust created herein prior to the date of acceptance of appointment of such Trustee. Moreover, no successor Trustee shall be charged with the responsibility for examining or investigating the actions of any predecessor Trustee hereunder and may accept the accounting records of any predecessor Trustee showing assets on hand without further investigation and without incurring any liability to any person claiming or having an interest in any trust created herein.

**1.3    Vacancy.** In the event any Trustee of any trust hereunder fails to qualify or ceases to act for any reason whatsoever, and if there is no provision herein for such eventuality, said vacancy may be filled by a majority of the class composed of (i) the adult, competent beneficiaries of such trust then entitled or authorized in the Trustee's discretion to receive distributions therefrom and (ii) the guardians of the person of all minor, and the conservators of the person of all incompetent, adult beneficiaries of such trust then entitled or authorized in the Trustee's discretion to receive distributions therefrom, by appointing a successor individual or corporate Trustee. Any such appointment shall be made by a written instrument executed by the party or parties making such appointment and delivered to the successor Trustee. In the event a successor Trustee is not appointed within ninety (90) days following the event requiring such appointment in the manner prescribed above, then a successor Trustee shall be appointed by a court having jurisdiction over the trust for the appointment of a successor Trustee. Notwithstanding the foregoing, in no event shall any beneficiary then entitled or authorized in the Trustee's discretion to receive distributions from such trust, or the spouse of any such beneficiary, or any vested remainder beneficiary of such trust, be appointed to act as the successor Trustee; provided, however, that the Survivor may act as successor Trustee of the Survivor's Trust, the Disclaimer Trust and the

Children's Trust and a person who is a member of the class composed of the Trustors' issue, and/or such person's spouse, may act as successor Trustee of the separate trust created for such person's benefit under subparagraph 11.1a.(1) or 11.1a.(2) hereof, as the case may be, if such person is then entitled to request full distribution of his or her trust pursuant to subparagraph 11.1a.(1)(b) or 11.1a.(2)(a)(ii) hereof, as the case may be.

**1.4    Powers of Successor Trustee.** Except as may otherwise be specifically provided in this trust instrument to the contrary, any successor Trustee of a particular trust created under this instrument shall succeed to all title to the property of said trust and to all powers of any predecessor Trustee of said trust with the same effect as though such successor Trustee had been originally named as Trustee of said trust.

## ARTICLE 2

### TRUST PROPERTY

**2.1    Trust Estate.** The Trustors have transferred and delivered to the Trustee, without consideration on the Trustee's part, the property described in Schedule A to this trust instrument. Said property, together with any other property that may become subject to this trust instrument (whether or not listed on Schedule A), shall constitute the "trust estate," and shall be held, administered and distributed in accordance with this instrument.

**2.2    Addition of Property.** Either Trustor or any other person may add additional property to these trusts, such as by making the proceeds of insurance policies payable to the Trustee, by making the benefits under any pension plan, profit-sharing plan, or other retirement plan payable to the Trustee, by transferring property to the Trustee by deed, assignment, beneficiary designation, or otherwise, by transfer under the Will of either Trustor, or any other person, or by transferring property from another trust pursuant to the terms of such trust.

**2.3    Character of Property.**

a.    A transfer to the trust estate of any joint tenancy property of the Trustors shall terminate the joint tenancy. The Trustors hereby agree that the character of such property shall be the community property of the Trustors.

b.    It is the Trustors' intention that all community property transferred to or held in the trust estate (sometimes herein called the "community estate"), or withdrawn therefrom, shall continue to retain its character as community property. It is also the Trustors' intention that the Trustee shall have no more extensive power over any community property transferred to or held in the trust estate than either of the Trustors would have had under California Family Code Sections 1100 and 1102 had this trust not been created, and this instrument shall be so interpreted to achieve this intention notwithstanding any other provision of this trust instrument to the contrary. This limitation shall terminate on the death of either Trustor. Notwithstanding the foregoing, the Trustee for the benefit of the community, shall have the power to convey, encumber or otherwise dispose of community,

j:\users\estate\delvalle.ft6                    2

real and personal property held hereunder without the consent of or prior notice to either husband or wife, whether or not the husband or wife shall then be capable of giving such consent or of understanding such notice.

        c.    Any separate property or quasi-community property of a Trustor transferred to or held in the trust estate shall be called the "separate estate" of the Trustor contributing such property. As used herein, the term "quasi-community property" refers to the property of a Trustor held in the trust estate that is defined in California Probate Code Section 66, including the expectant interest of such Trustor's spouse in that property. Any separate property or quasi-community property transferred to or held in the trust estate shall continue to retain its character as the separate property or quasi-community property, as the case may be, of the Trustor contributing such property to the trust estate, subject, however, to all the terms and conditions of this trust instrument. For purposes of convenience, the term "separate estate" as used in this instrument and the term "separate property" as hereafter used in this instrument shall be deemed to include quasi-community property transferred to or held in the trust estate. However, the Trustors do not intend thereby to change the character of that property from quasi-community property to separate property. The Trustors do acknowledge, however, that each Trustor intends under this instrument to dispose of said Trustor's entire quasi-community property held in the trust estate (including the expectant interest of said Trustor's surviving spouse in such property) as if it were said Trustor's separate property and as if said Trustor's spouse had no interest in such property. Nevertheless, each Trustor recognizes that said Trustor's surviving spouse may be entitled by law to take his or her expectant interest in the deceased Trustor's quasi-community property free of this trust, notwithstanding the terms of this trust instrument. In recognition of this fact, it is the intent of each Trustor that if the deceased Trustor's surviving spouse elects to take his or her expectant interest in the deceased Trustor's quasi-community property free of this trust, then all the provisions of this trust instrument for the benefit of the surviving Trustor shall nevertheless be carried into effect with respect to all property remaining subject thereto.

## ARTICLE 3

### RIGHTS RESERVED BY TRUSTORS

    **3.1    Revocation During Trustors' Joint Lifetimes.** During the joint lifetimes of the Trustors, the community estate may be revoked in whole or in part by an instrument in writing signed by either Trustor, and any separate estate may be revoked in whole or in part by an instrument in writing signed by the Trustor who contributed that property to the trust. This power of revocation shall be exercised by delivering such written instrument to the other Trustor and to the Trustee in the case of the community estate, and to the Trustee in the case of the separate estate of a Trustor. On revocation with respect to the community estate, the Trustee shall promptly deliver to either or both Trustors all or the designated portion of the community estate, which shall continue to be the community property of the Trustors and which shall be held and administered as community property by the Trustor or Trustors receiving the property. On revocation with respect to the separate estate of a Trustor, the Trustee shall promptly deliver to the contributing Trustor all or the designated

portion of that property. If this instrument is revoked with respect to all or a major portion of the assets subject to the instrument, the Trustee shall be entitled to retain sufficient assets reasonable to secure payment of liabilities lawfully incurred by the Trustee in the administration of the trust, including Trustee's fees that have been earned, unless the Trustors shall indemnify the Trustee against loss or expense.

    **3.2**    **Amendment During Trustors' Joint Lifetimes.** Except as otherwise provided in subparagraph 16.1a. below, the Trustors may at any time during their joint lifetimes amend any of the terms of this instrument by an instrument in writing signed by both Trustors and delivered to the Trustee.

    **3.3**    **Revocation and Amendment by Survivor.** From and after the death of the first Trustor to die (often referred to in this instrument as the "Decedent"), the surviving Trustor (often referred to in this instrument as the "Survivor") shall have the power to alter, amend, revoke, or terminate the Survivor's Trust in whole or in part, but no other trust created under the terms of this trust instrument may be altered, amended, terminated or revoked (except to the extent permitted under this instrument pursuant to the exercise of a power of appointment granted by this instrument). On revocation or termination of the Survivor's Trust, all or that portion of its assets affected shall be delivered to the Survivor. This power of revocation or amendment shall be exercised by an instrument in writing signed by the Survivor and delivered to the Trustee. From and after the death of the Survivor, no trust created hereunder may be altered, amended, terminated, or revoked (except to the extent permitted under this instrument pursuant to the exercise of a power of appointment granted by this instrument).

## ARTICLE 4

### INITIAL TRUST DURING JOINT
### LIFETIMES OF TRUSTORS

    **4.1**    **Principal and Income from Community Estate.** During the joint lifetimes of the Trustors, the Trustee shall pay to either or both the Trustors, for the account of the community, or apply for the Trustors' benefit, as much of the net income, and if the Trustee considers the net income insufficient, as much of the principal, of the community estate as is necessary in the Trustee's discretion for the Trustors' health, education, support, maintenance, comfort, enjoyment, and welfare, in accordance with their accustomed manner of living. Any community income not so paid or applied, and which is not paid, applied, or requested pursuant to other provisions of this Article 4, shall be accumulated and added to principal of the community estate. The Trustor receiving payments shall have the same duty to use income and principal of the community estate received under this trust instrument for the benefit of the Trustors as he or she has with respect to any other community property. In making distributions of income or principal under this paragraph, the Trustee may take into consideration, to the extent the Trustee deems advisable, any other community income or resources of the Trustors known to the Trustee and reasonably available for these purposes.

**4.2    Principal and Income from Separate Estates.**  During the joint lifetimes of
the Trustors, the Trustee shall pay to or apply for the benefit of the Trustor whose separate
property was transferred to the trust, as much of the net income, and if the Trustee considers
the net income insufficient, as much of the principal, of that Trustor's separate estate as is
necessary in the Trustee's discretion for the health, education, support, maintenance,
comfort, enjoyment, and welfare of that Trustor, in accordance with his or her accustomed
manner of living.  Any such income not so paid or applied, and which is not paid, applied,
or requested pursuant to other provisions of this Article 4, shall be accumulated and added to
the principal of the separate estate of that Trustor.  In making distributions of income or
principal under this paragraph, the Trustee may take into consideration, to the extent the
Trustee deems advisable, any other separate property income or resources of that Trustor
known to the Trustee and reasonably available for these purposes.

**4.3    Income or Principal on Request.**  During the joint lifetimes of the Trustors,
the Trustee shall also pay to either or both the Trustors, for the account of the community,
or shall apply for the Trustors' benefit, as much of the net income and principal of the
community estate as either Trustor shall request in writing.  The Trustor receiving payments
shall have the same duty to use income and principal of the community estate received
hereunder for the benefit of the Trustors as he or she has with respect to any other
community property.  During such period of time, the Trustee shall also pay to or apply for
the benefit of the Trustor whose separate property was transferred to the trust, as much of
the net income and principal of that Trustor's separate estate as said Trustor shall request in
writing.

**4.4    Transfers Out of Trust Estate.**  During the joint lifetimes of the Trustors,
the Trustors acting jointly with respect to the community estate, or a Trustor acting
individually with respect to such Trustor's separate estate, may at any time direct the Trustee
in writing to transfer property or sums of money out of the trust estate to any other person
or organization.  Notwithstanding anything in this trust instrument to the contrary, this
power may be exercised by the respective conservator of the estate of either Trustor or by
his or her duly appointed attorney-in-fact, by making gifts from such Trustor's separate
property or share of the community property to one or more of the Trustors' issue that
qualify for the annual federal gift tax exclusion as said exclusion may now or hereafter exist
under the federal gift tax law; provided, however, that no such gifts to any one donee shall
in any calendar year exceed the amount of the annual federal gift tax exclusion then
available without prior court authorization; and, provided further, that no transfer hereunder
shall be made by such conservator or attorney-in-fact if the Trustee, in the Trustee's
discretion, determines that such a transfer would jeopardize the Trustee's ability to provide
for the health, support or maintenance of either Trustor.

