Bradley L. Tilt (Utah Bar No. 07649)
FREEMAN LOVELL, PLLC
4568 S Highland Drive, Suite 290
Salt Lake City, Utah 84117
office: 385-355-4826
bradley.tilt@freemanlovell.com
*Attorneys for Plaintiffs*

Felicia B. Canfield (Utah Bar No. 09686)
CANFIELD LAW LLC
2413 Newton Avenue
Cody, WY 82414
Office: (307) 228-5986
canfieldlawllc@gmail.com
*Attorneys for Plaintiffs*

## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| MOLLY J. MULLIGAN; and JOHN P. MULLIGAN,<br><br>   Plaintiffs<br><br>   v.<br><br>ALUM ROCK RIVERSIDE, LLC, a California limited liability company; Brett H. Del Valle and Traci M. Del Valle as Co-Trustees of the Del Valle Family Trust dated October 30, 2002<br><br>   Defendants. | **MEMORANDUM OF PLAINTIFFS IN OPPOSITION TO ALUM ROCK RIVERSIDE, LLC MOTION TO DISMISS [14] AND REQUEST FOR ORAL ARGUMENT**<br><br>Case No. 1:25-cv-00008-DA<br><br>Assigned Judge: Dale A. Kimball |

Pursuant to District of Utah Local Civil Rule 7-1(a), Plaintiffs Molly J. Mulligan and

John P. Mulligan (collectively "**Mulligans**") respectfully submit this memorandum in opposition

to defendant Alum Rock Riverside, LLC's ("**Alum Rock**") *Motion to Dismiss* [dckt 14], which

motion was brought pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (the "**Motion**"). Mulligans respectfully request oral argument on Alum Rock's Motion.

## BACKGROUND AND INTRODUCTION

In order to assist the Court in making sense of Alum Rock's Motion and to provide context for Mulligans' argument that the Motion should be denied, Mulligans provide the following background which is followed by a discussion of the proper 12(b)(6) standards.

Alum Rock is a foreign judgment creditor that does not have any judgment against the Mulligans. Instead, it has a judgment lien against a debtor (Brett Del Valle) who never owned the Mulligans' real property (the "**Property**"), but who was a trustee of a revocable trust that did own the Property and which sold it to the Mulligans. Although the Utah Supreme Court determined that Alum Rock has a judgment lien pursuant to a lower court's decision in defined "**writ proceeding**"[1] (see *Mulligan v. Alum Rock Riverside, LLC*, 2024 UT 22, ¶ 66: "Simply put, this proceeding to enforce that judgment through a writ of execution is not an action involving real property governed by the venue statute."), it expressed "*no opinion*" on "*whether [co-trustee Traci Del Valle's] joint ownership of the Property has any effect on [Alum Rock's] judgment lien*"[2].

The Mulligans were <u>not named parties</u> in Alum Rock's writ proceeding, but as homeowners affected by the writ of execution, they filed a *Reply and Request for Hearing* – and had a right of appeal thereafter – but there remain open questions of what, exactly, Alum Rock has a lien upon and whether its lien is enforceable as against the Mulligans' and if so, to what

---

[1] Civil No. 206927043, Utah's Third Judicial District, Judge Mow presiding.
[2] *Id*. at n 7.

extent (including as to any contribution interest of Brett Del Valle), all as alleged in Mulligans' *Complaint and Jury Demand* [dckt 2-3] (the "**Complaint**") on file herein.

After the narrow *Mulligan* writ decision was issued and Alum Rock's judgment lien upheld, Mulligans attempted to add Alum Rock as a party to an <u>existing action</u> in Utah's Second Judicial District Court (where their Property is located) involving a different judgment creditor of Brett Del Valle (the "**Single Box Action**" [3]), including to address the relative priorities of the judgment liens (with Alum Rock's lien having been upheld just three weeks prior) and to determine any contribution interest of Brett Del Valle, Mulligans brought claims for quiet title, equitable subordination and subrogation, declaratory judgment that Mulligans are bona fide purchasers with no constructive notice, and for injunctive relief.

In the Single Box Action, after briefing was completed, Judge Hyde, <u>issued an oral ruling allowing</u> Mulligans to supplement their Complaint to add Alum Rock as a party. But <u>before Judge Hyde's oral ruling could be reduced to a written order and before Mulligans could file a supplemental complaint adding Alum Rock as a party</u>, **Alum Rock caused to be posted on the Mulligans' Property a** *Notice of Sheriff's Sale* and a second *Notice of Sheriff's Sale* postponing the first notice.

