# EXHIBIT 1
# (Hearing Transcript)



SECOND JUDICIAL DISTRICT - OGDEN DISTRICT COURT

WEBER COUNTY, STATE OF UTAH

_____

| | |
|---|---|
| MOLLY J. MULLIGAN, et al., | )  Case No. 240908957 |
| | ) |
| Plaintiffs, | ) |
| | )  TRANSCRIPT OF: |
| v. | )  PRELIMINARY INJUNCTION |
| | ) |
| ALUM ROCK RIVERSIDE LLC, et al, | ) |
| | ) |
| Defendants. | ) |

_____

BEFORE THE HONORABLE NOEL S. HYDE

OGDEN DISTRICT COURT
2525 GRANT AVENUE
COURTROOM #3C
OGDEN, UTAH 84401

JANUARY 14, 2025

STATE OF UTAH
COUNTY OF WEBER } SS.

I HEREBY CERTIFY THAT THIS IS A TRUE COPY OF THE ORIGINAL ON FILE IN MY OFFICE.

DATED THIS 12TH DAY OF March 20 25

CLERK OF THE COURT

BY Norleen Heslop DEPUTY

```
 1                    A P P E A R A N C E S

 2
    For the Plaintiffs:
 3
            Bradley Tilt
 4          FREEMAN LOVELL PLLC
            4568 South Highland Drive
 5          Suite 290
            Salt Lake City, Utah 84117
 6

 7  For the Defendants:

 8          Benjamin Johnson
            BENNETT, TUELLER, JOHNSON & DEERE, LLC
 9          3165 Millrock Drive
            Suite 500
10          Salt Lake City, Utah 84121

11

12                    -ooOoo-

13

14

15

16

17

18

19

20

21

22

23

24

25
```

I N D E X

WITNESS                                                        PAGE

    BLAKE HEINER

        Direct Examination By Mr. Tilt              14
        Cross Examination By Mr. Johnson            37


                    E X H I B I T S

EXHIBIT                                                        PAGE

Exhibit 1, Tab 10                                  16
Exhibit 1, Tab 1                                   17
Exhibit 1, Tab 5                                   19
Exhibit 1, Tab 4                                   19
Exhibit 1, Tab 8                                   21
Exhibit 1, Tab 11                                  22
Exhibit 1, Tab 12                                  23
Exhibit 1, Tab 6                                   24
Exhibit 1, Tab 7                                   25
Exhibit 1, Tab 9                                   27
Exhibit 1, Tab 2                                   28
Exhibit 1, Tab 3                                   28
Exhibit 1, Tabs 13, 14, 15                         47

January 14, 2025

**P R O C E E D I N G S**

THE COURT:  All right.  We are on the record in Mulligan versus Alum Rock.  Cases 240908957.

Counsel, please note your appearances.

MR. TILT:  Bradley Tilt, Your Honor, for the Mulligans.

THE COURT:  Thank you.

MR. JOHNSON:  Ben Johnson for Alum Rock Riverside.

THE COURT:  Thank you, counsel.

This is the time set to consider a request for a preliminary injunction.  A temporary restraining order previously issued based upon the request of the plaintiffs in this case.  And I will hear the argument on the preliminary injunction request.

MR. TILT:  Your Honor, may I approach the bench?

THE COURT:  Please.  Thank you.

MR. TILT:  I provided the Court a binder of the exhibits that I anticipate referencing today.  I provided a set to opposing counsel as well.  And I do have one witness to testify on a couple of issues that --

THE COURT:  All right.

MR. TILT:  -- if that is necessary today.

THE COURT:  Do you wish to make an opening before

1    we get started, counsel?

2              MR. TILT:  A brief.  Yes.

3              THE COURT:  Please.

4              MR. TILT:  First of all, as a matter of

5    housekeeping on those exhibits, all of them, except for 8 and

6    9, I believe, are certified copies.  So I would ask that we can

7    use Rule 902 regarding self-authentication with regard to those

8    items.

9              THE COURT:  All right.  And we can deal with those

10    when the documents are actually offered.  And I'll simply

11    reserve ruling on questions of that nature until the actual

12    matters are before me.

13              MR. TILT:  Sure.  Okay.

14              What brings us here today, Your Honor, on an

15    expedited hearing basis, is Alum Rock's circumvention of this

16    Court's ruling in the separated but related Single Box case

17    from November 26 of 2024.  Case number 210904774.

18              In that case, Your Honor ruled at the end of a

19    hearing on a motion for supplemental pleadings to combine Alum

20    Rock as a party into the Single Box case.  Your Honor ruled

21    that the Mulligans could supplement their complaint, could

22    bring Alum Rock into that case, and could litigate whether Alum

23    Rock's judgment lien and writ of execution may not -- and ruled

24    that the judgment lien claimed by Alum Rock and its writ of

25    execution, that is the subject of the foreclosure sale that

1    we're here about today, quote, "May not extend to the interest
2    of a co-settlor in the property."
3         And the Court at that point -- and I'm quoting from
4    the Court's oral ruling.  We obtained a written transcript from
5    that.  And the Court at that point referenced Footnote 4 from
6    the Supreme Court's ruling in -- or the foot -- Footnote 7 from
7    the Supreme Court's ruling in the Alum Rock case in this
8    matter.
9         The -- the Court went on to say at the end of that
10   hearing, on page 53 of the transcript--and this is part of the
11   materials that have been filed with the court as well--quote,
12   "Therefore, the judgment lien is a lien against the interest
13   originating from Brett Del Valle, not necessarily against
14   anyone else.  And the execution, therefore, is also directed to
15   that same limitation," end quote.
16        Mr. Johnson, who is Alum Rock's counsel here today,
17   was present during that hearing.  He had filed a motion to
18   intervene asking to be -- for his client and him to be able to
19   participate in that proceeding.  He asked for a point of
20   clarification with regard to the Court's ruling during that
21   hearing.  He ordered an audio transcript on December 4th of
22   2024 of that ruling.
23        The Mulligans ordered a written transcript of the
24   Court's ruling, because Your Honor may recall it was very
25   detailed and complicated, and -- in order to reduce that to an

1     order, I wanted to have a written transcript so I could get it

2     right.

3                    Alum Rock, however -- and that -- the written

4     transcript was filed with the court on December 9th of 2024.

5                    On December 18 of 2024, however, Alum Rock took it

6     upon itself to unilaterally proceed to re-notice another

7     foreclosure sale under its same old writ, without any

8     clarification with regard to the scope of what was being

9     foreclosed or not foreclosed.

10                    Counsel has attacked myself in the briefing for

11     this matter here, claiming that we are judge shopping and --

12     and trying to get a better result.  It's actually the other way

13     around.  It's Alum Rock who has decided they didn't like that

14     they were going to have to prove up the -- the contribution

15     interest of Brett to the property, that was the full extent of

16     the lien, judgment lien, and of the writ.

17                    And we had no choice, the Mulligans, but to file a

18     new action.  Because there was no way to get an order of that

19     detail reduced to writing, get Alum Rock brought in, and then

20     file a motion in -- in the other case, the Single Box case, to

21     get this sale restrained.  We therefore had no choice but to

22     file the new case, which is this case here today, to file a

23     motion for injunctive relief.

24                    So that is the background that brings us to the --

25     to the proceedings today.

And I submit, Your Honor, that the -- it's important to note that we are not, in this case, the Mulligans are not attacking the writ itself. We are not attacking. We understand the Supreme Court has ruled what it ruled, and the writ is what it is. But as Your Honor noted, Footnote 7 said, "But we don't know what that writ attaches to, what that judgment attaches to." And those are the proceedings that are the subject of this case.

Counsel has argued that we have a claim preclusion problem with regard to this case. That's flatly false, however. Because as the Supreme Court also very firmly excoriated, myself frankly, in the written opinion from the Alum Rock case, the Alum Rock case was not an action with regard to real property. The Alum Rock case, the Supreme Court very clearly held, was a writ proceeding, and it was not an action involving real property.

Therefore, we were limited in the prior case to filing anything attacking the writ, which is what we did. And attacking whether the judgment attached, which we did. Could it attach to the property at all? Statutory compliance with the judgment lien statue.

The claims in this case, however, are real property claims. They are an action with regard to real property under the venue statute which provides exclusive jurisdiction to this court, and not to Judge Mow in the Third District Court. The

 1    property is located in Weber County.  So this is the

 2    appropriate forum for this action that is on different and

 3    separate issues.

 4         We submit that we have provided in the briefing

 5    material that will -- that does, in fact, show that we have a

 6    substantial likelihood of prevailing on the merits, to show

 7    that the governing statute, 75-7-505(1), shows that the lien

 8    interest or--or writ of execution interest--that Alum Rock

 9    could potentially attach to is only that of the -- to the

10    extent of the contribution of their judgment debtor, Brett Del

11    Valle personally, to the property that was owned and conveyed

12    to the Mulligans by his trust, and not by him personally.

13    75-7-505(1) says they can only attach to Brett's interest, his

14    interest as settlor.  Because there are two settlors of the

15    trust, him and his wife.

16         We submit that there's also a substantial

17    likelihood of the Mulligans prevailing on their equitable

18    subrogation claim, because there is no question that they paid

19    off liens that were already of record, and prior to the

20    judgment lien claimed by Alum Rock.  And therefore they are,

21    under the equitable subrogation doctrine, placed into the shoes

22    of those judgment creditors, i.e. they are ahead of, and not

23    subject to any lien by Alum Rock.

24         And that is an equitable doctrine to prevent, not

25    only unjust enrichment of Alum Rock by being elevated to a

```
 1    priority position by accident, but also to prevent a loss of
 2    the real property by the Mulligans.
 3              Utah law is clear and -- and has recognized that,
 4    "Real property has always been regarded as unique, because no
 5    two parcels are exactly alike," end quote.  That's the Utah
 6    Department of Transportation versus Jones case cited in the
 7    briefing at 694 P.2d page -- 1031, page 1036.
 8              So the Mulligans are here to protect their real
 9    property interest.  They are entitled, as this Court has
10    already ruled, to assert the -- the contribution issue under
11    75-7-505(1).  And we submit that they -- that the preliminary
12    injunction ought to issue until this Court can more fully and
13    in a -- a more traditional form litigate the full merits of the
14    underlying claims in this case.
15              THE COURT:  Thank you, counsel.
16              MR. JOHNSON:  Once again, my apologies for not
17    standing.  Counsel had handed me a binder and I didn't hear the
18    clerk's direction, and I was just distracted.  So once again,
19    my apologies.
20              We -- we think ultimately Alum Rock, that this is
21    -- this court is simply the wrong court to hear these issues.
22    There is an open and pending matter in the Third District Court
23    where the -- this California -- California judgment was
24    originally domesticated in, and where the writ was issued out
25    of.  There is a pending matter right now.  And we think,
```

1    ultimately, the legal issues surrounding the writ should be

2    heard in the Third District Court.

3        A little background.  Initially, when the writ was

4    issued, the -- the respondents, the Mulligans, had an

5    opportunity at that point in time to present any legal

6    arguments under the sun as to why my client, Alum Rock, should

7    not be able to proceed with its writ of execution.

8        At that time, the Mulligans raised a number of

9    legal arguments why the writ of execution should not be allowed

10   to proceed, including that the property -- that there was a

11   distinction between the judgment that my client held, which was

12   against Brett Del Valle individually, and the fact that the

13   property was held by Brett Del Valle as trustee.

14       They argued you have a judgment against Brett Del

15   Valle, the property's held in trust, you can't -- you can't

16   proceed on your writ of execution because there's a distinction

17   between Brett Del Valle individually and Brett Dal Valle as

18   trustee.  They made that argument.

19       They made arguments that the -- the judgment lien

20   was not properly recorded.  It wasn't properly -- that the

21   statutes weren't followed.

22       All the arguments that they're making today could

23   have been raised then.  That the Mulligans are BFPs.  That they

24   didn't have constructive notice.  That they are entitled to

25   equitable subordination or equitable subrogation.  All the

1  arguments they are making today could have been made before the
2  Third District Court.  And frankly, they should be.

3        And this gets to, I think, the biggest issues are
4  today, are whether this Court is the proper forum for these
5  issues.  We cited in our brief to the principle of comity.  And
6  we found quite a bit of case law in the federal district court
7  system, when you have one court hearing an issue and then
8  another court gets involved in the same issue.

9        Here's what the federal courts have said.  "Federal
10 courts have long recognized that the principle of comity
11 requires federal district courts, courts of (inaudible)
12 jurisdiction and equal rank to exercise care to avoid
13 interference with each other's affairs.  When an injunction
14 sought in one federal proceeding would interfere with another
15 federal proceeding, considerations of comity require more than
16 the usual measure of restraint.  And such injunctions should be
17 granted only in the most unusual of cases."

18        So what we have here is, the Mulligans asking the
19 Second District Court to enjoin a validly issued writ of
20 execution out of the Third District Court.

21        We think, at the end of the day, this Court should
22 decline jurisdiction, recognize the principle of comity, and
23 refer the Mulligans back to the Third District Court for them
24 to raise the legal arguments they seem to think they have.

25            THE COURT:  Okay.

```
 1              MR. JOHNSON:  Thank you.

 2              THE COURT:  Thank you.

 3              Reply?  Well, those are openings.  If there's

 4  evidence, counsel, that you wish to present, you can address

 5  that now.

 6              MR. TILT:  Yes, I would like to present evidence,

 7  Your Honor.

 8              I don't mean to interrupt the Court, but are you

 9  waiting for me or --

10              THE COURT:  Yep.

11              MR. TILT:  -- or am I waiting for you?

12              THE COURT:  Yeah.

13              MR. TILT:  Okay.

14              THE COURT:  If you intend to present evidence --

15              MR. TILT:  Okay.

16              THE COURT:  -- it is now your opportunity to do so.

17              MR. TILT:  I call Blake Heiner to the stand.

18              THE COURT:  Blake Heiner, please step forward and

19  be place under oath to testify.

20              (Witness sworn.)

21              THE COURT:  Please be seated.

22              THE WITNESS:  Thank you.

23              MR. TILT:  May I approach the witness, Your Honor?

24              THE COURT:  You may.

25
```

1                           BLAKE HEINER

2    called as a witness herein, having been first duly sworn to

3    tell the truth, was examined and testified as follows:

4

5                         DIRECT EXAMINATION

6    BY MR. TILT:

7         Q    Would you please state your full name for the

8    record?

9         A    Blake T. Heiner.

10        Q    And what do you do for a living?

11        A    I am general counsel -- vice president and general

12   counsel for Metro National Title Company in -- based in Salt

13   Lake City.

14        Q    Does Metro National Title have anything to do with

15   the real property that's at issue in this case purchased by

16   Molly Mulligan and John P. Mulligan?

17        A    Metro National Title issued the owner's policy of

18   title insurance to the Mulligans when they purchased the

19   property.  Also acted as escrow closing agent for the

20   transaction.

21        Q    Could you please turn to Exhibit 8 in that binder

22   in front of you?  Do you recognize that?  Or I'm sorry.  Ten.

23   Ten in the binder in front of you?

24        A    Okay.

25        Q    Do you recognize that document?

```
1        A    Yes.

2        Q    What is that?

3        A    That is the deed by which Del Valle -- I don't --

4   I'm not sure the pronunciation.  I've heard a couple of

5   different ones this morning.  Del Valle and his wife, as

6   trustees of the Del Valle Family Trust, conveyed title to Molly

7   and John Mulligan.

8        Q    In the transaction that Metro closed?

9        A    Correct.

10            MR. TILT:  And Your Honor, I'd move for admission

11  of Exhibit 10 into evidence.

12            THE COURT:  Any objection?

13            MR. JOHNSON:  None.

14            THE COURT:  Tab 10 in the binder, which has --

15            Have you identified the exhibits separately,

16  counsel?

17            MR. TILT:  Like a table of contents, you mean?

18            THE COURT:  Well, no.  The requirement for counsel

19  in submitting exhibits is that the exhibits need to be marked

20  and identified.  These do not appear to have been marked.  So

21  what I'm going to do is have the binder marked as -- this is

22  plaintiff's exhibit.  And this will be Plaintiff's Exhibit 1.

23  And so the documents within the binder will be referred to by

24  their tabs.

25            MR. TILT:  Okay.
```

```
1              THE COURT:  So that we don't have to take the time
2   of now individually labeling and marking each of the documents.
3   So I am going to require that the binder itself be marked.
4              Do you have something you can mark the binder with?
5              MR. TILT:  I actually can mark each of the exhibits
6   if you want.  I (inaudible) stickers.
7              THE COURT:  No.  I don't -- I don't want to take
8   the time to --
9              MR. TILT:  Okay.
10             THE COURT:  -- mark each of the exhibits.
11             MR. TILT:  Yeah.
12             THE COURT:  We'll simply mark the binder as
13  Plaintiff's Exhibit 1.  And if counsel will, as we go through
14  the proceedings, just refer to the different documents by their
15  tab number within Plaintiff's 1.
16             MR. TILT:  Sure.
17             THE COURT:  So if you'll just put an exhibit
18  sticker on the front of the binder.  That will be Plaintiff's
19  1.  And then if counsel will just follow the protocol of
20  referring to the documents by their tab numbers within
21  Plaintiff's 1.
22             So Plaintiff's 1, Tab 10 is received.
23             (Exhibit 1, Tab 10 received.)
24             THE COURT:  You may proceed, counsel.
25        Q    (By Mr. Tilt)  Would you turn to Exhibit 1 in the
```

1    binder?

2             THE COURT:  Again, it's Tab 1 of Plaintiff's 1.

3        Q    (By Mr. Tilt)  I'm sorry.  Tab 1 in the -- in the

4    Exhibit binder.

5             MR. TILT:  Thank you, Your Honor.

6             THE WITNESS:  Okay.  I have that.

7        Q    (By Mr. Tilt)  Do you recognize that document?

8        A    That is a copy of the Del Valle Family Trust that

9    was provided to Metro National Title in connection with the

10   sale of the property from the trust to the Mulligans.

11            MR. TILT:  I move for admission of Exhibit 1, Tab 1

12   into evidence.

13            THE COURT:  Any objection to Tab 1?

14            MR. JOHNSON:  No objection.

15            THE COURT:  Tab 1 of P-1 is received.

16            (Exhibit 1, Tab 1 received.)

17       Q    (By Mr. Tilt)  What was the purpose for Metro

18   requesting a copy of the Del Valle Family Trust?

19       A    Because the title to the property in question was

20   held by Brett Del Valle and Traci Del Valle as trustees of the

21   Del Valle Family Trust, we needed to see a copy of that trust

22   agreement to verify the authority of Brett and Traci to act as

23   trustee, and to convey any property that was -- that is part of

24   the trust.

25       Q    Would -- would a copy of the Del Valle Family Trust

1    be provided to the Mulligans in the course of such a

2    transaction?

3           A    Not generally, no.

4           Q    Do you know whether it was in this case?

5           A    I don't believe it was.  To the best of my

6    knowledge, no copy was provided to the Mulligans.

7           Q    Let's have you turn, please, to Exhibit 1, Tab 5.

8           A    Okay.

9           Q    Do you recognize that document?

10          A    Yes.

11          Q    What is that?

12          A    That is a copy of a deed of trust by and between

13   Brett and Traci Del Valle as trustees of the Del Valle Family

14   Trust as trustors in favor of, let's see -- it doesn't identify

15   the beneficiary, interestingly enough, on that first page.  But

16   anyway, in any event, it appears to be a security instrument

17   encumbering the property in question as security for the

18   obligation identified in the deed of trust.

19          Q    And I wonder if I could direct you to the top left

20   corner under where it says, "when recorded mail to."  There's a

21   name of Emerald Bay there.  Do you have any -- any knowledge as

22   you sit here today whether that's the beneficiary of that trust

23   deed?

24          A    I think that's fair assumption.

25               MR. TILT:  I move for admission of Exhibit 1, Tab 5

1     into evidence.

2                THE COURT:  Any objection?

3                MR. JOHNSON:  No objection.

4                THE COURT:  P-1, Tab 5 is received.

5                (Exhibit 1, Tab 5 received.)

6         Q     (By Mr. Tilt)  Let's have you look at Exhibit 1,

7     Tab 4, please, in the binder.  Do you recognize that document?

8         A     Yes.  That is another deed of trust by and between

9     Brett and Traci Del Valle as trustees of the Del Valle Family

10    Trust as borrowers, and the lender being BOFI, B-O-F-I Federal

11    Bank, out of California.  Another trust deed that had been

12    recorded against the property and encumbered it to secure an

13    obligation of the Del Valle Trust to the lender.

14               MR. TILT:  Move for admission of Exhibit 1, Tab 4

15    into evidence.

16               THE COURT:  Any objection?

17               MR. JOHNSON:  No objection.

18               THE COURT:  P-1, Tab 4 is received.

19               (Exhibit 1, Tab 4 received.)

20        Q     (By Mr. Tilt)  Let's have you turn please to

21    Exhibit 8.  Exhibit 1, Tab 8.  And what is that?

22        A     That is a copy of the posting summary, which

23    contains the information concerning disbursements that were

24    made by Metro National Title -- involved in the trans --

25    transaction, the sale of the property from the Del Valle Family

1    Trust to the Mulligans.  And it and shows all the disbursements

2    that were made from that closing.

3         Q    And there's a heading that says receipts.  And then

4    it says payor.  And then it has the Mulligans' names listed

5    there.  Can you tell me what that line item means?

6         A    That means that the Mulligans delivered into escrow

7    the sum of $1,775,896.73 to the amount needed to close the

8    transaction in question.

9         Q    And then under the disbursements heading, and there

10    is a list of payees there.  What does that portion of the

11    document show?

12         A    That shows all of the disbursements that were made

13    from that $1,775,000 that the Mulligans deposited into escrow.

14         Q    The first one there says Axos Bank.  Do you see

15    that?

16         A    Yes.

17         Q    And the second one, then, says Emerald Bay Capital.

18    Do you see that?

19         A    Yes.

20         Q    It looks like the Axos Bank, the disbursement from

21    the Metro account to Axos Bank was $712,000 and change.  Is

22    that fair to say?

23         A    That is correct.

24         Q    And the disbursement from the Metro funds in this

25    transaction to Emerald Bay was $948,000 even.  Is that correct?

1      A     Correct.

2      Q     Let's have you turn please to Exhibit 11.

3            MR. TILT:  Oh.  Move for admission of Exhibit 8.

4            THE COURT:  Any --

5            MR. TILT:  Exhibit 1, Tab 8 into evidence.

6            THE COURT:  Any objection to Tab 8?

7            MR. JOHNSON:  No objection.

8            THE COURT:  Tab 8 is received.

9            (Exhibit 1, Tab 8 received.)

10     Q     (By Mr. Tilt)  Okay.  Let's now have you go,

11  please, to Exhibit 1, Tab 11.

12     A     I have that.

13     Q     Do recognize that document?

14     A     Yes.  That --

15     Q     What is that?

16     A     -- is a deed of reconveyance that references --

17  that releases the deed of trust.  And if I might take a quick

18  look back at the previous tabs, I can tell you which deed of

19  trust that is referring to.  That is referring to the -- the

20  Emerald Bay Capital deed of trust.  That document is signed as

21  part of the transaction pursuant to instructions and

22  authorization from Emerald Bay Capital directing Metro National

23  Title to reconvey that deed of trust.

24     Q     Is that your signature on that?

25     A     Yes.

```
 1        Q    And when you say it refers to the Emerald Bay trust
 2   deed, is that Exhibit 1, Tab 5 in the book?
 3        A    I believe that is correct.  Let me take a quick
 4   look.  Yes.
 5        Q    And you can cross reference that by the entry
 6   number?
 7        A    Yes.
 8        Q    3066407 is released by Exhibit 1, Tab 11.  And that
 9   3066407 is Exhibit 1, Tab 5?
10        A    That is correct.
11        Q    Let's have you look --
12             MR. TILT:  Move for admission of Exhibit 1, Tab 11
13   into evidence.
14             THE COURT:  Any objection?
15             MR. JOHNSON:  No objection.
16             THE COURT:  Tab 11 is received.
17             (Exhibit 1, Tab 11 received.)
18        Q    (By Mr. Tilt)  Let's have you go to Tab 12, please.
19   Do you recognize that document?
20        A    Yes, that is a deed of reconveyance.  That refers
21   to the deed of trust in Exhibit 1, Tab 5.  Oh, no.  Excuse me.
22   Tab 4.  Yes, referring to Tab 4.
23        Q    And that --
24        A    Cross referencing that via the entry number
25   reconveying and releasing that deed of trust.
```

```
 1              MR. TILT:  Move for admission of Exhibit 12 into
 2   evidence.
 3              THE COURT:  Tab 12 of P-1, any objection?
 4              MR. JOHNSON:  Excuse me.  No objection.
 5              THE COURT:  Tab 12 is received.
 6              (Exhibit 1, Tab 12 received.)
 7         Q    (By Mr. Tilt)  Let's have you turn to Exhibit 1,
 8   Tab 6, please.  Have you ever seen that document before?
 9         A    Yes.
10         Q    When is the first time you saw that document?
11         A    Probably at the time this -- this claim -- or
12   throughout the process.  At some point during the process of
13   this claim and this litigation.
14         Q    So after the -- the closing to Mulligans.  Is that
15   fair to say?
16         A    That's correct.
17         Q    Did -- did Metro Title conduct a search in
18   connection with the Mulligan closing, of the court records in
19   Weber County for any judgments against the Del Valle Family
20   Trust?
21         A    We searched the records of the county recorder with
22   regard to judgments, and this judgment was not found.
23         Q    And in the -- in connection with searches for
24   closing in a sale like the Mulligans', does Metro routinely
25   search court records in the county, as well as county recorder
```

1  records?

2       A    Not since the statute was changed that requires

3  that judgments be recorded with the county recorder.  We do not

4  check the -- check court records as a general rule.

