**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| MOLLY J. MULLIGAN; and JOHN P. MULLIGAN,<br><br>Plaintiffs,<br><br>vs.<br><br>ALUM ROCK RIVERSIDE, LLC, a California corporation; BRETT H. DEL VALLE and TRACI M. DEL VALLE, as Co-Trustees of the Del Valle Family Trust dated October 30, 2002,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:25-cv-00008-DAK-CMR<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Cecilia M. Romero |

This matter is before the court on Plaintiffs' Motion to Dismiss Counterclaim of Alum Rock, LLC [ECF No. 38] and Plaintiffs' Motion for Summary Judgment [ECF No. 40]. On July 9, 2026, the court held a hearing on the motions. At the hearing, Plaintiffs were represented by Bradley L. Tilt, and Defendants were represented by Benjamin D. Johnson and Kyle C. Hooker. The court took the motion under advisement. After carefully considering the memoranda filed by the parties and the law and facts pertaining to the motion, the court issues the following Memorandum Decision and Order.

**BACKGROUND**

In 2002, Defendants Brett and Traci Del Valle created the Del Valle Family Trust (the "Trust") as a revocable trust with Brett and Traci as both settlors and beneficiaries. In 2007, the Trust purchased property located in Weber County, Utah (the "Property") from Basinview Development ("Basinview"). Basinview conveyed the Property to the Trust by special warranty deed, which did not name the settlors or beneficiaries of the Trust.

Plaintiffs Molly and John Mulligan bought the Property from the Trust. The Mulligans retained Metro National Title ("Metro") to conduct the title examination and facilitate closing. Metro searched the Property's chain of title, the Weber County abstract and the recorder indexes, and the court's Xchange system. Metro's search identified multiple encumbrances that were all satisfied at closing including: (1) $712,209.92 in satisfaction of a mortgage loan given to the Trust and secured by the Property, (2) $948,000.00 in satisfaction of a mortgage loan given to the Trust and secured by the Property, (3) $46,248.89 in delinquent property taxes, and (4) $2,125.00 in delinquent homeowner association dues. The Property was conveyed by warranty deed (the "Warranty Deed") and recorded on May 11, 2021. The Warranty Deed does not name the beneficiaries or settlors of the Trust, nor does it identify the Trust as revocable.

In 2020, Defendant Alum Rock obtained a judgment against Brett Del Valle in California Superior Court. On October 23, 2020, Alum Rock domesticated that judgment in the Third Judicial District Court in Utah. Less than a month later, Alum Rock recorded its judgment lien with the Weber County Recorder. The recorded judgment lien is captioned "Alum Rock Riverside LLC, Plaintiff vs. PRP INVESTORS MADISON, LLC, a limited liability company, and Brett DEL VALLE, an individual and DOES 1 through 50 inclusive.

One month after the sale of the Property to the Mulligans, Alum Rock applied for a writ of execution against the Property, identifying Brett Del Valle as the judgment debtor and asking the Utah state district court to direct the sheriff to seize and sell the Property to satisfy the judgment. The Mulligans challenged the writ, and the dispute ultimately reached the Utah Supreme Court. The Utah Supreme Court held that Alum Rock created a valid judgment lien by recording its judgment with the Weber County Recorder. *Mulligan v. Alum Rock Riverside, LLC,* 2024 UT 22, ¶ 51. It further held that Brett "owned" the Property for purposes of the Judgment

Act because, as a settlor and trustee of the Trust, he retained the functional equivalent of ownership over its assets. *Id.* ¶ 62. The court held that Alum Rock's lien therefore attached to the Property when the judgment was recorded. *Id*.

Plaintiffs brought the instant lawsuit and now seek summary judgment that they are bona fide purchasers for value without notice of Alum Rock's judgment lien or alternatively, that they are equitably subrogated to the priority of the encumbrances satisfied at closing. Plaintiffs also have moved to dismiss under Rule 12(b)(6) Alum Rock's counterclaim seeking to quiet title in its favor and to determine the extent to which the judgment lien attaches to the Property.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The movant bears the initial burden to show the absence of a genuine issue of material fact, and if successful, the burden then shifts to the nonmovant to set forth specific facts showing that there is a genuine issue for trial." *Tufaro v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma,* 107 F.4th 1121, 1131 (10th Cir. 2024). When applying this standard, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion." *Scott v. Harris,* 550 U.S. 372, 378 (2007).