**4.5    Incapacitation of Trustor.**  If during the joint lifetimes of the Trustors, either
in the Trustee's discretion or as certified in writing by two licensed physicians, one of whom
shall be such Trustor's attending physician, either Trustor has become physically or mentally
incapacitated such that he or she is unable to manage his or her own affairs, whether or not
a court of competent jurisdiction has declared him or her incompetent, mentally ill, or in
need of a conservator, it is the Trustors' desire that distributions continue to be made to the
Trustors in accordance with the other provisions of this Article 4.  However, if during such

period of incapacity, the community property of the Trustors and separate property of the incapacitated Trustor's spouse is insufficient or not reasonably available to provide for the health, support in his or her accustomed manner of living, and maintenance of the incapacitated Trustor's spouse, then the Trustee shall pay to the spouse of the incapacitated Trustor, or apply for the benefit of either Trustor, as much of the net income, and if the net income is insufficient, as much of the principal, of the separate estate of the incapacitated Trustor as is reasonably required for the Trustors' health, support in their accustomed manner of living, and maintenance, after taking into consideration, to the extent the Trustee deems advisable, any other income or resources of the Trustors known to the Trustee and reasonably available for these purposes. The provisions of this paragraph shall be given effect until such time as the incapacitated Trustor, either in the Trustee's discretion or as certified by two licensed physicians, one of whom shall be such Trustor's attending physician, is again able to manage his or her own affairs, or until the earlier death of either Trustor. Any such income not so paid or applied under this paragraph, and which is not paid, applied, or requested pursuant to other provisions of this Article 4, shall be accumulated and added to the principal of the separate estate of the incapacitated Trustor. If a conservator of the estate or person and estate of the incapacitated Trustor is appointed, the Trustee shall take into account any payments made for either Trustor's benefit by the conservator. For purposes of this paragraph, a Trustor shall conclusively be deemed to be incapacitated and unable to manage his or her affairs if a conservator of his or her estate or person and estate has been appointed by a court having jurisdiction over such matters.

### 4.6    Payment of Taxes, Debts and Expenses on Death of Decedent.

a.    The following items shall be paid out of the Decedent's share of the trust estate upon the Decedent's death:

(1)    The legally enforceable debts properly chargeable to the Decedent's estate under California law in effect at the date of Decedent's death;

(2)    The estate, inheritance, and other death taxes (excluding any additional tax imposed under Internal Revenue Code Sections 2032A and 2057(f), or any successor provision thereto, or any generation-skipping transfer tax), including interest and penalties thereon, imposed by reason of the Decedent's death which are attributable to the trust estate (including any property passing to the trust estate by reason of the Decedent's death) or to any property of the Decedent passing outright to the Survivor under the Decedent's Will;

(3)    The last illness and funeral expenses of the Decedent; and

(4)    The administration expenses incurred in administering the Decedent's estate.

b.    Any payments for such estate, inheritance, or other death taxes shall be apportioned in accordance with the provisions of any applicable tax law or proration statute.

        c.      Any payments for such last illness, funeral, and administration expenses shall be charged first to the Disclaimer Trust, or to the extent it is insufficient, then to the Decedent's share of the Survivor's Trust, or to the extent it is insufficient, then to the Children's Trust.

        d.      Notwithstanding the foregoing directions regarding payment of the Decedent's legally enforceable debts, the following limitations and provisions shall apply with respect to the payment of such debts:  (i) only to the extent the Disclaimer Trust is insufficient shall debts of the Decedent be charged to the Decedent's share of the Survivor's Trust, except that if any property passing to the Survivor's Trust is subject to a trust deed, mortgage, or other encumbrance so that the value of such property would be reduced with respect to the Decedent's estate, by such trust deed, mortgage, or other encumbrance for purposes of the federal estate tax marital deduction, then any payments with respect to such trust deed, mortgage, or other encumbrance shall be charged to the Decedent's share of the Survivor's Trust to the extent of such reduction; (ii) no secured debt of the Decedent shall be paid out of the trust estate unless it is secured by property which is held in the trust estate at the Decedent's death or which passes to the trust estate by reason of the Decedent's death; and (iii) the direction to pay certain debts of the Decedent under this paragraph shall not be construed as a requirement to pay any debts of the Decedent before they have become due and payable.

## ARTICLE 5

## DIVISION ON DECEDENT'S DEATH

    **5.1**    **Division of Trust Estate.**  Upon the Decedent's death, the trust estate, including property received by the trust estate upon or by reason of the death of the Decedent (other than property not held in the trust estate at the Decedent's death which has been specifically directed by another instrument which effectively disposes of such property, to be added directly to a specifically designated trust established under this trust instrument, such property being allocable to such trust), shall be held, administered and distributed as follows:

        a.      **Survivor's Trust.**  There shall be allocated to the Survivor's Trust the Survivor's interest in the Trustors' community estate, including any undistributed or accrued income on it, to be held, administered and distributed as provided in this subparagraph a. and Article 6 hereof.  There shall also be allocated to the Survivor's Trust any other property of the Survivor (including but not limited to the Survivor's separate estate) added by the Survivor to the trust estate either during the Survivor's lifetime or upon or by reason of the Survivor's death (including any undistributed or accrued income on such property) which has not otherwise been directed by the Survivor to be added directly to another specifically designated trust established under this trust instrument.

        b.      **Decedent's Estate - Survivor Survives for Thirty (30) Days.**  In the event the Survivor survives the Decedent by thirty (30) days, there shall also be allocated to the Survivor's Trust, in addition to that property allocated pursuant to paragraph 5.1a.

above, the Decedent's separate property and the Decedent's interest in the Trustors' community estate included in or added to the trust estate in any manner, including any undistributed or accrued income on it, and any other property not otherwise allocated under the provisions of this Trust. Any property so allocated to the Survivor's Trust shall be added to property allocated to the Survivor's Trust pursuant to paragraph 5.1a. above and thereafter held, administered and distributed in accordance with Article 6 hereof.

      **c.**    **Decedent's Estate - Survivor Does Not Survive for Thirty (30) Days.** In the event the Survivor does not survive the Decedent for thirty (30) days, the Decedent's interest in the Trustors' community estate and the Decedent's separate property, included in or added to the trust estate in any manner, including any undistributed or accrued income on it and any other property not otherwise allocated under the provisions of this trust shall be allocated to a separate and distinct trust to be known hereunder as the "Children's Trust" and shall thereafter be held, administered and distributed as provided in Article 11 hereof.

      **5.2**    **Marital Deduction.** Notwithstanding any other provision in this trust instrument to the contrary, during the Survivor's lifetime, the Survivor shall have the power to require the Trustee to make all or part of the principal of the Survivor's Trust productive or to convert promptly any unproductive part into productive property. This power shall be exercised by the Survivor in a written instrument delivered to the Trustee. It is the Trustors' intention that the Survivor's Trust qualify for the marital deduction under Section 2056 of the Internal Revenue Code and the regulations pertaining to that section or any corresponding or substitute provisions applicable to the trust estate. Accordingly, and notwithstanding any provision in this trust instrument to the contrary, the Trustee shall not take any action or have any power that will impair the marital deduction, and all provisions regarding the Survivor's Trust shall be interpreted to conform to this primary objective; provided, however, that this limitation upon the Trustee shall not be construed to limit the Trustee's discretion with respect to its decision to use all or any portion of the amounts described in Internal Revenue Code Section 642(g) (or any corresponding or substitute provision), and the regulations pertaining thereto, as federal estate tax deductions or as federal income tax deductions.

## ARTICLE 6

## SURVIVOR'S TRUST

      The Trustee shall hold, manage and distribute the principal and net income of the Survivor's Trust as follows:

      **6.1**    **Principal and Income from Survivor's Trust.** From and after the death of the Decedent, the Trustee shall pay to or apply for the benefit of the Survivor the entire net income of the Survivor's Trust, quarter-annually or more frequently. If the Trustee deems the net income of the Survivor's Trust to be insufficient, the Trustee shall also pay to or apply for the benefit of the Survivor from time to time so much of the principal of the Survivor's Trust as the Trustee, in the Trustee's discretion, deems necessary for the

Survivor's support in his or her accustomed manner of living, health, maintenance, education, comfort, enjoyment and welfare, after taking into consideration, to the extent the Trustee deems advisable, any other income or resources of the Survivor known to the Trustee and reasonably available for these purposes.

**6.2    Lifetime Distributions Under Power of Appointment.**  In addition, during the Survivor's lifetime, the Trustee shall distribute so much of the principal of the Survivor's Trust, up to the whole thereof, to such one or more persons or entities, including the Survivor and the creditors of the Survivor, and on such terms and conditions, either outright or in trust, as the Survivor shall appoint from time to time by a written instrument delivered to the Trustee.  This power of appointment shall be exercisable by the Survivor alone and in all events.

**6.3    Distribution Upon Death of Survivor.**  Upon the death of the Survivor, the Trustee shall distribute the remaining balance (including any additions thereto occurring upon or by reason of the Survivor's death) of the Survivor's Trust (including both principal and any accrued or undistributed income) to such one or more persons or entities, including the Survivor's estate, and on such terms and conditions, either outright or in trust, as the Survivor shall appoint by a written instrument delivered to the Trustee making specific reference to and exercising this power of appointment or by a Will specifically referring to and exercising this power of appointment.  This power of appointment shall be exercisable by the Survivor alone and in all events.  Any portion of the Survivor's Trust (including such additions thereto) not effectively appointed in this manner (including both principal and any accrued or undistributed income) shall be allocated to the Children's Trust, to be held, administered and distributed in accordance with the terms of Article 11 hereof.

## ARTICLE 7

### DISCLAIMER

Notwithstanding any provision in this trust instrument to the contrary, if the Survivor (or any person or entity permitted by law to disclaim on behalf of the Survivor) disclaims all of the Survivor's interests in all or any portion of the Decedent's property passing to the Survivor's Trust, that property or the affected portion thereof (as the case may be) shall be allocated to and become a part of a separate and distinct trust, to be known hereunder as the "Disclaimer Trust," and shall be held, administered, and distributed in accordance with the terms of this trust instrument relating to the Disclaimer Trust.  Notwithstanding any provision in this trust instrument to the contrary, if the Survivor (or any person or entity permitted by law to disclaim on behalf of the Survivor) disclaims any interest in all or any portion of the Disclaimer Trust, that trust or the affected portion thereof (as the case may be) shall be administered and distributed as if that disclaimed interest had been omitted from the original terms of that trust, unless the Survivor (or such person or entity) disclaims all of the Survivor's interests in that trust or the affected portion thereof, in which event that trust or the affected portion thereof (as the case may be) shall be held, administered, and distributed as if the Survivor had died after having survived the Decedent provided, however, that in no event (and notwithstanding any provision in this trust instrument to the

contrary) shall the Trustee be required or have any duty to make any distribution out of any
property being administered under Article 11 hereof in which the Survivor has disclaimed
any interest, in discharge of any legal obligation of the Survivor.

## ARTICLE 8

## PAYMENT OF TAXES, DEBTS, AND EXPENSES ON
## DEATH OF SURVIVOR

On the death of the Survivor, but subject to any power of appointment exercised by
the Survivor, the Trustee shall, to the extent the residue of the Survivor's estate disposed of
by the Survivor's Will (excluding, however, any assets thereof which the Trustee
determines, in his discretion, should not be used for the payment of such taxes, debts, costs,
and other expenses of the Survivor hereinafter described in this Article) is insufficient, pay
out of the Survivor's Trust (i) the Survivor's legally enforceable debts; (ii) the Survivor's
expenses of last illness and funeral; (iii) the administration expenses incurred in
administering the Survivor's estate; and (iv) any estate, inheritance, or other death taxes
(excluding any additional tax imposed under Internal Revenue Code Sections 2032A and
2057(f), or any successor provision thereto, or any generation-skipping transfer tax),
including interest and penalties thereon, attributable by reason of the Survivor's death to the
Survivor's Trust (including any property of the Survivor passing to the Survivor's Trust by
reason of the Survivor's death) or to any property specifically bequeathed by the Survivor's
Will to any of the Survivor's children, without apportionment or charge against any
beneficiary of the trust estate or transferee of property passing outside the trust estate.
Notwithstanding the foregoing directions regarding payment of the Survivor's legally
enforceable debts, the following provisions shall apply with respect to the payment of such
debts:  (i) no secured debt of the Survivor shall be paid by the Trustee unless it is secured
by property which is held in the trust estate at the Survivor's death or which passes to the
trust estate by reason of the Survivor's death; and (ii) the foregoing direction to pay certain
debts of the Survivor shall not be construed as a requirement to pay any debts of the
Survivor before they have become due and payable.