Because Alum Rock was not yet a party to the Single Box Action the Mulligans had no legal mechanism to file a motion for temporary restraining order and preliminary injunction in the Single Box Action, they filed a separate action in Utah's Third Judicial District (the "**Alum Rock Action**")[4] along with a motion for a temporary restraining order and preliminary

---

[3] Civil No. 210904774, Utah's Second Judicial District Court, Judge Hyde presiding.
[4] Civil No. 240908957, Utah's Second Judicial District Court, Judge Hyde presiding.

2

injunction.  Again, after briefing was completed, Judge Hyde made findings and <u>issued an oral ruling granting the Mulligans' preliminary injunction motion</u> (the TRO had expired by its terms), <u>but before that ruling could be reduced to writing</u>, **Alum Rock removed the Alum Rock Action to federal court – in this action**.

Alum Rock's Motion should be viewed in light of this background and procedural history because, despite its own actions in circumventing Judge Hyde's oral rulings, its Motion utterly depends upon name-calling *the Mulligans* "<u>form shopper[s]</u>", who are allegedly "<u>collaterally attack[ing] valid judgments from other courts</u>", and who allegedly "<u>believe legal disputes should be litigated until they win</u>".  *E.g.,* Alum Rock Motion pp 2-3, 15. Alum Rock even calls for this Court to "***rebuke the Mulligans*** <u>for attempting to cause an internal conflict between this Court and the Third District</u>" (*i.e.,* the Alum Rock Action ***that was removed by Alum Rock itself***).

It appears Alum Rock has taken this tack because it has not, and cannot, make any legitimate argument that the Mulligans Complaint fails to state a claim upon which relief can be granted.  A 12(b)(6) motion "for failure to state a claim upon which relief can be granted" deals ***only*** with the sufficiency of the complaint on its face – an examination of the factual allegations stated in the complaint coupled with a determination of whether those allegations "state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Instead of truly examining the facts of the Complaint and showing they are <u>legally insufficient</u> to state a claim for relief on the actual claims and causes of action pled by the Mulligans and based upon the elements required to prove such claims, Alum Rock makes

3

conclusory arguments based upon *objectively **false*** assertions – including the alleged existence of three prior lawsuits involving all the same parties, all involving the same claims, and all involving rulings on each of Mulligans claims in this action, even though: (1) <u>Mulligans were not parties</u> to Alum Rock's writ proceeding[5] (including since it did not name them); (2) <u>Alum Rock was</u> <u>never made a party to the Single Box Action</u> since it noticed a *Sheriff's Sale* before Judge Hyde could enter a written ruling allowing Mulligans to add it as a party; and (3) <u>the Alum Rock Action was removed by Alum Rock itself</u> and so no ruling has been made on any of Mulligans' claims in this action (none of which challenge the validity of the Alum Rock Lien in any event).

These false assertions are all Alum Rock has to support its specious argument that claim preclusion and collateral attack preclude Mulligans from suing it – which it expressly acknowledges: "<u>Alum Rock's primary argument in this Motion is that the Mulligans' claims are barred under the claim preclusion doctrine</u>". Motion, p. 3, note 1. And even if claim preclusion were a basis to grant a motion to dismiss, which it is not, Judge Hyde's oral ruling discussed below precludes such a finding (*see* fact section part B below). But because Alum Rock has not shown that Mulligans cannot state a claim for relief based on any of the facts alleged in their Complaint, its Motion must be denied, and the case should proceed.

---

[5] Alum Rock refers to the *writ proceeding* as a "**First Lawsuit**" **16 times i**n its Motion to support its claim preclusion argument, grossly misrepresenting the *writ proceeding* as an "action" <u>directly contrary</u> to the determination made by the Utah Supreme Court in the *Mulligan* decision that Alum Rock's bid to obtain a writ was only a<u> writ proceeding an "not an action" – hence the Third Judicial District Court had jurisdiction to issue the writ notwithstanding the fact that the subject property is within the jurisdiction of Utah's Second Judicial District Court, since no claims involving real property were at issue</u>, and further erroneously claiming that Mulligans "could have and should have" raised their claims for quiet title, equitable subordination and subrogation, declaratory judgment for bona fide purchasers with no constructive notice in the "First Lawsuit" ***to which they were not even named parties by Alum Rock***. *See* Motion pp, 8-12.