5       Q    Okay.  Let's have you look --

6       MR. TILT:  Move for admission into evidence of Tab

7  -- Exhibit 1, Tab 6.

8            THE COURT:  Any objection to Tab 6?

9            MR. JOHNSON:  No objection.

10           THE COURT:  Tab 6 is received.

11           (Exhibit 1, Tab 6 received.)

12       Q    (By Mr. Tilt)  And let's have you look at Exhibit

13  7.  And I'll just represent to you -- or Exhibit 1, Tab 7.

14  I'll just represent to you that's the same document as Tab 6,

15  except for the Tab 7 document has a county recorder's stamp on

16  it as well.  Do you see that there, above the caption?

17       A    Yes.  That is correct.

18       Q    Okay.  And it's -- it's your testimony that that

19  judgment did not come up in any search of the records in

20  connection with the sale of the property by the Del Valle

21  Family Trust?

22       A    That is correct.

23       Q    Do you know why?

24       A    There are a couple of reasons.  The primary one

25  being that, although the judgment was recorded, it was not

```
 1    abstracted to this property, this particular parcel of
 2    property.  Also, the abstract that appears in the recorder's
 3    office does not identify Brett Del Valle as a judgment
 4    creditor.
 5         Q    What does that mean?
 6         A    It means, if you look at the abstract in the Weber
 7    County Recorder's Office, it identifies Alum Rock as the
 8    judgment creditor and PRP Investors Madison, et al., as
 9    judgment debtors.
10         Q    I see.
11         A    It does not name Brett Del Valle.
12         Q    Okay.
13         A    That name does not appear in the recorder's
14    abstract for this judgment.
15         Q    Does the name "the Del Valle Family Trust" appear
16    in the abstract of that judgment?
17         A    No.
18              MR. TILT:  Move for admission into evidence of
19    Exhibit 1, Tab 7.
20              THE COURT:  Any objection?
21              MR. JOHNSON:  No object --
22              THE COURT:  Okay.
23              MR. JOHNSON:  No objection.
24              THE COURT:  Tab 7 of P-1 is received.
25              (Exhibit 1, Tab 7 received.)
```

```
 1          Q    (By Mr. Tilt)  Let's have you turn to Exhibit

 2   1, Tab 9, please.  Do you recognize that document?

 3          A    Yes.  This is a copy of the Weber County Recorder

 4   abstract of title with -- that relates to, excuse me, to this

 5   particular parcel of property that was used -- well, let me

 6   take a look at it.  Yes.  This was in Metro National Title's

 7   file as the abstract that was relied upon for purpose of

 8   searching the title in connection with the Del Valle

 9   Trust/Mulligan transaction.

10          MR. TILT:  Move for admission of Exhibit 1, Tab 9

11   into evidence.

12          THE COURT:  Any objection?

13          MR. JOHNSON:  We do -- I do have an objection on

14   this document.  This appears to be a printout from a website.

15   This isn't an official government record, as far as I'm aware

16   of.  So I have an objection to the hearsay.

17          THE COURT:  Your response, Mr. Tilt?

18          MR. TILT:  He said that it's in -- the witness'

19   testimony was that it was in Metro Title's file.  They relied

20   on it for purposes of conducting the closing.  That sounds like

21   an argument as to weight, not as to admissibility.

22          THE COURT:  All right.

23          Mr. Johnson?

24          MR. JOHNSON:  I'm not sure I follow that.  I mean,

25   they're offering this as the Weber County Recorder's abstract
```

1    of title, and that hasn't been established.

2            THE COURT:  Anything else, Mr. Tilt?

3            MR. TILT:  No.  Except for the fact that this was

4    actually something that was produced by counsel in the briefing

5    and -- and so I'm curious as to why he's objecting.  It's got

6    their Bates number on it.  I think that's their Bates number.

7    In any event, that was offered by them in the briefing.  So I

8    don't know that there would be a valid basis to object to it.

9            THE COURT:  The ruling of the Court is that this

10   fits within the business records exception as a business record

11   of Metro National Title.  It is not being offered as a record

12   from the county recorder's office.  It is being offered as a

13   business record maintained in the files of Metro National

14   Title.

15            Whether it is an accurate abstract from the county

16   recorder's office, I'm making no determination of that at this

17   point.  I'm simply ruling that this is a business record

18   maintained in the business records of Metro National Title.

19   And it is being -- it has been described as such by a custodian

20   of those records, a representative of Metro National Title.  So

21   on that basis, it is admitted.

22            You may proceed.

23            (Exhibit 1, Tab 9 received.)

24       Q    (By Mr. Tilt)  Let's have you turn to Exhibit 1,

25   Tab 2, please.  Do you recognize that document?

```
 1        A    Yes.  That is a --

 2        Q    What is that?

 3        A    -- a copy of the recorded special warranty deed

 4   dated in April of 2007, by which Brett and Traci Del Valle, as

 5   trustees of the Del Valle Family Trust, acquired title to the

 6   subject property.

 7             MR. TILT:  Move for admission of Exhibit 2 into

 8   evidence.

 9             THE COURT:  Any objection?

10             MR. JOHNSON:  No objection.

11             THE COURT:  Tab 2 of P-1 is received.

12             (Exhibit 1, Tab 2 received.)

13        Q    (By Mr. Tilt)  Let's have you turn to Tab 3 of

14   Exhibit 1, please.  Do you recognize that document?

15        A    That is a warranty deed by and between a re -- a

16   copy of the recorded warranty deed by and between Brett and

17   Traci Del Valle as trustees of the Del Valle Family Trust to

18   Brett and Traci Del Valle as trustees of the Del Valle Family

19   Trust.

20             MR. TILT:  Move for admission of Exhibit 3 into

21   evidence.

22             THE COURT:  Any objection to Tab 3?

23             MR. JOHNSON:  No objection.

24             THE COURT:  Tab 3 is received.

25             (Exhibit 1, Tab 3 received.)
```

```
 1          Q    (By Mr. Tilt)  In connection with the search of the

 2    property for the -- for the closing on the trust sale to the

 3    Mulligans, so referring I guess to Exhibit 9, the abstract from

 4    -- from Metro's records, did Metro ever find any deed from the

 5    Del Valle Family Trust to Brett Del Valle, personally?

 6          A    No.

 7          Q    Did Metro ever find any conveyance of the property

 8    from Brett Del Valle personally to the Del Valle Family Trust?

 9          A    No.

10          Q    I'd actually like to have you look at Exhibit 7

11    again.  Tab 7 of Exhibit 1.  And take whatever time you need

12    to.  Is -- my question -- my first question is whether there is

13    any real property description in that document.

14          A    No, there is not.

15          Q    Is there, in Exhibit 7, any reference to the Del

16    Valle Family Trust?

17          A    No, there is no reference to the Del Valle Family

18    Trust.

19          Q    In the Exhibit 9 abstract from Metro's records, is

20    there any reference in there to that Tab 7 judgment that we

21    just looked at?

22          A    No, there is not.

23          Q    Was it required for the Mulligans' purchase funds

24    to be paid out to Axos and to Emerald?

25          A    Yes.
```

```
 1        Q    Why?

 2        A    Because the contract sale between Brett and Traci

 3   as trustees of the Del Valle Family Trust as sellers and the

 4   Mulligans as buyers, required that all encumbrances against the

 5   property be paid at or before closing, number one.  And number

 6   two, that a policy of title insurance be issued to the

 7   Mulligans which would not disclose any such encumbrances.

 8        Q    If the -- let's see.  Based on the order of

 9   recording, I'll just represent to you that we have -- the BOFI

10   trust deed was recorded, Exhibit 4 -- Exhibit 1, Tab 4 -- was

11   recorded September of 2017.  The Emerald Bay trust deed,

12   Exhibit 1, Tab 5, was recorded in July of 2020, and the Exhibit

13   1, Tab 7 document, the Alum Rock notice of judgment was

14   recorded in November of 2020.

15             If the Mulligans were subrogated to the priority

16   position of those two trust deeds that they paid off, Exhibits

17   4 and 5, would that change the priority of Alum Rock's lien at

18   all?  Would that change the position?

19        A    No, it would not.

20        Q    Why?

21        A    Because the -- those two deeds of trusts, those two

22   encumbrances shown in Exhibit 1, Tabs 5 and 6, pre-dated the

23   Alum Rock -- the entry of the Alum Rock judgment.  So they

24   enjoyed priority as a matter of -- as a matter of law, and as a

25   matter of title practice.
```

```
 1              MR. JOHNSON:  Objection.  The -- the witness is

 2    offering a legal opinion.

 3              THE COURT:  Sustained.

 4         Q    (By Mr. Tilt)  How long have you worked at Metro

 5    Title?

 6         A    I've been at Metro for 14 and a half years.

 7         Q    Has that always been in the capacity as vice

 8    president and general counsel?

 9         A    Yes.

10         Q    And what do your duties entail in that capacity?

11         A    I consult with title and escrow officers regarding

12    questions that may come up with regard to title issues, with

13    regard to escrow issues.  I also process and administer any

14    claims that are made through Metro National Title.  I also

15    supervise and administer the sister company of Metro National

16    Title, being Metro National Exchange Services.  And

17    occasionally close transactions.

18         Q    What was your position prior to that position you

19    just described with Metro?

20         A    Immediately prior to Metro, I was senior -- vice

21    president senior -- let me try that again.  Vice president,

22    senior claims counsel, for First American Title Insurance

23    Company for 17 years.

24         Q    And what were your duties in that capacity?

25         A    In that capacity, I administered claims, supervised
```

1   litigation, supervised and managed litigation in connection

2   with those claims.

3        Q    Did that involve any analysis of legal or title

4   issues?

5        A    Yes.

6        Q    And what -- what was your employment prior to that

7   position with First American?

8        A    Prior to that, I was with First American Title

9   Insurance Company as a chief underwriter.  My -- my position --

10  I was -- I'd been -- I was with First American from 1984

11  forward to 1994, which is when I was made senior claims

12  counsel.  During that period, 1984 to 1994, I was -- wore

13  various hats, particularly involving underwriting, as well as

14  claims administration.

15       Q    When you say underwriting, what does -- what does

16  that mean?  What were your duties with regard to underwriting?

17       A    That is making decisions with regard to the

18  insurability of title in any given situation.

19       Q    Does that involve reviewing title commitments or

20  reports?

21       A    Yes.

22       Q    Does that involve doing any actual searching?

23       A    Not actual searching, but reviewing searches that

24  have been done, and examining documents and determining the

25  effect of those documents vis-a-via the title to the property

1  and its -- and the effect on its insurability.

2      Q    And did you do any such underwriting work with --

3  have you with Metro since you moved to Metro Title?

4      A    Yes.  Essentially that same function.

5      Q    Okay.  Prior to 1984, what is your employment

6  history?

7      A    I was employed by Associated Title Company from 19

8  -- I don't -- it goes so far -- so far back these days.  I was

9  employed by Associated Title Company prior to First American.

10  And prior to that, I was employed by Guaranteed Title Company

11  from 1978 to 1980.

12      Q    And in '78 to '81, I see on your CV that you were

13  an abstractor.  What is that?

14      A    That's essentially title searching.  Searching

15  titles.  Examining documents.

16      Q    And after you moved out of abstracting and you

17  moved in -- what was your -- what was your title?  I don't know

18  if I caught that.

19      A    At Guaranteed Title?

20      Q    Yes.

21      A    I started off --

22      Q    And Associate.

23      A    -- as doing abstracting and that type of thing.

24  Ultimately -- it was a small company.  Ultimately, I was

25  president of it for a year or so.

```
 1          Q    Does doing abstracting involve any decision making

 2    with regard to defective documents on real property?

 3          A    Yes.

 4          Q    Do you hold any professional licenses?

 5          A    I'm a member of the Utah State Bar.  That's the

 6    primary professional license I hold.

 7          Q    And when did you first become barred?

 8          A    1980.

 9          Q    Have you ever been disbarred or let that lapse for

10    any reason in the last -- since 1980?

11          A    No.

12          Q    And do you have any professional certifications

13    beyond the bar license?

14          A    No.

15          Q    Okay.

16               MR. TILT:  Your Honor, I would move that this

17    witness be qualified to testify as an expert witness with

18    regard to title searching matters and the effect of documents

19    on real property.

20               THE COURT:  Mr. Johnson?

21               MR. JOHNSON:  I -- I would object to that.  There

22    was no notice that there would be expert witnesses today.  And

23    so we don't have the opportunity to provide a rebuttal witness.

24    So I would object on that basis.

25               THE COURT:  The Court denies the request to
```

1   certify, effectively, the witness as an expert.  The Court

2   doesn't certify experts.  So that's -- that's an inappropriate

3   request in that regard.

4         The only question that arises when opinions are

5   made the subject of question, is whether that opinion can be

6   expressed.  Opinions can only be expressed by people who have

7   training and experience to justify the expression of those

8   opinions.

9         So the Court declines the request to certify the

10  expert, simply because that is not the role of the Court, and

11  will permit the expression of the opinion that's been elicited,

12  subject to the following limitations.

13        To the extent that the opinion addresses a legal

14  issue, witnesses do not determine legal questions.  The Court

15  determines legal issues.  And so any opinion expressed by a

16  witness that addresses a legal matter will be given whatever

17  weight the Court considers appropriate.  But it's certainly not

18  binding on the Court, and does not establish the truth of the

19  matter asserted, i.e. the legal conclusion being alleged.

20        The objection to any legal conclusion being

21  expressed by the witness is sustained.  He can express his

22  opinion, and whatever that opinion may be may be considered by

23  the Court and given whatever weight the Court determines is

24  appropriate.  But it is not binding on the Court, and does not

25  constitute any legal determination by the Court.

1          So subject to that restriction, the witness may

2    express his opinion on that issue.

3          MR. TILT:  Thank you, Your Honor.

4      Q    (By Mr. Tilt)  So I return to the question, then,

5    of whether, in your opinion, as an officer of Metro Title and

6    as a person experienced with title examination and effect --

7    and determining the legal effect from an insurability

8    standpoint on real property, the question is, if the Mulligans

9    were subrogated to the position, or placed in the shoes of

10   those two trust deeds, Exhibits 4 and 5, their funds paid off,

11   would that affect -- would that put -- would that affect the

12   priority of any judgment lien held by Alum Rock?

13     A    Not in my opinion.

14         MR. TILT:  No further questions.

15         THE COURT:  And again, for clarification, the

16   expression of that opinion does not constitute any legal

17   determination by the Court, it's not binding upon the Court,

18   and will be given whatever weight the Court determines is

19   appropriate.

20         MR. TILT:  Thank you, Your Honor.

21         THE COURT:  Thank you.

22         Mr. Johnson, your cross examination?

23         MR. JOHNSON:  Thank you, Judge.

24

25

CROSS EXAMINATION

BY MR. JOHNSON:

    Q    Could we look at Tab -- Tab 6 in Exhibit 1.
Now, I -- I understand that Metro conducted a search for
judgments on the property.  Do -- do I understand that
correctly?

    A    That is correct.

    Q    Who -- who conducted that search?

    A    I'm not sure.  Someone in our -- our title search
and examination department.  I'm not sure the exact identity of
that party.

    Q    Okay.  But you don't -- you don't know who
conducted the search?

    A    No.

    Q    How did they conduct the search?

    A    Say that again.

    Q    How did -- how did Metro Title conduct the search
for judgments?

    A    It searched the -- in terms of judgments, or
generally?

    Q    For judgments against the property.  How did -- how
did Metro Title search for judgments against the property?

    A    We searched the records of the Weber County
Recorder, both with regard to the specific property and with
regard to the -- to judgments filed against Brett Del Valle as

1   trustee of the Del Valle Family Trust.

2       Q    And how do you know that process was used, if you

3   don't know who searched for the judgments?

4       A    Because all that documentation is contained in our

5   file.

6       Q    And which documentation are you referring to?

7       A    The documentation containing those searches.

8       Q    Is -- is that one of the exhibits you've looked at

9   today --

10      A    I am not --

11      Q    -- with the tabs?

12      A    -- if that -- if -- I do not believe that was

13  included in the -- in this binder of exhibits.

14      Q    Did Metro National Title do a search for judgments

15  on the name of Brett Del Valle?

16      A    Say that again.  I'm sorry.

17      Q    Did Metro Title do a search for judgments on the

18  property on the name of Brett Del Valle?

19      A    They would have done the search under the name of

20  Brett Del Valle as trustee of the Brett Del Valle Family Trust,

21  which is how title is held.

22      Q    Okay.  So if -- if I'm understanding correctly,

23  there was no search for a judgment against Brett Del Valle

24  individually?

25      A    Individually, no.

1        Q    And why was that?

2        A    Because he held title as trustee of the trust, and

3   not individually.

4        Q    Are you familiar with Utah Code 75-7-505?

5        A    Yes.

6        Q    And it says -- just to state it, it says, "During

7   the lifetime of a settlor, the property of a revocable trust is

8   subject to the claims of the settlor's creditors."

9        A    Uh-huh.  Yes.

10       Q    Were you aware that Brett Del Valle was a settlor

11  of the trust?

12       A    No, I don't believe we were.

13       Q    Okay.  Let's look at Exhibit 1.

14            THE COURT:  So Tab 1 of P-1?

15            MR. JOHNSON:  Excuse me.  Yes.  Tab 1 of Exhibit 1.

16            THE WITNESS:  Yes, I see that.

17       Q    (By Mr. Johnson)  And what do you see?

18       A    I see that Brett and Traci Del Valle are designated

19  as trustors, and Brett and Traci are also named as co-trustees.

20       Q    And -- and if they're trustors, that's the same as

21  being a settlor?

22       A    That would be correct, yes.

23            MR. TILT:  Objection.  Asks for a legal conclusion.

24            THE COURT:  Sustained, with the same limitation

25  that was previously included.

```
 1          Q    (By Mr. Johnson)   So your understanding of the

 2    trust would be that Brett Del Valle was a settlor of the trust?

 3          A    That would be my understanding, yes.

 4          Q    And given the effect of Utah Code Annotated

 5    5-7-505, shouldn't your office have done a search for judgments

 6    against Brett Del Valle in his individual capacity?

 7          A    I don't believe --

 8               MR. TILT:  Objection.  Asks for a legal conclusion.

 9               THE COURT:  Sustain the objection to the extent

10    that it calls for a legal conclusion.  Given the expertise

11    that's been established, if the witness has an opinion on that

12    issue, it may be expressed, but it is not binding or con --

13    does not constitute a legal determination for purposes of the

14    proceeding.  Only an expression of the witness' opinion.  But

15    given the expertise that's been established, he may express

16    that opinion if he has one.

17               THE WITNESS:  Could you repeat the question,

18    please?

19          Q    (By Mr. Johnson)   Isn't it true that, given that

20    the creditors of the settlors can make a claim against the

21    trust property, wouldn't it have been prudent for your office

22    to do a search for judgments against Brett Del Valle in his

23    individual capacity?

24          A    I believe -- and maybe -- I may have misspoken

25    earlier.  I believe there was a search done under the Del Valle
```

1    name, and nothing came up either individually or as trust --

2    well, I take that back.  I think there was a judgment.  Not the

3    Alum Rock judgment.  Another judgment, which I believe had been

4    satisfied in a separate transaction.  But there were no

5    judgments found in the -- under the name Del Valle, either

6    individually or as trustee of the trust.

7         Q    Do you know that for certain, or are you just

8    guessing?

9         A    No, I know that for certain.  I've looked at the

10   records.

11        Q    How -- how do you know that anyone in your office

12   searched for judgments against Brett Del Valle in his

13   individual capacity?

14        A    Because those names appear on the search documents,

15   the abstracts that are -- copies of which are retained in our

16   files.

17        Q    Are you saying that there's a document that's been

18   introduced today that shows that your office searched under the

19   name of Brett Del Valle individually?

20        A    No document that's been introduced today.

21        Q    Okay.  So there's no document introduced today that

22   shows that your office searched under the name Brett Del Valle

23   individually.  So how are we to know that your office actually

24   did do a search under the name of Brett Del Valle in his

25   individual capacity?

```
 1          A    That's what I'm here to testify to, I suppose.

 2          Q    But you don't even know who did the search?

 3          A    It's a -- one of the people in our search

 4   department.  There are a number of them.  It could have been

 5   any of them.

 6          Q    Have you -- have you -- what have you done to talk

 7   to the people in your office who did the search to determine if

 8   they searched for --

 9          A    I --

10          Q    -- Brett Del Valle individually?

11          A    I did not speak to people that did the search.  I

12   relied on what is in the file.  Because the file discloses what

13   was done.

14          Q    But again, nothing introduced today shows that

15   search having been conducted, correct?

16          A    That's correct.

17          Q    Now you -- you gave some testimony, I think, along

18   the lines of that it -- the judgment doesn't show up in an

19   abstract of title?

20          A    That's correct.

21          Q    Okay.  Is -- what's the -- what's the process of an

22   abstract?  Is that something the county recorder does?

23          A    Yes.

24          Q    Okay.  Are you saying that the county recorder did

25   something wrong when the judgment was recorded?
```

 1          A    I'm not saying one way or the other.  All I'm

 2    saying is what was discovered in our search.  I'm not saying

 3    that anybody is at fault.  I don't know who may have done what.

 4    I'm saying it was not there.

 5          Q    In -- in normal process, do you have knowledge of

 6    how the county recorder would abstract a judgment?

 7          A    No.  I know their -- I know from looking at the

 8    abstracts that they generate.  How they do it, what the process

 9    is behind that, I have no idea.

10          Q    Do you know the -- do you have an understanding of

11    the process of how a judgment is recorded in the State of Utah

12    to become a judgment lien?

13          A    I --

14               MR. TILT:  Objection.  Asks for a legal conclusion.

15               THE WITNESS:  Yeah.  Generally.

16               MR. JOHNSON:  What's -- what's --

17               THE COURT:  Any -- any -- any response, given the

18    objection, will have the same limitation previously imposed.

19    Expertise with respect to the subject matter appears to justify

20    the expression of the opinion.  But any opinion is not accepted

21    or binding upon the Court as a legal conclusion, only the

22    expression of the opinion of the witness.

23          Q    (By Mr. Johnson)  What's your understanding of how

24    a judgment could become a judgment lien against a property?

25          A    Well, it is recorded with the county recorder's

```
 1   office, and should be, presumably, is then abstracted in the

 2   judgment index of the county recorder.

 3        Q    And that's a process of something the county does?

 4        A    That's correct.

 5        Q    Okay.  Is there a way to search the judgment index?

 6        A    Yes.

 7        Q    And can you -- can you search by the name of

 8   individuals?

 9        A    That's correct.

10        Q    And did Metro Title attempt a search of the

11   judgment index and look for a judgment against Brett Del Valle

12   individually?

13        A    Yes.  Well, they ran -- yes.  They ran the Del

14   Valle name and -- with the expectation that it would disclose

15   any judgments against him individually, as well as trustee.

16        Q    Now, I'm confused on this point.  You don't -- you

17   don't actually know if they -- if someone ran a search for

18   Brett Del Valle individually, correct?

19        A    Based upon the documentation in the file --

20        Q    But -- but --

21        A    -- I have reached that conclusion, yes.

22        Q    But not of any of the records that have been

23   presented in court today?

24        A    There's -- I don't believe there are any documents

25   presented today.
```

```
 1          Q    This is just your general understanding?

 2          A    This is my knowledge based on reviewing the file.

 3          Q    You -- you haven't talked to the people who

 4    conducted the search?

 5          A    No.

 6          Q    You haven't asked them how they did the search?

 7          A    No.  It's -- all of that information is in the

 8    file.

 9          Q    The file that's not before the Court today?

10          A    Correct.  Well, or portions of it.

11          Q    Can I have you look at Tab 8?  And again, can you

12    identify what this document is?

13          A    It's the posting summary showing all of the

14    receipts and disbursements by Metro National Title in

15    connection with the transaction that's the subject of this

16    proceeding.

17          Q    And the -- under receipts, it says payor Molly J.

18    Mulligan and John P. Mulligan.  Do you see where I'm at?  And

19    then there's the sum of $1,775,896.73?

20          A    Uh-huh.  Yes.

21          Q    Did that money come from the Mulligans or the

22    Mulligans' lender?

23          A    At the time of closing, it came from the Mulligans.

24          Q    How do you know it came from the Mulligans?

25          A    Because, first of all, that's what it says here.
```

```
 1   Second of all, there was no loan closing involved in this

 2   transaction.

 3           Q    The Mulligans paid cash for the property?

 4           A    Correct.

 5           Q    All right.

 6                MR. JOHNSON:  No further questions.

 7                THE COURT:  Redirect?

 8                MR. TILT:  No, Your Honor.

 9                THE COURT:  All right.  That will conclude the

10   witness' testimony.

11                Sir, you may step down.

12                THE WITNESS:  Thank you.

13                MR. TILT:  May the witness be excused, Your Honor?

14                THE COURT:  Say again?

15                MR. TILT:  May the witness be excused, Your Honor?

16                THE COURT:  Any objection?

17                MR. JOHNSON:  None.

18                THE COURT:  All right.  Thank you, sir.

19                The witness may be excused.

20                Any additional evidence, Mr. Tilt?

21                MR. TILT:  No, Your Honor.  I just would move for

22   admission into evidence of Exhibits 13, 14, 15.  They're

23   certified copies of documents from the Third District writ

24   proceeding.  And there's no one to testify with regard to

25   those.  But they are certified copies.
```

```
 1              THE COURT:  Any objection to Tabs 13, 14, and 15 as

 2   certified copies of court records?

 3              MR. JOHNSON:  No objection.

 4              THE COURT:  Tabs 13, 14, and 15 are received.

 5              (Exhibit 1, Tabs 13, 14, 15 received.)

 6              MR. TILT:  I just have closing argument then, Your

 7   Honor.

 8              THE COURT:  All right.

 9              Well, we'll turn to Mr. Johnson.

10              Any evidentiary presentation that you're

11   anticipating, Mr. Johnson?

12              MR. JOHNSON:  No.

13              THE COURT:  All right.  Then we will move to

14   argument.

15              Mr. Tilt, you may proceed.

16              MR. TILT:  Obviously counsel's queries to the

17   witness with regard to the entirety of Metro Title's file not

18   being here today are a little bit tongue in cheek, because we

19   are here on an expedited hearing.  If -- if counsel wants to

20   have those, he's already got them, per a prior subpoena, number

21   one.  And he's welcome to schedule a deposition to talk with

22   Mr. Heiner--I'm sure he'd cooperate--to discuss that more

23   fully.

24              The point of today's proceedings, though, is that

25   there is a judgment lien foreclosure sale scheduled for January
```

1    21st at this point, by Alum Rock.  And we are here today on the

2    motion for a preliminary injunction to restrain that sale

3    pending further litigation and ascertainment of the issues in

4    this case.