**DISCUSSION**

*Prior Proceedings*

Alum Rock contends that the Mulligans' claims are foreclosed by the prior Utah state court proceedings based on both the law of the case and issue preclusion doctrines. Alum Rock relies principally on the Utah Supreme Court's decision *Mulligan v. Alum Rock Riverside, LLC* and Judge Hyde's oral ruling denying in substantial part, the Mulligans' request to supplement their complaint in a separate action involving Single Box, L.P. The court has already considered and rejected substantially the same preclusion arguments in denying Alum Rock's motion to dismiss [ECF No. 14]. The summary judgment record does not warrant a different conclusion.

The validity and initial attachment of Alum Rock's lien are settled. Alum Rock properly created a lien by recording its judgment with the Weber County Recorder, and the lien attached because Brett functionally owned the Property through the Trust. *Mulligan*, 2024 UT 22, ¶¶ 51, 62. The Mulligans may not relitigate those conclusions. But the Mulligans do not argue that Alum Rock failed to create a valid lien or that the lien never attached. They contend that, notwithstanding its prior attachment, the lien is unenforceable against their subsequently acquired interest because they purchased the Property for value without notice. The Utah Supreme Court did not address bona fide purchaser status, the notice provided the Mulligans, or the effect of Utah Code § 57-3-102 (4) and (5). Determining whether a lien attached to the judgment debtor's interest is distinct from determining whether the lien may be enforced against a subsequent bona fide purchaser. Nor does Judge Hyde's ruling compel a different conclusion for the same reasons discussed in the court's order denying Alum Rock's Motion to Dismiss [ECF No. 35]. The prior proceedings therefore do not foreclose the claims presented here.

*Bona Fide Purchasers for Value*

"A bona fide purchaser is one who pays valuable consideration for a conveyance, acts in good faith, and takes without notice of an adverse claim or others' outstanding rights to the

seller's title." *Baldwin v. Burton,* 850 P.2d 1188, 1197 (Utah 1993). The undisputed evidence establishes that the Mulligans paid $1.8 million for the Property. The evidence also demonstrates their good faith when they retained a title and escrow company, examined the available property records, satisfied the encumbrances disclosed through that examination, and completed the transaction in accordance with the purchase agreement. Alum Rock identifies no evidence contrary to these facts. The disputed issue is notice.

*Record Notice*

Notice of a prior interest may be actual or constructive. *Haik v. Sandy City*, 2011 UT 26, ¶ 14. "[C]onstructive notice may result from record or inquiry notice." *Pioneer Builders Co. of Nevada, Inc. v. K D A Corp.,* 2012 UT 74, ¶ 23. Record notice "results from a record or is imputed by the recording statutes." *Id.* ¶ 24. Utah Code § 57-3-102(1) generally provides that a properly recorded document imparts notice of its contents. Subsections (4) and (5), however, specifically address notice arising from conveyance involving trusts. Subsection (4) provides:

> The fact that a recorded document recites only nominal consideration, names the grantee as trustee, or otherwise purports to be in trust without naming beneficiaries or stating the terms of the trust does not charge any third person with notice of any interest of the grantor or of the interest of any other person not named in the document.

Subsection (5) further provides:

> The grantee in a recorded document may convey the interest granted to the grantee free and clear of all claims not disclosed in the document in which the grantee appears as grantee or in any other document recorded in accordance with this title that sets forth the names of the beneficiaries, specifies the interest claimed, and describes the real property subject to the interest.

The deed conveying the Property to the Trust did not identify Brett as a settlor or beneficiary, disclose that the Trust was revocable, or state the Trust terms giving Brett control over its assets. Those undisclosed terms later supplied the basis for the Utah Supreme Court's conclusion that

Brett functionally owned the Property. *Mulligan,* 2024 UT 22, ¶¶ 57-62. But under § 57-3-102(4), the recorded deed did not charge a third party with notice of Brett's unnamed interest or the undisclosed Trust terms.