## ARTICLE 9

## RESIDENCE

On the death of the Decedent, the Survivor shall have the right to continue to occupy
all real property held in any trust created hereunder of which the Survivor is entitled during
his or her lifetime to all of the net income, without payment of rent therefor, that the
Survivor and the Decedent were using for residential purposes (whether on a full or
part-time basis, including resort property); provided, however, that the Survivor, in his or
her discretion, may direct the Trustee of each such trust having an interest in such property
to sell the interest of such trust in such property and, in the Survivor's discretion, to replace
it with an interest in another residence selected by the Survivor for the Survivor's occupancy
which interest in the case of the Disclaimer Trust must be of comparable or lower value.

## ARTICLE 10

### DISCLAIMER TRUST

From and after the death of the Decedent, the Trustee shall hold, administer, and distribute the principal and net income of the Disclaimer Trust as follows:

**10.1    Principal and Income from Disclaimer Trust.** The Trustee shall pay to or apply for the benefit of the Survivor the entire net income of the Disclaimer Trust, quarter-annually or more frequently. If the Trustee deems the net income of the Disclaimer Trust to be insufficient, the Trustee shall also pay to or apply for the benefit of the Survivor from time to time so much of the principal of the Disclaimer Trust as is reasonably required for the Survivor's support in his or her accustomed manner of living, health, maintenance, and education, after taking into consideration, to the extent the Trustee deems advisable, any other income or resources of the Survivor known to the Trustee and reasonably available for these purposes. Payments out of the principal of the trust estate to the Survivor for such purposes shall be first made out of the Survivor's Trust until it is exhausted, and thereafter out of the Disclaimer Trust, except that all or any part of such payments may be made from the Disclaimer Trust, without exhausting the Survivor's Trust, if for any reason the Trustee shall deem advisable.

**10.2    Distribution Upon Death of Survivor.** Upon the death of the Survivor, the remaining principal of the Disclaimer Trust, together with all accrued or undistributed income therefrom, shall be distributed to the Children's Trust, to be held, administered and distributed in accordance with the terms of Article 11 hereof.

## ARTICLE 11

### CHILDREN'S TRUST

**11.1    Division and Administration.** Upon the death of the Survivor, the Trustee shall hold, administer, and distribute the principal and net income of the Children's Trust as follows:

a.    The Trustee shall divide the Children's Trust into as many equal shares as there are children of the Trustors then living, and children of the Trustors then deceased leaving issue then living. The Trustee shall allocate one such share to each such living child and one such share to each group composed of the then living issue of each such deceased child. Each such share shall be distributed, or retained in trust, as hereinafter provided:

(1)    Each share allocated to a living child of the Trustors shall be held in a separate and distinct trust and shall be administered and distributed as follows:

(a)    The Trustee may pay to or apply for the benefit of the child, as much of the net income and principal of that child's trust as the Trustee in the

Trustee's discretion deems necessary for the child's support, health, maintenance and education, after taking into consideration, to the extent the Trustee shall deem advisable, any other reasonably available income or resources of the child, known to the Trustee. Any net income not distributed shall be accumulated and added to principal.

(b)     At any time after attaining age twenty-five (25), the child may, by written instrument filed with the Trustee, require the Trustee to distribute to the child a portion of the principal of the child's trust not to exceed one-third (⅓) of the principal of the child's trust valued as of the applicable valuation date; at any time after attaining age thirty (30), the child may, by written instrument filed with the Trustee, require the Trustee to distribute to the child an additional portion of the principal of the child's trust not to exceed one-half (½) of that portion of the principal of the child's trust not already subject to the child's power of withdrawal valued as of the applicable valuation date; at any time after attaining age thirty-five (35), the child may, by written instrument filed with the Trustee, require the Trustee to distribute to the child all or any portion of the child's trust. The right to require such distributions shall be a continuing right until termination of the child's trust. The "applicable valuation date" shall be the last to occur of the Survivor's death or the date the child attains the applicable age to which reference is made.

(c)     Upon the death of the child, any portion of the child's trust then held for the child's benefit which was not subject to the child's power of withdrawal at the child's death, shall be distributed to or for the benefit of such issue of said child in such proportions and subject to such trusts, powers and conditions as said child may provide and appoint by a written instrument delivered to the Trustee making specific reference to and exercising this power of appointment or by a Will specifically referring to and exercising this power of appointment. This limited power shall not under any circumstances be exercisable in favor of said child, his or her estate, his or her creditors, or the creditors of his or her estate, nor shall it be exercisable for the purpose of discharging any legal obligation of said child or for the pecuniary benefit of said child. Upon the death of the child, any portion of the child's trust then held for the child's benefit which was subject to the child's power of withdrawal at the child's death (exclusive of any undistributed portion as to which the child had previously filed an authorized request for distribution, such portion being distributable to the child's estate upon the child's death), shall be distributed to or for the benefit of such one or more persons or entities, including the child's own estate, and on such terms and conditions, either outright or in trust, as said child may provide and appoint by a written instrument delivered to the Trustee making specific reference to and exercising this power of appointment or by a Will specifically referring to and exercising this power of appointment. If or to the extent that said child shall have failed to exercise any such limited or general power of appointment, or an attempted exercise of any such power of appointment shall have been invalid or ineffective for any reason, or said child shall have released, renounced or revoked the exercise of any such power of appointment, the property subject to it shall be distributed to or retained in trust for the benefit of the then living issue of the child in accordance with the provisions of subparagraph 11.1a.(2) below. Should no such issue of the child be then living, such property shall be divided into as many equal parts as there are children of the Trustors then living and children of the Trustors then deceased who have issue then living. The Trustee shall allocate one such equal part to each such living child and one such equal part to each group composed of the then living issue of

each such deceased child. Each such part allocated to a living child of the Trustors shall be added to the share described in subparagraph 11.1a.(1) which has been set aside for such child and shall thereafter be administered according to the terms of subparagraph 11.1a.(1). Each such part allocated to a group composed of the then living issue of a deceased child of the Trustors shall be added to the share or portion described in subparagraph 11.1a.(2) which has been set aside for such issue and shall thereafter be administered according to the terms of subparagraph 11.1a.(2).

       (2)    Each share or portion of the trust estate allocated to or held for the benefit of the issue of a deceased child of the Trustors shall be distributed to such issue, upon the principle of representation, subject, however, to the provisions concerning distributions to such issue set forth below:

       (a)    Any portion of the trust estate distributed to a beneficiary who is a member of a group composed of issue of a deceased child of the Trustors under the foregoing provisions shall be held in a separate and distinct trust and shall be administered and distributed as follows:

       (i)    The Trustee may pay to or apply for the benefit of the beneficiary, as much of the net income and principal of said beneficiary's trust as the Trustee in the Trustee's discretion deems necessary for such beneficiary's support, health, maintenance and education after taking into consideration, to the extent the Trustee shall deem advisable, any other reasonably available income or resources of the beneficiary, known to the Trustee. Any net income not distributed shall be accumulated and added to principal.

       (ii)    Unless sooner terminated in accordance with the provisions of paragraph 12.6 of this trust instrument, at any time after attaining age twenty-five (25) the beneficiary may, by written instrument filed with the Trustee, require the Trustee to distribute to the beneficiary a portion of the principal of the beneficiary's trust not to exceed one-third (⅓) of the principal of the beneficiary's trust valued as of the applicable valuation date; upon the beneficiary attaining age thirty (30), the beneficiary may, by written instrument filed with the Trustee, require the Trustee to distribute to the beneficiary, all or any portion of the beneficiary's trust. The "applicable valuation date" shall be the last to occur of the Survivor's death or the date the beneficiary attains the age to which reference is made. The right to require such distributions shall be a continuing right until termination of the beneficiary's trust.

       (iii)    Upon the death of the beneficiary, any portion of the beneficiary's trust then held for the beneficiary's benefit (exclusive of any undistributed portion as to which the beneficiary had previously filed an authorized request for distribution, such portion being distributable to the beneficiary's estate upon the beneficiary's death), shall be distributed to or for the benefit of such one or more persons or entities, including the beneficiary's own estate, and on such terms and conditions, either outright or in trust, as said beneficiary may provide and appoint by a written instrument delivered to the Trustee making specific reference to and exercising this power of appointment or by a Will specifically referring to and exercising this power of appointment. If or to the extent that

said beneficiary shall have failed to exercise such general power of appointment, or an attempted exercise of such power of appointment shall have been invalid or ineffective for any reason, or said beneficiary shall have released, renounced or revoked the exercise of such power of appointment, the property subject to it shall be distributed to or retained in trust for the benefit of the then living issue of the beneficiary in accordance with the provisions of this subparagraph 11.1a.(2). Should no such issue of the beneficiary be then living, such property shall be distributed to the then living issue of the Trustors by right of representation; provided, however, that if any portion of the beneficiary's trust would otherwise be distributed to a person for whose benefit a trust is then being administered under this paragraph 11.1, that portion shall instead be added to that trust and shall thereafter be administered according to its terms.

   **11.2   Ultimate Contingent Beneficiaries.**   Any of the trust estate not disposed of under other provisions of this trust instrument shall go and be distributed in two equal shares as follows:

   a.   One such share shall be distributed to the husband's sister, KIMBERLY DEL VALLE, if she is then living and, if not, then to the husband's sister, DEBORAH RAFF, if she is then living.  If neither of the husband's aforesaid sisters is then living, such property shall be distributed to the then living issue of DEBORAH RAFF to be allocated among them on the principle of representation; provided further, that if any such issue has not then attained the age of twenty-one (21) years, such beneficiary's interest in such property shall be distributed to a custodian, selected by the Trustee, including the Trustee if not otherwise prohibited by law, to be held for such beneficiary's benefit under the California Uniform Transfers to Minors Act until such beneficiary attains the age of twenty-one (21).

   b.   One such share shall be distributed in equal shares to the wife's sister, KIMBERLY SUSAN ROBERTS, and the wife's brother, CHRISTOPHER HOYNG, or entirely to the survivor of them.


# ARTICLE 12

# MISCELLANEOUS PROVISIONS

   **12.1   Notice to Trustee of Births, Etc.**   Until the Trustee of the applicable trust shall receive from some person interested in such trust written notice of any birth, marriage, death, or other event upon which the right to payments from such trust may depend, the Trustee shall incur no liability to persons whose interests may have been affected by that event for disbursements made in good faith.

   **12.2   Definition of Education.**   Whenever provision is made herein for payment for the education of a beneficiary, the term "education" shall be construed to include enrollment at one or more preparatory schools, institutions of higher learning (including college and post-graduate study), commercial, technical, art and music instruction, so long as pursued in the judgment of the Trustee of the applicable trust to advantage by the beneficiary at an

institution of the beneficiary's choice. Said Trustee shall take into consideration, in addition
to the costs of tuition, books and supplies (including personal computers, software and
related equipment), the beneficiary's related living and travel expenses to the extent that they
are reasonable.

**12.3    Segregation of Trusts.** Subject to any express limitations stated elsewhere in
this trust instrument, there need be no physical segregation or division of the various trusts
except as segregation or division may be required by the termination of any of the trusts, but
the Trustee of the applicable trust shall keep separate accounts for the different undivided
interests held in such trust.

**12.4    Duty to Inquire.** No party entering into any transaction of any kind
whatsoever with a Trustee with respect to any of the trusts created herein shall be under any
duty, obligation or liability to inquire into the authority of the Trustee to enter into such
transaction or into the manner in which the Trustee might dispose of the consideration
received by the Trustee in connection with such transaction.

**12.5    Payments to Other Than Beneficiary.** In the event any payment or
distribution is directed or authorized to be made hereunder to a beneficiary who is then a
minor, or whose mental or physical health is then such that in the opinion of the Trustee of
the applicable trust the interests of such beneficiary may be served by providing
disbursement or distribution on behalf of such beneficiary through other channels, in whole
or in part, other than directly to such beneficiary or in a manner provided by law, the
Trustee of the applicable trust may make such payment or distribution, from time to time, in
any one or more of the following ways:

a.    By making such payment or distribution for the beneficiary's benefit to
the guardian or conservator of the person of such beneficiary; to a previously designated
custodian under the California Uniform Transfers to Minors Act or, if none, to such
custodian as is designated by the Trustee, to be held for the benefit of such beneficiary until
the age of twenty-one (21); to any suitable person with whom the beneficiary resides or who
cares for him or her; or to a relative of the beneficiary; provided, however, that a parent of
a minor beneficiary receiving payments or distributions pursuant to this subparagraph a. for
the minor's account shall not use the payments or distributions to discharge any of the
parent's legal obligations and the Trustee shall not make a payment or distribution to any
such parent pursuant to this subparagraph a. unless the parent shall first so agree with the
Trustee in writing;

b.    By the Trustee expending or using the same for such beneficiary in
accordance with the terms hereof; or

c.    By making payments or distributions directly to a minor if in the
Trustee's judgment the minor is of sufficient age and maturity to spend the money properly.