## STATEMENT OF RELEVANT FACTS

A. On December 20, 2024 Mulligans filed their Complaint in the Alum Rock Action in which they asserted claims and causes of action against Alum Rock for:

   a. Declaratory Judgment and Quiet Title;
   b. Equitable Subordination;
   c. Equitable Subrogation;
   d. Declaratory Judgment – No Constructive Notice;
   e. Declaratory Judgment – Bona Fide Purchasers; and,
   f. Injunctive Relief – Restraining Order.

The Complaint contains underlying factual allegations, *inter alia*, and in main part, that:

   1. Plaintiffs Molly M. Mulligan and John P. Mulligan each are individuals (referred to hereinafter collectively as "**Plaintiffs**" or "**Mulligans**") who together, as wife and husband and as joint tenants, own and claim that certain real property which is the subject of this case. Compl. ¶ 1.

   2. Defendant Alum Rock Riverside, LLC ("**Defendant**" or "**Alum Rock**"), is a California limited liability company which claims or may claim to have an interest in or to the Property. Compl. ¶ 3.

   3. The Del Valle Family Trust purchased and obtained title of record to the Property in 2007 by way of a *Special Warranty Deed* from Basinview Development, LC, which deed was recorded on May 3, 2007 as Entry No. 2261271 in the official records of the Weber County Recorder's office (the "**Special Warranty Deed**"). Compl. ¶ 8.

   4. When the Trust purchased the Property, the Trust, as borrower, obtained a loan from Wells Fargo Bank, N.A., which loan was secured by a *Short Form Deed of Trust* in the principal amount of $500,000.00, which was recorded on the Property on May 3, 2007, as Entry No. 2261272 (the Trust's "**Purchase Money Trust Deed**"). Compl. ¶ 9.

   5. The Trust further obtained a loan, as borrower, from California National Bank, which loan was secured by *a Construction Deed of Trust* in the principal amount of $1,750,000.00, which was recorded on the Property on December 31, 2007, as Entry No. 2313274 (the Trust's "**Construction Trust Deed**"). Compl. ¶ 10.

   6. On information and belief, Defendants Co-Trustees Brett H. Del Valle ("**Brett**") and Traci M. Del Valle ("**Traci**") did not contribute the Property to the Trust because the Trust purchased the Property directly from Basinview Development, LC and

5

paid value for the Property and the residence built thereon, including as evidenced by the Purchase Money Trust Deed and the Construction Trust Deed. Compl. ¶ 11.

7. The Trust at all times owned the Property of record from 2007 until 2021 when the Trust, as Grantor, sold the Property to Plaintiffs, as joint tenants, conveying title by way of a *Warranty Deed* recorded on May 11, 2021 as Entry No. 3151874 in the official records of the Weber County Recorder's office (the vesting "**Warranty Deed**"). Compl. ¶ 12.

8. When the Mulligans purchased the Property from the Trust they paid off various liens and encumbrances of record, including: (1) $712,209.92 paid in satisfaction of a mortgage loan given by BOFI Federal Bank to the Trust, as borrower, which loan was secured by a *RESPA Deed of Trust* recorded on the Property on September 20, 2017, as Entry No. 2879566 (the "**First Position Trust Deed**") ; (2) $948,000.00 paid in satisfaction of a mortgage loan given by TSS Enterprises Inc. to the Trust, which loan was secured by a *Deed of Trust with Assignment of Rents* recorded on July 6, 2020, as Entry No. 3066407 (the "**Second Position Trust Deed**"); (3) unpaid, delinquent property taxes in the amount of $46,248.89 for tax years 2018-2020 (the "**Delinquent Property Taxes**"); and, (4) delinquent homeowner association dues in the amount of $2,125.00 (the "**Delinquent HOA Dues**"), all of which liens and encumbrances appeared in the public record. Compl. ¶ 14.

9. Each of the Trust's Purchase Money Trust Deed and the Construction Trust Deed were reconveyed of record prior to the recording of the First Trust Deed and the Second Trust Deed. Compl. ¶ 15.

10. After the Mulligans purchased the Property from the Trust and their purchase proceeds paid off the First Trust Deed and the Second Trust Deed, each of those deeds of trust were subsequently reconveyed of record. Compl. ¶ 16.

11. Neither of the Co-Trustees appears in any individual and/or personal capacity in any public record, abstract, or title search as an owner of the Property at any point in time, including not in the chain of title when Plaintiffs purchased the Property from the Trust. Compl. ¶ 17.