5         The statute that counsel pointed the witness to,

6    75-7-505(1) does, indeed, say that a settlor's interest in a

7    revocable trust property is subject to that settlor's judge --

8    that settlor's creditors, like a judgment lien creditor.

9         The next sentence, though, that counsel didn't have

10   the witness look at, says that when there is more than one

11   settlor, the reach of the creditor's claim to the trust

12   property may not exceed the contribution to that trust property

13   by the debtor that is -- by the settlor that is the -- the

14   debtor.

15        In this case, the settlor that is the debtor--if we

16   have a settlor at all, because there's no evidence of that--is

17   Brett Del Valle personally.  And we submit, Your Honor, that

18   there is no evidence still -- not after -- not in November

19   26 -- November 26 of 2024 when we here before Your Honor, and

20   still is not today, any evidence provided to this Court

21   regarding the extent of any contribution by Brett Del Valle to

22   the trust.

23        In fact, the very last page of the trust, Exhibit

24   1, Tab 1, provides a schedule or -- a Schedule A inventory of

25   trust estate.  Under community property, nothing is listed.

1    Under husband's separate property--presumably that's

2    Brett--nothing is listed.  Under paragraph 3, wife's separate

3    property--presumably that's Traci--nothing is listed.  There is

4    no evidence before this Court as to any interest in the

5    property at issue by Brett Del Valle personally as a settlor of

6    this trust, ever.

7         In fact, to the con -- further to the contrary is

8    Exhibit 2, the document by which Basinview Development conveyed

9    the property originally to the Brett Del Valle family trust in

10   2007.  Now, the trust was created in 2002.  This property is

11   conveyed directly to the trust by Basinview.

12        Exhibit 3 has another deed for some reason, that,

13   frankly, I don't know, that the trust conveys to itself in

14   September of 2007.

15        Then we have the Exhibits 4 and 5, trust deeds, the

16   trust encumbers the property for obligations that it posed.

17        Then we have the Exhibit 9 abstract out of the

18   Metro Title records, from its title search of the property in

19   connection with the closing.  Significantly, that abstract

20   includes a list of conveyances and liens and so forth dating

21   back to 1980.  October 6, 1980.  Zion's Bank reconveyance of

22   the trust deed is the very first thing listed there.  And it

23   goes all the way up to a -- a February 25, 2021 request for

24   notice that was recorded.

25        The date that this has on it, at the first page of

1   Exhibit 1, Tab 9, is 5-11-2021.  I'll submit that that's the

2   same date that Exhibit 10 -- Exhibit 1, Tab 10 -- was recorded.

3   The deed from the trust to the Mulligans.

4           In other words, at no time--and the witness said

5   this--at no time in any record shown in any abstract did Brett

6   Del Valle personally have any interest in this property.  The

7   only evidence before this Court is that Brett Del Valle did not

8   contribute that property to the trust.  The trust bought that

9   property on its own accord.  Brett Del Valle did not contribute

10  that property to the trust.

11          Therefore, Alum Rock can have no lien on that

12  property at all, because the statute says they can only have a

13  lien to the extent of the settlor's contribution, which in this

14  case, so far, the evidence is zero.

15          The -- the other issue, main issue in this case is

16  that, even if there is a -- a right or ability of Alum Rock to

17  reach any extent of that property at all, if Brett was shown in

18  this case ever to have actually contributed that property to

19  the trust, then that would be the extent of their interest.

20  That might be 1 percent.  That might be 25 percent.  It might

21  be 50 percent.

22          We don't know what that is.  And without any

23  knowledge of any contribution by Brett at all, much less the

24  extent of any contribution by Brett, there cannot be a

25  foreclosure allowed on the real property with regard to a writ

1    of execution that is effective only against Brett, on a

2    judgment that only is against Brett, that is not a judgment

3    against the trust.

4            Even if any part of the property was contributed by

5    Brett, and even if any part of the property, therefore, is

6    subject to the writ as claimed by Alum Rock, that is equitably

7    sub -- subordinated to the Mulligans' interest.

8            The Mulligans paid $1.75 million in cash for this

9    property, $712,000 of which paid off a prior lien of the Axos

10   Bank.  The Exhibit 1, Tab 4 trust deed.  Another $948,000 of

11   which went to pay another trust deed, Exhibit 1, Tab 5 --

12   excuse me Exhibit 1 -- yeah, Exhibit 1, Tab 5, the Emerald Bay

13   Capital trust deed, as shown by the Exhibit 8 posting summary.

14           So because the Mulligans paid off those prior

15   encumbrances, which were obligations owed by the trust, not

16   owed by the Mulligans, the law provides that they are equitably

17   subrogated to the position of those liens that they paid off.

18           And that is because the doctrine of equitable

19   subrogation is an equitable doctrine.  It -- it says that

20   judgement lien creditors such as Alum Rock should not be

21   elevated to a priority position which it would not otherwise

22   have had, simply because there was a payoff of other liens and

23   encumbrances on the property when the -- when the judgment here

24   could not -- that's claimed by Alum Rock, the judgment could

25   not be found in a title search.

1       So it -- it would be a windfall to Alum Rock to

2   allow them to foreclose without taking into account and

3   subordinating its interest to this $1.75 million that the

4   Mulligans, as testimony was, were required to pay off in order

5   to close their loan -- in order to close their purchase of the

6   property and get title conveyed to them.

7       They did not do that as a volunteer or an

8   intermeddler.  They did that to pay off an obligation owed by

9   somebody else, because they were required to.

10      So equitably, they ought to enjoy the -- step into

11  the same shoes as that party, and not allow a lien foreclosure

12  by Alum Rock.

13      It's telling, frankly, that the -- the timing of

14  this.  We have the judgment lien of Alum Rock, which is Exhibit

15  7--Exhibit 1, Tab 7--was recorded in November of 2020.  And at

16  that time, the Exhibit 4 and the Exhibit 5 trust deeds were

17  already of record against the property.  So Alum Rock did

18  nothing.

19      And they waited and they waited and they waited,

20  until May of '21, those judgment -- those prior trust deeds get

21  paid off.  And then it's not until June of '21 that Alum Rock

22  then files its writ of execution -- files the application for

23  writ of execution, which is Exhibit 13 in the binder.

24      They did exactly what the law is not -- does not

25  allow them to do.  They laid in wait, knowing that they were

1    junior to those prior encumbrances on the property, and then

2    they sprang up in hopes to enforce a judgment owed by Brett

3    against the Mulligans' property.  And that is an inequitable

4    windfall situation.

5         And it is not inequitable, by contrast, to allow

6    the Mulligans to -- to be subrogated to the priority position

7    of the trust deeds that they paid off, because that is -- that

8    leaves Alum Rock in the exact same position it was before.  It

9    cannot foreclose as against those interests that it could not

10   have foreclosed against anyway.

11        The plaintiff argued in the brief -- or excuse me,

12   the Alum Rock argued in the briefs that -- over the burden of

13   proof and whether there was a requirement for -- it's been our

14   contention all along that under 75-7-505(1), where the statute

15   says that the judgment lien creditor, Alum Rock, can only reach

16   the property to the extent of Brett's contribution in it, that

17   it would be Alum Rock's burden to prove what that interest of

18   Brett was, what his contribution interest was in the property,

19   and therefore what they can foreclose against.

20        Counsel has argued in the briefs that, no, it's --

21   the Mulligans are the plaintiffs in this case, and it therefore

22   is the Mulligans who have the burden of proof on that issue.

23   But if the Court looks at Exhibit 13, the application for writ

24   of execution, and Exhibit 14, the actual writ of execution that

25   were issued out of the Third District Court, Alum Rock is

1    identified as the plaintiff.  Exhibit 14 is the writ of

2    execution that is the subject of, and the basis for the

3    foreclosure sale that they have scheduled for January 21st.

4            In other words, in -- insofar as a potential sale

5    on the 21st goes, it is Alum Rock who is the plaintiff.  It is

6    Alum Rock who, by statute, therefore, has to prove the extent

7    of any interest that they could potentially foreclose on under

8    their writ.

9            And again, even if it was the Mulligans' burden to

10   prove, as plaintiffs in this case, we think, for the reasons

11   I've outlined earlier, that we have met that burden of proof,

12   at least sufficient enough to require the foreclosure sale be

13   restrained pending further discovery and further litigation in

14   due course.

15           When I got here today, I had found that I neglected

16   to put a copy of this case in my materials.  But I do want to

17   provide a citation.  And I'm happy to provide copies later if

18   necessary.  But there's an Arizona case, Sourcecorp Inc. versus

19   Norcutt, it is 258 P.3d 281 from the Arizona Court of Appeals

20   2011, which deals with a case that is --

21           THE COURT:  Give me that citation again.

22           MR. TILT:  Sure.

23           THE COURT:  258 P.3d.

24           MR. TILT:  258 P.3d 281 --

25           THE COURT:  Okay.

1        MR. TILT:  -- Arizona Court of Appeals, 2011.  It's

2   called Sourcecorp versus Norcutt.  The facts of that case are

3   eerily similar to this one.

4        Norcutts paid cash to buy a home.  In that case,

5   the title company had missed a judgment lien held by

6   Sourcecorp.  Sourcecorp initiated a sheriff's sale proceeding,

7   and eventually the court, on appeal, said that equitable

8   subrogation applied and that Sourcecorp could not foreclose

9   against Norcutt.

10       Now obviously you substitute Mulligans for Norcutt

11  and Alum Rock for Sourcecorp, and you have our case here.

12  Mulligans paid cash to buy a home.  There was a judgment lien

13  held by Alum Rock.  And Alum Rock is now attempting to conduct

14  a sheriff's sale.

15       The Court of Appeals in that case accepted the

16  equitable subrogation arguments of the Norcutts, so the folks

17  in the position of -- of Mulligans, explaining that -- that the

18  Norcutts stepped into the shoes of the prior creditors that

19  they had paid off, because they were sub -- oh, the court

20  was -- the court was aware of the doctrine that the property --

21  real property is unique and irreplaceable, and that factored

22  large in the opinion.

23       But the court said that the equitable subrogation

24  doctrine applied, because otherwise Sourcecorp, or Alum Rock,

25  would have been elevated to a priority position just due to a

```
 1   mistake in a title search.

 2           And I'm not suggesting there was actually a mistake

 3   in the title search.  That is what it is.  And the -- the

 4   trust, the seller of the property, did not have any judgment

 5   against it.  The -- the settlor, Brett, if he's a settlor, did

 6   have a judgment against him.  And we concede that that is

 7   recorded.  But it wasn't findable in the judgment record, as

 8   the testimony was, that Brett's name didn't come up in a search

 9   of the judgment records.  So it wasn't findable.

10           And under those facts, the court analyzed the four

11   equitable subrogation elements, which are that the party

12   asserted -- party asserting subrogation has paid the debt.

13   That definitely has occurred in connection with this case.

14           Number two, the party asserting subrogation was not

15   a volunteer.  That also is established in this case.  Because

16   they were required to pay that off to get clear title to the

17   property.

18           Number three, the party asserting subrogation was

19   not primarily liable for the debt.  The face of those trust

20   deeds themselves show that those were debts of the Brett Del

21   Valle Family Trust.  They were not the Mulligans' debts or

22   obligation.

23           And number four, no injustice would be done to the

24   other party by allowing subrogation.  That also is the case

25   here.  Because Alum Rock always was subject to those prior two
```

```
 1    trust deeds.  There's no reason why they should be elevated to

 2    a position to -- that would be a windfall to them, to the

 3    substantial prejudice of the Mulligans, whose real property

 4    would potentially be lost to this judgment lien foreclosure.

 5            So excuse me.  We submit that certainly -- in the

 6    case at large, we think there's a substantial likelihood that

 7    we will prevail.  But we certainly feel like we have shown

 8    sufficient evidence of that for purposes of today's hearing, to

 9    establish the elements for a preliminary injunction.

10            Injunctive relief will be afforded under Rule 65A

11    if there's a substantial likelihood of prevailing on the

12    merits.  And we've discussed that.  Indeed, Your Honor already

13    held in November in the separate case that the Mulligans were

14    entitled to prevail and show what interest of Brett's, if any,

15    the contribution interest, was, in fact, subject to the writ of

16    execution.

17            The second element under Rule 65A is the applicant

18    will suffer irreparable injury.  I quoted the case law earlier

19    where Utah has long recognized that each piece of property is

20    considered legally unique, and therefore irreplaceable.  And

21    therefore, irreparable injury is met.

22            The injury to the applicant outweighs any injury to

23    the restraining party is the third element under 65A.  And

24    again, Mulligans losing their irreplaceable real property

25    versus Alum Rock being forestalled from foreclosing and
```

1    collecting cash money is -- the balance of harms certainly

2    weighs in favor of the Mulligans in this case.

3         And the order -- the final element is that the

4    order or injunction would not be adverse to the public

5    interest.  We submit that absolutely is the case.  It actually

6    would be supportive of the public interest.  Because again,

7    under 75-7-505(1), it is the Alum Rock folks' burden to prove

8    what contribution interest, if any, Brett made to the property,

9    and to prove, therefore, the maximum possible extent of any

10   foreclosure of the Alum Rock lien against that property.

11        So we submit all those elements are met, that the

12   Court ought to issue the preliminary injunction and allow this

13   case to move forward in -- in due course.

14        THE COURT:  Thank you, counsel.

15        MR. TILT:  Thank you.

16        THE COURT:  Response, Mr. Johnson?

17        MR. JOHNSON:  Thank you, Judge.

18        Alum -- Alum Rock continues to believe this is

19   simply the wrong forum for all of these issues to be raised.

20   Again, there is a pending matter in the Third District Court

21   where the Mulligans have already challenged the writ of

22   execution, and whether or not Alum Rock should be able to

23   proceed with the writ of execution.

24        If we look at the Mulligans' Exhibit 15, they've

25   already briefed some of these issues before the Third District

1    Court.  Specifically on page 3, their paragraph 4, it says,

2    "The writ of execution was issued improperly because."  If you

3    look at the second paragraph, they argue, "The writ of

4    execution is available only to seize property in possession or

5    under the control of the judgment debtor, Brett Del Valle, an

6    individual.

7              "However, as shown under item 3, herein above,

8    Brett Del Valle, an individual, does not own the property

9    presently, has not owned it, further, and has never owned the

10   property.  The property has been in the possession and under

11   the --"  And then they continue to mention that the property is

12   now owned to the Mulligans.

13             So for three years now, the Mulligans have been

14   arguing that Alum Rock doesn't have a right to proceed with

15   this writ of execution.  And they had the opportunity to

16   present every argument as to why the writ of execution should

17   not be allowed.  And they -- and they lost, ultimately.

18             They had -- they had other arguments, that the

19   judgment lien wasn't properly recorded.  Went up to the Supreme

20   Court.  The Supreme Court said, you have a writ -- the writ --

21   the judgment lien is valid.  And under Utah law, because Brett

22   Del Valle was the settlor, the judgment lien applies to the

23   property.

24             And -- and now we have more -- more argument, more

25   nuanced arguments about why Alum Rock can't proceed with its

1    writ of execution.  Specifically, we're citing to 75-7-505.  So

2    it clearly states that, "During the lifetime of a settlor, the

3    property of a revocable trust is subject to the claims of the

4    settlor's creditors."  That -- that was argued, briefed in the

5    writ of -- before Judge Mow in the Third District Court.

6           Now they want to argue the second part of that

7    second sentence.  And we believe that those arguments should

8    have been brought.  Should have, could have, been brought

9    before Judge Mow.  And this gets to the issues that we mainly

10   relied on, which is a matter of jurisdiction, and whether this

11   Court should entertain jurisdiction of what is an issue before

12   the Third District.

13          And we have the principle of comity.  There is --

14   there is one particular cite that I -- I want to read.  If I

15   can find it.  It is the Burningham versus United States case.

16   And when you have one district court handling a matter and then

17   another district court is brought in on the same issues -- this

18   is page 11 our -- page 11 of our brief.  "Comity dictates that

19   courts of coordinate jurisdiction not review, enjoin, or

20   otherwise interfere with another's jurisdiction."

21          This Court needs to take a hard look at -- at what

22   are the issues, legal issues, before Judge Mow in the Third

23   District, and decide whether it wants to be enjoining the

24   Second -- Second -- the Third District Court.  We would urge

25   and argue that this Court should not do that.  That if the

1   Mulligans believe they have additional legal arguments about

2   why the writ of execution should not proceed, that those issues

3   should be brought before the Third District Court.

4          They -- they could have brought this very

5   proceeding.  They could have filed a motion for temporary

6   restraining order and a motion for preliminary injunction in

7   the Third District.  They could have made all of these same

8   arguments.

9          The problem they have is, that they didn't bring

10  any of these arguments, back in 2020 and 2021, initially.  And

11  now they're bringing new legal arguments about why the writ of

12  execution should not be allowed to proceed.  This is where the

13  issue of claim -- claim preclusion comes in.  There are no new

14  facts here.  They simply failed to bring these legal arguments

15  before the Third District Court.

16         The Third District Court issued a final ruling --

17  excuse me, issued a final judgment in the matter allowing Alum

18  Rock to proceed with its writ of execution.  That final

19  judgment was then appealed to the Supreme Court, and Judge

20  Mow's decision was upheld.

21         Exhibit 2 to our brief is the ruling and order of

22  Judge Mow, discussing all the legal issues presented by the

23  Mulligans at that time.

24         Exhibit 3 is our -- the Supreme Court decision

25  affirming the decision.  And for those reasons, again, this

```
 1   Court should just decline to exercise jurisdiction.

 2           There's a -- a related legal issue.  This is really

 3   a collateral attack of the Third District Court's decision.

 4   We've included briefing on that.

 5           In terms of process, there's been suggestions that

 6   we are trying to take advantage of -- of the Mulligans somehow.

 7   After the -- or playing games with our writ of execution.

 8           After the Supreme Court issued its ruling, we

 9   immediately contacted the Weber County Sheriff to proceed with

10   our writ of execution.  And in November, they finally were able

11   to move forward with the sale.  They noticed up the sale.  It

12   had nothing to do with the timing of this other matter that was

13   heard before you.  And that sale is now cancelled, pursuant to

14   the Court's order.

15           This -- this matter is now the Mulligans' third

16   attempt to enjoin the sale of this property.  They -- they lost

17   with Judge -- Judge Mow.  They seemingly didn't like the

18   Court's prior ruling in this -- this other matter brought by

19   the other judgment creditor.  I don't know why they withdrew

20   their motion, but they withdrew the motion and then filed this

21   action.

22           That's all the argument I have, unless the Court

23   has any questions.

24           THE COURT:  I don't have any additional questions.

25   Thank you, counsel.
```

```
 1              MR. JOHNSON:  Thank you.

 2              THE COURT:  Any reply, Mr. Tilt?

 3              MR. TILT:  Briefly, yes.

 4         Counsel has said a couple of times that we had

 5    every opportunity to raise every argument to Judge Mow.  But in

 6    fact, we did not.  Theirs was merely a writ proceeding.  The

 7    Utah Supreme Court made it abundantly clear that a writ

 8    proceeding is not an action with respect to real property.

 9         And in the writ proceeding, the court's forms as to

10    the bases for potential objections are merely whether the

11    issuance of the writ is -- is improper, or attackable somehow.

12    Everything that was dealt with in the Third District in the

13    writ proceeding had only to do with statutory compliance for a

14    judgment lien and rule compliance for a writ of execution.  It

15    had nothing whatsoever to do with the real property interests,

16    as the Supreme Court has already said now was correct.  Because

17    that was not an action with regard to real property.

18         And under the venue statute quoted by the Alum Rock

19    court in this case, the Supreme Court, the venue statute says

20    that actions involving real property, quote, "shall be tried in

21    the county in which the subject of the action is situated."

22    There's an ellipsis in there.  Shall.

23         There is no jurisdiction for us to have brought any

24    of our real property claims that are the subject of this case,

25    quiet title, and declaratory judgment and so forth, no
```

```
 1   jurisdiction for us to bring that before Judge Mow.  We
 2   couldn't have brought anything but the claims that we did bring
 3   in connection with Judge Mow.
 4          And we are not here collaterally attacking that.
 5   We understand it's gone up on appeal and we lost on appeal.
 6   But the only thing that was dealt with by Judge Mow, the only
 7   thing that was dealt with by the Utah Supreme Court is whether
 8   there was statutory compliance for a judgment lien, and whether
 9   there were -- was an appropriate writ issued under the
10   requirements of the rule.
11          The Court did not rule on any real property claims.
12   The Court told us that when we tried to invoke the venue
13   statute to say that Judge Mow didn't have authority to issue
14   the writ out of his Court, the Court excoriated us in
15   paragraphs 65 and 66 saying, "There is no cause of action here
16   at all."  Indeed -- quote at page -- paragraph 66 of the
17   Supreme Court opinion.  "Indeed, no cause of action is at issue
18   at all," period.
19          And then it goes on a few sentences later, in
20   paragraph 65, "Simply put, this proceeding," not action, "this
21   proceeding to enforce that judgment through a writ of execution
22   is not an action involving real property governed by the venue
23   statute."
24          So we could not -- we did not bring any of these
25   claims before.  We haven't been rejected on any of these claims
```

```
 1    before.  Counsel says this is our third attempt to -- to get a
 2    bite at this apple.  It's our first attempt.
 3           We were not even a party to the writ case.  That
 4    was between -- that was just a domestication of the judgment
 5    from California between only Alum Rock and Brett Del Valle
 6    personally.  Mulligans were not a party to that.  They had
 7    limited ability to object under the write proceedings.  We
 8    brought what we could brought -- what we could bring.
 9           Counsel -- so -- so we didn't bring that case.  We
10    did attempt to bring Alum Rock into the Single Box case.  And
11    we had that hearing that I mentioned in November with Your
12    Honor.  And counsel queries why we withdrew our motion.  That
13    was because Alum Rock filed this foreclosure action --
14    proceeded with the sheriff sale for the foreclosure.  And there
15    was just no ability for us to do anything in that case.
16           We therefore had to file a new case in order to get
17    this before the Court in a timely manner.  And we felt it was
18    disingenuous to the Court to have two different lawsuits
19    asserting the same claims against Alum Rock.  And we had -- we
20    would have been chided for that by -- by counsel if we had done
21    it that way.  We were trying to keep a clear record, is all.
22           There's no collateral attack on the issuance of the
23    writ.  That's been upheld.  We get it.  Or on whether there's a
24    judgment lien.  We've been up -- that's been upheld.  We get
25    it.
```

1    But as Your Honor noted in the hearing in November,

2    in the Single Box case, Footnote 7 of the Supreme Court opinion

3    in this Alum Rock case, it says that there has not been a

4    determination as to the extent of the lien and that there is a

5    -- it is therefore appropriate for us to have -- put Alum Rock

6    to their burden of proof under the statute to prove what

7    Brett's contribution interest to the property was as a

8    co-settlor, since that is the sole extent of any property they

9    can reach, whether it be by judgment lien or by writ.

10    So with that, Your Honor, I'll submit the motion,

11    unless there are any questions from the Court.

12    THE COURT:  I don't have any additional questions.

13    Thank you, counsel.

14    The matter that's before the Court today is a

15    request for a preliminary injunction.  Much of the argument and

16    evidence and exhibits that have been presented extend well

17    beyond the issues that are directly before the Court.

18    As has been correctly noted by Mr. Tilt in his

19    reply, actions involving executions and objections to

20    executions call into question two specific issues.  And by rule

21    those issues are whether the execution -- whether the writ was

22    properly issued, and the second issue, which is not

23    particularly relevant here, is whether the property is exempt

24    from execution.  That is also a proper basis for objecting to a

25    writ of execution.

1       As Mr. Tilt has also correctly acknowledged, there

2  is no question as to the propriety of the writ of execution.

3  That's not an issue that's before the Court.  That has been

4  decided.  It was decided by Judge Mow.  The -- that issue was

5  appealed, and has been decided by the Supreme Court.  And this

6  Court is not in a position to do anything with respect to those

7  determinations.

8       The -- the holding of the Supreme Court, and this

9  is found in paragraph 3, they set forth three specific

10  holdings.  "We hold that Alum Rock created a judgment lien when

11  it recorded the judgment in the county recorder's office."

12  That is no longer subject to dispute.  That's been determined.

13  That's final.

14       Second, and I'm quoting again, "We hold that the

15  writ was available against the property, even though the title

16  was held in the name of the revocable trust, because Brett

17  retained an indicia of ownership over the property when the

18  lien was created."  That issue is no longer the subject of

19  dispute and is no longer the subject of consideration by this

20  Court.  That has been decided by the Supreme Court.

21       So the writ was available, and Alum Rock created a

22  judgment lien.  So the lien exists and the writ exists.