Alum Rock responds that recording its judgment with the Weber County recorder and indexing it by name imparted constructive notice under Utah Code § 17-21-6. That statute generally provides that a document appearing in all or in part of the recorder's required indexes gives constructive notice. But it must be read together with the more specific protections governing trusts in § 57-3-102 (4) and (5). Courts must harmonize related provisions so that each retains meaningful effect. *See Mulligan,* 2024 UT ¶ 40. Under Alum Rock's proposed construction, the recording of a judgment solely under an unnamed settlor's individual name would charge a purchaser with notice that the judgment encumbers trust property even though the property records do not identify that person or disclose his relationship to the trust. A purchaser would be required to identify undisclosed settlors and beneficiaries, obtain unrecorded trust terms, and search the judgment indexes under each person's name. That construction would substantially nullify subsection (4)'s express direction that a deed naming a trust or trustee does not charge third parties with notice of unnamed persons or undisclosed interests.

The statutes can instead be reconciled by acknowledging that the judgment index gave notice of a judgment against Brett but did not supply omitted facts connecting Brett to this particular Trust and Property. Section 57-3-102 (4) prevented the Trust's vesting deed from charging the Mulligans with notice of Brett's undisclosed interest. This conclusion does not undermine the Utah Supreme Court's decision. Alum Rock's recording was sufficient to create a valid judgment lien, and that lien attached because Brett functionally owned the Property under the Trust's unrecorded terms. *Id.* ¶¶ 51, 62. But the Utah Supreme Court did not decide that the

recording disclosed those terms to a subsequent purchaser or displaced the protections of § 57-3-102 (4) and (5).

The record further demonstrates that the link between Brett and the Property was not reasonably discoverable from the available property records. The title company searched the Property's chain of title, the Weber County abstract and recorder indexes, and Xchange but did not find Alum Rock's judgment as an encumbrance on the Property. Even a name based search would have required the searcher to know Brett's name was relevant to property whose record owner was the Trust. The recorded documents supplied no such information.

The court does not hold that a judgment lien generally must include a legal description or appear in a property's tract index to be valid. *Mulligan* forecloses that conclusion. The narrower holding is that Alum Rock's recorded judgment did not give the Mulligans constructive notice of the undisclosed connection between Brett and property titled in the Trust's name, particularly considering the express protections established by § 57-3-102 (4) and (5).

*Inquiry Notice*

Inquiry notice arises when known circumstances "should put a reasonable person on guard so as to require further inquiry." *First American Title Insurance Co. v. J.B. Ranch, Inc.,* 966 P.2d 834, 838 (Utah 1998). Inquiry notice must arise from the facts known to the purchaser or imputed to the purchaser at the time of the transaction. *See Pioneer Builders*, 292 P.3d at 681. To support its contention that the Mulligans had inquiry notice, Alum Rock relies on Metro's possession of the Trust instrument, Metro's Xchange search, and a second trust deed securing more than $4.2 million. Considered individually or collectively, these circumstances do not create a genuine dispute concerning inquiry notice.

Metro obtained the Trust instrument to verify the trustees' authority to convey the

Property. Although the document disclosed Brett's relationship to the Trust, it contained no reference to Alum Rock or its judgment. Knowledge that Brett was a settlor or trustee did not itself suggest that Alum Rock held an adverse claim against the Property.

Metro's Xchange search likewise does not establish inquiry notice of Alum Rock's claim. That search returned a proceeding involving another creditor's (Single Box) attempt to domesticate a different foreign judgment against Brett. It did not return Alum Rock's judgment proceeding, in part because of the manner in which Brett's name appeared in the Xchange system. Knowledge that one creditor asserted a judgment against Brett did not constitute notice that Alum Rock held a separate judgment.

More importantly, the evidence establishes that Metro undertook the further investigation that Alum Rock contends the Single Box proceeding should have prompted. The title commitment reflects that Metro searched for judgments under Brett and Traci's names and found none appearing of record that attached to the Property. Metro also searched the Property records, the county indexes and Xchange. Those searches did not disclose Alum Rock's lien.