The Trustee shall be free of liability and shall be discharged from any further
accountability for distributing assets in compliance with this paragraph.

Notwithstanding the foregoing, this paragraph 12.5 shall not be construed to permit the accumulation of income of the Survivor's Trust.

**12.6 Perpetuities Savings Clause.** Unless sooner terminated in accordance with other provisions of this trust instrument or the provisions of any trust created by the exercise of any power of appointment conferred by this trust instrument, each trust created hereunder and each trust created by the exercise of any such power of appointment shall terminate twenty-one (21) years after the death of the last survivor of the Trustors and the Trustors' issue living on the date of death of the Decedent. All principal and undistributed income of any trust so terminated shall be distributed to the then income beneficiaries of that trust in the proportions in which they are, at the time of termination, entitled to receive the income; provided, however, that if the rights to income are not then fixed by the terms of the trust, distribution under this clause shall be made, upon the principle of representation, to such issue of the Trustors as are then entitled or authorized, in the Trustee's discretion, to receive income payments from the terminated trust, or, if there are no such issue, in equal shares to those beneficiaries who are then entitled or authorized in the Trustee's discretion to receive income payments therefrom.

**12.7 Severability.** If any provision of this trust instrument is unenforceable, the remaining provisions shall nevertheless be carried into effect.

**12.8 Number and Gender.** As used in this trust instrument, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

**12.9 Qualified Retirement Benefits.** Notwithstanding anything in this instrument to the contrary, the Trustee shall not pay any death taxes, including interest or penalties, last illness and funeral expenses, administration expenses, debts, or other obligations of a deceased Trustor or his estate from funds received from qualified retirement plans, individual retirement accounts, or other similar benefits that are otherwise excluded from the deceased Trustor's gross estate for federal estate tax purposes under Section 2039 of the Internal Revenue Code or any successor statute or from proceeds of insurance policies on the deceased Trustor's life unless such proceeds are otherwise taxable in the deceased Trustor's estate for federal estate tax purposes or would otherwise be liable for the payment of such debts, expenses or other obligations in the absence of their payment to this trust; provided, however, that this paragraph 12.9 shall not be construed to prevent the Trustee of any trust hereunder who is required by law to make any such payments or who is directed or authorized to make any such payments in other provisions of this trust instrument, from using, in said Trustee's discretion, loan or sale proceeds received by said Trustee pursuant to a transaction contemplated by paragraph 13.27 or 13.28 hereof for making such payments, nor shall it be construed to prevent a Trustee of any trust hereunder from entering, in said Trustee's discretion, into a transaction contemplated by paragraph 13.27 or 13.28 hereof.

**12.10 Delayed Termination, Distribution or Division.** Notwithstanding that by the terms hereof this Trust may terminate or a distribution or division may be required by reason of the death of a Trustor or for any other reason, but subject to the provisions of

paragraph 12.6 hereof, the Trustee may prolong termination, distribution or division for a reasonable period of time in order to (1) receive assets made payable to the Trustee upon or by reason of a person's death, (2) sell assets of the Trust when the Trustee deems such action advisable to accomplish orderly distribution or other reasonable objectives, (3) complete the orderly administration of the Trust, including the payment of all taxes due upon or by reason of such person's death, or (4) avoid adverse tax consequences which may arise by reason of such action creating a "disposition" which would adversely affect an election available for federal estate or income tax purposes. In determining what is a reasonable period of time, due consideration shall be given to the period of time required for final determination of federal estate taxes and in any event a delay until the federal estate tax return has been filed shall be deemed reasonable. When the Trustee defers distribution or division of the Trust assets or termination of any Trust created hereunder, the deferred division, distribution or termination shall be made as if it had taken place at the time prescribed in the Trust instrument in the absence of this paragraph and all rights given to the beneficiaries of these Trust assets under provisions of this instrument shall be deemed to have accrued and vested as of that prescribed time.

**12.11  Headings.** The various headings used herein are for convenience of reference only and constitute no part of the trust agreement.

**12.12  Governing Law.** The validity of this trust with respect to real property shall be governed by the laws of the state of its situs. The validity of this trust with respect to personal property, and the construction, interpretation, and administration of this trust with respect to all property, shall be governed by the laws of the State of California in force from time to time regardless of whether the situs or place of administration of the trust changes.

**12.13  Undistributed Income.** With respect to any trust created hereunder in which the beneficiary has a fixed right to all or a specified percentage or portion of the income of such trust, income accrued or held undistributed by the Trustee at the termination of said trust shall go to the next beneficiaries of the trust in proportion to their interest in it; provided, however, that the exercise of any power of appointment pertaining to any trust created hereunder shall be effective as to the entire appointed portion of such trust, including accrued or undistributed income.

**12.14  Allocation of Expenses Among Successive Beneficiaries.** Among successive beneficiaries of this trust, all taxes and other current expenses shall be deemed to have been paid and charged to the period in which they first became due and payable.

**12.15  Distribution of Trust if Uneconomical Administration.** If at any time following the death of the Survivor any trust created under Article 11 hereof which is being administered for any income beneficiary or group of income beneficiaries has such fair market value as to make continued administration of the trust uneconomical as determined by the Trustee in the Trustee's reasonable discretion, the Trustee may pay the entire balance of such trust to the person or persons then entitled to the income therefrom, in proportion to their interests therein. If the right to income is not fixed at the time the Trustee determines that the continued administration of the trust would be uneconomical, distribution under this paragraph shall be made, by right of representation, to such issue of the Trustors as are then

entitled or authorized in the Trustee's discretion to receive income payments from such trust, or, if there are no such issue, in equal shares to those beneficiaries who are then entitled or authorized in the Trustee's discretion to receive income payments from such trust.

**12.16  Changed Conditions.**  The Trustors recognize that in the future there may be changed conditions in regard to property rights, taxation, and many other social, economic, and political matters which, could they foresee, might lead them to make different disposition of the property transferred to the trust estate. With this in mind, the Trustors empower the Trustee in the Trustee's discretion, following the death of the Survivor, to transfer, pay over, and distribute any part or all of the principal of each trust created under Article 11, on the principle of representation, to those issue of the Trustors who are then entitled or authorized in the Trustee's discretion to receive income payments from such trust or, if there are no such issue, in equal shares to those beneficiaries who are then entitled or authorized in the Trustee's discretion to receive income payments from such trust. The Trustors request the Trustee not to make payments of principal pursuant to this paragraph because of temporary conditions but only because of changes in general conditions which they are unable to foresee and which in the judgment of the Trustee would cause the continuance of the trust to be prejudicial to the best interests and welfare of the beneficiaries. Any decision of the Trustee with respect to the Trustee's exercise or nonexercise of any discretionary power hereunder, or the time or manner of the exercise thereof, made in good faith, shall fully protect the Trustee from liability and shall be binding and conclusive on all persons interested in any trust hereunder.

**12.17  Obligation of Support.**  Any other provisions of this trust instrument notwithstanding, no person acting as a Trustee of any trust governed by Article 11 hereof who holds in a fiduciary capacity a power to appoint or distribute the income or principal of such trust to or for the benefit of others, shall use such power to distribute income or principal of such trust to discharge, in whole or in part, the personal legal obligation, if any, of said Trustee, from time to time existing, to provide for the support, health, maintenance, or education of such other persons, or to discharge any other personal legal obligation of said Trustee. When determining the legal obligation of any person to provide for the support, health, maintenance, or education of any of the beneficiaries of such trust, the existence of such trust and funds made available by it shall not be taken into consideration.

**12.18  Transfer Agents.**  Any transfer agent or other person dealing with the trust estate (hereinafter "third party") shall be entitled to rely upon a copy of those portions of this instrument and any amendments hereto which are relevant to the proposed transaction, including but not limited to those portions which set forth the powers of the Trustee, general provisions, and designation of Trustees and successor Trustees, which partial copies shall be certified by the then acting Trustee or by the Trustee's legal counsel as a true copy of such portions then in effect. Such third party shall incur no liability to the trust, the Trustors, or any beneficiary for acting upon any order or request of the Trustee made in reliance on the terms set forth in such partial copy, and shall not be required to see to the disposition of any of the proceeds or the faithful discharge of the Trustee's duties.

**12.19  Right of Representation.**  When distribution is directed or authorized to be made under this instrument by right of representation or upon the principle of representation,

distribution on that basis shall be construed to require distribution by right of representation on a strict or pure stirpital basis (i.e., requiring division at each generation whether or not there are living members in each generation).


## ARTICLE 13

### TRUSTEE'S POWERS

To carry out the purposes of the trusts created hereunder, but subject to any limitations stated elsewhere in this instrument, the Trustee of each such trust is vested with the following powers with respect to the applicable trust being administered by said Trustee, in addition to those now or hereafter conferred by law:

**13.1   Continue to Hold Property.**  To continue to hold any property, including shares of any corporate Trustee's own stock, as long as the Trustee deems advisable.

**13.2   Manage and Control.**  To manage, control, grant options on, sell (for cash or on deferred payments within or beyond the term of the trust), convey, exchange, partition, divide, improve and repair trust property.

**13.3   Lease Property.**  To lease trust property for terms within or beyond the term of the trust and for any purpose, including exploration for and removal of gas, oil, and other minerals; and to enter into community oil leases, pooling, and unitization agreements.

**13.4   Borrow.**  To borrow money and to encumber or hypothecate trust property by mortgage, deed of trust, pledge, or otherwise for the debts of the trust or the joint debts of the trust and a co-owner of trust property.

**13.5   Carry Insurance.**  To carry, at the expense of the trust, insurance of such kinds and in such amounts as the Trustee deems advisable to protect the trust and the Trustee personally against any hazard.

**13.6   Commence or Defend Litigation; Compromise or Adjust Claims.**  To commence or defend such litigation with respect to the trust or any property of the trust as the Trustee may deem advisable, at the expense of the trust, and to compromise or otherwise adjust any claims or litigation against or in favor of the trust.  The Trustee's powers under this paragraph shall apply during the term of the trust and after distribution of trust assets. However, the Trustee shall have no obligations or duties with respect to any litigation or claims occurring after distribution of trust assets unless the Trustee is adequately indemnified by the distributees for any loss in connection with such matters.

**13.7   Budget Income and Expenses.**  To budget the estimated annual income and expenses of the trust in such manner as to equalize, as far as practicable, periodical income payments to beneficiaries.

**13.8    Invest and Reinvest.** To invest and reinvest all or any part of the trust in such common or preferred stocks, shares of investment trusts and investment companies, mutual funds, bonds, debentures, mortgages, deeds of trust, mortgage participations, notes, real estate, or other property, as the Trustee, in the Trustee's discretion, may select and to buy, sell, and trade in securities of every nature (including "short" sales), options of every kind, and to otherwise deal in puts and calls, and for such purposes to maintain and operate margin accounts and other accounts with brokers as security for loans and advances made to the Trustee. The Trustee may also invest in the shares of any registered investment company whether or not the Trustee or any of its affiliates is an advisor to, or other service provider to such company, and receives compensation for providing such advisory or other services. The Trustee may continue to hold in the form in which received (or a form to which changed by reorganization, merger, splitup, stock dividend, or other like occurrence) any securities or other property the Trustee may at any time acquire under the trust, it being the Trustors' express desire and intention that the Trustee have full power to invest and reinvest the trust funds without being restricted to forms of investment that the Trustee may otherwise be permitted to make by law. The investments need not be diversified.

**13.9    Professional Assistance.** To appoint, employ, hire and pay such agents and employees as the Trustee deems necessary or advisable, including (without limiting the generality of the foregoing) accountants, attorneys, investment counselors, property managers, brokers, and custodians of the trust property.