12. No judgments against either of the Co-Trustees in any individual and/or personal capacity of either of them were recorded on or against the Property in the office or records of the Weber County Recorder; no judgments against either of the Co-Trustees in any individual and/or personal capacity of either of them appear in any Weber County Recorder abstract or title search of the Property; and no judgments against either of the Co-Trustees in any individual and/or personal capacity of either of them appear in the searchable court index where the Property is located, including not during the time leading up to and including when the Mulligans purchased the Property. Compl. ¶ 18.

13. The claimed interests of defendant Alum Rock in or to the Property is/are based and premised upon a certain document entitled *Notice of Judgment* filed on October 23, 2020 in the Third Judicial District Court, Salt Lake County, which was recorded in the office and records of the Weber County Recorder on October 23, 2020 as Entry No. 3101770, but which was not abstracted to or against the Property (the "**Alum Rock Lien**"). Compl. ¶ 19.

14. The Alum Rock Lien relates to an underlying foreign judgment which was entered on March 18, 2020 against Brett Del Valle in his individual and personal capacity only and not in his capacity as one of the Co-Trustees of the Trust (among other judgment debtors, but not including and/or not against the Trust nor either of the Co-Trustees of the Trust including not Traci Del Valle). Compl. ¶ 20.

15. Defendant Alum Rock claims that the Alum Rock Lien attached to and encumbers the Property, including particularly but without limitation purportedly ahead of and with priority over Plaintiffs' interests in and ownership of the Property, it has failed and/or refused to release of record the Alum Rock Lien which therefore is and constitutes a cloud upon Plaintiffs' title to the Property, and it has stated that it intends to enforce the Alum Rock Lien against the Property. Compl. ¶ 21.

16. On or about June 22, 2021, in a writ "proceeding" brought in the Third District Court in and for Salt Lake County, Utah, Alum Rock obtained a *Writ of Execution* against the Property to enforce its Lien (the "**Writ of Execution**"). Compl. ¶ 22.

17. Pursuant to an appeal of the issuance of the Writ of Execution, in *Mulligan v. Alum Rock Riverside, LLC*, 2024 UT 22, ¶¶ 58, 62, 66 and n. 8, 69, the Utah Supreme Court held that Alum Rock created a judgment lien when it recorded its *Notice of Judgment* with the Weber County recorder on October 23, 2020; that its Writ of Execution was validly issued in only a writ "<u>proceeding</u>" in Salt Lake County (which the Utah Supreme Court expressly held was <u>not an action</u>, including not one to which Plaintiffs were parties); and specifically stated that it expressed "no opinion" on "whether [Co-Trustee Traci Del Valle's] joint ownership of the Property has any effect on [Alum Rock's] judgment lien". *Id.* n. 7. Compl. ¶ 23.

18. On or about December 18, 2024, Defendant Alum Rock caused to be posted on the Property a Weber County Sheriff's Office *Notice of Sale – Real Property*, which sets forth a sale date of January 16, 2024 at 12:00 p.m. (the "**Notice of Sale**"). Compl. ¶ 26.

B. On January 14, 2025, in the Alum Rock Action (before it was removed to this Court), Judge Hyde held a preliminary injunction hearing on Mulligans' motion for a temporary

7

restraining order (which he had previously granted) and preliminary injunction[6]. In that hearing, *inter alia*, Judge Hyde made the following findings and ruling distinguishing Alum Rock's writ proceeding from the Mulligans' interest in real property claims:

    1.    There is not a determination by the [Utah] Supreme Court [*Mulligan v. Alum Rock Riverside, LLC*, 2024 UT 22] in as to what, or the extent of the property interest of [judgment debtor] Mr. Del Valle, or Brett Del Valle…<u>But the question is, the extent of the interest to which the judgment attaches</u>. pp. 68-69 (emphasis added).

    2.    There is a discussion [in *Mulligan*] <u>about the property interest</u> and <u>the distinction between an action for enforcement, the writ of execution, and an action to determine a real property interest</u>…The Third District Court did have the authority to issue a writ against property in Weber County. And that is no longer in dispute. p. 69 (emphasis added).

    3.    The question that's before this Court today is, what is the right or interest of Brett Del Valle in the property? What is that right? <u>The Supreme Court declined to opine on that very question in Footnote 7, saying that it's expressing no opinion on the impact of the ownership of someone else</u>…To determine the impact of that joint owner, the spouse, co-settlor in this case, requires an evaluation of the respective interests, at least of these two parties. That is a determination of an interest in the property. pp. 70-71 (emphasis added).