23       And number three, "We hold that the Mulligans have

24  not identified a relevant limitation on the district court's

25  jurisdiction that would prevent the issuance of the writ."

```
 1            Those three holdings, in composite, establish the

 2   validity of the writ, and that it has attached to the property.

 3   And those are questions of enforcement of the writ.  And they

 4   are not before this Court, and are not considered by this

 5   Court.  They have been resolved.

 6            Whether there were arguments made by the Mulligans

 7   to Judge Mow in 2021 before the issues went to appeal does not

 8   leave those issues pending now.  Those issues are not pending.

 9   Those issues have been decided.  And whatever arguments the

10   Mulligans may have made with respect to either the validity or

11   enforceability of the writ itself, its issuance, its attachment

12   to the property interest, and the absence of any proper

13   objection, have all been determined.

14            What the Supreme Court did not determine--and this

15   is, again, the focus of the Court's prior discussion in the

16   related case-- addressed in Footnote 7, which is -- and I'm

17   quoting from that footnote.  "Neither side has addressed

18   whether Traci's joint ownership of the property has any effect

19   on the judgment lien.  For that reason, we express no opinion

20   on the matter."

21            There is not a determination by the Supreme Court

22   as to what, or the extent of the property interest of Mr. Del

23   Valle, or Brett Del Valle, or however you pronounce the name,

24   I'm not sure.  And I know everyone struggled and -- and

25   pronounced that a little bit differently.  That's not
```

 1   particularly relevant.

 2           But the question is, the extent of the interest to

 3   which the judgment attaches.  There is no question that there

 4   is a judgment.  There is no question that the judgment created

 5   a lien.  There is no question that that judgment lien attaches

 6   to the property.  The question is, what is the property?

 7           Which raises the very question that Mr. Johnson

 8   suggests.  Is this action an action to enforce the judgment, or

 9   is it an action to determine an interest in property?

10           The language of the Supreme Court decision is

11   helpful in that regard.  In this paragraph 66, which counsel

12   just referred to in closing, there is a discussion -- or 65.

13   There is a discussion about the property interest and the

14   distinction between an action for enforcement, the writ of

15   execution, and an action to determine a property interest.  And

16   I quote from paragraph 65.  In fact, I'm going to read the

17   whole paragraph.

18           "The Mulligans have not identified any relevant law

19   that would limit a district court's authority to issue a writ

20   of execution to be effectuated in a county outside that court's

21   judicial district."

22           That is the heart of the ruling of the Supreme

23   Court.  The Third District Court did have the authority to

24   issue a writ against property in Weber County.  And that is no

25   longer in dispute.

1    And then I continue the quote.  "We first cite a

2    venue -- they first cite a venue statute which provides that,

3    quote, "actions" and that's in internal quotes, for certain,

4    quote, "causes involving real property shall be tried in the

5    county in which the subject of the action is situated."  And

6    there is a reference to section 78B-3-301(1).

7    And then the Supreme Court goes on, "Those causes

8    are for the recovery of real property, or of an estate or

9    interest in the property for determination of the right or

10   interest in the property, for injuries to real property, for

11   the partition of real property, for the, quote, foreclosure of

12   all liens and mortgages on real property."

13   In this case, the relevant language to this Court

14   is the question at the beginning, when it says that these

15   causes are--and I'm going to simply focus on the language which

16   this Court believes is critical for a current determination--so

17   those causes are, or specifically include, the determination of

18   the right or interest in the property.

19   The question that's before this Court today is,

20   what is the right or interest of Brett Del Valle in the

21   property?  What is that right?  The Supreme Court declined to

22   opine on that very question in Footnote 7, saying that it's

23   expressing no opinion on the impact of the ownership of someone

24   else.

25   The ownership of someone else, a joint owner

1   perhaps, affects the joint interest of the other joint owner.

2   So determining the impact of that joint owner, the spouse,

3   co-settlor in this case, requires an evaluation of the

4   respective interests, at least of these two parties.

5          That is the determination of an interest in the

6   property.  And that question is entirely independent of the

7   question of the validity or the authority of the court to issue

8   the writ of execution.

9          It -- the Supreme Court certainly acknowledged by

10  its citation the reference to the rule that says, "The

11  determination of causes involving the real property, which by

12  its own language includes determination of interest in the

13  property, are to be tried in the county where the property is

14  located."

15         The Third District Court has not been asked to

16  determine an interest in property.  It's not been asked to

17  determine what the respective rights of the co-settlors are, or

18  the -- the ownership that may be reflected by either of them,

19  or the contributions that they have made.  That's not been

20  addressed in the Third District.  That is a determination of

21  the interest in property.

22         And the Court notes, and the Supreme Court did

23  essentially the same thing in its discussion of what the focus

24  of that appeal was, which is the enforcement action, the

25  execution itself, the writ of execution.  Is the writ of

1   execution valid?  And the Supreme Court determination that it

2   was.

3           In -- and it references this interest in real

4   property.  And refers to the prior litigation in California,

5   for example.  And indicates that there's no indication that the

6   litigation in California had anything to do with real property.

7   And yet, that judgment that was obtained in California formed a

8   proper basis for the entry of a judgment in the Third District.

9   That recording of that judgment with the county recorder's

10  office in Weber County, which created a lien for the holding of

11  the Supreme Court.  And an execution issued by the Third

12  District Court based upon that lien.

13          So there's a judgment that was done in California.

14  That doesn't mean the Third District Court stepped into that

15  judgment or litigated any issue with respect to that judgment.

16  That was not the issue before the Third District Court.  And it

17  didn't need to be.  That was entirely outside of what the Third

18  District Court was doing.

19          What the Third District Court did was pick it up as

20  an enforcement action.  A request for a writ.  They granted the

21  writ.  The Supreme Court determined that that was proper and

22  the writ is enforceable.

23          Now a question has arisen, what is the property --

24  what is the property interest that may be sold pursuant to that

25  writ?  That's not a determination of whether the writ was

1   validly issued, or whether the Third District Court had the

2   authority to issue that writ.  That is a question of what is

3   the property interest involved?  And that is the express

4   question on which the Supreme Court declined to state an

5   opinion.  Because that would involve a determination of a

6   property interest.

7          And so the ruling of the Court is, the issue that

8   is before this Court is a separate interest.  And that is the

9   determination of the interest in the property.  And that that

10  is properly before this Court, and would not be properly

11  referable to the Third District.

12         The Third District is not in a position to

13  entertain an argument that, "Well, this property in Weber

14  County belongs 50 percent to so-and-so and 40 percent to

15  somebody else.  Or 30/60.  Or 30/70 -- 90 -- or 30/70, or

16  90/10, or there's no interest at all.  We're going to determine

17  that there is no interest in the property, or that there's 100

18  percent ownership in the property."  That is a determination of

19  the interest in the property.  And that is not a proper

20  question for the Third District Court to determine.  The

21  determination of the interest in the property lies in this

22  court.

23         Now, I must say the Court has not been impressed by

24  the multiple filings of actions by the Mulligans in this court

25  which have raised similarly -- similar or overlapping issues.

 1   I understand that there has been shortness of time, and so

 2   certainly some allowance has to be made for that.

 3            But the question, and the ruling of this Court, is

 4   that there is a property interest that has to be determined.

 5   Now that ruling does not impair the writ of execution at all as

 6   far as its validity and its enforcement.  But what it does do

 7   is require that the execution not be confusing or inappropriate

 8   in its scope.  And that is the execution may properly proceed

 9   against the interest of Brett Del Valle in the defined

10   property.

11            The judgment lien has attached to it, and the

12   execution is appropriate.  And whatever Brett Del Valle has may

13   be the subject of a proper execution.  But the entire property

14   has not been determined by this Court to be within the interest

15   of Brett Del Valle.  So any suggestion in the execution that

16   the entire property may be sold, and that the buyer therefore

17   may believe that they're obtaining some fee simple interest in

18   the entire property, would be inappropriate.  And for that

19   reason, the Court believes that a preliminary injunction is

20   appropriate, based upon the scope of the property interest that

21   is perceived to be covered by the writ.

22            The Court does nothing at all to undermine or

23   impair the validity of the writ, the validity of its issuance,

24   or its current enforceability.  But the ruling of the Court is

25   that writ may only extend to whatever interest Brett Del Valle,

1  including his individual interest or his interest as a settlor

2  of the trust, may have in the property.  Those are the

3  determinations of the Supreme Court.  Those interests are

4  subject to execution.  But those interests have not yet been

5  determined, and there is a dispute as to what those interests

6  are.

7          And so if Alum Rock wants to execute on those

8  interests in the property, Alum Rock may.  But the same

9  situation would occur, for example, if there were a deed that

10 conveyed this particular property to five different individuals

11 and a judgment is obtained against one.  That judgment, if a

12 writ of execution is sought, regardless of the county in which

13 it was sought, can't execute on the judgment of all of the

14 individuals that are owners of the property.  It can only

15 execute on the interest of the individual who is subject to the

16 judgment.  And that's the same limitation that the Court is

17 imposing here.

18         And so whatever interest Brett Del Valle has either

19 individually or as a trustee of the trust is subject to

20 execution.  But in order to avoid confusion in title ownership

21 or anything else, the Court will require that the execution be

22 so limited.  It's valid.  It's enforceable.  But it is

23 restricted to the interest of Brett Del Valle, either

24 individually, or as a settlor of the trust in the property.

25         And so that is the ruling of the Court.  And the

1    preliminary injunction as to the current proposed sale, which

2    contains no such limitation on the interest of the property to

3    be sold, is granted.

4              Now, I -- I am aware that both by rule and in the

5    request of Alum Rock, there was a request that a bond be

6    posted, a security be posted in this case to protect the

7    interest of Alum Rock.  The Court declines to require that a

8    bond be posted in this case, for the reason that there has

9    already been a determination by the Supreme Court that there is

10   a lien, that that lien is valid, and that it encumbers the

11   property.

12             There's been no showing by Alum Rock, who is

13   requesting the bond, that the property has the possibility of

14   declining in value, or that it might be lost or that it might

15   be removed from the jurisdiction of the court.  It's real

16   estate.  And that real estate certainly has value.  And there's

17   been no showing of what bond may be appropriate to protect that

18   value from any potential loss or damage that may occur while

19   the injunction is in effect.

20             So the Court grants the preliminary injunction as

21   expressly provided and limited by the Court.  That is, the

22   execution may not go forward in the current extent that

23   suggests a sale of the entire property.  And the Court will not

24   require that a bond be posted to support that preliminary

25   injunction.

*Cecilee Wilson, CSR, RDR, CRR        801.891.3312*

1          So Mr. Tilt, I'm going to ask that you prepare a

2    brief order consistent with that determination.

3          Significantly, the Court is making no ruling

4    whatever on issues of equitable subrogation or the nature of

5    extent of anyone's interest in the property.  Those are

6    determination of real property interest.  They cannot be made,

7    certainly in connection with a preliminary injunction hearing,

8    to address the sufficiency of a writ of execution.  They may

9    very well be relevant and important for determination in the

10   case, but they are not before the Court today.

11         The Court also notes that the Court makes no ruling

12   today with respect to any other action in the prior case.

13   However, I am going to just make a couple of cautionary

14   statements about that.

15         The Court has issued a ruling in that case, based

16   upon the motion of the Mulligans, and the Court expects that an

17   order will be submitted on that ruling.  There has been a

18   suggestion that, well, we're going to withdraw that motion.  If

19   there is going to be a withdrawal of the motion, I will require

20   a hearing on the withdrawal of that motion to determine the

21   propriety of withdrawing the motion after the Court has ruled

22   on it.

23         That would, perhaps, be the same suggestion as

24   suggesting that a judgment, once entered by the court, can be

25   entirely voided simply by seeking to dismiss the action on

```
 1   which the judgment was originally obtained.

 2            I'm not making a ruling right now.  But I am

 3   certainly not endorsing the suggestion that a party may await

 4   the ruling of the Court to determine whether they really want

 5   to go forward with their motion.  That determination is made

 6   when the motion is argued.  If it's going to be withdrawn, it

 7   can be withdrawn before the Court makes its ruling.

 8            But after the Court makes its ruling, there is a

 9   ruling.  And that does not permit a party simply to withdraw

10   the motion because they don't like the result of the ruling.

11            So in this case, there is a ruling.  The Court

12   still expects a judgment.  If you want to have an issue, or if

13   you want to have argument on a motion to withdraw post

14   determination, that can be considered.  But the Court has not

15   simply accepted it at face value.  And I just want to make sure

16   that everyone is aware of that.

17            So that's where we are.  The preliminary injunction

18   is granted.  And that is as far as we're going.  And the only

19   impact on the execution is that the current description of the

20   property that may be sold is inappropriate, or overbroad, given

21   the property interest that may be properly subject to that

22   execution.

23            So I am not precluding the execution from going

24   forward, and I am not imposing any restriction on Alum Rock

25   with respect to the determination or enforceability of that
```

```
1    writ, but I am requiring that it be more -- that it more
2    properly define the interest that is subject to execution prior
3    to its going forward.
4              So again, Mr. Tilt, I'm going to ask that you
5    prepare documentation consistent with the ruling.
6              MR. TILT:  Thank you.
7              THE COURT:  All right.
8              Are there any questions, Mr. Tilt, that you have
9    regarding the Court's ruling today in connection with that
10   assignment to make the preparation?
11             MR. TILT:  I don't think so.  No.  Thank you.
12             THE COURT:  All right.
13             Mr. Johnson, any question regarding the ruling of
14   the Court today?
15             MR. JOHNSON:  No specific question on the ruling.
16   Procedurally, I don't know if the Court can offer any direction
17   on where the Court would like these legal issues to be
18   determined, in the prior action, or what we call the second
19   lawsuit in our briefing, or in a new matter, this case.
20   Where -- where does -- where does the Court want these legal
21   issues determined?  Is that perhaps the subject of the
22   briefing?
23             THE COURT:  And I suppose the best answer I can
24   give to that question is I can't be your attorney, counsel.  I
25   have to deal with what's before me.  And I can only resolve
```

```
 1   disputes that are presented to me.

 2            There are now two cases.  Are there arguments that

 3   could be raised that one should be continued and another

 4   dismissed or they ought to be consolidated?  Those are

 5   certain -- certainly appropriate questions for legal

 6   determination.  But they are not before the Court today.

 7            I'm not addressing motions in either of those cases

 8   today, other than the question of the enforceability of the

 9   writ of execution.  That, I have ruled on.  But I've made no

10   rulings on any other issues in other cases.

11            I've had some commentary on those cases.  That's

12   intended simply to inform the parties, in an effort to avoid

13   unnecessary consumption of either legal resources or judicial

14   resources, in matters that may or may not be appropriate for

15   further consideration.

16            But the determination strategically as to how those

17   matters should proceed, or if they should proceed, has to be

18   left to counsel.  And I'm not -- I'm not in a position to

19   provide legal advice on either side on those questions.  And

20   that probably was an inadequate answer, but that's probably as

21   far as I can go.

22            MR. JOHNSON:  Understood.

23            THE COURT:  All right.  Anything else, Mr. Johnson?

24            MR. JOHNSON:  No, Judge.

25            THE COURT:  All right.  Thank you.
```

1          I will make one other aside.  And that is, with

2    respect to Metro National Title, I don't know whether you were

3    involved at the time of the Utah Title dissolution and Metro

4    Title's acquisition of various interests, I think, that were

5    handled by Mr. Newman at that time, but that name, as it came

6    back up, just sparked several memories, as -- as I was involved

7    as the trustee in the Utah Title case.  That just goes back a

8    lot of years, and it was just interesting to hear that name

9    coming back up again.

10          So anyway, thank you all very much.  And I

11   appreciate the diligence and effort of the parties and the

12   presentation.  Certainly these are unique issues.  And as even

13   I've looked at the briefing, many of them have not been

14   definitely determined here in Utah.

15          The issue of the Supreme Court kind of established

16   new law in the State of Utah, and we are at the point of

17   addressing its impact.  And certainly I appreciate the

18   excellent work of competent counsel in presenting those

19   questions.

20          So thank you.  And we are in recess until the

21   Court's afternoon calendar.  Thank you.

22          (Proceedings concluded.)

23

24

25

```
 1   STATE OF UTAH          )
                            )
 2   COUNTY OF SALT LAKE )

 3              I, CECILEE WILSON, Certified Shorthand

 4   Reporter for the State of Utah, certify:

 5              That I received the audio recording in this

 6   matter, that I transcribed it into typewriting, and that a

 7   full, true, and correct transcription of said audio recording

 8   so recorded and transcribed is set forth in the foregoing pages

 9   inclusive, except where it is indicated that the recording was

10   inaudible.

11              I FURTHER CERTIFY that I am neither counsel

12   for nor related to any party to said action nor in anywise

13   interested in the outcome thereof.

14              Certified and dated this 17th day of February,

15   2025.

16

17              Cecilee Wilson
                _____
18              CECILEE WILSON, CSR, RDR, CRR
                Certified Shorthand Reporter
19              for the State of Utah

20

21

22

23

24

25
```

## $

**$1,775,000** [1] - 20:13
**$1,775,896.73** [2] - 20:7, 45:19
**$1.75** [2] - 51:8, 52:3
**$712,000** [2] - 20:21, 51:9
**$948,000** [2] - 20:25, 51:10

## '

**'21** [2] - 52:20, 52:21
**'78** [1] - 33:12
**'81** [1] - 33:12

## 1

**1** [68] - 15:22, 16:13, 16:15, 16:19, 16:21, 16:22, 16:23, 16:25, 17:2, 17:3, 17:11, 17:13, 17:15, 17:16, 18:7, 18:25, 19:5, 19:6, 19:14, 19:19, 19:21, 21:5, 21:9, 21:11, 22:2, 22:8, 22:9, 22:12, 22:17, 22:21, 23:6, 23:7, 24:7, 24:11, 24:13, 25:19, 25:25, 26:2, 26:10, 27:23, 27:24, 28:12, 28:14, 28:25, 29:11, 30:10, 30:12, 30:13, 30:22, 37:3, 39:13, 39:14, 39:15, 47:5, 48:24, 50:1, 50:2, 50:20, 51:10, 51:11, 51:12, 52:15
**10** [6] - 15:11, 15:14, 16:22, 16:23, 50:2
**100** [1] - 73:17
**1031** [1] - 10:7
**1036** [1] - 10:7
**11** [8] - 21:2, 21:11, 22:8, 22:12, 22:16, 22:17, 60:18
**12** [5] - 22:18, 23:1, 23:3, 23:5, 23:6
**13** [6] - 46:22, 47:1, 47:4, 47:5, 52:23, 53:23
**14** [8] - 4:1, 31:6, 46:22, 47:1, 47:4, 47:5, 53:24, 54:1
**15** [5] - 46:22, 47:1, 47:4, 47:5, 58:24
**17** [1] - 31:23
**18** [1] - 7:5

## 19

**19** [1] - 33:7
**1978** [1] - 33:11
**1980** [5] - 33:11, 34:8, 34:10, 49:21
**1984** [3] - 32:10, 32:12, 33:5
**1994** [2] - 32:11, 32:12

## 2

**2** [6] - 27:25, 28:7, 28:11, 28:12, 49:8, 61:21
**2002** [1] - 49:10
**2007** [3] - 28:4, 49:10, 49:14
**2011** [2] - 54:20, 55:1
**2017** [1] - 30:11
**2020** [4] - 30:12, 30:14, 52:15, 61:10
**2021** [3] - 49:23, 61:10, 68:7
**2024** [5] - 5:17, 6:22, 7:4, 7:5, 48:19
**2025** [1] - 4:1
**210904774** [1] - 5:17
**21st** [3] - 48:1, 54:3, 54:5
**240908957** [1] - 4:5
**25** [2] - 49:23, 50:20
**258** [3] - 54:19, 54:23, 54:24
**26** [3] - 5:17, 48:19
**281** [2] - 54:19, 54:24

## 3

**3** [11] - 28:13, 28:20, 28:22, 28:24, 28:25, 49:2, 49:12, 59:1, 59:7, 61:24, 67:9
**30/60** [1] - 73:15
**30/70** [2] - 73:15
**3066407** [2] - 22:8, 22:9

## 4

**4** [15] - 6:5, 19:7, 19:14, 19:18, 19:19, 22:22, 30:10, 30:17, 36:10, 49:15, 51:10, 52:16, 59:1
**40** [1] - 73:14
**4th** [1] - 6:21

## 5

**5** [15] - 18:7, 18:25, 19:4, 19:5, 22:2,

## 22:9

22:9, 22:21, 30:12, 30:17, 30:22, 36:10, 49:15, 51:11, 51:12, 52:16
**5-11-2021** [1] - 50:1
**5-7-505** [1] - 40:5
**50** [2] - 50:21, 73:14
**53** [1] - 6:10

## 6

**6** [9] - 23:8, 24:7, 24:8, 24:10, 24:11, 24:14, 30:22, 37:3, 49:21
**65** [4] - 64:15, 64:20, 69:12, 69:16
**65A** [3] - 57:10, 57:17, 57:23
**66** [3] - 64:15, 64:16, 69:11
**694** [1] - 10:7

## 7

**7** [18] - 6:6, 8:5, 24:13, 24:15, 25:19, 25:24, 25:25, 29:10, 29:11, 29:15, 29:20, 30:13, 52:15, 66:2, 68:16, 70:22
**75-7-505** [2] - 39:4, 60:1
**75-7-505(1** [5] - 9:7, 9:13, 48:6, 53:14, 58:7
**75-7-505(1)** [1] - 10:11
**78B-3-301(1)** [1] - 70:6

## 8

**8** [11] - 5:5, 14:21, 19:21, 21:3, 21:5, 21:6, 21:8, 21:9, 45:11, 51:13

## 9

**9** [8] - 5:6, 26:2, 26:10, 27:23, 29:3, 29:19, 49:17, 50:1
**90** [1] - 73:15
**90/10** [2] - 73:16
**902** [1] - 5:7
**9th** [1] - 7:4

## A

**ability** [3] - 50:16, 65:7, 65:15
**able** [4] - 6:18, 11:7,

58:22, 62:10
**absence** [1] - 68:12
**absolutely** [1] - 58:5
**abstract** [16] - 25:2, 25:6, 25:14, 25:16, 26:4, 26:7, 26:25, 27:15, 29:3, 29:19, 42:19, 42:22, 43:6, 49:17, 49:19, 50:5
**abstracted** [2] - 25:1, 44:1
**abstracting** [3] - 33:16, 33:23, 34:1
**abstractor** [1] - 33:13
**abstracts** [2] - 41:15, 43:8
**abundantly** [1] - 63:7
**accepted** [2] - 43:20, 55:15, 78:15
**accident** [1] - 10:1
**accord** [1] - 50:9
**account** [2] - 20:21, 52:2
**accurate** [1] - 27:15
**acknowledged** [2] - 67:1, 71:9
**acquired** [1] - 28:5
**acquisition** [1] - 81:4
**act** [1] - 17:22
**acted** [1] - 14:19
**action** [25] - 7:18, 8:13, 8:16, 8:23, 9:2, 62:21, 63:8, 63:17, 63:21, 64:15, 64:17, 64:20, 64:22, 65:13, 69:8, 69:9, 69:14, 69:15, 70:5, 71:24, 72:20, 77:12, 77:25, 79:18
**actions** [2] - 63:20, 66:19, 73:24
**actions"** [1] - 70:3
**actual** [4] - 5:11, 32:22, 32:23, 53:24
**additional** [4] - 46:20, 61:1, 62:24, 66:12
**address** [2] - 13:4, 77:8
**addressed** [3] - 68:16, 68:17, 71:20
**addresses** [2] - 35:13, 35:16
**addressing** [2] - 80:7, 81:17
**administer** [2] - 31:13, 31:15
**administered** [1] - 31:25
**administration** [1] - 32:14

**admissibility** [1] - 26:21
**admission** [13] - 15:10, 17:11, 18:25, 19:14, 21:3, 22:12, 23:1, 24:6, 25:18, 26:10, 28:7, 28:20, 46:22
**admitted** [1] - 27:21
**advantage** [1] - 62:6
**adverse** [1] - 58:4
**advice** [1] - 80:19
**affairs** [1] - 12:13
**affect** [2] - 36:11
**affects** [1] - 71:1
**affirming** [1] - 61:25
**afforded** [1] - 57:10
**afternoon** [1] - 81:21
**agent** [1] - 14:19
**agreement** [1] - 17:22
**ahead** [1] - 9:22
**al** [1] - 25:8
**alike,"** [1] - 10:5
**all,"** [1] - 64:18
**alleged** [1] - 35:19
**allow** [5] - 52:2, 52:11, 52:25, 53:5, 58:12
**allowance** [1] - 74:2
**allowed** [4] - 11:9, 50:25, 59:17, 61:12
**allowing** [2] - 56:24, 61:17
**Alum** [76] - 4:5, 4:10, 5:15, 5:19, 5:22, 5:24, 6:7, 6:16, 7:3, 7:5, 7:13, 7:19, 8:13, 8:14, 9:8, 9:20, 9:23, 9:25, 10:20, 11:6, 25:7, 30:13, 30:17, 30:23, 36:12, 41:3, 48:1, 50:11, 50:16, 51:6, 51:20, 51:24, 52:1, 52:12, 52:14, 52:17, 52:21, 53:8, 53:12, 53:15, 53:17, 53:25, 54:5, 54:6, 55:11, 55:13, 55:24, 56:25, 57:25, 58:7, 58:10, 58:18, 58:22, 59:14, 59:25, 61:17, 63:18, 65:5, 65:10, 65:13, 65:19, 66:3, 66:5, 67:10, 67:21, 75:7, 75:8, 76:5, 76:7, 76:12, 78:24
**American** [5] - 31:22, 32:7, 32:8, 32:10, 33:9
**amount** [1] - 20:7
**analysis** [1] - 32:3

analyzed [1] - 56:10
Annotated [1] - 40:4
another's [1] - 60:20
answer [2] - 79:23, 80:20
anticipate [1] - 4:20
anticipating [1] - 47:11
anyway [3] - 18:16, 53:10, 81:10
apologies [2] - 10:16, 10:19
appeal [5] - 55:7, 64:5, 68:7, 71:24
appealed [2] - 61:19, 67:5
Appeals [3] - 54:19, 55:1, 55:15
appear [4] - 15:20, 25:13, 25:15, 41:14
appearances [1] - 4:6
apple [1] - 65:2
applicant [2] - 57:17, 57:22
application [2] - 52:22, 53:23
applied [2] - 55:8, 55:24
applies [1] - 59:22
appreciate [2] - 81:11, 81:17
approach [2] - 4:17, 13:23
appropriate [11] - 9:2, 35:17, 35:24, 36:19, 64:9, 66:5, 74:12, 74:20, 76:17, 80:5, 80:14
April [1] - 28:4
argue [3] - 59:3, 60:6, 60:25
argued [7] - 8:9, 11:14, 53:11, 53:12, 53:20, 60:4, 78:6
arguing [1] - 59:14
argument [12] - 4:15, 11:18, 26:21, 47:6, 47:14, 59:16, 59:24, 62:22, 63:5, 66:15, 73:13, 78:13
arguments [18] - 11:6, 11:9, 11:19, 11:22, 12:1, 12:24, 55:16, 59:18, 59:25, 60:7, 61:1, 61:8, 61:10, 61:11, 61:14, 68:6, 68:9, 80:2
arisen [1] - 72:23
arises [1] - 35:4
Arizona [3] - 54:18,