Alum Rock's witnesses demonstrated during their depositions that its judgment could be located through a name search of the county's grantor-grantee index. But evidence that the judgment was capable of being found does not establish that Metro failed to conduct a reasonable investigation. A duty of inquiry requires reasonable diligence. It does not make a purchaser an insurer that every recorded document will be found. Nor does the possibility that a different search might have located the judgment establish notice where the recorded documents did not connect Brett to the Property.

Alum Rock also argues that the fact Brett Del Valle used the Property to secure a debt less than a year before selling the Property established inquiry notice. The Mulligans

testified that escrow handled the encumbrances and that they did not know the relevant details. The evidence further established that the trust deed appeared in the Property records and was resolved through an agreed payoff at closing. The discovery and satisfaction of a recorded encumbrance did not reasonably indicate that Alum Rock held a separate judgment against an individual whose relationship to the Property did not appear in the recorded chain of title.

Even if the Mulligans knew the amount of the trust deed and its discounted payoff, those circumstances would not provide notice of Alum Rock's particular claim. A creditor may accept less than the stated debt for numerous reasons. That fact does not reasonably suggest that an unidentified creditor holds a separate judgment lien arising from the undisclosed interest of an unnamed trust settlor. Inquiry notice requires facts suggesting a potential defect or adverse interest in the title being acquired. *Patel v. Rupp,* 195 B.R. 779,784 (D. Utah 1996). It does not impose a duty to investigate every conceivable creditor of every person who might have an undisclosed relationship to the record owner.

*Actual Notice*

"Actual notice arises from actual knowledge of an…infirmity in the grantor's title." *Haik*, 2011 UT 26, ¶14. Here, the record also establishes that the Mulligans lacked actual notice. Molly and John Mulligan testified that they did not know about Alum Rock's judgment before purchasing the Property. They did not receive the Trust instrument or know its provisions. Metro did not discover Alum Rock's judgment during its examination of the public and court records.

Alum Rock asserts that Metro possessed a copy of the Trust instrument in connection with the closing. Even assuming Metro possessed the document and that its knowledge may be imputed to the Mulligans, the Trust instrument did not disclose Alum Rock's judgment. Possession of the Trust instrument might establish knowledge of Brett's relationship or control

over the Trust but is would not establish actual knowledge that Alum Rock held judgment or claimed a lien against the Property.

The evidence establishes that the Mulligans purchased the Property for value, acted in good faith and lacked actual, constructive and inquiry notice of Alum Rock's lien. They acquired the Property as bona fide purchasers. Because the court makes this determination it need not address Plaintiffs' alternative equitable subrogation theory.

*Plaintiffs' Motion to Dismiss*

Alum Rock's counterclaim seeks to quiet title in its favor and obtain a declaration concerning the extent to which its judgment lien attaches to and remains enforceable against the Property. That claim depends on the same dispositive issue addressed in the Plaintiff's instant summary judgment motion. Alum Rock had notice and a full opportunity to present its evidence and legal arguments on whether Alum Rock's lien is enforceable against the Mulligans' interest. No distinct factual or legal question remains concerning its counterclaim.

Because the Mulligans acquired the Property as bona fide purchasers without notice, Alum Rock's previously attached lien is unenforceable against their interest. Alum Rock therefore cannot obtain the relief requested in its counterclaim. Judgment will be entered in favor of the Mulligans and against Alum Rock on that counterclaim. Because the court resolves the counterclaim on the developed summary judgment record rather than for failure to state a claim the Mulligans' separate motion to dismiss the counterclaim is moot.

**CONCLUSION**

Based on the above reasoning, Plaintiffs' Motion for Summary Judgment [ECF No. 40] is GRANTED. The Mulligans acquired the Property as bona fide purchasers for value without actual, constructive or inquiry notice of Alum Rock's judgment lien. Title to the Property is

quieted in the Mulligans free and clear of Alum Rock's judgment lien. Judgment is entered in favor of the Mulligans and against Alum Rock on Alum Rock's counterclaim. Plaintiffs' Motion to Dismiss [ECF No. 38] is moot.

DATED this 31st day of August 2026.

BY THE COURT:

DALE A. KIMBALL,
United Sates District Judge