**13.10    Nominee's Name.** To hold securities or other property in the Trustee's name as Trustee under the trust, or in the Trustee's own name, or in the name of a nominee of the Trustee, without disclosing any fiduciary relation, or the Trustee may hold securities unregistered in such condition that ownership will pass by delivery.

**13.11    Bonds at Premium.** To purchase bonds and to pay such premiums in connection with the purchase as the Trustee in the Trustee's discretion deems advisable; provided, however, that each premium shall be repaid periodically to principal out of the interest on the bond in such reasonable manner as the Trustee shall determine and, to the extent necessary, out of the proceeds on the sale or other disposition of the bond. Notwithstanding the foregoing, the Trustee shall not be required to amortize bond premiums during the joint lifetimes of the Trustors.

**13.12    Bonds at Discount.** To purchase bonds at such discount as the Trustee in the Trustee's discretion deems advisable, provided, however, that each discount shall be accumulated periodically as interest in such reasonable manner as the Trustee shall determine and to the extent necessary paid out of the proceeds on the sale or other disposition of the bond or out of principal. Notwithstanding the foregoing, the Trustee shall not be required to amortize bond discounts during the joint lifetimes of the Trustors.

**13.13    Undivided Interests.** To hold undivided interests in property, real or personal.

**13.14  Administration Expenses.**  To incur and pay property taxes, assessments, costs, charges, fees and other expenses of every kind in connection with the administration of the trust.

**13.15  Divisions and Distributions.**  To partition, allot, and distribute the trust, on any division or partial or final distribution of the trust, in undivided interests or in kind, or partly in money and partly in kind, at valuations determined by the Trustee, and to sell such property as said Trustee may deem necessary to make division or distribution.  In making any division or partial or final distribution of the trust, the Trustee shall be under no obligation to make a prorata division, or to distribute the same assets to beneficiaries similarly situated; but rather, said Trustee may, in its discretion, make a nonprorata division between trusts or shares and nonprorata distributions to such beneficiaries, as long as the respective assets allocated to separate trusts or shares, or distributed to such beneficiaries, have equivalent or proportionate fair market value.  The income tax basis of assets allocated or distributed nonprorata need not be equivalent and may vary to a greater or lesser amount, as determined by the Trustee in his discretion.

**13.16  Tax Elections.**  To take any action and to make any election in the discretion of the Trustee of the applicable trust to minimize the tax liabilities of the trust and its beneficiaries, and the Trustee shall allocate the benefits among the various beneficiaries, and it shall make adjustments in the rights of any beneficiaries, or between the income and principal accounts, to compensate for the consequences of any tax election or any investment or administrative decision that the Trustee believes has had the effect of directly or indirectly preferring one beneficiary or group of beneficiaries over others.

**13.17  Bank Accounts.**  To open and maintain bank or savings accounts and safe deposit boxes in the name of the Trustee with any bank, trust company or savings and loan association authorized and doing business in any state of the United States of America.  If more than one Trustee of a trust shall be acting, the Trustees of such trust may designate one or more of them to conduct banking activities and to make deposits, withdrawals and endorsements upon giving written notice of such designation to the bank, trust company, or savings and loan association in question; and such bank, trust company or savings and loan association shall be protected in relying upon such designation.

**13.18  Disclaim, Release, or Restrict Powers.**  Each Trustee shall have the power to disclaim, release, or restrict the scope of any power that he may hold in connection with the trusts created under this instrument, whether said power is expressly granted in this instrument or implied by law.  The Trustee shall exercise this power, in a written instrument specifying the powers to be disclaimed, released, or restricted and the nature of any such restriction.

**13.19  Partnership.**  The Trustee may enter into any general or limited partnership agreement, become and remain a general or limited partner under it, and carry out all the terms and conditions of any partnership agreement, notwithstanding the fact that the Trustee may also be a partner of the partnership for the Trustee's own account.

      **13.20  Powers Concerning Businesses.**  With respect to any business interest that may become a part of the trust, whether organized as a sole proprietorship, partnership, or corporation, and upon such terms, for such time, and in such manner as the Trustee may deem advisable:

      a.     To hold, retain, and continue to operate such business solely at the risk of the trust and without liability on the part of the Trustee for any losses resulting therefrom;

      b.     To dissolve, liquidate, or sell at such time and upon such terms as the Trustee deems advisable;

      c.     To enlarge, diminish, or change the scope or nature of the activities of any business;

      d.     To incorporate such business and hold the stock as an asset of the trust;

      e.     To serve as an officer, director, or employee of the business;

      f.     To authorize the participation and contribution by the business in any form of employee benefit plan, whether or not qualified as being tax deductible, as may be desirable from time to time;

      g.     To authorize mergers, reorganizations, consolidations, exchanges of stock and any other form of recognized business transaction involving ownership change;

      h.     To employ such officers, managers, employees, or agents (including any beneficiary hereunder) as the Trustee deems advisable in the management of such business, including electing or employing directors, officers, or employees of the Trustee to take part in the management of such business as directors or officers or otherwise, and to pay any such person reasonable compensation for his services without regard to the fees payable to the Trustee;

      i.     To accept as correct financial or other statements rendered by the business from time to time as to its conditions and operations except when having actual notice to the contrary;

      j.     To invest additional sums from the trust in any such business even to the extent the trust may be invested largely or entirely in such business, without liability for any loss resulting from lack of diversification;

      k.     To exercise all powers as may be necessary to enable the Trustee to administer any such business interest in accordance with the provisions of this instrument.

      If the business shall be unincorporated, contractual and tort liabilities arising out of the business shall be satisfied, first, out of the business and, second, out of the trust, but it is intended that in no event shall there be a liability of the Trustee, and if the

Trustee shall be held liable, the Trustee shall be entitled to indemnification from the business
and the trust in the order named.

The Trustee shall have the powers enumerated herein notwithstanding
the fact that a Trustee may also own an interest for his own account in any such business.

**13.21 Abandon Property.** To abandon any property or interest in property
belonging to the trust when, in the Trustee's discretion, such abandonment is in the best
interests of the trust and its beneficiaries.

**13.22 Principal and Income.**

a.    During the joint lifetimes of the Trustors, the Trustee shall have the
power, exercisable in the Trustee's sole discretion, to determine what is principal or income
of the trust estate and to apportion and allocate receipts and expenses and other charges
between these accounts.

b.    Except as may otherwise be specifically provided in this trust
instrument and subject to the later provisions of this paragraph, following the death of the
Decedent matters relating to the rights of beneficiaries among themselves as to principal and
income shall be governed by the provisions of the California Uniform Principal and Income
Act from time to time existing.  In the event the California Uniform Principal and Income
Act shall contain no provision concerning a particular item, the Trustee shall have the power
to determine what is principal or income of the applicable trust and apportion and allocate,
in the Trustee's reasonable discretion, receipts and expenses as between these accounts.  All
of the foregoing powers shall be subject to the Trustee's duties to treat equitably both the
income beneficiaries and remaindermen under the trust.  In this connection, the following
shall be observed by the Trustee:

(1)    A reasonable reserve for depreciation of all income-producing
depreciable real and personal property, and capital improvements and extraordinary repairs
thereto, shall be charged to income from time to time.

(2)    A reasonable reserve for depletion of all depletable natural
resources including, but not limited to, oil, gas, mineral and timber property shall be
charged to income from time to time.

(3)    A reasonable reserve for amortization of all intangible property
having a limited economic life including, but not limited to, patents and copyrights shall be
charged to income from time to time.

(4)    All distributions by mutual funds and similar entities of gains
from the sale or other disposition of property shall be credited to principal.

(5)    All premiums paid and discounts received in connection with
the purchase of any bond or other obligation shall be amortized by making an appropriate
charge or credit to income.

**13.23  General Powers Regarding Real Estate.**  To subdivide, raze, alter, dedicate, vacate, resubdivide, donate, partition or release real estate and any or all improvements thereon; to renew or extend leases, amend, change or modify leases, contract to make leases, grant options to lease, options to renew leases, options to purchase the whole or any part of the reversion, contract regarding the manner of fixing the amounts of present or future rentals, and grant easements or charges of any kind, on or with respect to such real estate, or any right, title or interest therein, all for such considerations and on such terms and conditions as the Trustee shall decide; and to make alterations to any buildings located on any trust property or demolish the same and construct new buildings, all in the manner and upon the terms and conditions that the Trustee shall deem advisable, and to enter into contracts with respect to the foregoing.

**13.24  Granting Power to Subordinate.**  The Trustee is authorized to subordinate any encumbrance on property that the trust may hold if, in the Trustee's discretion, subordination does not unreasonably impair the security held for the loan or obligation.

**13.25  Employment of Real Estate Brokers.**  The Trustee may (a) employ real estate agents and brokers to facilitate the sale or leasing of any property of the trust; (b) list property for sale or lease on such terms and conditions as the Trustee may determine; (c) grant an exclusive right to sell or lease; and (d) agree to and pay such compensation and commissions to agents and brokers as the Trustee, in the Trustee's discretion, shall determine.

**13.26  Authorizing Trustee To Foreclose and to Bid on Property.**  The Trustee is empowered to bid for and purchase any real or personal property in which the Trustee may have an interest as lienholder or otherwise, and which is sold at foreclosure sale or at trustee's or pledgee's sale, under any mortgage or deed of trust, or at any judicial sale.  The Trustee may also acquire by purchase at any foreclosure sale, or by deed in lieu of any foreclosure or sale, property covered by any mortgage, deed of trust, or pledge then in default, and the property may be accepted in partial or full satisfaction of the encumbrances against the property.

**13.27  Purchase Assets from Personal Representatives.**  The Trustee of any trust created hereunder may, in the Trustee's discretion, purchase, at fair market value as of the time of purchase, any securities or other property tendered to it by the executor or administrator of the estate of either Trustor or by the Trustee of any other trust created hereunder, at any time and from time to time.  If there shall be any question as to the market value of such property, it shall be fixed by the Trustee making the purchase ("purchasing Trustee") and said executor, administrator, or selling Trustee, as the case may be, and if they shall be unable to agree, or if the duly appointed and acting executor or administrator of the estate of either Trustor or the selling Trustee, as the case may be, is also the Trustee of the trust making the purchase, such value shall be determined by an independent appraiser of recognized competency to appraise the particular class of property involved to be selected by the personal representative or selling Trustee and the purchasing Trustee, and said appraiser's determination shall be conclusive.

**13.28  Loans to Personal Representatives and Others.**  Subject to the provisions of paragraph 13.31 below, the Trustee of any trust created hereunder may, in the Trustee's discretion, make loans of trust funds from that trust to the executor or administrator of the estate of either Trustor or to the Trustee of any other trust created hereunder, or to any other person or entity, provided that any such loan shall be adequately secured and shall bear a reasonable rate of interest.