    4.    <u>The Third District Court [in the writ proceeding] has not been asked to determine an interest in property</u>. It's not been asked to determine what respective rights of the co-settlors are, or the – the ownership that may be reflected by either of them, or the <u>contributions</u> that they have made. <u>That's not been addressed in the Third District. That is a determination of interest in property</u>. p. 71 (emphasis added).

    5.    Now, a question has arisen, what is the [] property interest that may be sold pursuant to a writ? <u>That's not a determination of whether the writ was validly issued, or whether the Third District Court had the authority to issue that writ. That is a question of what is the property interest involved? ...And that [] is properly before this Court, and would **not** be properly referable to the Third District</u>. pp. 72-72 (emphasis added).

    6.    And so whatever interest Brett Del Valle has either individually or as trustee of the trust is subject to execution. But in order to avoid confusion in title

---

[6] *See Notice of Filing of an Intent to Rely upon Certificate Copy of Transcript from State Court Preliminary Injunction Hearing Held on January 14, 2025* [dckt 24] <u>and</u> *Transcript of: Preliminary* Injunction [dckt 24-1].

ownership or anything else, the Court will require that the execution be limited. It's valid. It's enforceable.  But it is restricted to the interest of Brett Del Valle…. <u>And so that is the ruling of the Court. And the preliminary injunction…is granted</u>. pp. 75-75.

## LEGAL STANDARD

The Tenth Circuit Court of Appeals has explained the legal standard for a 12(b)(6) motion:

> To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts that, if true, "<u>state a claim to relief that is plausible on its face</u>." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

*Clinton v. Sec. Benefit Life Ins. Co*. at 1274 (emphasis added) (Plaintiff's complaint alleging fraud and RICO claims survived Rule 12(b)(6) motion to dismiss).  Facial plausibility means that the "complaint must plead '<u>factual content that allows the court to draw the reasonable inference that the defendant is liable</u> for the misconduct alleged'.". *Id.* 1275 (citing *Hogan* v. *Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937) (emphasis added)).  The Utah District Court has adopted and further explained this standard:

> … <u>When determining whether a complaint meets these criteria, the court "accept[s] all well-pleaded factual allegations in the complaint as true, and ... view[s] them in the light most favorable to the nonmoving party</u>." Although a complaint "need not provide 'detailed factual allegations,' <u>it must give just enough factual detail to provide 'fair notice of what the ... claim is and the grounds upon which it rests</u>.' " However, the court will not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." The court is required to "draw on its judicial experience and common sense" to evaluate whether the well-pled facts state a plausible claim for relief.

*Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 679 F. Supp. 3d 1196, 1206–07 (D. Utah 2023) (internal footnotes omitted but citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955); *Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021); and, *Warnick v. Cooley*, 895

9

F.3d 746, 751 (10th Cir. 2018) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955) (emphases added) (court denied defendant's motion to dismiss intentional interference, breach of contract, defamation, and trade secret misappropriation claims)).

The purpose of a rule 12(b)(6) motion is thus to ***challenge the sufficiency*** of the claims for relief – not to establish the facts or resolve the merits of a case:

> When reviewing the district court's decision to dismiss a complaint, we make no determination of the merits of Plaintiffs' claims. *See Twombly*, 550 U.S. at 556, 127 S.Ct. 1955. "Rule 12(b)(6) motions to dismiss are not designed to weigh evidence or consider the truth or falsity of an adequately pled complaint." *Tal*, 453 F.3d at 1266.

*Clinton* at 1291 (emphasis added). But instead of challenging the legal sufficiency of the Complaint, Alum Rock is asking this Court to dismiss it on other, impermissible grounds. Indeed, the words "sufficient" or "sufficiency" or "legally sufficient" or "implausible" do not appear anywhere in Alum Rock's Motion.

Furthermore, granting a 12(b)(6) motion is a harsh remedy not to be undertaken lightly:

> "[G]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias* v. *City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (second alteration in original) (citation omitted). There is a "low bar for surviving a motion to dismiss," *Quintana* v. *Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020), and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,' " *Dias*, 567 F.3d at 1178 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955); *see also Woods* v. *City of Greensboro*, 855 F.3d 639, 652 (4th Cir. 2017) ("Whether [a plaintiff] will have a difficult time establishing the merits of its claim is of little import now.").

*Clinton v. Sec. Benefit Life Ins. Co*. 1276 (emphases added). Thus, in absence of Alum Rock showing the Mulligans have failed to state any claim for relief, the Motion should be denied.