54:19, 55:1
ascertainment [1] - 48:3
aside [1] - 81:1
assert [1] - 10:10
asserted [2] - 35:19, 56:12
asserting [4] - 56:12, 56:14, 56:18, 65:19
assignment [1] - 79:10
Associate [1] - 33:22
Associated [2] - 33:7, 33:9
assumption [1] - 18:24
attach [3] - 8:20, 9:9, 9:13
attached [3] - 8:19, 68:2, 74:11
attaches [4] - 8:6, 8:7, 69:3, 69:5
attachment [1] - 68:11
attack [2] - 62:3, 65:22
attackable [1] - 63:11
attacked [1] - 7:10
attacking [5] - 8:3, 8:18, 8:19, 64:4
attempt [5] - 44:10, 62:16, 65:1, 65:2, 65:10
attempting [1] - 55:13
attorney [1] - 79:24
audio [1] - 6:21
authentication [1] - 5:7
authority [6] - 17:22, 64:13, 69:19, 69:23, 71:7, 73:2
authorization [1] - 21:22
available [3] - 59:4, 67:15, 67:21
avoid [3] - 12:12, 75:20, 80:12
await [1] - 78:3
aware [5] - 26:15, 39:10, 55:20, 76:4, 78:16
Axos [5] - 20:14, 20:20, 20:21, 29:24, 51:9

**B**

background [2] - 7:24, 11:3
balance [1] - 58:1
Bank [6] - 19:11, 20:14, 20:20, 20:21,

49:21, 51:10
Bar [1] - 34:5
bar [1] - 34:13
barred [1] - 34:7
Based [2] - 30:8, 44:19
based [6] - 4:14, 14:12, 45:2, 72:12, 74:20, 77:15
bases [1] - 63:10
Basinview [2] - 49:8, 49:11
basis [7] - 5:15, 27:8, 27:21, 34:24, 54:2, 66:24, 72:8
Bates [2] - 27:6
Bay [8] - 18:21, 20:17, 20:25, 21:20, 21:22, 22:1, 30:11, 51:12
because." [1] - 59:2
become [3] - 34:7, 43:12, 43:24
beginning [1] - 70:14
behind [1] - 43:9
believes [2] - 70:16, 74:19
belongs [1] - 73:14
Ben [1] - 4:10
bench [1] - 4:17
beneficiary [2] - 18:15, 18:22
best [2] - 18:5, 79:23
better [1] - 7:12
between [10] - 11:11, 11:17, 18:12, 19:8, 28:15, 28:16, 30:2, 65:4, 65:5, 69:14
beyond [2] - 34:13, 66:17
BFPs [1] - 11:23
biggest [1] - 12:3
binder [16] - 4:19, 10:17, 14:21, 14:23, 15:14, 15:21, 15:23, 16:3, 16:4, 16:12, 16:18, 17:1, 17:4, 19:7, 38:13, 52:23
binding [5] - 35:18, 35:24, 36:17, 40:12, 43:21
bit [3] - 12:6, 47:18, 68:25
bite [1] - 65:2
Blake [3] - 13:17, 13:18, 14:9
BLAKE [1] - 14:1
BOFI [3] - 19:10, 30:9
bond [5] - 76:5, 76:8, 76:13, 76:17, 76:24
book [1] - 22:2

borrowers [1] - 19:10
bought [1] - 50:8
Box [5] - 5:16, 5:20, 7:20, 65:10, 66:2
Bradley [1] - 4:7
Brett [71] - 6:13, 7:15, 9:10, 11:12, 11:13, 11:14, 11:17, 17:20, 17:22, 18:13, 19:9, 25:3, 25:11, 28:4, 28:16, 28:18, 29:5, 29:8, 30:2, 37:25, 38:15, 38:18, 38:20, 38:23, 39:10, 39:18, 39:19, 40:2, 40:6, 40:22, 41:12, 41:19, 41:22, 41:24, 42:10, 44:11, 44:18, 48:17, 48:21, 49:2, 49:5, 49:9, 50:5, 50:7, 50:9, 50:17, 50:23, 50:24, 51:1, 51:2, 51:5, 53:2, 53:18, 56:5, 56:20, 58:8, 59:5, 59:8, 59:21, 65:5, 67:16, 68:23, 70:20, 74:9, 74:12, 74:15, 74:25, 75:18, 75:23
Brett's [5] - 9:13, 53:16, 56:8, 57:14, 66:7
brief [6] - 5:2, 12:5, 53:11, 60:18, 61:21, 77:2
briefed [2] - 58:25, 60:4
briefing [9] - 7:10, 9:4, 10:7, 27:4, 27:7, 62:4, 79:19, 79:22, 81:13
Briefly [1] - 63:3
briefs [2] - 53:12, 53:20
bring [9] - 5:22, 61:9, 61:14, 64:1, 64:2, 64:24, 65:8, 65:9, 65:10
bringing [1] - 61:11
brings [2] - 5:14, 7:24
brought [11] - 7:19, 60:8, 60:17, 61:3, 61:4, 62:18, 63:23, 64:2, 65:8
burden [7] - 53:12, 53:17, 53:22, 54:9, 54:11, 58:7, 66:6
Burningham [1] - 60:15
business [5] - 27:10,

27:13, 27:17, 27:18
buy [2] - 55:4, 55:12
buyer [1] - 74:16
buyers [1] - 30:4
BY [2] - 14:6, 37:2

**C**

calendar [1] - 81:21
California [8] - 10:23, 19:11, 65:5, 72:4, 72:6, 72:7, 72:13
cancelled [1] - 62:13
cannot [3] - 50:24, 53:9, 77:6
capacity [8] - 31:7, 31:10, 31:24, 31:25, 40:6, 40:23, 41:13, 41:25
Capital [4] - 20:17, 21:20, 21:22, 51:13
caption [1] - 24:16
care [1] - 12:12
case [67] - 4:15, 5:16, 5:18, 5:20, 5:22, 6:7, 7:20, 7:22, 8:2, 8:8, 8:10, 8:13, 8:14, 8:17, 8:22, 10:6, 10:14, 12:6, 14:15, 18:4, 48:4, 48:15, 50:14, 50:15, 50:18, 53:21, 54:10, 54:16, 54:18, 54:20, 55:2, 55:4, 55:11, 55:15, 56:13, 56:15, 56:24, 57:6, 57:13, 57:18, 58:2, 58:5, 58:13, 60:15, 63:19, 63:24, 65:3, 65:9, 65:10, 65:15, 65:16, 66:2, 66:3, 68:16, 70:13, 71:3, 76:6, 76:8, 77:10, 77:12, 77:15, 78:11, 79:19, 81:7
Case [1] - 5:17
cases [4] - 80:2, 80:7, 80:10, 80:11
Cases [1] - 4:5
cases." [1] - 12:17
cash [5] - 46:3, 51:8, 55:4, 55:12, 58:1
caught [1] - 33:18
causes [5] - 70:4, 70:7, 70:15, 70:17, 71:11
cautionary [1] - 77:13
certain [4] - 41:7, 41:9, 70:3, 80:5
certainly [11] - 35:17, 57:5, 57:7, 58:1,

71:9, 74:2, 76:16, 77:7, 78:3, 80:5, 81:17
**Certainly** [1] - 81:12
**certifications** [1] - 34:12
**certified** [4] - 5:6, 46:23, 46:25, 47:2
**certify** [3] - 35:1, 35:2, 35:9
**challenged** [1] - 58:21
**change** [3] - 20:21, 30:17, 30:18
**changed** [1] - 24:2
**check** [2] - 24:4
**cheek** [1] - 47:18
**chided** [1] - 65:20
**chief** [1] - 32:9
**choice** [2] - 7:17, 7:21
**circumvention** [1] - 5:15
**citation** [3] - 54:17, 54:21, 71:10
**cite** [3] - 60:14, 70:1, 70:2
**cited** [2] - 10:6, 12:5
**citing** [1] - 60:1
**City** [1] - 14:13
**claim** [8] - 8:9, 9:18, 23:11, 23:13, 40:20, 48:11, 61:13
**claimed** [4] - 5:24, 9:20, 51:6, 51:24
**claiming** [1] - 7:11
**claims** [17] - 8:22, 8:23, 10:14, 31:14, 31:22, 31:25, 32:2, 32:11, 32:14, 39:8, 60:3, 63:24, 64:2, 64:11, 64:25, 65:19
**clarification** [3] - 6:20, 7:8, 36:15
**clear** [4] - 10:3, 56:16, 63:7, 65:21
**clearly** [2] - 8:15, 60:2
**clerk's** [1] - 10:18
**client** [3] - 6:18, 11:6, 11:11
**close** [4] - 20:7, 31:17, 52:5
**closed** [1] - 15:8
**closing** [13] - 14:19, 20:2, 23:14, 23:18, 23:24, 26:20, 29:2, 30:5, 45:23, 46:1, 47:6, 49:19, 69:12
**co** [5] - 6:2, 39:19, 66:8, 71:3, 71:17
**co-settlor** [3] - 6:2, 66:8, 71:3

**co-settlors** [1] - 71:17
**co-trustees** [1] - 39:19
**Code** [2] - 39:4, 40:4
**collateral** [2] - 62:3, 65:22
**collaterally** [1] - 64:4
**collecting** [1] - 58:1
**combine** [1] - 5:19
**coming** [1] - 81:9
**comity** [5] - 12:5, 12:10, 12:15, 12:22, 60:13
**commentary** [1] - 80:11
**commitments** [1] - 32:19
**community** [1] - 48:25
**company** [3] - 31:15, 33:24, 55:5
**Company** [5] - 14:12, 31:23, 32:9, 33:7, 33:9, 33:10
**competent** [1] - 81:18
**complaint** [1] - 5:21
**compliance** [4] - 8:20, 63:13, 63:14, 64:8
**complicated** [1] - 6:25
**composite** [1] - 68:1
**con** [2] - 40:12, 49:7
**concede** [1] - 56:6
**concerning** [1] - 19:23
**conclude** [1] - 46:9
**concluded** [1] - 81:22
**conclusion** [8] - 35:19, 35:20, 39:23, 40:8, 40:10, 43:14, 43:21, 44:21
**conduct** [4] - 23:17, 37:15, 37:17, 55:13
**conducted** [5] - 37:4, 37:8, 37:13, 42:15, 45:4
**conducting** [1] - 26:20
**confused** [1] - 44:16
**confusing** [1] - 74:7
**confusion** [1] - 75:20
**connection** [13] - 17:9, 23:18, 23:23, 24:20, 26:8, 29:1, 32:1, 45:15, 49:19, 56:13, 64:3, 77:7, 79:9
**consider** [1] - 4:12
**consideration** [2] - 67:19, 80:15
**considerations** [1] - 12:15
**considered** [4] - 35:22, 57:20, 68:4, 78:14

**considers** [1] - 35:17
**consistent** [2] - 77:2, 79:5
**consolidated** [1] - 80:4
**constitute** [3] - 35:25, 36:16, 40:13
**constructive** [1] - 11:24
**consult** [1] - 31:11
**consumption** [1] - 80:13
**contacted** [1] - 62:9
**contained** [1] - 38:4
**containing** [1] - 38:7
**contains** [2] - 19:23, 76:2
**contention** [1] - 53:14
**contents** [1] - 15:17
**continue** [2] - 59:11, 70:1
**continued** [1] - 80:3
**continues** [1] - 58:18
**contract** [1] - 30:2
**contrary** [1] - 49:7
**contrast** [1] - 53:5
**contribute** [2] - 50:8, 50:9
**contributed** [2] - 50:18, 51:4
**contribution** [13] - 7:14, 9:10, 10:10, 48:12, 48:21, 50:13, 50:23, 50:24, 53:16, 53:18, 57:15, 58:8, 66:7
**contributions** [1] - 71:19
**control** [1] - 59:5
**convey** [1] - 17:23
**conveyance** [1] - 29:7
**conveyances** [1] - 49:20
**conveyed** [6] - 9:11, 15:6, 49:8, 49:11, 52:6, 75:10
**conveys** [1] - 49:13
**cooperate** [1] - 47:22
**coordinate** [1] - 60:19
**copies** [6] - 5:6, 41:15, 46:23, 46:25, 47:2, 54:17
**copy** [11] - 17:8, 17:18, 17:21, 17:25, 18:6, 18:12, 19:22, 26:3, 28:3, 28:16, 54:16
**corner** [1] - 18:20
**correct** [16] - 20:23, 20:25, 22:3, 22:10,

23:16, 24:17, 24:22, 37:7, 39:22, 42:15, 42:16, 42:20, 44:4, 44:9, 44:18, 63:16
**Correct** [4] - 15:9, 21:1, 45:10, 46:4
**correctly** [4] - 37:6, 38:22, 66:18, 67:1
**Counsel** [8] - 4:6, 7:10, 8:9, 10:17, 53:20, 63:4, 65:1, 65:9
**counsel** [29] - 4:11, 4:21, 5:1, 6:16, 10:15, 13:4, 14:11, 14:12, 15:16, 15:18, 16:13, 16:19, 16:24, 27:4, 31:8, 31:22, 32:12, 47:19, 48:5, 48:9, 58:14, 62:25, 65:12, 65:20, 66:13, 69:11, 79:24, 80:18, 81:18
**counsel's** [1] - 47:16
**County** [10] - 9:1, 23:19, 25:7, 26:3, 26:25, 37:23, 62:9, 69:24, 72:10, 73:14
**county** [20] - 23:21, 23:25, 24:3, 24:15, 27:12, 27:15, 42:22, 42:24, 43:6, 43:25, 44:2, 44:3, 63:21, 67:11, 69:20, 70:5, 71:13, 72:9, 75:12
**couple** [5] - 4:22, 15:4, 24:24, 63:4, 77:13
**course** [3] - 18:1, 54:14, 58:13
**court** [26] - 6:11, 7:4, 8:25, 10:21, 12:6, 12:7, 12:8, 23:18, 23:25, 24:4, 44:23, 47:2, 55:7, 55:19, 55:20, 55:23, 56:10, 60:16, 60:17, 63:19, 71:7, 73:22, 73:24, 76:15, 77:24
**COURT** [86] - 4:4, 4:9, 4:11, 4:18, 4:23, 4:25, 5:3, 5:9, 10:15, 12:25, 13:2, 13:10, 13:12, 13:14, 13:16, 13:18, 13:21, 13:24, 15:12, 15:14, 15:18, 16:1, 16:7, 16:10, 16:12, 16:17, 16:24, 17:2, 17:13, 17:15, 19:2, 19:4, 19:16,

19:18, 21:4, 21:6, 21:8, 22:14, 22:16, 23:3, 23:5, 24:8, 24:10, 25:20, 25:22, 25:24, 26:12, 26:17, 26:22, 27:2, 27:9, 28:9, 28:11, 28:22, 28:24, 31:3, 34:20, 34:25, 36:15, 36:21, 39:14, 39:24, 40:9, 43:17, 46:7, 46:9, 46:14, 46:16, 46:18, 47:1, 47:4, 47:8, 47:13, 54:21, 54:23, 54:25, 58:14, 58:16, 62:24, 63:2, 66:12, 79:7, 79:12, 79:23, 80:23, 80:25
**Court** [146] - 4:19, 6:3, 6:5, 6:9, 8:4, 8:11, 8:14, 8:25, 10:9, 10:12, 10:22, 11:2, 12:2, 12:4, 12:19, 12:20, 12:21, 12:23, 13:8, 27:9, 34:25, 35:1, 35:9, 35:10, 35:14, 35:17, 35:18, 35:23, 35:24, 35:25, 36:17, 36:18, 43:21, 45:9, 48:20, 49:4, 50:7, 53:23, 53:25, 54:19, 55:1, 55:15, 58:12, 58:20, 59:1, 59:20, 60:5, 60:11, 60:21, 60:24, 60:25, 61:3, 61:15, 61:16, 61:19, 61:24, 62:1, 62:8, 62:22, 63:7, 63:16, 63:19, 64:7, 64:11, 64:12, 64:14, 64:17, 65:17, 65:18, 66:2, 66:11, 66:14, 66:17, 67:3, 67:5, 67:6, 67:8, 67:20, 68:4, 68:5, 68:14, 68:21, 69:10, 69:23, 70:7, 70:13, 70:16, 70:19, 70:21, 71:9, 71:15, 71:22, 72:1, 72:11, 72:12, 72:14, 72:16, 72:18, 72:19, 72:21, 73:1, 73:4, 73:7, 73:8, 73:10, 73:20, 73:23, 74:3, 74:14, 74:19, 74:22, 74:24, 75:3, 75:16, 75:21, 75:25, 76:7, 76:9, 76:20, 76:21, 76:23, 77:3, 77:10, 77:11, 77:15, 77:16, 77:21, 78:4, 78:7,

78:8, 78:11, 78:14,
79:14, 79:16, 79:17,
79:20, 80:6, 81:15
**court's** [4] - 63:9,
67:24, 69:19, 69:20
**Court's** [12] - 5:16,
6:4, 6:6, 6:7, 6:20,
6:24, 62:3, 62:14,
62:18, 68:15, 79:9,
81:21
**courts** [5] - 12:9,
12:10, 12:11, 60:19
**covered** [1] - 74:21
**created** [5] - 49:10,
67:10, 67:21, 69:4,
72:10
**created."** [1] - 67:18
**creditor** [5] - 25:4,
25:8, 48:8, 53:15,
62:19
**creditor's** [1] - 48:11
**creditors** [5] - 9:22,
40:20, 48:8, 51:20,
55:18
**creditors."** [2] - 39:8,
60:4
**critical** [1] - 70:16
**cross** [2] - 22:5, 36:22
**CROSS** [1] - 37:1
**Cross** [1] - 22:24
**curious** [1] - 27:5
**current** [5] - 70:16,
74:24, 76:1, 76:22,
78:19
**custodian** [1] - 27:19
**CV** [1] - 33:12

### D

**Dal** [1] - 11:17
**damage** [1] - 76:18
**date** [2] - 49:25, 50:2
**dated** [2] - 28:4, 30:22
**dating** [1] - 49:20
**days** [1] - 33:8
**deal** [2] - 5:9, 79:25
**deals** [1] - 54:20
**dealt** [3] - 63:12, 64:6,
64:7
**debt** [2] - 56:12, 56:19
**debtor** [5] - 9:10,
48:13, 48:14, 48:15,
59:5
**debtors** [1] - 25:9
**debts** [2] - 56:20,
56:21
**December** [3] - 6:21,
7:4, 7:5
**decide** [1] - 60:23
**decided** [6] - 7:13,

67:4, 67:5, 67:20,
68:9
**decision** [6] - 34:1,
61:20, 61:24, 61:25,
62:3, 69:10
**decisions** [1] - 32:17
**declaratory** [1] - 63:25
**decline** [1] - 12:22,
62:1
**declined** [2] - 70:21,
73:4
**declines** [2] - 35:9,
76:7
**declining** [1] - 76:14
**deed** [28] - 15:3,
18:12, 18:18, 18:23,
19:8, 19:11, 21:16,
21:17, 21:18, 21:20,
21:23, 22:2, 22:20,
22:21, 22:25, 28:3,
28:15, 28:16, 29:4,
30:10, 30:11, 49:12,
49:22, 50:3, 51:10,
51:11, 51:13, 75:9
**deeds** [9] - 30:16,
30:21, 36:10, 49:15,
52:16, 52:20, 53:7,
56:20, 57:1
**defective** [1] - 34:2
**define** [1] - 79:2
**defined** [1] - 74:9
**definitely** [2] - 56:13,
81:14
**Del** [83] - 6:13, 9:10,
11:12, 11:13, 11:14,
11:17, 15:3, 15:5,
15:6, 17:8, 17:18,
17:20, 17:21, 17:25,
18:13, 19:9, 19:13,
19:25, 23:19, 24:20,
25:3, 25:11, 25:15,
26:8, 28:4, 28:5,
28:17, 28:18, 29:5,
29:8, 29:15, 29:17,
30:3, 37:25, 38:1,
38:15, 38:18, 38:20,
38:23, 39:10, 39:18,
40:2, 40:6, 40:22,
40:25, 41:5, 41:12,
41:19, 41:22, 41:24,
42:10, 44:11, 44:13,
44:18, 48:17, 48:21,
49:5, 49:9, 50:6,
50:7, 50:9, 56:20,
59:5, 59:8, 59:22,
65:5, 68:22, 68:23,
70:20, 74:9, 74:12,
74:15, 74:25, 75:18,
75:23
**delivered** [1] - 20:6

**denies** [1] - 34:25
**Department** [1] - 10:6
**department** [2] -
37:10, 42:4
**deposited** [1] - 20:13
**deposition** [1] - 47:21
**described** [2] - 27:19,
31:19
**description** [2] -
29:13, 78:19
**designated** [1] - 39:18
**detail** [1] - 7:19
**detailed** [1] - 6:25
**determination** [28] -
27:16, 35:25, 36:17,
40:13, 66:4, 68:21,
70:9, 70:16, 70:17,
71:5, 71:11, 71:12,
71:20, 72:1, 72:25,
73:5, 73:9, 73:18,
73:21, 76:9, 77:2,
77:6, 77:9, 78:5,
78:14, 78:25, 80:6,
80:16
**determinations** [2] -
67:7, 75:3
**determine** [11] -
35:14, 42:7, 68:14,
69:9, 69:15, 71:16,
71:17, 73:16, 73:20,
77:20, 78:4
**determined** [9] -
67:12, 68:13, 72:21,
74:4, 74:14, 74:5,
79:18, 79:21, 81:14
**determines** [3] -
35:15, 35:23, 36:18
**determining** [3] -
32:24, 36:7, 71:2
**Development** [1] -
49:8
**dictates** [1] - 60:18
**different** [5] - 9:2,
15:5, 16:14, 65:18,
75:10
**differently** [1] - 68:25
**diligence** [1] - 81:11
**DIRECT** [1] - 14:5
**direct** [1] - 18:19
**directed** [1] - 6:14
**directing** [1] - 21:22
**direction** [2] - 10:18,
79:16
**directly** [2] - 49:11,
66:17
**disbarred** [1] - 34:9
**disbursement** [2] -
20:20, 20:24
**disbursements** [5] -
19:23, 20:1, 20:9,

20:12, 45:14
**disclose** [2] - 30:7,
44:14
**discloses** [1] - 42:12
**discovered** [1] - 43:2
**discovery** [1] - 54:13
**discuss** [1] - 47:22
**discussed** [1] - 57:12
**discussing** [1] - 61:22
**discussion** [4] -
68:15, 69:12, 69:13,
71:23
**disingenuous** [1] -
65:18
**dismiss** [1] - 77:25
**dismissed** [1] - 80:4
**dispute** [4] - 67:12,
67:19, 69:25, 75:5
**disputes** [1] - 80:1
**dissolution** [1] - 81:3
**distinction** [3] - 11:11,
11:16, 69:14
**distracted** [1] - 10:18
**District** [34] - 8:25,
10:22, 11:2, 12:2,
12:19, 12:20, 12:23,
46:23, 53:25, 58:20,
58:25, 60:5, 60:12,
60:23, 60:24, 61:3,
61:7, 61:15, 61:16,
62:3, 63:12, 69:23,
71:15, 71:20, 72:8,
72:12, 72:14, 72:16,
72:18, 72:19, 73:1,
73:11, 73:12, 73:20
**district** [6] - 12:6,
12:11, 60:16, 60:17,
67:24, 69:19
**district."** [1] - 69:21
**doctrine** [6] - 9:21,
9:24, 51:18, 51:19,
55:20, 55:24
**document** [23] -
14:25, 17:7, 18:9,
19:7, 20:11, 21:13,
21:20, 22:19, 23:8,
23:10, 24:14, 24:15,
26:2, 26:14, 27:25,
28:14, 29:13, 30:13,
41:17, 41:20, 41:21,
45:12, 49:8
**documentation** [5] -
38:4, 38:6, 38:7,
44:19, 79:5
**documents** [13] -
5:10, 15:23, 16:2,
16:14, 16:20, 32:24,
32:25, 33:15, 34:2,
34:18, 41:14, 44:24,
46:23