**13.29  Insurance.**

a.     Subject to the limitations contained in subparagraph b. immediately below, with respect to any policy of insurance on the life of any person which may form a part of the trust, to exercise and enjoy for the purpose of the trust as absolute owner of such policy or policies, any benefits, rights, options, and privileges under or with respect to such policies, including, but not limited to, the right to borrow upon and pledge such policies for a loan or loans, to enter into split dollar arrangements, to sell such policies, to surrender them for their cash surrender value, or to surrender or join in the surrender of such policies for predated policies having an aggregate value equal to the policies at surrender.  The Trustee of the trust of which any such policy forms a part shall designate such trust as the beneficiary of such policy.  Said Trustee may, in its discretion, pay from the income (but not the income of any trust created hereunder of which the Survivor is entitled during his or her lifetime to all of the net income) or principal of such trust any premiums, assessments, or other charges on any such life insurance policy.  In the case of any nonpayment, however, which results in the cessation of the policy as a binding insurance contract, said Trustee shall see to it that any and all rights of the trust in and to such policy shall be preserved and protected in a manner consistent with the provisions of this paragraph.

b.     Notwithstanding any provision in this trust instrument to the contrary, the Survivor, whether or not acting as a Trustee hereunder, shall not have any authority to exercise any of the powers granted in this trust instrument with respect to any policy of insurance on the Survivor's life held in any trust created herein other than the Survivor's Trust, and the Survivor, whether or not acting as Trustee hereunder, shall not possess any incidents of ownership in any policy of insurance on the Survivor's life which forms a part of any trust created herein other than the Survivor's Trust.  All such authority and rights with respect to any such life insurance policy or policies shall be exercised and possessed by the successor Trustee or Co-Trustees designated in paragraph 1.1 hereof, other than the Survivor, successively and in the order named, and said successor Trustee or Co-Trustees shall possess all incidents of ownership in any such policy or policies.

c.     Upon receipt of proof of death of the insured under any policy of life insurance for which the applicable trust is beneficiary, the Trustee of such trust shall use reasonable efforts to collect in a lump sum all sums payable under said policy to said trust, provided that said Trustee shall be reasonably indemnified if no trust funds are available from which said Trustee can pay the expenses of collection.  All sums so received shall become part of the principal of the trust, except that interest paid by the insurer for a period subsequent to maturity shall be added to income.  All such sums shall be held, administered, and distributed in accordance with the provisions of this trust instrument.  In connection with such life insurance policies, the Trustee of such trust shall have full power to compromise,

arbitrate, or otherwise adjust any claim, dispute or controversy arising under any such policy, and shall have the authority to initiate, defend, settle and compromise any legal proceeding necessary in said Trustee's opinion to collect the proceeds of any such policy. Said Trustee's receipt to any insurer for the insurance proceeds under such policy shall be considered in full discharge of the insurer's liability to the trust and the insurer shall not be under any duty to inquire into the disposition or application of policy proceeds.

   **13.30  Loans and Purchases by Trustee.**  To loan or advance the Trustee's own funds to the trust for any purpose, with interest at current rates; to receive security for such loans in the form of a mortgage, pledge, deed of trust, or other encumbrance of any assets of the trust; to purchase assets of the trust at their fair market value as determined by an independent appraisal of those assets; and to sell property to the trust not in excess of its fair market value as determined by an independent appraisal.  Any such independent appraisal shall be by an independent appraiser of recognized competency to appraise the particular class of property involved.

   **13.31  Lend to Beneficiaries.**  Following the death of the Decedent, to lend money from the applicable trust to any beneficiary of such trust entitled or authorized in the Trustee's discretion to receive current distributions of income or principal from such trust (other than the Survivor), upon such terms and conditions as the Trustee in his discretion may determine; any such loan may be made on a sound or unsound economic basis and may be made without requiring security therefor and without charging interest thereon, all as the Trustee in his discretion may decide; provided, however, that the Trustee shall take into consideration Internal Revenue Code Section 7872 or any successor thereto and any other provisions of the Internal Revenue Code with respect to the imputation of interest for federal tax purposes.  This paragraph shall only apply to the trusts governed by Article 11 hereof.

   **13.32  Guarantee Loans.**  Subject to the provisions of paragraph 2.3 above, the Trustee shall have the power during the joint lifetimes of the Trustors to endorse or guarantee any loan made to either or both of the Trustors or to any corporation, partnership, or other business entity in which either or both of the Trustors or the trust owns an interest; provided, however, that an endorsement or guarantee or an encumbrance or hypothecation by the Trustee pursuant to this paragraph shall not be effective with respect to the separate estate of a Trustor unless the Trustee first obtains that Trustor's written consent.  The Trustee is empowered to execute such documents as may be appropriate or necessary to effect such an endorsement or guarantee and may encumber or hypothecate trust property by pledge, mortgage, deed of trust, or otherwise in order to secure any such endorsement, guarantee, or loan.

   **13.33  Consider Tax Consequences.**  When determining distribution of income or principal authorized by this instrument and the person to whom it is made, to consider the tax consequences to the applicable trust and to the beneficiaries to whom distribution may be made (including the power to allocate different classes of income to different beneficiaries). The Trustee may make distributions from the applicable trust whether or not otherwise authorized by this instrument if the retention of the amount distributed would be considered an accumulation under Sections 665 to 668 of the Internal Revenue Code of 1986, or any successor to them.  Such distribution shall be made to any of the beneficiaries of the

applicable trust to whom the Trustee may make current income distributions. This paragraph shall only apply to the trusts governed by Article 11 hereof.

**13.34 Death Taxes.** Except as otherwise specifically provided, and subject to any exercised power of appointment over the Survivor's Trust, federal estate taxes and foreign or state death taxes, if any, imposed on or by reason of the inclusion of any portion of the trust in the gross taxable estate of any person under the provisions of any federal, state, or foreign tax law and any taxes imposed by reason of the generation-skipping transfer tax and the taxes imposed under Internal Revenue Code Sections 2032A and 2057(f), or any successor thereto, shall be paid by the Trustee of the applicable trust, unless other adequate provision shall have been made therefor, and charged to, prorated among, or recovered from the trust or the persons entitled to the benefits therefrom as and to the extent provided by any applicable tax law or proration statute.

**13.35 Oil, Gas, and Similar Interests.** With respect to oil, natural gas, minerals, and all other natural resources and rights to and interests therein (together with all equipment pertaining thereto) including, without limiting the generality of the foregoing, oil and gas royalties, leases, or other oil and gas interests of any character, whether owned in fee, as lessee, lessor, licensee, concessionaire or otherwise, or alone or jointly with others as partner, joint tenant, or joint venturer or in any other noncorporate manner, (a) to make oil, gas and mineral leases or subleases; (b) to pay delay rentals, lease bonuses, royalties, overriding royalties, taxes, assessments, and all other charges; (c) to sell, lease, exchange, mortgage, pledge or otherwise hypothecate any or all of such rights and interests; (d) to make farm-out, pooling, and unitization agreements; (e) to make reservations or impose conditions on the transfer of any such rights or interests; (f) to employ the most advantageous business form in which properly to exploit such rights and interests, whether as corporations, partnerships, limited partnerships, mining partnerships, joint ventures, co-tenancies, or otherwise; (g) to drill, test, explore, mine, develop and otherwise exploit any and all such rights and interests; (h) to produce, process, sell or exchange all products recovered through the exploitation of such rights and interests, and to enter into contracts and agreements for or in respect of the installation or operation of absorption, reprocessing or other processing plants; (i) to employ personnel, rent office space, buy or lease office equipment, contract and pay for geological surveys and studies, and procure appraisals; and (j) to conduct and engage in any and all activities incident to the foregoing powers, with full power to borrow and pledge in order to finance such activities, and to do any other act or thing which may be now or hereafter recognized or contemplated as common or proper practices among those engaged in the business of prospecting for, developing, producing, processing, transporting, or marketing any such oil, gas, mineral, or other natural resource interests.

**13.36 Power to Appoint Attorney in Fact.** The Trustee shall have the power to appoint any person as attorney in fact, under a general or special power of attorney, to perform any or all acts and exercise any and all powers which the Trustee might perform or exercise, including, without limitation, the right to buy and sell trust securities or other property, and the right to open, deposit and withdraw from bank savings and checking accounts and savings and loan accounts; provided, however, that after the death of either Trustor, no such attorney in fact who is a beneficiary hereunder shall have the power in such

capacity to make any discretionary distributions of income and/or principal that are not
limited by an ascertainable standard from any trust created hereunder to or for the benefit of
such beneficiary, such beneficiary's estate, such beneficiary's creditors, or the creditors of
such beneficiary's estate.

**13.37  General Powers and Limitations.**  Although the enumeration of certain
powers of the Trustee shall not limit the Trustee's general powers, the Trustee shall always
be subject to the discharge of the Trustee's fiduciary obligations in the exercise of any
powers contained herein.  Furthermore, the Trustee shall always be subject to the following
limitations in the exercise of its powers:

a.     The Trustee shall always be required to act in good faith as normally
required by general standards of trust administration customarily imposed on fiduciaries
acting in a similar capacity;

b.     Nothing contained in this instrument shall be construed to prevent the
Survivor from receiving all of the net income of the Survivor's Trust less often than
annually or to prevent the Survivor from receiving from the Survivor's Trust substantially
that degree of beneficial enjoyment of the property of the Survivor's Trust that the principles
of the law of trusts accord to a person who is unqualifiedly designated as the life beneficiary
of a trust as contemplated by Section 2056 of the Internal Revenue Code (and the regulations
pertaining thereto), it being the Trustors' intent that the Survivor's Trust produce for the
Survivor for life such an income, or that the Survivor should have such use of the property
held in the Survivor's Trust, as is consistent with the value of the trust principal and its
preservation; however, the provisions of this subparagraph b. shall be construed in a manner
consistent with the powers granted to a Trustee under paragraph 13.1 above, except that
unproductive property held in the Survivor's Trust, upon the written request of the Survivor,
shall be promptly made productive or promptly converted to productive property.

### ARTICLE 14

### GENERATION SKIPPING TRANSFER TAX PROVISIONS

#### 14.1  Definitional Material.

a.     References to "generation-skipping" or "GS" in this trust instrument
refer to the term "generation-skipping" as it is used in the federal generation skipping
transfer tax under Chapter 13 of the Internal Revenue Code of 1986, as amended ("IRC")
and is used in terminology associated with various provisions of that tax.  For example, "GS
exemption" refers to the exemption provided in Section 2631(a) of that tax.

b.     References to a "trust" or to "trusts" refer also to a separate share or
shares of a trust if appropriate to the context and to the Trustors' apparent objectives and if
the shares will be "substantially separate and independent shares of different beneficiaries"
entitled to be treated as separate trusts for generation-skipping purposes under IRC
§ 2654(b).

c.    In this Article, and in the generation-skipping context generally, the term "executor" refers to the person or persons authorized by IRC provisions or Treasury regulations to make the transferor election for qualified terminable interest property under IRC § 2652(a)(3) and to allocate the exemption under IRC § 2631(a).  No person acting as executor, however, shall be authorized to make or participate in any generation-skipping election or allocation decision if the power to do so would result in his or her having a general power of appointment (for federal estate and gift tax purposes) over property with respect to which he or she would not otherwise have such a general power; should this prohibition leave no executor able to make elections and allocations, the office of executor for this limited purpose shall be filled in the manner that other vacancies in the office of executor of the Decedent's will would be filled.

d.    In this Article, and in the generation-skipping context generally, the term "exempt" or "Exempt" refers to property or a trust (or share) that has a generation-skipping inclusion ratio of zero (that is, an applicable fraction for generation-skipping purposes of one).  When reference is made to an "Exempt Trust" or to the "Exempt Portion" of certain property or of a trust, this is a reference to or a special titling for property or a trust that has or is to be established having an inclusion ratio of zero.  The term "Nonexempt Portion" or the adjective "nonexempt" or "Nonexempt" indicates property or a trust that has a generation-skipping inclusion ratio of one (that is, an applicable fraction of zero).

14.2    **Executor's Generation-Skipping Authority:  Exemption Allocation.**  In exercising the power to allocate a Trustor's generation-skipping exemption under IRC § 2631(a), or a counterpart exemption under any applicable state law, such Trustor's executor may allocate any portion of such exemption to any property of which that Trustor is the transferor for generation-skipping purposes, including property transferred prior to that Trustor's death.  These decisions may be based on transfers, gift tax returns and other information known to the executor, with no requirement that allocations benefit the various transferees or beneficiaries of such property equally, proportionally or in any other particular manner.