10

**OBJECTIONS TO EVIDENCE**

Pursuant to DUCivR 7-1(b)(2), Mulligans object to Alum Rock's inclusion in its Motion of extensive outside materials, issues, claims and arguments that do not challenge the sufficiency of their Complaint but rather attack the merits of their claims. Indeed, with its Motion Alum Rock filed 16 exhibits in an apparent attempt to pre-litigate and have this Court weigh the merits of Mulligans' claims and allegations. This Court should instead adopt the reasoning explained *Total Quality Systems* and refuse to consider Alum Rock's extraneous legal arguments and exhibits at this early stage:

> As prefaced above, a court may properly consider documents attached to or referenced in a complaint, "but consideration of material[s] attached to a motion to dismiss requires the court to convert the motion into one for summary judgment and afford the parties an opportunity to present relevant evidence." <u>The Tenth Circuit Court of Appeals urges caution whenever new documents are presented at the motion to dismiss stage, as "dismissing a [p]laintiff's claim using evidence outside the pleadings 'is reversible error unless the dismissal can be justified without considering the outside materials.'</u> " Here, the documents Universal urges the court to consider are perhaps contemplated by the Complaint or the 2017 Teaming Agreement, but they are hardly "incorporate[d] by reference" or so "central to [TQS's] claim" to warrant consideration at the motion to dismiss stage. <u>Upon full consideration of the parties' briefing, the court declines to consider Universal's proffered evidence because this case is not yet ripe for summary judgment.</u> The parties have neither requested conversion of this matter to summary judgment, nor have they completed discovery. <u>Moreover, this court "prefers to decide all summary judgment questions in a single order," rather than handle piecemeal requests at the motion to dismiss stage</u>.

*Id.* at 1211-1212 (internal citations omitted) (emphasis added). Alum Rock as gone far outside the pleadings in an effort to get Mulligan's complaint dismissed but has failed to challenge the legal sufficiency of the actual allegations of their Complaint.

11

# ARGUMENT

Based on the legal standard for a 12(b)(6) motion to dismiss, discussed above, in order to prevail on its Motion, Alum Rock must have shown that the factual allegations in Mulligans' Complaint, <u>accepted as true and with all reasonable inferences drawn from them in a light most favorable to Mulligans</u> *still* do not state a legally sufficient claim upon which relief may be granted. This they cannot do because each of Mulligans' claims are supported by well-pleaded factual allegations supporting each of their claims and causes of action, as follows:

### **Declaratory Judgment and Quiet Title:**

Mulligans have alleged supporting facts, and the public record, which show that they own the Property pursuant to their purchase and the Warranty Deed given by the Trust. Utah law, which governs Utah real property, provides: "A true quiet title action is a suit brought 'to quiet an *existing* title against an adverse or hostile claim of another,' and 'the effect of a decree quieting title is not to *vest* title but rather is to *perfect* an existing title as against other claimants.'" *Dep't of Social Servs. v. Santiago,* 590 P.2d 335, 337–38 (Utah 1979); *see also In re Hoopiiaina Tr.*, 2006 UT 53, ¶ 26, 144 P.3d 1129, 1137; *accord Gillmor v. Blue Ledge Corp.,* 2009 UT App 230, ¶ 28, 217 P.3d 723, 731. "[A]ll [a party] need do is prove prima facie that he has title which, if not overcome by [the opposing party], is sufficient." *Babcock v. Dangerfield,* 98 Utah 10, 94 P.2d 862, 863 (1939). *Gillmor v. Blue Ledge Corp.,* 2009 UT App 230, ¶ 14, 217 P.3d 723, 728.

Alum Rock is a hostile judgment creditor claimant that claims an interest in the Mulligans' home such that it has attempted and intends to sell their Property pursuant to its Writ – apparently (and preferably) with or without any adjudication on the real property interests

claimed by Mulligans. But Alum Rock cannot overcome by way of its Motion the Mulligans' factual allegations of their existing title that support this cause of action.

Further, Utah Code 75-7-505(1) provides: "If a trust has more than one settlor, the amount the creditor or assignee of a particular settlor may reach may not exceed the settlor's interest in the portion of the trust *attributable to that settlor's contribution*". Alum Rock has not proved what contribution interest, <u>if any</u>, is available for it to execute upon. <u>Judge Hyde expressly found and held that this issue has not been determined by any previous court or ruling and that the issue was properly before his court</u>. Mulligans submit the issue is also ***now properly before this Court*** and that Alum Rock has failed to establish the legal insufficiency of Mulligans' claim and its Motion should be denied.