**domesticated** [1] -
10:24
**domestication** [1] -
65:4
**done** [10] - 32:24,
38:19, 40:5, 40:25,
42:6, 42:13, 43:3,
56:23, 65:20, 72:13
**down** [1] - 46:11
**due** [3] - 54:14, 55:25,
58:13
**duly** [1] - 14:2
**during** [3] - 6:17, 6:20,
23:12
**During** [1] - 32:12
**duties** [3] - 31:10,
31:24, 32:16

### E

**eerily** [1] - 55:3
**effect** [8] - 32:25,
33:1, 34:18, 36:6,
36:7, 40:4, 68:18,
76:19
**effective** [1] - 51:1
**effectively** [1] - 35:1
**effectuated** [1] - 69:20
**effort** [2] - 80:12,
81:11
**either** [9] - 41:1, 41:5,
68:10, 71:18, 75:18,
75:23, 80:7, 80:13,
80:19
**element** [3] - 57:17,
57:23, 58:3
**elements** [3] - 56:11,
57:9, 58:11
**elevated** [4] - 9:25,
51:21, 55:25, 57:1
**elicited** [1] - 35:11
**ellipsis** [1] - 63:22
**Emerald** [9] - 18:21,
20:17, 20:25, 21:20,
21:22, 22:1, 29:24,
30:11, 51:12
**employed** [2] - 33:7,
33:9, 33:10
**employment** [2] -
32:6, 33:5
**encumbered** [1] -
19:12
**encumbering** [1] -
18:17
**encumbers** [2] -
49:16, 76:10
**encumbrances** [6] -
30:4, 30:7, 30:22,
51:15, 51:23, 53:1
**end** [5] - 5:18, 6:9,

6:15, 10:5, 12:21
**endorsing** [1] - 78:3
**enforce** [3] - 53:2, 64:21, 69:8
**enforceability** [4] - 68:11, 74:24, 78:25, 80:8
**enforceable** [2] - 72:22, 75:22
**enforcement** [5] - 68:3, 69:14, 71:24, 72:20, 74:6
**enjoin** [3] - 12:19, 60:19, 62:16
**enjoining** [1] - 60:23
**enjoy** [1] - 52:10
**enjoyed** [1] - 30:24
**enrichment** [1] - 9:25
**entail** [1] - 31:10
**entered** [1] - 77:24
**entertain** [2] - 60:11, 73:13
**entire** [4] - 74:13, 74:16, 74:18, 76:23
**entirely** [3] - 71:6, 72:17, 77:25
**entirety** [1] - 47:17
**entitled** [3] - 10:9, 11:24, 57:14
**entry** [4] - 22:5, 22:24, 30:23, 72:8
**equal** [1] - 12:12
**equitable** [12] - 9:17, 9:21, 9:24, 11:25, 51:18, 51:19, 55:7, 55:16, 55:23, 56:11, 77:4
**equitably** [3] - 51:6, 51:16, 52:10
**escrow** [5] - 14:19, 20:6, 20:13, 31:11, 31:13
**Essentially** [1] - 33:4
**essentially** [2] - 33:14, 71:23
**establish** [3] - 35:18, 57:9, 68:1
**established** [5] - 27:1, 40:11, 40:15, 56:15, 81:15
**estate** [4] - 48:25, 70:8, 76:16
**et** [1] - 25:8
**evaluation** [1] - 71:3
**event** [2] - 18:16, 27:7
**eventually** [1] - 55:7
**evidence** [25] - 13:4, 13:6, 13:14, 15:11, 17:12, 19:1, 19:15, 21:5, 22:13, 23:2,

24:6, 25:18, 26:11, 28:8, 28:21, 46:20, 46:22, 48:16, 48:18, 48:20, 49:4, 50:7, 50:14, 57:8, 66:16
**evidentiary** [1] - 47:10
**exact** [2] - 37:10, 53:8
**exactly** [2] - 10:5, 52:24
**EXAMINATION** [2] - 14:5, 37:1
**examination** [3] - 36:6, 36:22, 37:10
**examined** [1] - 14:3
**examining** [1] - 32:24
**Examining** [1] - 33:15
**example** [2] - 72:5, 75:9
**exceed** [1] - 48:12
**excellent** [1] - 81:18
**except** [2] - 5:5, 24:15
**Except** [1] - 27:3
**exception** [1] - 27:10
**Exchange** [1] - 31:16
**exclusive** [1] - 8:24
**excoriated** [2] - 8:12, 64:14
**Excuse** [3] - 22:21, 23:4, 39:15
**excuse** [5] - 26:4, 51:12, 53:11, 57:5, 61:17
**excused** [3] - 46:13, 46:15, 46:19
**execute** [2] - 75:7, 75:13, 75:15
**execution** [57] - 5:23, 5:25, 6:14, 9:8, 11:7, 11:9, 11:16, 12:20, 51:1, 52:22, 52:23, 53:24, 54:2, 57:16, 58:22, 58:23, 59:2, 59:4, 59:15, 59:16, 60:1, 61:2, 61:12, 61:18, 62:7, 62:10, 63:14, 64:21, 66:21, 66:24, 66:25, 67:2, 69:15, 69:20, 71:8, 71:25, 72:1, 72:11, 74:5, 74:7, 74:8, 74:12, 74:13, 74:15, 75:4, 75:12, 75:20, 75:21, 76:22, 77:8, 78:19, 78:22, 78:23, 79:2, 80:9
**executions** [2] - 66:19, 66:20
**exempt** [1] - 66:23
**exercise** [2] - 12:12, 62:1

**Exhibit** [83] - 14:21, 15:11, 15:22, 16:13, 16:23, 16:25, 17:4, 17:11, 17:16, 18:7, 18:25, 19:5, 19:6, 19:14, 19:19, 19:21, 21:2, 21:3, 21:5, 21:9, 21:11, 22:2, 22:8, 22:9, 22:12, 22:17, 22:21, 23:1, 23:6, 23:7, 24:7, 24:11, 24:12, 24:13, 25:19, 25:25, 26:1, 26:10, 27:23, 27:24, 28:7, 28:12, 28:14, 28:20, 28:25, 29:3, 29:10, 29:11, 29:15, 29:19, 30:10, 30:12, 30:22, 37:3, 39:13, 39:15, 47:5, 48:23, 49:8, 49:12, 49:17, 50:1, 50:2, 51:10, 51:11, 51:12, 51:13, 52:14, 52:15, 52:16, 52:23, 53:23, 53:24, 54:1, 58:24, 61:21, 61:24
**exhibit** [2] - 15:22, 16:17
**exhibits** [10] - 4:20, 5:5, 15:15, 15:19, 16:5, 16:10, 38:8, 38:13, 66:16
**Exhibits** [4] - 30:16, 36:10, 46:22, 49:15
**exists** [2] - 67:22
**expectation** [1] - 44:14
**expects** [2] - 77:16, 78:12
**expedited** [2] - 5:15, 47:19
**experience** [1] - 35:7
**experienced** [1] - 36:6
**expert** [4] - 34:17, 34:22, 35:1, 35:10
**expertise** [2] - 40:10, 40:15
**Expertise** [1] - 43:19
**experts** [1] - 35:2
**explaining** [1] - 55:17
**express** [5] - 35:21, 36:2, 40:15, 68:19, 73:3
**expressed** [5] - 35:6, 35:15, 35:21, 40:12
**expressing** [1] - 70:23
**expression** [6] - 35:7, 35:11, 36:16, 40:14, 43:20, 43:22

**expressly** [1] - 76:21
**extend** [3] - 6:1, 66:16, 74:25
**extent** [18] - 7:15, 9:10, 35:13, 40:9, 48:21, 50:13, 50:17, 50:19, 50:24, 53:16, 54:6, 58:9, 66:4, 66:8, 68:22, 69:2, 76:22, 77:5

## F

**face** [2] - 56:19, 78:15
**fact** [8] - 9:5, 11:12, 27:3, 48:23, 49:7, 57:15, 63:6, 69:16
**factored** [1] - 55:21
**facts** [3] - 55:2, 56:10, 61:14
**failed** [1] - 61:14
**fair** [3] - 18:24, 20:22, 23:15
**false** [1] - 8:10
**familiar** [1] - 39:4
**family** [1] - 49:9
**Family** [22] - 15:6, 17:8, 17:18, 17:21, 17:25, 18:13, 19:9, 19:25, 23:19, 24:21, 25:15, 28:5, 28:17, 28:18, 29:5, 29:8, 29:16, 29:17, 30:3, 38:1, 38:20, 56:21
**far** [7] - 26:15, 33:8, 50:14, 74:6, 78:18, 80:21
**fault** [1] - 43:3
**favor** [2] - 18:14, 58:2
**February** [1] - 49:23
**Federal** [1] - 19:10
**federal** [5] - 12:6, 12:9, 12:11, 12:14, 12:15
**fee** [1] - 74:17
**felt** [1] - 65:17
**few** [1] - 64:19
**file** [15] - 7:17, 7:20, 7:22, 26:7, 26:19, 38:5, 42:12, 44:19, 45:2, 45:8, 45:9, 47:17, 65:16
**filed** [7] - 6:11, 6:17, 7:4, 37:25, 61:5, 62:20, 65:13
**files** [4] - 27:13, 41:16, 52:22
**filing** [1] - 8:18
**filings** [1] - 73:24
**final** [1] - 58:3, 61:16,

61:17, 61:18, 67:13
**finally** [1] - 62:10
**findable** [2] - 56:7, 56:9
**firmly** [1] - 8:11
**First** [6] - 5:4, 31:22, 32:7, 32:8, 32:10, 33:9
**first** [12] - 14:2, 18:15, 20:14, 23:10, 29:12, 34:7, 45:25, 49:22, 49:25, 65:2, 70:1, 70:2
**fits** [1] - 27:10
**five** [1] - 75:10
**flatly** [1] - 8:10
**focus** [3] - 68:15, 70:15, 71:23
**folks** [1] - 55:16
**folks'** [1] - 58:7
**follow** [2] - 16:19, 26:24
**followed** [1] - 11:21
**following** [1] - 35:12
**follows** [1] - 14:3
**foot** [1] - 6:6
**footnote** [1] - 68:17
**Footnote** [6] - 6:5, 6:6, 8:5, 66:2, 68:16, 70:22
**foreclose** [5] - 52:2, 53:9, 53:19, 54:7, 55:8
**foreclosed** [3] - 7:9, 53:10
**foreclosing** [1] - 57:25
**foreclosure** [12] - 5:25, 7:7, 47:25, 50:25, 52:11, 54:3, 54:12, 57:4, 58:10, 65:13, 65:14, 70:11
**forestalled** [1] - 57:25
**form** [1] - 10:13
**formed** [1] - 72:7
**forms** [1] - 63:9
**forth** [3] - 49:20, 63:25, 67:9
**forum** [3] - 9:2, 12:4, 58:19
**forward** [8] - 13:18, 32:11, 58:13, 62:11, 76:22, 78:5, 78:24, 79:3
**four** [2] - 56:10, 56:23
**frankly** [4] - 8:12, 12:2, 49:13, 52:13
**front** [3] - 14:22, 14:23, 16:18
**full** [3] - 7:15, 10:13, 14:7

**fully** [2] - 10:12, 47:23
**function** [1] - 33:4
**funds** [3] - 20:24, 29:23, 36:10

## G

**games** [1] - 62:7
**general** [5] - 14:11, 24:4, 31:8, 45:1
**Generally** [1] - 43:15
**generally** [2] - 18:3, 37:20
**generate** [1] - 43:8
**given** [9] - 32:18, 35:16, 35:23, 36:18, 40:4, 40:15, 40:19, 43:17, 78:20
**Given** [1] - 40:10
**governed** [1] - 64:22
**governing** [1] - 9:7
**government** [1] - 26:15
**granted** [4] - 12:17, 72:20, 76:3, 78:18
**grants** [1] - 76:20
**Guaranteed** [2] - 33:10, 33:19
**guess** [1] - 29:3
**guessing** [1] - 41:8

## H

**half** [1] - 31:6
**handed** [1] - 10:17
**handled** [1] - 81:5
**handling** [1] - 60:16
**happy** [1] - 54:17
**hard** [1] - 60:21
**harms** [1] - 58:1
**hats** [1] - 32:13
**heading** [2] - 20:3, 20:9
**hear** [4] - 4:15, 10:17, 10:21, 81:8
**heard** [3] - 11:2, 15:4, 62:13
**hearing** [12] - 5:15, 5:19, 6:10, 6:17, 6:21, 12:7, 47:19, 57:8, 65:11, 66:1, 77:7, 77:20
**hearsay** [1] - 26:16
**heart** [1] - 69:22
**Heiner** [4] - 13:17, 13:18, 14:9, 47:22
**HEINER** [1] - 14:1
**held** [12] - 8:15, 11:11, 11:13, 11:15, 17:20, 36:12, 38:21, 39:2,

55:5, 55:13, 57:13, 67:16
**helpful** [1] - 69:11
**herein** [2] - 14:2, 59:7
**history** [1] - 33:6
**hold** [5] - 34:4, 34:6, 67:10, 67:14, 67:23
**holding** [2] - 67:8, 72:10
**holdings** [2] - 67:10, 68:1
**home** [26] - 4:7, 4:17, 5:14, 5:18, 5:20, 6:24, 8:1, 8:5, 13:7, 13:23, 15:10, 17:5, 34:16, 36:3, 36:20, 46:8, 46:13, 46:15, 46:21, 47:7, 48:17, 48:19, 57:12, 65:12, 66:1, 66:10
**hopes** [1] - 53:2
**housekeeping** [1] - 5:5
**husband's** [1] - 49:1

## I

**i.e** [2] - 9:22, 35:19
**idea** [1] - 43:9
**identified** [6] - 15:15, 15:20, 18:18, 54:1, 67:24, 69:18
**identifies** [1] - 25:7
**identify** [3] - 18:14, 25:3, 45:12
**identity** [1] - 37:10
**immediately** [1] - 62:9
**Immediately** [1] - 31:20
**impact** [4] - 70:23, 71:2, 78:19, 81:17
**impair** [2] - 74:5, 74:23
**important** [2] - 8:2, 77:9
**imposed** [1] - 43:18
**imposing** [2] - 75:17, 78:24
**impressed** [1] - 73:23
**improper** [1] - 63:11
**improperly** [1] - 59:2
**inadequate** [1] - 80:20
**inappropriate** [4] - 35:2, 74:7, 74:18, 78:20
**inaudible** [2] - 12:11, 16:6
**Inc** [1] - 54:18
**include** [1] - 70:17

**included** [3] - 38:13, 39:25, 62:4
**includes** [2] - 49:20, 71:12
**including** [2] - 11:10, 75:1
**Indeed** [2] - 57:12, 64:16
**indeed** [1] - 48:6
**independent** [1] - 71:6
**index** [3] - 44:2, 44:5, 44:11
**indicates** [1] - 72:5
**indication** [1] - 72:5
**indicia** [1] - 67:17
**individual** [8] - 40:6, 40:23, 41:13, 41:25, 59:6, 59:8, 75:1, 75:15
**individually** [15] - 11:12, 11:17, 16:2, 38:24, 39:3, 41:1, 41:6, 41:19, 41:23, 42:10, 44:12, 44:15, 44:18, 75:19, 75:24
**Individually** [1] - 38:25
**individuals** [3] - 44:8, 75:10, 75:14
**inequitable** [2] - 53:3, 53:5
**inform** [1] - 80:12
**information** [2] - 19:23, 45:7
**initiated** [1] - 55:6
**injunction** [17] - 4:13, 4:16, 10:12, 12:13, 48:2, 57:9, 58:4, 58:12, 61:6, 66:15, 74:19, 76:1, 76:19, 76:20, 76:25, 77:7, 78:17
**injunctions** [1] - 12:16
**Injunctive** [1] - 57:10
**injunctive** [1] - 7:23
**injuries** [1] - 70:10
**injury** [4] - 57:18, 57:21, 57:22
**injustice** [1] - 56:23
**insofar** [1] - 54:4
**instructions** [1] - 21:21
**instrument** [1] - 18:16
**insurability** [3] - 32:18, 33:1, 36:7
**insurance** [1] - 14:18, 30:6
**Insurance** [2] - 31:22, 32:9
**intend** [1] - 13:14

**intended** [1] - 80:12
**interest** [65] - 6:1, 6:12, 7:15, 9:8, 9:13, 9:14, 10:9, 48:6, 49:4, 50:6, 50:19, 51:7, 52:3, 53:17, 53:18, 54:7, 57:14, 57:15, 58:5, 58:6, 58:8, 66:7, 68:12, 68:22, 69:2, 69:9, 69:13, 69:15, 70:9, 70:10, 70:18, 70:20, 71:1, 71:5, 71:12, 71:16, 71:21, 72:3, 72:24, 73:3, 73:6, 73:8, 73:9, 73:16, 73:17, 73:19, 73:21, 74:4, 74:9, 74:14, 74:17, 74:20, 74:25, 75:1, 75:15, 75:18, 75:23, 76:2, 76:7, 77:5, 77:6, 78:21, 79:2
**interesting** [1] - 81:8
**interestingly** [1] - 18:15
**interests** [8] - 53:9, 63:15, 71:4, 75:3, 75:4, 75:5, 75:8, 81:4
**interfere** [2] - 12:14, 60:20
**interference** [1] - 12:13
**intermeddler** [1] - 52:8
**internal** [1] - 70:3
**interrupt** [1] - 13:8
**intervene** [1] - 6:18
**introduced** [4] - 41:18, 41:20, 41:21, 42:14
**inventory** [1] - 48:24
**Investors** [1] - 25:8
**invoke** [1] - 64:12
**involve** [5] - 32:3, 32:19, 32:22, 34:1, 73:5
**involved** [6] - 12:8, 19:24, 46:1, 73:3, 81:3, 81:6
**involving** [7] - 8:16, 32:13, 63:20, 64:22, 66:19, 70:4, 71:11
**irreparable** [2] - 57:18, 57:21
**irreplaceable** [3] - 55:21, 57:20, 57:24
**issuance** [5] - 63:11, 65:22, 67:25, 68:11,

74:23
**issue** [31] - 10:10, 10:12, 12:7, 12:8, 14:15, 35:14, 36:2, 40:12, 49:5, 50:15, 53:22, 58:12, 60:11, 61:13, 62:2, 64:13, 64:17, 66:22, 67:3, 67:4, 67:18, 69:19, 69:24, 71:7, 72:15, 72:16, 73:2, 73:7, 78:12, 81:15
**issued** [5] - 4:14, 10:24, 11:4, 12:19, 14:17, 30:6, 53:25, 59:2, 61:16, 61:17, 62:8, 64:9, 66:22, 72:11, 73:1, 77:15
**issues** [32] - 4:22, 9:3, 10:21, 11:1, 12:3, 12:5, 31:12, 31:13, 32:4, 35:15, 48:3, 58:19, 58:25, 60:9, 60:17, 60:22, 61:2, 61:22, 66:17, 66:20, 66:21, 68:7, 68:8, 68:9, 73:25, 77:4, 79:17, 79:21, 80:10, 81:12
**item** [2] - 20:5, 59:7
**items** [1] - 5:8
**itself** [6] - 7:6, 8:3, 16:3, 49:13, 68:11, 71:25

## J

**January** [3] - 4:1, 47:25, 54:3
**John** [3] - 14:16, 15:7, 45:18
**JOHNSON** [32] - 4:10, 10:16, 13:1, 15:13, 17:14, 19:3, 19:17, 21:7, 22:15, 23:4, 24:9, 25:21, 25:23, 26:13, 26:24, 28:10, 28:23, 31:1, 34:21, 36:23, 37:2, 39:15, 43:16, 46:6, 46:17, 47:3, 47:12, 58:17, 63:1, 79:15, 80:22, 80:24
**Johnson** [15] - 4:10, 6:16, 26:23, 34:20, 36:22, 39:17, 40:1, 40:19, 43:23, 47:9, 47:11, 58:16, 69:7, 79:13, 80:23
**joint** [5] - 68:18,

70:25, 71:1, 71:2
**Jones** [1] - 10:6
**judge** [2] - 7:11, 48:7
**Judge** [18] - 8:25, 36:23, 58:17, 60:5, 60:9, 60:22, 61:19, 61:22, 62:17, 63:5, 64:1, 64:3, 64:6, 64:13, 67:4, 68:7, 80:24
**judgement** [1] - 51:20
**judgment** [95] - 5:23, 5:24, 6:12, 7:16, 8:7, 8:19, 8:21, 9:10, 9:20, 9:22, 10:23, 11:11, 11:14, 11:19, 23:22, 24:19, 24:25, 25:3, 25:8, 25:9, 25:14, 25:16, 29:20, 30:13, 30:23, 36:12, 38:23, 41:2, 41:3, 42:18, 42:25, 43:6, 43:11, 43:12, 43:24, 44:2, 44:5, 44:11, 47:25, 48:8, 51:2, 51:23, 51:24, 52:14, 52:20, 53:2, 53:15, 55:5, 55:12, 56:4, 56:6, 56:7, 56:9, 57:4, 59:5, 59:19, 59:21, 59:22, 61:17, 61:19, 62:19, 63:14, 63:25, 64:8, 64:21, 65:4, 65:24, 66:9, 67:10, 67:11, 67:22, 68:19, 69:3, 69:4, 69:5, 69:8, 72:7, 72:8, 72:9, 72:13, 72:15, 74:11, 75:11, 75:13, 75:16, 77:24, 78:1, 78:12
**judgments** [17] - 23:19, 23:22, 24:3, 37:5, 37:18, 37:19, 37:21, 37:22, 37:25, 38:3, 38:14, 38:17, 40:5, 40:22, 41:5, 41:12, 44:15
**judicial** [2] - 69:21, 80:13
**July** [1] - 30:12
**June** [1] - 52:21
**junior** [1] - 53:1
**jurisdiction** [11] - 8:24, 12:12, 12:22, 60:10, 60:11, 60:19, 62:1, 63:23, 64:1, 67:25, 76:15
**jurisdiction."** [1] - 60:20

**justify** [2] - 35:7, 43:19

### K

**keep** [1] - 65:21
**kind** [1] - 81:15
**knowing** [1] - 52:25
**knowledge** [5] - 18:6, 18:21, 43:5, 45:2, 50:23

### L

**labeling** [1] - 16:2
**laid** [1] - 52:25
**Lake** [1] - 14:13
**language** [4] - 69:10, 70:13, 70:15, 71:12
**lapse** [1] - 34:9
**large** [2] - 55:22, 57:6
**last** [2] - 34:10, 48:23
**law** [8] - 10:3, 12:6, 30:24, 51:16, 52:24, 57:18, 59:21, 69:18, 81:16
**lawsuit** [1] - 79:19
**lawsuits** [1] - 65:18
**least** [2] - 54:12, 71:4
**leave** [1] - 68:8
**leaves** [1] - 53:8
**left** [2] - 18:19, 80:18
**legal** [32] - 11:1, 11:5, 11:9, 12:24, 31:2, 32:3, 35:13, 35:14, 35:15, 35:16, 35:19, 35:20, 35:25, 36:7, 36:16, 39:23, 40:8, 40:10, 40:13, 43:14, 43:21, 60:22, 61:1, 61:11, 61:14, 61:22, 62:2, 79:17, 79:20, 80:5, 80:13, 80:19
**legally** [1] - 57:20
**lender** [3] - 19:10, 19:13, 45:22
**less** [1] - 50:23
**liable** [1] - 56:19
**license** [2] - 34:6, 34:13
**licenses** [1] - 34:4
**lien** [48] - 5:23, 5:24, 6:12, 7:16, 8:21, 9:7, 9:20, 9:23, 11:19, 30:17, 36:12, 43:12, 43:24, 47:25, 48:8, 50:11, 50:13, 51:9, 51:20, 52:11, 52:14, 53:15, 55:5, 55:12, 57:4, 58:10, 59:19, 59:21, 59:22, 63:14,

64:8, 65:24, 66:4, 66:9, 67:10, 67:18, 67:22, 68:19, 69:5, 72:10, 72:12, 74:11, 76:10
**liens** [5] - 9:19, 49:20, 51:17, 51:22, 70:12
**lies** [1] - 73:21
**lifetime** [2] - 39:7, 60:2
**likelihood** [4] - 9:6, 9:17, 57:6, 57:11
**limit** [1] - 69:19
**limitation** [5] - 39:24, 43:18, 67:24, 75:16, 76:2
**limitation,"** [1] - 6:15
**limitations** [1] - 35:12
**limited** [4] - 8:17, 65:7, 75:22, 76:21
**line** [1] - 20:5
**lines** [1] - 42:18
**list** [2] - 20:10, 49:20
**listed** [5] - 20:4, 48:25, 49:2, 49:3, 49:22
**litigate** [1] - 5:22, 10:13
**litigated** [1] - 72:15
**litigation** [7] - 23:13, 32:1, 48:3, 54:13, 72:4, 72:6
**living** [1] - 14:10
**loan** [2] - 46:1, 52:5
**located** [2] - 9:1, 71:14
**look** [17] - 19:6, 21:18, 22:4, 22:11, 24:5, 24:12, 25:6, 26:6, 29:10, 37:3, 39:13, 44:11, 45:11, 48:10, 58:24, 59:3, 60:21
**looked** [4] - 29:21, 38:8, 41:9, 81:13
**looking** [1] - 43:7
**looks** [2] - 20:20, 53:23
**losing** [1] - 57:24
**loss** [2] - 10:1, 76:18
**lost** [5] - 57:4, 59:17, 62:16, 64:5, 76:14

### M

**Madison** [1] - 25:8
**mail** [1] - 18:20
**main** [1] - 50:15
**maintained** [2] - 27:13, 27:18
**managed** [1] - 32:1
**manner** [1] - 65:17