14.3    **Separation of Exempt and Nonexempt Trusts.**

a.    For each trust that is otherwise to be established (or that is in existence) under this trust instrument, if any of a Trustor's or another's generation-skipping exemption is allocated to property of that trust or to the "Exempt Portion" of that trust, unless the trust thereby has a generation-skipping inclusion ratio of zero, the Trustee shall instead establish two separate trusts so that each separate trust has a generation-skipping inclusion ratio of either zero (the Exempt Portion) or one (the Nonexempt Portion).  This is to be accomplished by allocating to the Nonexempt Trust the minimum dollar amount necessary to leave the exempt trust with an inclusion ratio of zero.

b.    Except as expressly provided in this trust instrument, when a trust otherwise to be established is divided under the foregoing provisions into exempt and nonexempt trusts or otherwise into multiple trusts, each trust shall have the same provisions as the original trust from which it is established; provided, however, that any references in

this trust instrument to the original trust shall collectively refer to the separate trusts derived from it. Nevertheless, the Trustee may exercise administrative and distributive discretion, and donees of powers of appointment may exercise their powers, differently with respect to each of the separate trusts (even otherwise identical trusts) derived from the divided trust.

        c.    Any funding requirement of a dollar (i.e., pecuniary) amount under this Article 14 may be satisfied in cash or in kind, in undivided interests, or partly in each; any assets that are used to satisfy the dollar amount shall be valued for this purpose at their date or dates of distribution; and each such dollar amount gift or funding requirement in this document shall bear interest from the date specified under applicable local law (and, if none, from the date of the relevant GS transferor's gift or death, as the case may be) to the date of payment, such interest to be at the statutory rate applicable to pecuniary gifts under state law governing the administration (and, absent such statutory rate, at 80% of the rate applicable under IRC Section 7520 at the date of the relevant GS transferor's gift or death as the case may be). The foregoing interest requirement shall be interpreted and adapted to meet the "appropriate interest" requirement imposed by applicable proposed or final GS Treasury regulations.

        d.    Upon termination, partial termination or other later subdivision or distribution of any of the separate trusts created by the foregoing provisions or other provisions of this trust instrument, or when separate trusts are to be combined, the nonexempt (inclusion ratio of one) or exempt (zero inclusion ratio) generation-skipping character of the property of the trusts shall be preserved. Accordingly, when property is to be added to or combined with the property of another trust or other trusts or when additional trusts are to be established from one or more sources, nonexempt property or trusts shall not be added to or combined with exempt property or trusts, even if this requires the establishment of additional separate trusts with the same terms and provisions. If, for example, the terms of what would otherwise be one trust direct that, on termination (or on failure to exercise a power of appointment), trust property is to be added to another trust, the exempt property of a separate trust that had been derived from the terminating trust shall be added only to an exempt trust derived from the recipient trust; nonexempt property shall be similarly added only to a nonexempt recipient trust; and if no appropriate recipient trust exists for either exempt or nonexempt property, then a new trust of that character shall be established with the same terms and provisions as those of the trust that would otherwise receive that property under the original trust terms. Furthermore, in any case not covered by the foregoing directions (such as that of a partially exempt trust), if the GS inclusion ratio of any property that is to be added to or combined with a trust has a different inclusion ratio than that trust, the Trustee shall refrain from making the addition or combination and shall instead establish for that property a trust with provisions identical to those of the trust to or with which the property would have been added or combined.

        e.    The Trustee of any trust shall have authority, in the Trustee's sole discretion, to combine that trust with any other trust or trusts having the same inclusion ratio (including trusts established, during life or at death, by either or both of the Trustors or by issue of the Trustors); and the Trustee may establish separate shares in the combined trust if and as needed to preserve the rights and protect the best interests of the various beneficiaries when the trusts being combined do not have identical terms or when separate shares are

otherwise deemed desirable by the Trustee. Trusts with different inclusion ratios may also
be combined in a trust, provided their inclusion ratios are maintained unchanged through
substantially separate and independent shares of different beneficiaries under IRC § 2654(b).
Similarly, the Trustee shall have sole discretionary authority, to subdivide separate or
separable shares of a single trust into separate trusts. These powers to combine and divide
trusts may be exercised from time to time, and may be used to modify or reverse their prior
exercise. In deciding whether and how to exercise this authority the Trustee may take
account of efficiencies of administration, generation-skipping and other transfer tax
considerations, income tax factors affecting the various trusts and their beneficiaries, present
and future financial and other objectives of the trusts and beneficiaries, the need or
desirability of having the same or different trustees for various trusts or shares, and any
other considerations the Trustee may deem appropriate to these decisions.

    f. Notwithstanding other provisions of this trust document, whenever this
document directs that a particular trust (or portion thereof) or the total unappointed balances
of a certain number of trusts, are to be divided and allocated among certain specified
beneficiaries at any time following the surviving spouse's death, Trustee, in dividing that
trust (or portion thereof) or the collective unappointed balances of such trusts, need not
allocate on a proportionate basis among those beneficiaries (i) exempt or nonexempt property
of a particular GS transferor, (ii) property as to which the special rule of IRC § 2612(c)(2)
applies as to a particular GS transferor, or (iii) property having any other special tax or
nontax characteristic; provided that the total share of property a beneficiary (or group of
beneficiaries) receives out of the total property to be divided and allocated is equivalent to
the total share to which the beneficiary (or group of beneficiaries) is entitled out of the total
property to be divided and allocated. A good faith exercise or non-exercise of Trustee's
discretionary powers under this subparagraph shall fully protect Trustee from liability to any
trust beneficiary for Trustee's exercise or non-exercise of such powers.

### 14.4 General Powers and Other Special Generation-Skipping Provisions.

    a. If the Trustee of any nonexempt trust under this trust instrument
determines that the combined income tax and generation-skipping and other transfer tax
burdens (federal and state) on the trust and its beneficiaries would be reduced, the Trustee
shall have the power to amend the terms of the trust to grant to any descendant of the
Trustors or spouse of a descendant who is a beneficiary of that trust a general power of
appointment as defined for federal estate tax purposes. Such an amendment may create
either a purely testamentary power of appointment or a power to withdraw trust property,
may confer such general powers upon more than one beneficiary, and may limit the amount
subject to any such general power, require that it be exercised jointly with another in a
manner consistent with the objectives of the power, or otherwise impose conditions and
limitations on its exercise. The Trustee shall also have the power to eliminate any such
general power or to modify it, including in a manner that will reduce or increase the amount
of property subject to it, to alter the conditions or terms of its exercise, to reduce it from a
general to a non-general power, or to otherwise modify it, all in the Trustee's sole
discretion. The Trustee may also exercise the amendment power to subdivide a trust into
separate trusts or shares in order to separate properties or portions subject to a general
power from other properties or portions. The Trustee's power to create, eliminate or

modify general powers of appointment may be exercised repeatedly and from time to time,
but no Trustee may exercise or participate in the exercise of a power to so amend a trust in
any way that would increase his or her benefits under that trust or exercise a power of
amendment in a manner that has the effect of granting himself or herself a general power of
appointment as defined for estate tax purposes. In the event the granting of the
aforementioned power would result in the Trustee holding a general power of appointment,
the office of Trustee for this limited purpose shall be filled by the first successor Trustee or
Co-Trustee named in paragraph 1.1 above for whom such power would not result in the
holder having a general power of appointment and in the event of a vacancy, such office
shall be filled in the manner that other vacancies in the office of Trustee would be filled.
No Trustee shall be liable for any good faith exercise of a power to amend a trust in the
manner prescribed here.

      b.    It is the Trustors' intention to encourage the Trustee to administer
separate trusts under this trust instrument in ways that, in the long run, are likely to reduce
unnecessary income and transfer taxation among trusts and their beneficiaries and that are
likely to make efficient utilization of available tax privileges, such as generation-skipping
exemptions. Consistent with these objectives, the Trustee of any trust may consult with
other trustees and may in reasonable ways coordinate decisions and actions of the trust with
those of other trusts under this trust instrument, under other dispositions made by the
Trustors, and under wills and trusts of others when those other trusts have, in whole or in
part, similar beneficiaries. Without limiting the foregoing, the Trustors specifically
authorize (but do not require) the Trustee, in administering different trusts wholly or in part
for the benefit of a particular beneficiary or group of beneficiaries, to adopt different
investment patterns and objectives for different trusts based on their generation-skipping
ratios and to prefer making distributions from nonexempt trusts to beneficiaries who are
non-skip persons for generation-skipping purposes and from exempt trusts to those who are
skip persons.

    **14.5  Generation-Skipping "Favorable Interpretation" Clause.** All provisions of
this trust instrument, except to the extent inconsistent with the marital deduction objectives
of the Survivor's Trust or other transfer, shall be construed to provide for or at least to
permit divisions, distributions and administration of trusts and other dispositions in a timely
manner consistent with the Trustors' objectives of efficiently using available
generation-skipping exemptions and (to the extent possible) of establishing and maintaining
only trusts (or substantially separate and independent shares) that have inclusion ratios either
of zero or of one and are thus either entirely exempt or entirely nonexempt.


# ARTICLE 15

# TRUSTEE PROVISIONS

    **15.1  Incapacitation of Trustee.** If a person acting as a Trustee hereunder
becomes physically or mentally incapacitated in any way so as to make it impracticable for
such person to give prompt and intelligent consideration to financial matters, such person
shall cease to act as a Trustee hereunder, and the individual, individuals, or corporation

designated in or appointed pursuant to the terms of this instrument as the successor sole Trustee or Co-Trustee, as the case may be, may act or commence to act as the Trustee hereunder without liability for assuming the office of Trustee after delivering written notice thereof to such incapacitated person and to such of the Trustors as are then living and competent. A person shall conclusively be deemed to be incapacitated as described in the preceding sentence if a conservator of the person or estate, or both, of such person has been appointed by a court having jurisdiction over such matters or two licensed physicians, one of whom shall be the attending physician of such person, have stated in writing that such incapacitation exists.

**15.2  Compensation of Trustee.** No compensation shall be paid to a Trustor while acting as Trustee hereunder. Unless compensation is waived, any other Trustee hereunder shall be entitled to reasonable compensation for its services as such without prior court order. However, any corporate fiduciary acting as Trustee hereunder shall be entitled to receive reasonable compensation for its services in the amount and at the time specified in its schedule of fees and charges established from time to time by its department for trusts of a character similar to this Trust and in effect when such compensation is payable.

**15.3  No Bond.** No bond shall be required of any Trustee named herein, or appointed pursuant to the terms hereof, whether acting jointly or severally in the performance of duties as a Trustee hereunder, and whether anyone named or appointed as Co-Trustee shall be qualified and acting.

**15.4  Resignation of Trustee.** Any Trustee from time to time acting may resign as Trustee of any trust created under this instrument by an instrument in writing signed by such Trustee and delivered to all the qualified and acting Co-Trustees, if any, and if none, to all of the adult, competent beneficiaries of such trust then entitled or authorized in the Trustee's discretion to receive current income distributions therefrom, and to the parents or guardians of the person of all minor, and the conservators of the person or other personal representatives of all incompetent, adult, beneficiaries of such trust then entitled or authorized in the Trustee's discretion to receive current income distributions therefrom, at the last known address of such beneficiaries, parents or legal representatives thereof. Such resignation shall be effective upon the delivery of such written instrument to all qualified and acting Co-Trustees, or if none, upon the written acceptance to act of a successor Trustee.

**15.5  Accounting.**

a. During the joint lifetimes of the Trustors, the Trustee shall account only to the Trustors, and their written approval shall be final and conclusive in respect to transactions disclosed in the account as to all beneficiaries of the trust, including unborn and unascertained beneficiaries.

b. Following the death of the Decedent, the Trustee of the Survivor's Trust shall account only to the Survivor, and the Survivor's written approval shall be final and conclusive in respect to transactions disclosed in the account as to all beneficiaries of the Survivor's Trust, including unborn and unascertained beneficiaries.

c.    Following the death of the Decedent, the Trustee of each trust created
hereunder (other than the Survivor's Trust) shall render an accounting from time to time, but
not less frequently than every year, regarding the transactions of such trust.  Accountings
shall also be rendered by any Trustee within sixty (60) days after his resignation or removal
by a court of competent jurisdiction.  Accountings shall be made by delivering a written
accounting to each beneficiary entitled to a current income distribution or, if there are no
such current income beneficiaries, to each beneficiary entitled to current distribution out of
income or principal in the Trustee's discretion, and to each vested remainderman in being.
If any person entitled to receive an accounting is a minor or is under a disability, the
accounting shall be delivered to his parents or the guardian of his person if he is a minor, or
to the guardian or conservator of his person if he is under any other disability.  However, in
no event shall any adult beneficiary of such trust have the power to settle an account on
behalf of any other beneficiary or remainderman of such trust who is a minor or is under a
disability if such power would give the adult beneficiary the sole right to settle an account
rendered by such adult beneficiary while acting as a Trustee hereunder or rendered by a
Trustee who is subject to removal by such adult beneficiary, but in each such case the
Trustee of the applicable trust may select another individual to settle the account on behalf of
such minor or disabled beneficiary or remainderman who will fairly represent the interests of
such minor or disabled beneficiary or remainderman.  Unless any such beneficiary or
remainderman, including such parents, guardians, conservators, or other representatives of
such beneficiaries or remaindermen who are authorized to settle the account, shall deliver a
written objection to the Trustee within sixty (60) days after receipt of the Trustee's account,
the account shall be final and conclusive in respect to transactions disclosed in the account as
to all beneficiaries of the trust, including unborn and unascertained beneficiaries.  After
settlement of the account by agreement of the parties objecting to it, or by expiration of the
sixty (60) day period, the Trustee shall no longer be liable to any beneficiary of the trust,
including unborn and unascertained beneficiaries, in respect to transactions disclosed in the
account, except for the Trustee's intentional wrongdoing or fraud.