**Equitable Subordination and Equitable Subrogation:**

The doctrine of equitable subrogation hold that when a prior creditor is paid off – in this case the Mulligans paid off the First and Second Position Trust Deeds, the Delinquent Property Taxes and Delinquent HOA Dues – the subsequent homeowner and/or lender acquires the lien priority of the prior creditor(s). The doctrine of equitable subordination essentially is the flip side of equitable subrogation, and holds that any creditor – in this case judgment creditor Alum Rock – whose interest in the property arose <u>between</u> the time of the prior creditors (the beneficiaries of the First and Second Position Trust Deeds as well as Weber County and the homeowners association) and the subsequent homeowner and/or lender, the intervening creditor (Alum Rock) is <u>equitably subordinated</u> to the interest of the subsequent homeowner and/or lender to the extent of the prior creditors were paid off, whose interests were ahead of the intervening creditor's interest (*i.e.*, Alum Rock's Lien). *See e.g., Martin v. Hickenlooper*, 59 P.2d 1139 (Utah 1936);

13

*George v. Butler*, 50 P. 1032 (Utah 1897); *Sourcecorp, Inc. v. Norcutt*, 227 Ariz. 463, 258 P.3d 281 (Ct. App. 2011), *aff'd,* 229 Ariz. 270, 274 P.3d 1204 (2012), *as amended on denial of reconsideration* (Apr. 25, 2012) (discussing equitable subrogation in a variety of jurisdictions).

The Mulligans have alleged that because the First and Second Position Trust Deeds encumbered the Property <u>before</u> the creation of Alum Rock's judgment lien, and because the Mulligans paid those encumbrances off (*in addition to* the Delinquent Property Taxes and Delinquent HOA Dues), judgment creditor Alum Rock must be equitably subordinated to those paid off encumbrances and to the Mulligans and their lender. Otherwise, Alum Rock would be unjustly enriched and *reap a windfall* by virtue of those prior encumbrances having been paid off – encumbrances that Alum Rock would have been subordinate to in any event and which would have otherwise burdened the Property upon which Alum Rock now seeks to execute its judgment lien. Thus, because Mulligans have plead in their factual allegations that they paid off the prior liens they have stated legally sufficient claims for equitable subordination and equitable subrogation. Alum Rock has not shown otherwise and its Motion should be denied.

**<u>Declaratory Judgment of Bona Fide Purchasers with No Constructive Notice</u>**:

Mulligans have alleged supporting facts, and the public record, which show that when they purchased the Property from the Trust, no judgments against either Co-Trustee were recorded ***on the Property***; no judgments against either Co-Trustee appear in any Weber County Recorder abstract or title search of the Property; and no judgments against either Co-Trustee appear in the searchable court index where the Property is located.

They have alleged that when they purchased the Property from the Trust they were bona fide purchasers for value with no notice of Alum Rock's Lien, constructive or otherwise. "A bona

14

fide purchaser is one who pays valuable consideration for a conveyance, acts in good faith, and takes without notice of an adverse claim or others' outstanding rights to the seller's title." *Baldwin v. Burton*, 850 P.2d 1188, 1197 (Utah 1993) (purchasers who purchased property from judgment debtor's wife were bona fide purchasers whose interests in property were not affected by judgment creditor's execution on property; no liens of record existed against wife at time of purchase and there was no evidence purchasers had notice of creditors' judgment lien when they purchased property).

Mulligans further alleged that because Alum Rock's judgment Lien was not indexed to the Property, they had no constructive notice of its existence. *See, e.g., In re Hiseman*, 330 B.R. 251, 254 and n. 6 (Bankr. D. Utah 2005) ("Thus, in this case, a bona fide purchaser of the Debtors' property may be able to void Chase's Trust Deed because Chase's error caused the Recorder to fail to index the Trust Deed with the Debtors' property in the Tract Index"); *see also Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1228–30 (10th Cir. 2021) (erroneous indexing results in lack of constructive notice: "it defies reason to assert that subsequent purchasers should have an obligation, no less the ability, to find an unknown instrument lodged in thousands of volumes of records, when it is not properly indexed in the first place. 14 Powell on Real Property § 82.03 (2020) …Real property purchasers … cannot be charged with constructive notice of documents they cannot locate.").