**mark** [4] - 16:4, 16:5, 16:10, 16:12
**marked** [4] - 15:19, 15:20, 15:21, 16:3
**marking** [1] - 16:2
**material** [1] - 9:5
**materials** [2] - 6:11, 54:16
**matter** [20] - 5:4, 6:8, 7:11, 10:22, 10:25, 30:24, 30:25, 35:16, 35:19, 43:19, 58:20, 60:10, 60:16, 61:17, 62:12, 62:15, 62:18, 66:14, 79:19
**matter."** [1] - 68:20
**matters** [4] - 5:12, 34:18, 80:14, 80:17
**maximum** [1] - 58:9
**mean** [6] - 13:8, 15:17, 25:5, 26:24, 32:16, 72:14
**means** [3] - 20:5, 20:6, 25:6
**measure** [1] - 12:16
**member** [1] - 34:5
**memories** [1] - 81:6
**mention** [1] - 59:11
**mentioned** [1] - 65:11
**merely** [2] - 63:6, 63:10
**merits** [3] - 9:6, 10:13, 57:12
**met** [3] - 54:11, 57:21, 58:11
**Metro** [41] - 14:12, 14:14, 14:17, 15:8, 17:9, 17:17, 19:24, 20:21, 20:24, 21:22, 23:17, 23:24, 26:6, 26:19, 27:11, 27:13, 27:18, 27:20, 29:4, 29:7, 31:4, 31:6, 31:14, 31:15, 31:16, 31:19, 31:20, 33:3, 36:5, 37:4, 37:17, 37:22, 38:14, 38:17, 44:10, 45:14, 47:17, 49:18, 81:2, 81:3
**Metro's** [2] - 29:4, 29:19
**might** [6] - 21:17, 50:20, 76:14
**million** [2] - 51:8, 52:3
**missed** [1] - 55:5
**misspoken** [1] - 40:24
**mistake** [2] - 56:1, 56:2
**Molly** [3] - 14:16, 15:6, 45:17

**money** [2] - 45:21, 58:1
**morning** [1] - 15:5
**mortgages** [1] - 70:12
**most** [1] - 12:17
**motion** [20] - 5:19, 6:17, 7:20, 7:23, 48:2, 61:5, 61:6, 62:20, 65:12, 66:10, 77:16, 77:18, 77:19, 77:20, 77:21, 78:5, 78:6, 78:10, 78:13
**motions** [1] - 80:7
**Move** [9] - 19:14, 21:3, 22:12, 23:1, 24:6, 25:18, 26:10, 28:7, 28:20
**move** [8] - 15:10, 17:11, 18:25, 34:16, 46:21, 47:13, 58:13, 62:11
**moved** [3] - 33:3, 33:16, 33:17
**Mow** [13] - 8:25, 60:5, 60:9, 60:22, 61:22, 62:17, 63:5, 64:1, 64:3, 64:6, 64:13, 67:4, 68:7
**Mow's** [1] - 61:20
**MR** [88] - 4:7, 4:10, 4:17, 4:19, 4:24, 5:2, 5:4, 5:13, 10:16, 13:1, 13:6, 13:11, 13:13, 13:15, 13:17, 13:23, 14:6, 15:10, 15:13, 15:17, 15:25, 16:5, 16:9, 16:11, 16:16, 17:5, 17:11, 17:14, 18:25, 19:3, 19:14, 19:17, 21:3, 21:5, 21:7, 22:12, 22:15, 23:1, 23:4, 24:6, 24:9, 25:18, 25:21, 25:23, 26:10, 26:13, 26:18, 26:24, 27:3, 28:7, 28:10, 28:20, 28:23, 31:1, 34:16, 34:21, 36:3, 36:14, 36:20, 36:23, 37:2, 39:15, 39:23, 40:8, 43:14, 43:16, 46:6, 46:8, 46:13, 46:15, 46:17, 46:21, 47:3, 47:6, 47:12, 47:16, 54:22, 54:24, 55:1, 58:15, 58:17, 63:1, 63:3, 79:6, 79:11, 79:15, 80:22, 80:24
**Mulligan** [7] - 4:5,

14:16, 15:7, 23:18,
45:18
**Mulligans** [58] - 4:8,
5:21, 6:23, 7:17, 8:2,
9:12, 9:17, 10:2,
10:8, 11:4, 11:8,
11:23, 12:18, 12:23,
14:18, 17:10, 18:1,
18:6, 20:1, 20:6,
20:13, 23:14, 29:3,
30:4, 30:7, 30:15,
36:8, 45:21, 45:23,
45:24, 46:3, 50:3,
51:8, 51:14, 51:16,
52:4, 53:6, 53:21,
53:22, 55:10, 55:12,
55:17, 57:3, 57:13,
57:24, 58:2, 58:21,
59:12, 59:13, 61:1,
61:23, 62:6, 65:6,
67:23, 68:6, 68:10,
69:18, 73:24, 77:16
**Mulligans'** [10] - 20:4,
23:24, 29:23, 45:22,
51:7, 53:3, 54:9,
56:21, 58:24, 62:15
**multiple** [1] - 73:24
**must** [1] - 73:23

**N**

**name** [20] - 14:7,
18:21, 25:11, 25:13,
25:15, 38:15, 38:18,
38:19, 41:1, 41:5,
41:19, 41:22, 41:24,
44:7, 44:14, 56:8,
67:16, 68:23, 81:5,
81:8
**named** [1] - 39:19
**names** [2] - 20:4,
41:14
**National** [17] - 14:12,
14:14, 14:17, 17:9,
19:24, 21:22, 26:6,
27:11, 27:13, 27:18,
27:20, 31:14, 31:15,
31:16, 38:14, 45:14,
81:2
**nature** [2] - 5:11, 77:4
**necessarily** [1] - 6:13
**necessary** [2] - 4:24,
54:18
**need** [3] - 15:19,
29:11, 72:17
**needed** [2] - 17:21,
20:7
**needs** [1] - 60:21
**neglected** [1] - 54:15
**never** [1] - 59:9

**new** [4] - 7:16, 7:22,
80:11, 80:13, 80:16,
79:19, 81:16
**Newman** [1] - 81:5
**next** [1] - 48:9
**None** [2] - 15:13,
46:17
**Norcutt** [4] - 54:19,
55:2, 55:9, 55:10
**Norcutts** [1] - 55:4,
55:16, 55:18
**normal** [1] - 43:5
**note** [2] - 4:6, 8:2
**noted** [3] - 8:5, 66:1,
66:18
**notes** [2] - 71:22,
77:11
**nothing** [9] - 41:1,
42:14, 48:25, 49:2,
49:3, 52:18, 62:12,
63:15, 74:22
**notice** [5] - 7:6, 11:24,
30:13, 34:22, 49:24
**noticed** [1] - 62:11
**November** [9] - 5:17,
30:14, 48:18, 48:19,
52:15, 57:13, 62:10,
65:11, 66:1
**nuanced** [1] - 59:25
**Number** [2] - 56:14,
56:18
**number** [8] - 5:17,
11:8, 16:15, 22:6,
22:24, 27:6, 30:5,
42:4, 47:20, 56:23,
67:23
**numbers** [1] - 16:20

**O**

**oath** [1] - 13:19
**object** [5] - 25:21,
27:8, 34:21, 34:24,
65:7
**objecting** [1] - 27:5,
66:24
**Objection** [4] - 31:1,
39:23, 40:8, 43:14
**objection** [31] - 15:12,
17:13, 17:14, 19:2,
19:3, 19:16, 19:17,
21:6, 21:7, 22:14,
22:15, 23:3, 23:4,
24:8, 24:9, 25:20,
25:23, 26:12, 26:13,
26:16, 28:9, 28:10,
28:22, 28:23, 35:20,
40:9, 43:18, 46:16,
47:1, 47:3, 68:13
**objections** [2] - 63:10,

**obligation** [4] - 18:18,
19:13, 52:8, 56:22
**obligations** [2] -
49:16, 51:15
**obtained** [4] - 6:4,
72:7, 75:11, 78:1
**obtaining** [1] - 74:17
**obviously** [1] - 55:10
**Obviously** [1] - 47:16
**occasionally** [1] -
31:17
**occur** [2] - 75:9, 76:18
**occurred** [1] - 56:13
**October** [1] - 49:21
**offer** [1] - 79:16
**offered** [4] - 5:10,
27:7, 27:11, 27:12
**offering** [2] - 26:25,
31:2
**office** [12] - 25:3,
27:12, 27:16, 40:5,
40:21, 41:11, 41:18,
41:22, 41:23, 42:7,
44:1, 72:10
**Office** [1] - 25:7
**office."** [1] - 67:11
**officer** [1] - 36:5
**officers** [1] - 31:11
**official** [1] - 26:15
**old** [1] - 7:7
**Once** [1] - 10:16
**once** [2] - 10:18, 77:24
**one** [20] - 4:21, 12:7,
12:14, 20:14, 20:17,
24:24, 30:5, 38:8,
40:16, 42:3, 43:1,
46:24, 47:21, 48:10,
55:3, 60:14, 60:16,
75:11, 80:3, 81:1
**ones** [1] - 15:5
**open** [1] - 10:22
**opening** [1] - 4:25
**openings** [1] - 13:3
**opine** [1] - 70:22
**opinion** [24] - 8:12,
31:2, 35:5, 35:11,
35:13, 35:15, 35:22,
36:2, 36:5, 36:13,
36:16, 40:11, 40:14,
40:16, 43:20, 43:22,
55:22, 64:17, 66:2,
68:19, 70:23, 73:5
**opinions** [2] - 35:4,
35:8
**Opinions** [1] - 35:6
**opportunity** [5] - 11:5,
13:16, 34:23, 59:15,
63:5
**opposing** [1] - 4:21

**oral** [1] - 6:4
**order** [18] - 4:13, 6:25,
7:1, 7:18, 30:8, 52:4,
52:5, 58:3, 58:4,
61:6, 61:21, 62:14,
65:16, 75:20, 77:2,
77:17
**ordered** [2] - 6:21,
6:23
**originally** [3] - 10:24,
49:9, 78:1
**originating** [1] - 6:13
**otherwise** [3] - 51:21,
55:24, 60:20
**ought** [4] - 10:12,
52:10, 58:12, 80:4
**outlined** [1] - 74:17
**outside** [2] - 69:20,
72:17
**outweighs** [1] - 57:22
**overbroad** [1] - 78:20
**overlapping** [1] -
73:25
**owed** [4] - 51:15,
51:16, 52:8, 53:2
**own** [3] - 50:9, 59:8,
71:12
**owned** [4] - 9:11, 59:9,
59:12
**owner** [3] - 70:25,
71:1, 71:2
**owner's** [1] - 14:17
**owners** [1] - 75:14
**ownership** [7] - 67:17,
68:18, 70:23, 70:25,
71:18, 73:18, 75:20

**P**

**P-1** [7] - 17:15, 19:4,
19:18, 23:3, 25:24,
28:11, 39:14
**P.2d** [1] - 10:7
**P.3d** [3] - 54:19,
54:23, 54:24
**page** [10] - 6:10, 10:7,
18:15, 48:23, 49:25,
59:1, 60:18, 64:16
**paid** [16] - 9:18, 29:24,
30:5, 30:16, 36:10,
46:3, 51:8, 51:9,
51:14, 51:17, 52:21,
53:7, 55:4, 55:12,
55:19, 56:12
**paragraph** [4] - 49:2,
59:1, 59:3, 64:16,
64:20, 67:9, 69:11,
69:16, 69:17
**paragraphs** [1] - 64:15
**parcel** [2] - 25:1, 26:5

**parcels** [1] - 10:5
**part** [6] - 6:10, 17:23,
21:21, 51:4, 51:5,
60:6
**participate** [1] - 6:19
**particular** [4] - 25:1,
26:5, 60:14, 75:10
**particularly** [1] -
32:13, 66:23, 69:1
**parties** [3] - 71:4,
80:12, 81:11
**partition** [1] - 70:11
**party** [13] - 5:20,
37:11, 52:11, 56:11,
56:12, 56:14, 56:18,
56:24, 57:23, 65:3,
65:6, 78:3, 78:9
**pay** [4] - 51:11, 52:4,
52:8, 56:16
**payees** [1] - 20:10
**payoff** [1] - 51:22
**payor** [2] - 20:4, 45:17
**pending** [7] - 10:22,
10:25, 48:3, 54:13,
58:20, 68:8
**people** [5] - 35:6,
42:3, 42:7, 42:11,
45:3
**per** [1] - 47:20
**perceived** [1] - 74:21
**percent** [6] - 50:20,
50:21, 73:14, 73:18
**perhaps** [3] - 71:1,
77:23, 79:21
**period** [2] - 32:12,
64:18
**permit** [2] - 35:11,
78:9
**person** [1] - 36:6
**personally** [8] - 9:11,
9:12, 29:5, 29:8,
48:17, 49:5, 50:6,
65:6
**pick** [1] - 72:19
**piece** [1] - 57:19
**place** [1] - 13:19
**placed** [2] - 9:21, 36:9
**plaintiff** [3] - 53:11,
54:1, 54:5
**plaintiff's** [1] - 15:22
**Plaintiff's** [7] - 15:22,
16:13, 16:15, 16:18,
16:21, 16:22, 17:2
**plaintiffs** [3] - 4:14,
53:21, 54:10
**playing** [1] - 62:7
**pleadings** [1] - 5:19
**point** [10] - 6:3, 6:5,
6:19, 11:5, 23:12,
27:17, 44:16, 47:24,

48:1, 81:16
**pointed** [1] - 48:5
**policy** [2] - 14:17, 30:6
**portion** [1] - 20:10
**portions** [1] - 45:10
**posed** [1] - 49:16
**position** [18] - 10:1, 30:16, 30:18, 31:18, 32:7, 32:9, 36:9, 51:17, 51:21, 53:6, 53:8, 55:17, 55:25, 57:2, 67:6, 73:12, 80:18
**possession** [2] - 59:4, 59:10
**possibility** [1] - 76:13
**possible** [1] - 58:9
**post** [1] - 78:13
**posted** [4] - 76:6, 76:8, 76:24
**posting** [3] - 19:22, 45:13, 51:13
**potential** [2] - 54:4, 63:10, 76:18
**potentially** [3] - 9:9, 54:7, 57:4
**practice** [1] - 30:25
**pre** [1] - 30:22
**pre-dated** [1] - 30:22
**precluding** [1] - 78:23
**preclusion** [2] - 8:9, 61:13
**prejudice** [1] - 57:3
**preliminary** [14] - 4:13, 4:15, 10:11, 48:2, 57:9, 58:12, 61:6, 66:15, 74:19, 76:1, 76:20, 76:24, 77:7, 78:17
**preparation** [1] - 79:10
**prepare** [2] - 77:1, 79:5
**present** [6] - 6:17, 11:5, 13:4, 13:6, 13:14, 59:16
**presentation** [2] - 47:10, 81:12
**presented** [5] - 44:23, 44:25, 61:22, 66:16, 80:1
**presenting** [1] - 81:18
**presently** [1] - 59:9
**president** [5] - 14:11, 31:8, 31:21, 33:25
**presumably** [3] - 44:1, 49:1, 49:3
**prevail** [2] - 57:7, 57:14
**prevailing** [3] - 9:6,

9:17, 57:11
**prevent** [3] - 9:24, 10:1, 67:25
**previous** [1] - 21:18
**previously** [4] - 4:14, 39:25, 43:18
**primarily** [1] - 56:19
**primary** [2] - 24:24, 34:6
**principle** [4] - 12:5, 12:10, 12:22, 60:13
**printout** [1] - 26:14
**priority** [8] - 10:1, 30:15, 30:17, 30:24, 36:12, 51:21, 53:6, 55:25
**problem** [2] - 8:10, 61:9
**Procedurally** [1] - 79:16
**proceed** [17] - 7:6, 11:7, 11:10, 11:16, 16:24, 27:22, 47:15, 58:23, 59:14, 59:25, 61:2, 61:12, 61:18, 62:9, 74:8, 80:17
**proceeded** [1] - 65:14
**proceeding** [14] - 6:19, 8:15, 12:14, 12:15, 40:14, 45:16, 46:24, 55:6, 61:5, 63:6, 63:8, 63:9, 63:13, 64:21
**proceeding,"** [1] - 64:20
**proceedings** [5] - 7:25, 8:7, 16:14, 47:24, 65:7
**Proceedings** [1] - 81:22
**process** [10] - 23:12, 31:13, 38:2, 42:21, 43:5, 43:8, 43:11, 44:3, 62:5
**produced** [1] - 27:4
**professional** [3] - 34:4, 34:6, 34:12
**pronounce** [1] - 68:23
**pronounced** [1] - 68:25
**pronunciation** [1] - 15:4
**proof** [4] - 53:13, 53:22, 54:11, 66:6
**proper** [7] - 12:4, 66:24, 68:12, 72:8, 72:21, 73:19, 74:13
**properly** [9] - 11:20, 59:19, 66:22, 73:10, 74:8, 78:21, 79:2

**property** [156] - 7:15, 8:14, 8:16, 8:20, 8:22, 8:23, 9:1, 9:11, 10:2, 10:4, 10:9, 11:10, 11:13, 14:15, 14:19, 17:10, 17:19, 17:23, 18:17, 19:12, 19:25, 24:20, 25:1, 25:2, 26:5, 28:6, 29:2, 29:7, 29:13, 30:5, 32:25, 34:2, 34:19, 36:8, 37:5, 37:21, 37:22, 37:24, 38:18, 39:7, 40:21, 43:24, 46:3, 48:7, 48:12, 48:25, 49:1, 49:3, 49:5, 49:9, 49:10, 49:16, 49:18, 50:6, 50:8, 50:9, 50:10, 50:12, 50:17, 50:18, 50:25, 51:4, 51:5, 51:9, 51:23, 52:6, 52:17, 53:1, 53:3, 53:16, 53:18, 55:20, 55:21, 56:4, 56:17, 57:3, 57:19, 57:24, 58:8, 58:10, 59:4, 59:8, 59:10, 59:11, 59:23, 60:3, 62:16, 63:8, 63:15, 63:17, 63:20, 63:24, 64:11, 64:22, 66:7, 66:8, 66:23, 67:15, 67:17, 68:2, 68:12, 68:18, 68:22, 69:6, 69:9, 69:13, 69:15, 69:24, 70:4, 70:8, 70:9, 70:10, 70:11, 70:18, 70:21, 71:6, 71:11, 71:13, 71:16, 71:21, 72:4, 72:6, 72:23, 72:24, 73:3, 73:6, 73:9, 73:13, 73:17, 73:18, 73:19, 73:21, 74:4, 74:10, 74:13, 74:16, 74:18, 74:20, 75:2, 75:8, 75:10, 75:14, 75:24, 76:2, 76:11, 76:13, 76:23, 77:5, 77:6, 78:20, 78:21
**property's** [1] - 11:15
**property."** [2] - 6:2, 70:12
**proposed** [1] - 76:1
**propriety** [2] - 67:2, 77:21
**protect** [3] - 10:8, 76:6, 76:17
**protocol** [1] - 16:19

**prove** [7] - 7:14, 53:17, 54:6, 54:10, 58:7, 58:9, 66:6
**provide** [4] - 34:23, 54:17, 80:19
**provided** [8] - 4:19, 4:20, 9:4, 17:9, 18:1, 18:6, 48:20, 76:21
**provides** [4] - 8:24, 42:4, 51:16, 70:2
**PRP** [1] - 25:8
**prudent** [1] - 40:21
**public** [2] - 58:4, 58:6
**purchase** [2] - 29:23, 52:5
**purchased** [2] - 14:15, 14:18
**purpose** [2] - 17:17, 26:7
**purposes** [5] - 26:20, 40:13, 57:8
**pursuant** [3] - 21:21, 62:13, 72:24
**put** [5] - 16:17, 36:11, 54:16, 64:20, 66:5

## Q

**qualified** [1] - 34:17
**queries** [2] - 47:16, 65:12
**questions** [14] - 5:11, 31:12, 35:14, 36:14, 46:6, 62:23, 62:24, 66:11, 66:12, 68:3, 79:8, 80:5, 80:19, 81:19
**quick** [2] - 21:17, 22:3
**quiet** [1] - 63:25
**quite** [1] - 12:6
**quote** [11] - 6:1, 6:11, 6:15, 10:5, 63:20, 64:16, 69:16, 70:1, 70:3, 70:4, 70:11
**quoted** [2] - 57:18, 63:18
**quotes** [1] - 70:3
**quoting** [3] - 6:3, 67:14, 68:17

## R

**raise** [2] - 12:24, 63:5
**raised** [5] - 11:8, 11:23, 58:19, 73:25, 80:3
**raises** [1] - 69:7
**ran** [3] - 44:13, 44:17
**rank** [1] - 12:12
**re** [2] - 7:6, 28:15

**re-notice** [1] - 7:6
**reach** [4] - 48:11, 50:17, 53:15, 66:9
**reached** [1] - 44:21
**read** [2] - 60:14, 69:16
**real** [33] - 8:14, 8:16, 8:22, 8:23, 10:2, 10:8, 14:15, 29:13, 34:2, 34:19, 36:8, 50:25, 55:21, 57:3, 57:24, 63:8, 63:15, 63:17, 63:20, 63:24, 64:11, 64:22, 70:4, 70:8, 70:10, 70:11, 70:12, 71:11, 72:3, 72:6, 76:15, 76:16, 77:6
**really** [2] - 62:2, 78:4
**reason** [6] - 34:10, 49:12, 57:1, 68:19, 74:19, 76:8
**reasons** [3] - 24:24, 54:10, 61:25
**rebuttal** [1] - 34:23
**receipts** [3] - 20:3, 45:14, 45:17
**received** [25] - 16:22, 16:23, 17:15, 17:16, 19:4, 19:5, 19:18, 19:19, 21:8, 21:9, 22:16, 22:17, 23:5, 23:6, 24:10, 24:11, 25:24, 25:25, 27:23, 28:11, 28:12, 28:24, 28:25, 47:4, 47:5
**recess** [1] - 81:20
**recognize** [11] - 12:22, 14:22, 14:25, 17:7, 18:9, 19:7, 21:13, 22:19, 26:2, 27:25, 28:14
**recognized** [2] - 10:3, 12:10, 57:19
**reconvey** [1] - 21:23
**reconveyance** [3] - 21:16, 22:20, 49:21
**reconveying** [1] - 22:25
**record** [12] - 4:4, 9:19, 14:8, 26:15, 27:10, 27:11, 27:13, 27:17, 50:5, 52:17, 56:7, 65:21
**recorded** [20] - 11:20, 18:20, 19:12, 24:3, 24:25, 28:3, 28:16, 30:10, 30:11, 30:12, 30:14, 42:25, 43:11, 43:25, 49:24, 50:2, 52:15, 56:7, 59:19,