**15.6    Trustor's Power to Delegate and Unilaterally Execute.**  While the Trustors
are acting as Co-Trustees hereunder, either Trustor shall have the power from time to time
to delegate to the other Trustor all or any of his power over the management of trust assets
or any specific asset for such period as such Trustor determines, (specifically including but
not limited to the power to grant a power of attorney over bank or securities accounts).  The
power of delegation shall be exercised by delivery by the delegating Trustor to the other
Trustor of written notice specifying the powers delegated; this delegation shall terminate on
delivery by the delegating Trustor to the other Trustor of written notice of termination.
Furthermore, while the Trustors are acting as Co-Trustees hereunder, the signature of either
Trustor as Co-Trustee shall be sufficient to bind any trust created pursuant to this trust
instrument.  No person dealing with a Trustee shall be required to determine the authority of
any such Trustor as Co-Trustee to make any commitment or undertaking on behalf of any
trust created hereby, nor the authority of any such Trustee to sign and deliver on behalf of
any trust created hereby any instrument of conveyance, partnership agreement, note, deed of
trust, lease agreement, or other legal document.

## ARTICLE 16

## SPECIAL PROVISIONS

### 16.1    Additional Insurance Provisions.

a.    Notwithstanding anything in this instrument to the contrary, at no time shall an insured Trustor have the right to alter, amend, terminate, or revoke any trust created under this instrument in such a manner as to in any way affect the separate property interest of the other Trustor in any life insurance policy (including the proceeds thereof) on the insured Trustor's life. The right to alter, amend, terminate, or revoke such trust with respect to the other Trustor's separate property interest in such policy of life insurance (including the proceeds thereof) shall reside solely in such Trustor and shall be exercised by a written instrument signed by such Trustor and delivered to the Trustee.

b.    In addition to the limitations contained in subparagraph b. of paragraph 13.29 hereof and notwithstanding anything in this trust instrument to the contrary, at no time shall the Survivor be entitled to or possess any interest in any policy of insurance on the life of the Survivor which forms a part of any trust created hereunder other than the Survivor's Trust, nor shall the Survivor be entitled to benefit in any manner from any such policy of insurance or to receive any benefits accruing from or attributable to any such policy, including, but not limited to, any cash or other proceeds received on the surrender of any such policy, or any income, dividends, or interest derived therefrom, or any benefits received in lieu thereof, and the Survivor shall not possess any powers of withdrawal or appointment over any such policy or its proceeds.

### 16.2    Definitions: Children, Issue, Living, Etc.

a.    The terms "child," "children," and "issue" as used in this trust instrument, shall mean and be limited to the following:

(1)    Children.  Such terms when referring to the children of the Trustors, shall mean and be limited to:

(a)    RYAN JOSEPH DEL VALLE, born on June 4, 1998; and RACHEL DOREEN DEL VALLE, born on March 29, 2000.

(b)    Any mutual children hereafter born to the Trustors; and

(c)    Any persons hereafter adopted jointly by the Trustors during the Trustors' marriage.

(2)    Issue.  Such terms when referring to the issue of the Trustors other than the Trustors' children (as "children" is defined in paragraph 16.2a.(1) above) shall mean and be limited to lineal descendants of all degrees of such children who are:

(a)     Persons either conceived or born into the class during a valid marriage;

(b)     Persons born into the class out of wedlock who lived for a significant period during minority as a member of the household of the relevant natural parent or who have been received and treated by the relevant natural parent as his or her child; or

(c)     Persons adopted into the class during a valid marriage or by the relevant parent while such parent is single who were minors at the date of adoption or who lived for a significant period during minority as a member of the household of the adoptive parent; and the issue of any such adopted person if such issue come within the scope of the term "issue" as limited by the provisions of this paragraph 16.2a.(2).

(d)     Whether a person has "lived for a significant period during minority as a member of the household" of an adoptive or natural parent or whether a person has "been received and treated by the relevant natural parent as his or her natural child" shall be determined by the following persons or entities:  (i) with respect to a power of appointment granted to a person in this trust instrument in a nonfiduciary capacity under which members of the class in question are permissible appointees, the holder of such power, in his or her sole and absolute discretion, shall make such determination and (ii) in all other cases the Trustee of the applicable trust to which the determination is relevant in its reasonable discretion, shall make such determination.

b.     Living.  The word "living" as used in this trust instrument shall include unborn persons in the period of gestation.

**16.3    Spendthrift Provision.**  Except as otherwise expressly provided in this instrument, no beneficiary of any trust created under this instrument shall have the power to anticipate, encumber, or transfer his or her interest in the principal or income of such trust in any manner.  Except as otherwise expressly provided in this instrument, no part of any trust created under this instrument shall be liable for or charged with any debts, contracts, liabilities, or torts of any beneficiary of such trust or subject to seizure or other process by any creditor of any beneficiary of such trust.

**16.4    Absence from Place of Administration.**  As long as any individual named in or appointed pursuant to the terms of this instrument shall serve as Co-Trustee of any trust created hereunder, that individual shall have the power from time to time to delegate to the other Co-Trustee of such trust all or any of his powers as Co-Trustee during temporary vacation periods or other temporary absences from the place of administration of the trust.  The power of delegation shall be exercised by delivery by the delegating Co-Trustee to the other Co-Trustee of written notice specifying the powers delegated; this delegation shall terminate on delivery by the delegating Co-Trustee to the other Co-Trustee of written notice of termination of delegation.  The delegating Co-Trustee shall incur no liability to any beneficiary of the trust as a result of any actions taken or not taken within the scope of delegation during the period of delegation.

**16.5   Simultaneous Death.**   If it cannot be established by clear and convincing evidence that one Trustor survived the other, then for purposes of this trust agreement, TRACI M. DEL VALLE shall in all events be deemed to have survived.

**16.6   No Contest.**   If any beneficiary of any trust created hereunder, either alone or with other persons or entities, shall in any manner directly or indirectly contest, attack, thwart, or otherwise seek to impair or invalidate any part of provision of either Trustor's estate plan, as hereinafter defined, then any share or interest under this trust instrument set aside for that beneficiary is revoked and shall be disposed of in the same manner as if the contesting beneficiary, as provided in this instrument, had predeceased such Trustor without issue.   For the purpose of construing this no-contest clause, the term "Trustor's estate plan" shall include such Trustor's will of equal date with this trust instrument and all codicils thereto, this trust instrument, including all amendments thereto, any transmutations from separate to community property or vice versa during the life of such Trustor, any lifetime gifts made by such Trustor, and any beneficiary designation made by such Trustor during the Trustor's lifetime on any life insurance policy, annuity contract, employee benefit plan, pay on death account, IRA account, or any other type of contractual arrangement whereby a beneficiary is designated on a contractual arrangement signed by such Trustor.   The terms "contest," "attack," thwart," and "impair," when used in connection with conduct described in this no-contest clause, shall include but are not limited to any conduct aimed against the Trustor's estate plan, the Trustor's estate, the trust estate under this trust instrument, or any assets subject to the Trustor's estate plan based on and including but not limited to any of the following theories:

      a.    A constructive trust theory;

      b.    Lack of capacity, undue influence, mistake, duress, or fraud;

      c.    Any alleged oral or written agreement that the Trustor agreed to bequeath or give anything to any person or entity ("claimant") claiming such oral or written agreement.   This provision shall apply to any personal service agreement alleged by claimant and also to any alleged agreement where the claimant alleges "detrimental reliance" on the Trustor's representations or lack thereof, provide a basis for an agreement by equitable estoppel;

      d.    An action in quantum meruit;

      e.    A claim to any property alleged by the personal representative of the Trustor's probate estate or the Trustee of this Trust to belong to the Trustor's probate estate or this Trust;

      f.    The filing of a creditor's claim or prosecution of an action based upon it (if the creditor's claim has been rejected by the Trustor's personal representative or trustee of any trust created under this document);

      g.    Any action or proceeding to determine the character of property;

      h.    A petition for settlement or compromise concerning the terms of this trust instrument.

      i.    Any action seeking to invalidate or rescind any lifetime gift made by the Trustor;

      j.    Any action to invalidate any irrevocable trust created by the Trustor during the Trustor's lifetime; or

      k.    In any other way, contest, thwart, or seek to impair any provision of the Trustor's estate plan, including provisions in this trust intrument, in the Trustor's will, or in any other estate planning instrument signed by the Trustor.

The Trustee is authorized to defend, at the expense of the Trust, any contest or attack on either Trustor's estate plan. If any provision of this paragraph 16.6 is found to be unenforceable by any court of competent jurisdiction, the remaining provisions of this paragraph shall be deemed severable from such unenforceable provision, and the remaining provisions shall be given full force and effect.

**16.7    Power to Delegate.** While the Trustors are acting as Co-Trustees hereunder, either Trustor shall have the power from time to time to delegate to the other Trustor all or any of his power over the management of Trustee trust assets or any specific asset for such period as such Trustor determines, (specifically including but not limited to the power to grant a power of attorney over bank accounts). The power of delegation shall be exercised by delivery by the delegating Trustor to the other Trustor of written notice specifying the powers delegated; this delegation shall terminate on delivery by the delegating Trustor to the other Trustor of written notice of termination.

**16.8    Disinheritance of Omitted Heirs.** Except as otherwise provided in this trust instrument, the Trustors have intentionally and with full knowledge omitted to provide in this trust instrument for their issue or for any other heirs of the Trustors.

**16.9    Tangible Personal Property.** In addition to the rights granted to the Survivor under other provisions of this trust instrument, following the death of the Decedent, the Survivor shall have the right during his or her lifetime to the use of all jewelry, silverware, art objects, household furniture and furnishings, clothing, books, pictures, paintings, and other tangible articles of a personal nature held in any trust created hereunder of which the Survivor is entitled during his or her lifetime to all of the net income. During the lifetime of the Survivor, the Trustee shall not sell any of such property without the consent of the Survivor.

**16.10    Name of Trust.** The trusts created in this instrument may be referred to collectively as the DEL VALLE FAMILY TRUST, and each separate trust created in this instrument may be referred to by adding the name of such trust or by adding the name of the beneficiary.

The Trustors and Trustees have executed this instrument at _Newport Beach_,
California on this _30_ day of _October_ _____, 2002.


_____
BRETT H. DEL VALLE, Trustor

_____
TRACI M. DEL VALLE, Trustor


_____
BRETT H. DEL VALLE, Trustee

_____
TRACI M. DEL VALLE, Trustee

STATE OF CALIFORNIA    )
                            ) ss.

COUNTY OF ORANGE     )

On _____*Oct. 30*_____, 2002, before me, *Beckie Brown*,
Notary Public, personally appeared BRETT H. DEL VALLE and TRACI M. DEL VALLE,
[ ] ~~personally known to me~~ -OR- [x] proved to me on the basis of satisfactory evidence to
be the persons whose names are subscribed to the within instrument and acknowledged to me
that they executed the same in their authorized capacities, and that by their signatures on the
instrument the persons, or the entity upon behalf of which the persons acted, executed the
instrument.

Witness my hand and official seal.



_____
*(Signature of Notary)*

**Capacity claimed by signers:** Trustors and Trustees of the DEL VALLE FAMILY TRUST

j:\users\estate\delvalle.ft6          40

## SCHEDULE A

### INVENTORY OF TRUST ESTATE

1.    <u>Community Property</u>.

2.    <u>Husband's Separate Property</u>.

3.    <u>Wife's Separate Property</u>.

_____          _____
BRETT H. DEL VALLE                 TRACI M. DEL VALLE