Mulligans further alleged that <u>the Trust document itself was not recorded</u>, and no other document was recorded that disclosed any claim to the Property that set forth the Trust's beneficiaries' names, specified the beneficiaries' interest on which the claim was based, and described the Property as being subject to any such interest. Utah Code 57-3-102(4) states, in

15

pertinent part: "The fact that a recorded document … names the grantee as trustee, or otherwise purports to be in trust without naming beneficiaries or stating the terms of the trust does not charge any third person with notice of any interest of the grantor or of the interest of any other person not named in the document."  Therefore, pursuant to Utah Code 57-3-102(4) <u>the Mulligans have sufficiently alleged that they were not charged with any notice</u> of any individual contribution interests of Brett H. Del Valle and Traci M. Del Valle, in their respective individual and personal capacities, in the Property to which the Alum Rock Lien could attach.

## **CONCLUSION**

Alum Rock's attempt to obtain a dismissal of Mulligans' Complaint based upon its admitted "primary argument [of the] claim preclusion doctrine" must fail. Motion p. 3, note 1. Alum Rock has made <u>no attempt</u> to challenge the legal sufficiency of the factual allegations in the Complaint, nor has it made any attempt to show the Court that under those set of facts, accepted as true, Mulligans cannot prevail on any of their claims and causes of action. Furthermore, in its Motion Alum Rock <u>utterly misleads this Court</u> by:

- *falsely* insisting that Mulligans are attacking Alum Rock's Lien and Writ – when in fact the Mulligans expressly acknowledged and explained the writ ruling in paragraphs 19-23 of their Complaint and showed how their claims do not implicate that writ decision in any way;

- *falsely* insisting that Mulligans claims somehow are a collateral attack on the *Mulligan* writ decision when in fact their claims (as expressly acknowledged by Judge Hyde) are <u>real property claims</u>; and

16

- *falsely* insisting that Mulligans are "collaterally attack[ing]" other courts' decisions involving the same issues and "forum shopping" in three purported lawsuits, when in fact:

    (a) the *Mulligan* court expressly held that its writ decision originated with a writ *proceeding* initiated by Alum Rock itself, and not an action at all[7];

    (b) Mulligans were not parties in the writ proceeding (including since Alum Rock did not name them);

    (c) Alum Rock was never a party to the Single Box Action because it prematurely noticed a Sheriff's Sale before any order could be entered by Judge Hyde; and

    (d) it was Alum Rock who removed the Alum Rock Action – the ***first action*** to which **both** Mulligans and Alum Rock are parties – to federal court.

To assert and claim in its Motion that it is Mulligans who should be "***rebuked***" is the virtual *pot calling the kettle black*.

Having utterly failed to make a case for a 12(b)(6) dismissal, Alum Rock's Motion should be denied.

DATED March 19, 2025

                               CANFIELD LAW LLC

                               /s/ Felicia B. Canfield
                               Felicia B. Canfield
                               *Attorneys for Plaintiffs*

---

[7] "Simply put, this proceeding to enforce that judgment through a writ of execution is not an action involving real property..." *Mulligan v. Alum Rock Riverside, LLC*, 2024 UT 22, ¶ 66.

## CERTIFICATE OF SERVICE

I certify that on March 19, 2025 I caused true and correct copies of the foregoing **MEMORANDUM OF PLAINTIFFS IN OPPOSITION TO ALUM ROCK RIVERSIDE, LLC MOTION TO DISMISS AND REQUEST FOR ORAL ARGUMENT** to be served in the manner indicated below to the following-listed parties at their respective addresses listed below:

| | |
|---|---|
| Benjamin D. Johnson<br>KC Hooker<br>BENNETT TUELLER JOHNSON & DEERE<br>3165 East Millrock Drive, Suite 500<br>Salt Lake City, UT 84121<br>ben.johnson@btjd.com<br>kchooker@btjd.com<br>*Attorneys for Defendant Alum Rock Riverside, LLC* | _____Hand Delivery<br>_____First Class, United States Mail, Postage Prepaid<br>_____E-filing via GreenFiling<br>\_\_X\_\_E-filing via CM/ECF<br>_____Email<br>_____Other: _____ |
| Bradley L. Tilt<br>FREEMAN LOVELL, PLLC<br>4568 S Highland Drive, Suite 290<br>Salt Lake City, Utah 84117<br>office: 385-355-4826<br>bradley.tilt@freemanlovell.com<br>*Attorneys for Plaintiffs* | _____Hand Delivery<br>_____First Class, United States Mail, Postage Prepaid<br>_____E-filing via GreenFiling<br>\_\_X\_\_E-filing via CM/ECF<br>_____Email<br>_____Other: _____ |

                                  */s/ Felicia B. Canfield*
                                  Felicia B. Canfield