67:11
**Recorder** [2] - 26:3, 37:24
recorder [7] - 23:21, 23:25, 24:3, 42:22, 42:24, 43:6, 44:2
**recorder's** [8] - 24:15, 25:2, 25:13, 27:12, 27:16, 43:25, 67:11, 72:9
**Recorder's** [2] - 25:7, 26:25
recording [2] - 30:9, 72:9
records [17] - 23:18, 23:21, 23:25, 24:1, 24:4, 24:19, 27:10, 27:18, 27:20, 29:4, 29:19, 37:23, 41:10, 44:22, 47:2, 49:18, 56:9
recovery [1] - 70:8
**Redirect** [1] - 46:7
reduce [1] - 6:25
reduced [1] - 7:19
refer [2] - 12:23, 16:14
referable [1] - 73:11
reference [6] - 22:5, 29:15, 29:17, 29:20, 70:6, 71:10
referenced [1] - 6:5
references [2] - 21:16, 72:3
referencing [1] - 4:20, 22:24
referred [2] - 15:23, 69:12
referring [6] - 16:20, 21:19, 22:22, 29:3, 38:6
refers [3] - 22:1, 22:20, 72:4
reflected [1] - 71:18
regard [21] - 5:7, 6:20, 7:8, 8:10, 8:14, 8:23, 23:22, 31:12, 31:13, 32:16, 32:17, 34:2, 34:18, 35:3, 37:24, 37:25, 46:24, 47:17, 50:25, 63:17, 69:11
regarded [1] - 10:4
regarding [5] - 5:7, 31:11, 48:21, 79:9, 79:13
regardless [1] - 75:12
rejected [1] - 64:25
related [5] - 5:16, 62:2, 68:16
relates [1] - 26:4
released [1] - 22:8

releases [1] - 21:17
releasing [1] - 22:25
relevant [6] - 66:23, 67:24, 69:1, 69:18, 70:13, 77:9
relied [4] - 26:7, 26:19, 42:12, 60:10
relief [2] - 7:23, 57:10
removed [1] - 76:15
repeat [1] - 40:17
**Reply** [1] - 13:3
reply [2] - 63:2, 66:19
reports [1] - 32:20
represent [3] - 24:13, 24:14, 30:9
representative [1] - 27:20
request [11] - 4:12, 4:14, 4:16, 34:25, 35:3, 35:9, 49:23, 66:15, 72:20, 76:5
requesting [2] - 17:18, 76:13
require [8] - 12:15, 16:3, 54:12, 74:7, 75:21, 76:7, 76:24, 77:19
required [5] - 29:23, 30:4, 52:4, 52:9, 56:16
requirement [2] - 15:18, 53:13
requirements [1] - 64:10
requires [3] - 12:11, 24:2, 71:3
requiring [1] - 79:1
reserve [1] - 5:11
resolve [1] - 79:25
resolved [1] - 54:8
resources [2] - 80:13, 80:14
respect [8] - 43:19, 63:8, 67:6, 68:10, 72:15, 77:12, 78:25, 81:2
respective [2] - 71:4, 71:17
respondents [1] - 11:4
response [2] - 26:17, 43:17
**Response** [1] - 58:16
restrain [1] - 48:2
restrained [2] - 7:21, 54:13
restraining [3] - 4:13, 57:23, 61:6
restraint [1] - 12:16
restricted [1] - 75:23

restriction [2] - 36:1, 78:24
result [2] - 7:12, 78:10
retained [2] - 41:15, 67:17
return [1] - 36:4
review [1] - 60:19
reviewing [1] - 32:19, 32:23, 45:2
revocable [4] - 39:7, 48:7, 60:3, 67:16
rights [1] - 71:17
**Riverside** [1] - 4:10
**Rock** [70] - 4:5, 4:10, 5:20, 5:22, 5:24, 6:7, 7:3, 7:5, 7:13, 7:19, 8:13, 8:14, 9:8, 9:20, 9:23, 9:25, 10:20, 11:6, 25:7, 30:13, 30:23, 36:12, 41:3, 48:1, 50:11, 50:16, 51:6, 51:20, 51:24, 52:1, 52:12, 52:14, 52:17, 52:21, 53:8, 53:12, 53:15, 53:25, 54:5, 54:6, 55:11, 55:13, 55:24, 56:25, 57:25, 58:7, 58:10, 58:18, 58:22, 59:14, 59:25, 61:18, 63:18, 65:5, 65:10, 65:13, 65:19, 66:3, 66:5, 67:10, 67:21, 75:7, 75:8, 76:5, 76:7, 76:12, 78:24
**Rock's** [5] - 5:15, 5:23, 6:16, 30:17, 53:17
role [1] - 35:10
routinely [1] - 23:24
**Rule** [5] - 5:7, 57:10, 57:17
rule [7] - 24:4, 63:14, 64:10, 64:11, 66:20, 71:10, 76:4
ruled [6] - 5:18, 5:20, 5:23, 8:4, 10:10, 77:21, 80:9
ruling [35] - 5:11, 5:16, 6:4, 6:6, 6:7, 6:20, 6:22, 6:24, 27:9, 27:17, 61:16, 61:21, 62:8, 62:18, 69:22, 73:7, 74:3, 74:5, 74:24, 75:25, 77:3, 77:11, 77:15, 77:17, 78:2, 78:4, 78:7, 78:8, 78:9, 78:10, 78:11, 79:5, 79:9, 79:13, 79:15

rulings [1] - 80:10

**S**

sale [23] - 5:25, 7:7, 7:21, 17:10, 19:25, 23:24, 24:20, 29:2, 30:2, 47:25, 48:2, 54:3, 54:4, 54:12, 55:6, 55:14, 62:11, 62:13, 62:16, 65:14, 76:1, 76:23
**Salt** [1] - 14:12
satisfied [1] - 41:4
saw [1] - 23:10
schedule [2] - 47:21, 48:24
**Schedule** [1] - 48:24
scheduled [2] - 47:25, 54:3
scope [3] - 7:8, 74:8, 74:20
search [37] - 23:17, 23:25, 24:19, 29:1, 37:4, 37:8, 37:9, 37:13, 37:15, 37:17, 37:22, 38:14, 38:17, 38:19, 38:23, 40:5, 40:22, 40:25, 41:14, 41:24, 42:2, 42:3, 42:7, 42:11, 42:15, 43:2, 44:5, 44:7, 44:10, 44:17, 45:4, 45:6, 49:18, 51:25, 56:1, 56:3, 56:8
searched [8] - 23:21, 37:19, 37:23, 38:3, 41:12, 41:18, 41:22, 42:8
searches [3] - 23:23, 32:23, 38:7
searching [5] - 26:8, 32:22, 32:23, 33:14, 34:18
**Searching** [1] - 33:14
seated [1] - 13:21
second [7] - 20:17, 57:17, 59:3, 60:6, 60:7, 66:22, 79:18
**Second** [5] - 12:19, 46:1, 60:24, 67:14
section [1] - 70:6
secure [1] - 19:12
security [3] - 18:16, 18:17, 76:6
see [12] - 17:21, 18:14, 20:14, 20:18, 24:16, 25:10, 30:8, 33:12, 39:16, 39:17, 39:18, 45:18

seeking [1] - 77:25
seem [1] - 12:24
seemingly [1] - 62:17
seize [1] - 59:4
self [1] - 5:7
self-authentication [1] - 5:7
seller [1] - 56:4
sellers [1] - 30:3
senior [4] - 31:20, 31:21, 31:22, 32:11
sentence [2] - 48:9, 60:7
sentences [1] - 64:19
separate [6] - 9:3, 41:4, 49:1, 49:2, 57:13, 73:8
separated [1] - 5:16
separately [1] - 15:15
**September** [2] - 30:11, 49:14
**Services** [1] - 31:16
set [3] - 4:12, 4:20, 67:9
settlor [19] - 6:2, 9:14, 39:7, 39:10, 39:21, 40:2, 48:11, 48:13, 48:15, 48:16, 49:5, 56:5, 59:22, 60:2, 66:8, 71:3, 75:1, 75:24
settlor's [6] - 39:8, 48:6, 48:7, 48:8, 50:13, 60:4
settlors [3] - 9:14, 40:20, 71:17
several [1] - 81:6
**Shall** [1] - 63:22
shall [1] - 70:4
sheriff [1] - 65:14
**Sheriff** [1] - 62:9
sheriff's [2] - 55:6, 55:14
shoes [4] - 9:21, 36:9, 52:11, 55:18
shopping [1] - 7:11
shortness [1] - 74:1
show [6] - 9:5, 9:6, 20:11, 42:18, 56:20, 57:14
showing [3] - 45:13, 76:12, 76:17
shown [6] - 30:22, 50:5, 50:17, 51:13, 57:7, 59:7
shows [6] - 9:7, 20:1, 20:12, 41:18, 41:22, 42:14
side [2] - 68:17, 80:19
signature [1] - 21:24

signed [1] - 21:20
Significantly [2] - 49:19, 77:3
similar [1] - 55:3, 73:25
similarly [1] - 73:25
simple [1] - 74:17
simply [13] - 5:10, 10:21, 16:12, 27:17, 35:10, 51:24, 58:19, 61:14, 70:15, 77:25, 78:9, 78:15, 80:12
Single [5] - 5:16, 5:20, 7:20, 65:10, 66:2
sister [1] - 31:15
sit [1] - 18:22
situated." [2] - 63:21, 70:5
situation [3] - 32:18, 53:4, 75:9
small [1] - 33:24
so-and-so [1] - 73:14
sold [4] - 72:24, 74:16, 76:3, 78:20
sole [1] - 66:8
Someone [1] - 37:9
someone [3] - 44:17, 70:23, 70:25
sorry [3] - 14:22, 17:3, 38:16
sought [3] - 12:14, 75:12, 75:13
sounds [1] - 26:20
Sourcecorp [7] - 54:18, 55:2, 55:6, 55:8, 55:11, 55:24
sparked [1] - 81:2
special [1] - 28:3
specific [4] - 37:24, 66:20, 67:9, 79:15
Specifically [2] - 59:1, 60:1
specifically [1] - 70:17
spouse [1] - 71:2
sprang [1] - 53:2
stamp [1] - 24:15
stand [1] - 13:17
standing [1] - 10:17
standpoint [1] - 36:8
started [2] - 5:1, 33:21
state [3] - 14:7, 39:6, 73:4
State [3] - 34:5, 43:11, 81:16
statements [1] - 77:14
states [1] - 60:2
States [1] - 60:15
statue [1] - 8:21
statue [3] - 8:24, 9:7, 34:2, 48:5, 50:12,

53:14, 54:6, 63:18, 63:19, 64:13, 66:6, 70:2
statute." [1] - 64:23
statutes [1] - 11:21
Statutory [1] - 8:20
statutory [2] - 63:13, 64:8
step [3] - 13:18, 46:11, 52:10
stepped [1] - 55:18, 72:14
sticker [1] - 16:18
stickers [1] - 16:6
still [3] - 48:18, 48:20, 78:12
strategically [1] - 80:16
struggled [1] - 68:24
sub [2] - 51:7, 55:19
subject [29] - 5:25, 8:8, 9:23, 28:6, 35:5, 35:12, 36:1, 39:8, 43:19, 45:15, 48:7, 51:6, 54:2, 56:25, 57:15, 60:3, 63:21, 63:24, 67:12, 67:18, 67:19, 70:5, 74:13, 75:4, 75:15, 75:19, 78:21, 79:2, 79:21
submit [10] - 8:1, 9:4, 9:16, 10:11, 48:17, 50:1, 57:5, 58:5, 58:11, 66:10
submitted [1] - 77:17
submitting [1] - 15:19
subordinated [1] - 51:7
subordinating [1] - 52:3
subordination [1] - 11:25
subpoena [1] - 47:20
subrogated [4] - 30:15, 36:9, 51:17, 53:6
subrogation [13] - 9:18, 9:21, 11:25, 51:19, 55:8, 55:16, 55:23, 56:11, 56:12, 56:14, 56:18, 56:24, 77:4
substantial [5] - 9:6, 9:16, 57:3, 57:6, 57:11
substitute [1] - 55:10
suffer [1] - 57:18
sufficiency [1] - 77:8
sufficient [2] - 54:12, 57:8

suggesting [2] - 56:2, 77:24
suggestion [4] - 74:15, 77:18, 77:23, 78:3
suggestions [1] - 62:5
suggests [2] - 69:8, 76:23
sum [2] - 20:7, 45:19
summary [3] - 19:22, 45:13, 51:13
sun [1] - 11:6
supervise [1] - 31:15
supervised [2] - 31:25, 32:1
supplement [1] - 5:21
supplemental [1] - 5:19
support [1] - 76:24
supportive [1] - 58:6
suppose [2] - 42:1, 79:23
Supreme [34] - 6:6, 6:7, 8:4, 8:11, 8:14, 59:19, 59:20, 61:19, 61:24, 62:8, 63:7, 63:16, 63:19, 64:7, 64:17, 66:2, 67:5, 67:8, 67:20, 68:14, 68:21, 69:10, 69:22, 70:7, 70:21, 71:9, 71:22, 72:1, 72:11, 72:21, 73:4, 75:3, 76:9, 81:15
surrounding [1] - 11:1
Sustain [1] - 40:9
sustained [1] - 35:21
Sustained [2] - 31:3, 39:24
sworn [2] - 13:20, 14:2
system [1] - 12:7

### T

Tab [75] - 15:14, 16:22, 16:23, 17:2, 17:3, 17:11, 17:13, 17:15, 17:16, 18:7, 18:25, 19:4, 19:5, 19:7, 19:14, 19:18, 19:19, 19:21, 21:5, 21:6, 21:8, 21:9, 21:11, 22:2, 22:8, 22:9, 22:12, 22:16, 22:17, 22:18, 22:21, 22:22, 23:3, 23:5, 23:6, 23:8, 24:6, 24:7, 24:8, 24:10, 24:11, 24:13, 24:14,

24:15, 25:19, 25:24, 25:25, 26:2, 26:10, 27:23, 27:25, 28:11, 28:12, 28:13, 28:22, 28:24, 28:25, 29:11, 29:20, 30:10, 30:12, 30:13, 37:3, 39:14, 39:15, 45:11, 48:24, 50:1, 50:2, 51:10, 51:11, 51:12, 52:15
tab [2] - 16:15, 16:20
table [1] - 15:17
Tabs [4] - 30:22, 47:1, 47:4, 47:5
tabs [2] - 15:24, 21:18, 38:11
temporary [2] - 4:13, 61:5
Ten [2] - 14:22, 14:23
terms [2] - 37:19, 62:5
testified [1] - 14:3
testify [5] - 4:22, 13:19, 34:17, 42:1, 46:24
testimony [6] - 24:18, 26:19, 42:17, 46:10, 52:4, 56:8
THE [92] - 4:4, 4:9, 4:11, 4:18, 4:23, 4:25, 5:3, 5:9, 10:15, 12:25, 13:2, 13:10, 13:12, 13:14, 13:16, 13:18, 13:21, 13:22, 13:24, 15:12, 15:14, 15:18, 16:1, 16:7, 16:10, 16:12, 16:17, 16:24, 17:2, 17:6, 17:13, 17:15, 19:2, 19:4, 19:16, 19:18, 21:4, 21:6, 21:8, 22:14, 22:16, 23:3, 23:5, 24:8, 24:10, 25:20, 25:22, 25:24, 26:12, 26:17, 26:22, 27:2, 27:9, 28:9, 28:11, 28:22, 28:24, 31:3, 34:20, 34:25, 36:15, 36:21, 39:14, 39:16, 39:24, 40:9, 40:17, 43:15, 43:17, 46:7, 46:9, 46:12, 46:14, 46:16, 46:18, 47:1, 47:4, 47:8, 47:13, 54:21, 54:23, 54:25, 58:14, 58:16, 62:24, 63:2, 66:12, 79:7, 79:12, 79:23, 80:23, 80:25
Theirs [1] - 63:6
themselves [1] - 56:20

therefore [13] - 6:14, 7:21, 9:20, 51:5, 53:19, 53:21, 54:6, 57:20, 57:21, 58:9, 65:16, 66:5, 74:16
Therefore [2] - 8:17, 50:11
they've [1] - 58:24
Third [33] - 8:25, 10:22, 11:2, 12:2, 12:20, 12:23, 46:23, 53:25, 58:20, 58:25, 60:5, 60:12, 60:22, 60:24, 61:3, 61:7, 61:15, 61:16, 62:3, 63:12, 69:23, 71:15, 71:20, 72:8, 72:11, 72:14, 72:16, 72:17, 72:19, 73:1, 73:11, 73:12, 73:20
third [3] - 57:23, 62:15, 65:1
three [5] - 56:18, 59:13, 67:9, 67:23, 68:1
throughout [1] - 23:12
TILT [56] - 4:7, 4:17, 4:19, 4:24, 5:2, 5:4, 5:13, 13:6, 13:11, 13:13, 13:15, 13:17, 13:23, 14:6, 15:10, 15:17, 15:25, 16:5, 16:9, 16:11, 16:16, 17:5, 17:11, 18:25, 19:14, 21:3, 21:5, 22:12, 23:1, 24:6, 25:18, 26:10, 26:18, 27:3, 28:7, 28:20, 34:16, 36:3, 36:14, 36:20, 39:23, 40:8, 43:14, 46:8, 46:13, 46:15, 46:21, 47:6, 47:16, 54:22, 54:24, 55:1, 58:15, 63:3, 79:6, 79:11
Tilt [27] - 4:7, 16:25, 17:3, 17:7, 17:17, 19:6, 19:20, 21:10, 22:18, 23:7, 24:12, 26:1, 26:17, 27:2, 27:24, 28:13, 29:1, 31:4, 36:4, 46:20, 47:15, 63:2, 66:18, 67:1, 77:1, 79:4, 79:8
timely [1] - 65:17
timing [2] - 52:13, 62:12
Title [32] - 14:12, 14:14, 14:17, 17:9,

19:24, 21:23, 23:17, 27:11, 27:14, 27:18, 27:20, 31:5, 31:14, 31:16, 31:22, 32:8, 33:3, 33:7, 33:9, 33:10, 33:19, 36:5, 37:17, 37:22, 38:14, 38:17, 44:10, 45:14, 49:18, 81:2, 81:3, 81:7

**title** [33] - 14:18, 15:6, 17:19, 26:4, 26:8, 27:1, 28:5, 30:8, 30:25, 31:11, 31:12, 32:3, 32:16, 32:19, 32:25, 33:14, 33:17, 34:18, 34:6, 37:9, 38:21, 39:2, 43:10, 48:18, 51:25, 52:6, 55:3, 59:16, 60:25, 67:15, 79:6

**Titleco** [1] - 26:6, 28:15, 47:17, 81:4

**titles** [1] - 33:15

**to''** [2] - 8:7, 18:20

**today** [30] - 4:20, 4:24, 8:14, 6:1, 6:16, 7:22, 7:25, 11:22, 12:1, 12:4, 18:22, 34:22, 38:9, 41:18, 41:20, 41:21, 42:14, 44:23, 44:25, 45:9, 47:18, 48:1, 48:20, 54:15, 56:14, 70:19, 77:10, 77:12, 79:9, 79:14, 80:6, 80:8

**today's** [2] - 47:24, 57:8

**tongue** [1] - 47:18

**took** [1] - 7:5

**top** [1] - 18:19

**Traci** [11] - 17:20, 17:22, 18:13, 19:9, 28:4, 28:17, 28:18, 30:2, 39:18, 39:19, 49:3

**Traci's** [1] - 68:18

**traditional** [1] - 10:13

**training** [1] - 35:7

**trans** [1] - 19:24

**transaction** [11] - 14:20, 15:8, 18:2, 19:25, 20:8, 20:25, 21:21, 26:9, 41:4, 45:15, 46:2

**transactions** [1] - 31:17

**transcript** [6] - 6:4, 6:10, 6:21, 6:23, 7:1,

7:4

**Transportation** [1] - 10:6

**tried** [4] - 63:20, 64:12, 70:4, 71:13

**true** [1] - 40:19

**Trust** [23] - 15:6, 17:8, 17:18, 17:21, 17:25, 18:14, 19:10, 19:13, 20:1, 23:20, 24:21, 25:15, 28:5, 28:17, 28:19, 29:5, 29:8, 29:16, 29:18, 30:3, 38:1, 38:20, 56:21

**trust** [66] - 9:12, 9:15, 11:15, 17:10, 17:21, 17:24, 18:12, 18:18, 18:22, 19:8, 19:11, 21:17, 21:19, 21:20, 21:23, 22:1, 22:21, 22:25, 29:2, 30:10, 30:11, 30:16, 36:10, 39:2, 39:7, 39:11, 40:2, 40:21, 41:1, 41:6, 48:7, 48:11, 48:12, 48:22, 48:23, 48:25, 49:6, 49:9, 49:10, 49:11, 49:13, 49:15, 49:16, 49:22, 50:3, 50:8, 50:10, 50:19, 51:3, 51:10, 51:11, 51:13, 51:15, 52:16, 52:20, 53:7, 56:4, 56:19, 57:1, 60:3, 67:16, 75:2, 75:19, 75:24

**Trust/Mulligan** [1] - 26:9

**trustee** [10] - 11:13, 11:18, 17:23, 38:1, 38:20, 39:2, 41:6, 44:15, 75:19, 81:7

**trustees** [9] - 15:6, 17:20, 18:13, 19:9, 28:5, 28:17, 28:18, 30:3, 39:19

**trustors** [3] - 18:14, 39:19, 39:20

**trusts** [1] - 30:21

**truth** [2] - 14:3, 35:18

**try** [1] - 31:21

**trying** [3] - 7:12, 62:6, 65:21

**turn** [10] - 14:21, 16:25, 18:7, 19:20, 21:2, 23:7, 26:1, 27:24, 28:13, 47:9

**two** [13] - 9:14, 10:5, 30:6, 30:16, 30:21, 36:10, 56:14, 56:25,

65:18, 66:20, 71:4, 80:2

**type** [1] - 33:23

## U

**ultimately** [3] - 10:20, 11:1, 59:17

**Ultimately** [2] - 33:24

**Under** [3] - 48:25, 49:1, 49:2

**under** [30] - 7:7, 8:23, 9:21, 10:10, 11:6, 13:19, 18:20, 20:9, 38:19, 40:25, 41:5, 41:18, 41:22, 41:24, 45:17, 53:14, 54:7, 56:10, 57:10, 57:17, 57:23, 58:7, 59:5, 59:7, 59:10, 59:21, 63:18, 64:9, 65:7, 66:6

**underlying** [1] - 10:14

**undermine** [1] - 74:22

**Understood** [1] - 80:22

**underwriter** [1] - 32:9

**underwriting** [4] - 32:13, 32:15, 32:16, 33:2

**unilaterally** [1] - 7:6

**unique** [4] - 10:4, 55:21, 57:20, 81:12

**United** [1] - 60:15

**unjust** [1] - 9:25

**unless** [2] - 62:22, 66:11

**unnecessary** [1] - 80:13

**unusual** [1] - 12:17

**up** [15] - 7:14, 24:19, 31:12, 41:1, 42:18, 49:23, 53:2, 56:8, 59:19, 62:11, 64:5, 65:24, 72:19, 81:6, 81:9

**upheld** [3] - 61:20, 65:23, 65:24

**urge** [1] - 60:24

**usual** [1] - 12:16

**Utah** [14] - 10:3, 10:5, 34:5, 39:4, 40:4, 43:11, 57:19, 59:21, 63:7, 64:7, 81:3, 81:7, 81:14, 81:16

## V

**valid** [5] - 27:8, 59:21, 72:1, 75:22, 76:10

**validity** [6] - 68:2, 68:10, 71:7, 74:6, 74:23

**validly** [2] - 12:19, 73:1

**Valle** [84] - 6:13, 9:11, 11:12, 11:13, 11:15, 11:17, 15:3, 15:5, 15:6, 17:8, 17:18, 17:20, 17:21, 17:25, 18:13, 19:9, 19:13, 19:25, 23:19, 24:20, 25:3, 25:11, 25:15, 26:8, 28:4, 28:5, 28:17, 28:18, 29:5, 29:8, 29:16, 29:17, 30:3, 37:25, 38:1, 38:15, 38:18, 38:20, 38:23, 39:10, 39:18, 40:2, 40:6, 40:22, 40:25, 41:5, 41:12, 41:19, 41:22, 41:24, 42:10, 44:11, 44:14, 44:18, 48:17, 48:21, 49:5, 49:9, 50:6, 50:7, 50:9, 56:21, 59:5, 59:8, 59:22, 65:5, 68:23, 70:20, 74:9, 74:12, 74:15, 74:25, 75:18, 75:23

**value** [4] - 76:14, 76:16, 76:18, 78:15

**various** [2] - 32:13, 81:4

**venue** [7] - 8:24, 63:18, 63:19, 64:12, 64:22, 70:2

**verify** [1] - 17:22

**versus** [6] - 4:5, 10:6, 54:18, 55:2, 57:25, 60:15

**via** [2] - 22:24, 32:25

**vice** [3] - 14:11, 31:7, 31:20

**Vice** [1] - 31:21

**vis** [1] - 32:25

**vis-a-via** [1] - 32:25

**voided** [1] - 77:25

**volunteer** [2] - 52:7, 56:15

## W

**wait** [1] - 52:25

**waited** [3] - 52:19

**waiting** [2] - 13:9, 13:11

**wants** [3] - 47:19, 60:23, 75:7

**warranty** [3] - 28:3,

28:15, 28:16

**Weber** [10] - 9:1, 23:19, 25:6, 26:3, 26:25, 37:23, 62:9, 69:24, 72:10, 73:13

**website** [1] - 26:14

**weighs** [1] - 58:2

**weight** [4] - 26:21, 35:17, 35:23, 36:18

**welcome** [1] - 47:21

**whatsoever** [1] - 63:15

**whole** [1] - 69:17

**wife** [2] - 9:15, 15:5

**wife's** [1] - 49:2

**windfall** [3] - 52:1, 53:4, 57:2

**wish** [2] - 4:25, 13:4

**withdraw** [3] - 77:18, 78:9, 78:13

**withdrawal** [1] - 77:19, 77:20

**withdrawing** [1] - 77:21

**withdrawn** [2] - 78:6, 78:7

**withdrew** [3] - 62:19, 62:20, 65:12

**witness** [20] - 4:21, 13:23, 14:2, 31:1, 34:17, 34:23, 35:1, 35:16, 35:21, 36:1, 40:11, 43:22, 46:13, 46:15, 46:19, 47:17, 48:5, 48:10, 50:4

**Witness** [1] - 13:20

**WITNESS** [6] - 13:22, 17:6, 39:16, 40:17, 43:15, 46:12

**witness'** [3] - 26:18, 40:14, 46:10

**witnesses** [2] - 34:22, 35:14

**wonder** [1] - 18:19

**words** [2] - 50:4, 54:4

**wore** [1] - 32:12

**writ** [83] - 5:23, 5:24, 7:7, 7:16, 8:3, 8:5, 8:6, 8:15, 8:18, 9:8, 10:24, 11:1, 11:3, 11:7, 11:9, 11:16, 12:19, 46:23, 50:25, 51:6, 52:22, 52:23, 53:23, 53:24, 54:1, 54:8, 57:15, 58:21, 58:23, 59:2, 59:3, 59:15, 59:16, 59:20, 60:1, 60:5, 61:2, 61:11, 61:18, 62:7, 62:10, 63:6, 63:7,

63:9, 63:11, 63:13, 63:14, 64:9, 64:14, 64:21, 65:3, 65:23, 66:9, 66:21, 66:25, 67:2, 67:15, 67:21, 67:22, 68:2, 68:3, 68:11, 69:14, 69:19, 69:24, 71:8, 71:25, 72:20, 72:21, 72:22, 72:25, 73:2, 74:5, 74:21, 74:23, 74:25, 75:12, 77:8, 79:1, 80:9

**writ."** [1] - 67:25
**write** [1] - 65:7
**writing** [1] - 7:19
**written** [5] - 6:4, 6:23, 7:1, 7:3, 8:12

## Y

**year** [1] - 33:25
**years** [4] - 31:6, 31:23, 59:13, 81:8

## Z

**zero** [1] - 50:14
**Zion's** [1] - 49:21

## "

**"But** [1] - 8:6
**"Comity** [1] - 60:18
**"During** [2] - 39:6, 60:2
**"Federal** [1] - 12:9
**"Indeed** [1] - 64:17
**"May** [1] - 6:1
**"Neither** [1] - 68:17
**"Real** [1] - 10:4
**"shall** [1] - 63:20
**"Simply** [1] - 64:20
**"The** [3] - 59:2, 59:3, 69:18
**"Therefore** [1] - 6:12
**"this** [1] - 64:20
**"Those** [1] - 70:7
**"We** [4] - 67:10, 67:14, 67:23, 70:1
**"Well** [1] - 73:13
**"when** [1] - 18:20